**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UBER TECHNOLOGIES, INC.,

                PLAINTIFF,                    CASE NO. 2:25-CV-05365

    v.

MARC SIMON, et. al.

                DEFENDANTS.

_____

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS OF DEFENDANTS PHILADELPHIA SPINE ASSOCIATES, LLC, DAN PICCILLO, D.C., AND ETHEL HARVEY, D.**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ ii-iii

I.    UBER'S CLAIMS AGAINST PSA ARE AN IMPLAUSIBLE TAUTOLOGY OF
CONCLUSORY STATEMENTS AND PURE IMAGINATION .............................................. 1

    A.    Breakdown of the Specific Allegations Against PSA ........................................ 2

II.   LEGAL STANDARDS ......................................................................................... 10

    A.    Rule 12(b)(6) .......................................................................................... 10

    B.    § 1962(d) ................................................................................................ 11

    C.    Unjust Enrichment .................................................................................. 12

III.  LEGAL ARGUMENT .......................................................................................... 12

    A.    Uber Fails to Offer Any Facts to Support Its § 1962(d) Claim Against PSA ................. 14

    B.    Uber Does Not Identify Any Benefits Conferred on PSA That Might Sustain an
Unjust Enrichment Claim ......................................................................................... 17

IV. CONCLUSION ................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Abbott v. Latshaw*, 164 F.3d 141 (3d Cir. 1998)....................................................................15

*Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429 (3d Cir. 2000).........................18

*Argue v. Triton Digital Inc.*, 734 F. App'x 148 (3d Cir. 2018)..............................................12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...........................................................................6, 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)................................................................11

*Breslin v. Brainard*, 2003 WL 22351297, at *13  (E.D. Pa. Oct. 14, 2003), *aff'd* 128 F. App'x  237 (3d Cir. 2005) ...............................................................................................15

*Breslin v. Brainard*, 2003 WL 22351297 (E.D. Pa. Oct. 14, 2003)......................................15

*Century Indem. Co. v. URS Corp.*, 2009 WL 2446990 (E.D. Pa. Aug. 7, 2009).................18

*Gordon v. Pasquarello*, -, 1565, 2023 WL 2505538 (E.D. Pa. Mar. 14, 2023)...................11

*Gov't Emps. Ins. Co. (GEICO) v. Korn*, 310 F.R.D. 125 (D.N.J. 2015)..............................14

*Hausknecht v. John Hancock Life Ins. Co. of New York*, 614 F. Supp. 3d 168 (E.D. Pa. 2022) ...................................................................................................................................15

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990) ...............................16

*Irish v. Ferguson*, 970 F. Supp. 2d 317 (M.D. Pa. 2013) ....................................................10

*Mark Hershey Farms, Inc. v. Robinson*, 171 A.3d 810 (Pa. Super. 2017) ..........................12

*Odesser v. Cont'l Bank*, 676 F. Supp. 1305 (E.D. Pa. 1987) ..........................................11, 15

*Oxford Fin. LLC v. McLellan*, -, 4839, 2020 WL 1975072 (E.D. Pa. Apr. 23, 2020)....17, 19

*Salvitti v. Lascelles*, 669 F. Supp. 3d 405 (E.D. Pa. 2023) .................................................19

*Seville Indus. Machinery v. Southmost Machinery*,  742 F.2d 786, 792 n. 8 (3d Cir.1984) *cert. denied* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d  327 (1985) ........................11

*Seville Indus. Machinery v. Southmost Machinery*, 742 F.2d 786 (3d Cir. 1984)...............11

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp.2 ...................................................................................................................19

*Smith v. Berg*, 247 F.3d 532 (3d Cir. 2001)...............................................................15

*Smith v. Jones, Gregg, Creehan & Gerace, LLP*, 2008 WL 5129916 (W.D.Pa. Dec. 5, 2008) ......................................................................................................................16

*Tatis v. Allied Interstate, LLC*, 882 F.3d 422 (3d Cir. 2018)................................11

*The Knit With v. Knitting Fever, Inc.*, 2011 WL 1161716, at *4 (E.D. Pa. Mar. 30, 2011), aff'd, 625 F. App'x 27 (3d Cir. 2015)..............................................................16

*The Knit With v. Knitting Fever, Inc.*, 2011 WL 1161716 (E.D. Pa. Mar. 30, 2011)...........16

*Tignor v. Dollar Energy Fund, Inc.*, 745 F. Supp. 3d 189 (W.D. Pa. 2024) ........................19

*Torchia v. Torchia*, 499 A.2d 581 (Pa. Super. 1985)............................................19

*United States v. Pearce*, 912 F.3d 159 (6th Cir. 1990)........................................17

**FEDERAL RULES**

Fed. R. Civ. P. 12 ....................................................................................................10

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UBER TECHNOLOGIES, INC.,

                                        CASE NO. 2:25-CV-05365

    v.

MARC SIMON, et. al.

_____

**MEMORANDUM OF LAW IN SUPPORT OF THE PSA DEFENDANTS' MOTION
TO DISMISS PURSUANT TO RULE 12(b)(6)**

Defendants Philadelphia Spine Associates, LLC, Ethel Harvey, D.C., and Daniel

Piccillo, D.C. (Collectively hereafter referred to as "PSA" or the "Philadelphia Spine

Defendants"), submit the following Memorandum in Support of their Motion to Dismiss

Plaintiff's Complaint:

## I.    <u>UBER'S CLAIMS AGAINST PSA ARE AN IMPLAUSIBLE TAUTOLOGY</u>

Uber's transparent motivation for filing this lawsuit is execrable, but its inclusion of

Philadelphia Spine Associates and its Doctors as Defendants is particularly unconscionable.

The scant allegations offered against PSA are so conclusory, circular, and admittedly

imagined out of "information and belief" that even Uber is too embarrassed to accuse PSA of

being part of any supposed "RICO enterprise."  Instead, Uber alleges, implausibly, that PSA

somehow conspired to further the aims of such alleged enterprises by treating a grand total of

*four* of the 1000-plus patients alleged to have been represented by the Simon Law Firm and

treated by the other medical provider defendants.  But even on the face of Uber's self-serving

account, the treatment described as having been provided by PSA to these four patients was

markedly different in each claim.  Most egregiously, there are zero allegations that PSA

communicated with any other Defendant or even knew of any other defendant's involvement

with any of the patients.

1

Because they are not actually alleged to be a part of any RICO enterprise, the PSA defendants will leave it to the other Defendants to articulate Uber's patent failure to adequately plead the existence of *any* RICO enterprise, as well as its lack of standing to even attempt to do so. PSA fully incorporates and adopts these inevitable arguments to the extent they establish the failure of Uber to plead any RICO enterprise, as doing so would of course eliminate any possible viability of a §1962(d) claim.

But for purposes of this Motion, focusing on just the limited allegations offered against PSA, it is clear Uber has failed in all respects to state a plausible claim for relief under either §1962(d) or for Unjust Enrichment against the PSA Defendants.

A.  **<u>BREAKDOWN OF THE ALLEGATIONS AGAINST PSA</u>**

Detailed below in bold-face type are the few paragraphs sprinkled throughout Uber's Complaint which offer *any* allegations against PSA, accompanied by commentary pointing out the conclusory and implausible nature of each:

**¶6:    Dr. Harvey, Dr. Piccillo, and their chiropractic practice "support the scheme" by "fraudulent" records which "support false diagnoses of serious injuries and are made for the purpose of inflating damages claims."**

These conclusory allegations are the entirety of Uber's claims against PSA and, as shown below, are never supported by anything more than (illogical) leaps of imagination. Uber offers no facts to establish a plausible inference that any treatment provided by PSA was even *inappropriate* much less "fraudulent" nor any facts supporting an allegation of "false diagnoses". Instead, Uber spins a tautology that everything the Simon firm does is fraud, 4 patients of PSA were represented by the Simon firm, and therefore everything PSA did for those patients must have been fraudulent.

¶45:   **"After an emergency room visit, these claimants <u>typically</u> received chiropractic and physical therapy treatment, <u>often</u> from Defendants Harvey and Picillo at Philadelphia Spine Associates."**

Whatever the words "typically" or "often" mean in this context, Uber's own Complaint admits they *do not apply to PSA*.  This is a critical contradiction because the plausibility of Uber's entire fraud premise depends entirely on an allegedly massive "volume" of claims in "dozens of state court lawsuits filed against Uber" by the Simon firm (¶10); "Mass referrals" to and "at least 30 lawsuits" involving Burt and Premier (¶17, 27); and "1,278 medical exams of Simon & Simon patients" by Yarus (¶21).

Contrast this, however, with the allegations against PSA, which identify a grand total of <u>four</u> patients treated over the course of 2 years who were represented by Simon (two of whom appear not even to have been Uber claimants).  The Complaint offers no plausible facts to support an allegation that Simon clients "typically" or "often" receive treatment from PSA.  Uber's fraud theory, invented out of an allegedly grand volume of patients in common amongst the defendants, clearly does not apply to PSA.

¶46:   **"Claimants commonly visited these clinics more than twenty times, typically on a compressed time frame."**

Notwithstanding the absence of any attempt to explain why 20 rehab visits after a car accident would in any way be atypical (it is not, of course), *even this* averment does not apply to PSA.  Of the 4 PSA patients identified (Claimants A, B, D, & E), Uber's own Complaint admits Claimant B had only <u>17</u> visits (¶83), while claimants A, D & E are alleged to have had 27, 22, and 39 visits respectively (<u>see</u> ¶73, 99, 108).  Uber's Complaint further negates the plausibility of any alleged "compressed" time frame as Claimant A's treatment at PSA is identified as having occurred over the course of more than 3 months (¶73); no time frame at all is identified for Claimant B's treatment; Claimant D's treatment is identified as lasting

more than 4 months (¶103); and Claimant E's treatment is characterized as having lasted "several months" (¶108). Again, *just taking Uber at its own word* exposes its conclusory allegations as implausibly applied to PSA.

**¶47:    "Upon information and belief in many instances no actual treatment was delivered to the claimants involved" based on the timing of e-signatures affixed to electronic medical records.**

Nothing better exposes the contrived nature of Uber's accusations against PSA than its feeble grasping at timestamps of e-signatures on a few electronic medical records in 2 patient charts as "evidence" of PSA's alleged involvement in a supposedly grand RICO conspiracy involving "dozens of lawsuits" and (apparently) more than 1,200 patients.

That this is Uber's big smoking gun against PSA exposes the disingenuousness of Uber's "information and belief" about anything. Electronic medical records cannot be altered once generated. So, if a patient has a series of appointments initially scheduled for a specific time in the system but *comes in early or late*, the original appointment time in the record does not change. Whenever the doctor has time to review the record and affix his electronic signature, the timestamp of his signature is recorded without regard for when the patient was in the facility. Uber's *fraud* conclusion based on electronic signature timestamps is facially implausible given that doctors obviously review electronic medical records simply when they have the time do so, sometimes in batches. But aside from this obvious reality, Uber's premise is plainly illogical, as doctors supposedly so criminally inclined to go so far as to generate false medical records would presumably be devious enough to avoid signing the records with a timestamp that gives away their crime.

**¶48:    "Records from another clinic controlled by Defendants Harvey and Piccillo", Spinal Associates, contain only the date of the visit, with no indication of the scheduled time, and feature a copy-pasted signature from the attending provider (usually either Harvey or Piccillo)."**

4

This paragraph epitomizes Uber's press release of a lawsuit. Besides the truth that neither Dr. Harvey nor Dr. Piccillo has any connection to the referenced facility, the allegation has no possible point to make which is relevant to any claim in this case. Its transparent purpose is to attempt to smear Dr. Piccillo and Dr. Harvey in some general fashion as bad doctors, which effort is obviously only necessary to bolster an impression Uber knows it is otherwise failing to justify with any relevant facts.

**¶49**: **"The combination of unnecessary emergency room visits and subsequent chiropractor records was designed to create a false evidentiary basis for the claim", citing as an "example" a patient involved in what Uber characterizes as a minor accident who went to Temple's E.R. two days later reporting arm pain and where she was told after discharge she could return to work. Nine days later the patient sought treatment at PSA reporting a pain level of 9/10. "Upon information and belief, the reported pain level was the result of coaching by Simon & Simon and/or the medical provider."**

That this is Uber's *prime example* demonstrating PSA's records were "designed to create a false evidentiary basis" for claims fully exposes the implausibility of its attack against PSA. Uber literally admits it just made up out of its own imagination the circular conspiracy theory that simply because the patient was represented by Simon, *someone must* have "coached" the patient to lie about her pain (an allegation Uber makes despite admitting it has no idea who might have provided the coaching it *imagines* occurred). Uber's entire "factual" support for accusing PSA of abetting fraud in its "example" claim is nothing more than Simon represented the patient.

That Uber simply *imagines* PSA's involvement in a conspiracy with Simon is made clear by Uber's choice *not* to imagine the doctors at Temple Hospital of also being co-conspirators with Simon. After all, the Complaint identifies *more claims involving treatment at Temple's E.R. of Simon clients* (5 different patients) than it does PSA (4 different

patients)(See ¶¶49, 50, 81, 97, & 107).  The Complaint claims the patients were sent to the ER

by Simon.  But for no reason explained by its Complaint, Uber does not imagine the doctors at

Temple, who just like PSA documented the patients' subjective complaints of pain, provided

treatment for same, and presumably got paid for it, "conspired" to further the criminal

enterprises Uber alleges amongst Simon and the other defendant medical providers.

**¶50**:    **"In a similar case, another claimant" was in an accident Uber characterizes as minor and went to Temple's E.R. the next day complaining of 10/10 pain that was "as bad as it could possibly be" and discharged with a suggestion that he take Ibuprofen.  "Nevertheless, five days later, at the direction of Simon & Simon, he was attending his first of 39 appointments at Philadelphia Spine Associates."**

Here is a perfect example of allegations purporting to involve PSA but which offer

zero facts identifying any wrongdoing by PSA.  Even if it is accepted as true that Simon

"directed the patient to" PSA, there is no allegation (much less facts offered to support) that

PSA *knew* this or had any communication whatsoever with Simon about the patient's care, nor

is there any fact offered to suggest that PSA had any reason to doubt the veracity of their

patient's complaint of severe pain.

But what is *most* implausible is what *would also need to be true* for Uber's fraud

theory against PSA to be plausible in the first place.  Uber's premise is that the pain this

"example" patient complained of was so *obviously fake* the doctors at PSA *could only have*

*been* frauds for believing and treating it, but *at the same time* Uber's own lawyers and experts

defending the underlying case brought by Simon were somehow powerless *to produce any*

*evidence to disprove the obvious fraud*.  Both things obviously cannot be true, and to allege

otherwise is the kind of ridiculous premise that is "sufficiently fantastic to defy reality as we

know it" and unworthy of this Court's credulity.  Ashcroft v. Iqbal, 556 U.S. 662, 696 (2009).

**¶¶70-117**:  **In these paragraphs, Uber purports to identify the specific "examples of the scheme in operation against Uber" which it alleges "illustrate the pattern of**

**corrupt activity directed at Uber." These paragraphs describe 5 claimants, A-E, only four of whom are identified as having treated at PSA (claimant C is identified as having treated at a different chiropractic practice called Passyunk Chiropractic and Rehabilitation)(¶91)). According to the Complaint, of the 4 claimants who treated at PSA, Claimants B, D, & E each sought treatment at an emergency room prior to coming to PSA (¶81, 98, 107). Claimant B was administered a steroid shot for pain at Temple's E.R. (¶81), and Claimant D was provided a lidocaine patch by Chestnut Hill Hospital's E.R. (¶98). Philadelphia Police responded to the scenes of all 4 accidents, along with EMS at one of them (¶71, 80, 97, 106).[1]**

Forgetting for the moment that Uber offers no facts other than the patients were represented by Simon to support the accusation that PSA's treatment was somehow inappropriate, most notably <u>absent</u> from the descriptions of these claims is *any* allegation of communication by PSA *to or from any other Defendant*. In fact, there is no allegation that PSA was *even aware of the existence* of the other Defendants' involvement with any patient. Although these paragraphs variously allege the treatment provided at PSA was "directed by the Simon" firm (¶72) or the patient travelled to PSA "at the direction of Simon & Simon" (¶82, 99, 108), such allegations are offered in a conclusory vacuum with zero factual support. There is not a single communication or other interaction identified between the Simon firm and PSA which remotely justifies the conclusion that PSA provided anything other than care which its doctors sincerely believed was reasonable and necessary.

The only hint of "factual" allegations offered to even suggest the treatment provided at PSA to Claimants A, B, D, or E was somehow inappropriate is, again, the timing of e-signatures stamped on electronic records; allegedly "boilerplate" findings from visit to visit

---

[1] This is a fact worth noting because Philadelphia Police Directive 9.6 provides that officers "will not be dispatched to the scene of vehicle crashes result in property damage only." https://www.phillypolice.com/wp-content/uploads/2024/11/D9.6-REV-8-20-21-REDACTED.pdf. The fact that Philadelphia Police responded to each accident scene obviously contradicts the plausibility of Uber's premise that these were accidents in which no personal injury was possible.

for each claimant; and characterizations of how Claimant's D and E "later" described some of their treatment.

Although discussed above, it is worth noting here again that a medical provider sitting down at one time to review several records of previous dates of treatment when the time is available to do so is not just a usual and customary practice, it is the standard of care. And again, it is just illogical to suggest a doctor intent on creating entirely false medical records would stamp on their face the evidence of his crime.

The allegation of "boilerplate" findings is not just conclusory, it is belied by Uber's own Complaint, which itself describes the findings by PSA concerning Claimant A to be much different than those of Claimant B (cf. ¶73 & 83); offers no description at all of the findings made by PSA for Claimants D & E; and describes each patient as having had vastly different numbers of visits over different periods of time. That these 4 claims are the *best* evidence of "boilerplate" treatment Uber could come up with says everything about the legitimacy of Uber's inclusion of PSA in this case.[2]

The Complaint's offhanded characterizations of statements that Claimant D & E supposedly made about some of their treatment at PSA are barely worth mentioning. Claimant D is alleged to have "reported to an independent medical examiner" a description of her treatment which was supposedly at odds with what PSA's records show (¶100). It does not appear this claim even involved Uber, but even if it did, Uber's choice not to attach any report from this so-called "independent medical examiner" supporting Uber's self-serving characterization eliminates any possible credibility it might otherwise be entitled to at this stage.

---

[2] Equally revealing of the fact that PSA simply does not belong in this case is the fact that the "examples of the scheme in operation against others" references two patients who also were not seen by PSA (¶118-133).

Similarly, with respect to Claimant E, which also appears not to have been an Uber claim, Uber characterizes a snippet of deposition testimony but again attaches no transcript, erasing any credibility owed to the assertion. Especially considering the obvious disingenuousness of Uber's allegations against PSA overall, these unsupported non-contextualized characterizations of patient "statements" are not worth the paper they are printed on (or *not* printed on given Uber's telling choice not to attach any documentation of them).

¶144: **"Harvey, Piccillo and Philadelphia Spine Associates have participated and likely will in the future continue to participate in the scheme by diagnosing non-existent injuries, performing unnecessary medical procedures, and producing fraudulent medical records at the direction of Simon & Simon and Marc Simon. The volume of fraudulent medical records that the chiropractic defendants produce plays a key role in advancing the scheme and assisting in the efforts of the enterprise's corrupt endeavors. The high volume of alleged treatments allows Simon & Simon to paint the picture of a serious injury, and to justify more invasive procedures allegedly performed by Burt. The records produced by the chiropractic defendants are fraudulent, purporting to memorialize treatment that was either unnecessary, not administered as described, or never administered at all."**

With this paragraph, Uber neatly highlights each of the conclusory statements upon which its claims against PSA are entirely premised. It identifies "non-existent injuries" and "unnecessary medical procedures" and "fraudulent medical records" but, as detailed above, the Complaint fails to support any of these accusations with any facts at all. It references a "high volume of alleged treatments" but, again as detailed above, this is the exact *opposite* of what its Complaint describes with respect to PSA.

Moreover, how *any* of PSA's records were supposedly utilized by Dr. Burt (or anyone else) for *any* purpose is a complete mystery as *there is no allegation that PSA even knew who Burt was or consulted with him in any way*. Again, Uber's conclusory claim that "the records produced by the chiropractic defendants are fraudulent" is based on nothing more than the fact

that PSA treated 4 patients who happened to be represented by the Simon law firm. That Simon represented the patients is ultimately the *only* "fact" offered to support the allegation that the doctors of PSA *must have been lying* when they indicated in their treatment records for Claimants A, B, D, & E that the injuries they treated were, in their opinion, a result of the accident the patients reported being involved in (See ¶161(c); 162(c); 164(c); & 165(c)).

**¶193-202:  These Paragraphs are the specific Counts brought against PSA, which are limited to §1962(d) and Unjust Enrichment (Counts IV & V respectively)**.

By limiting its RICO claim against PSA to §1962(d), even Uber admits there is no evidence or good faith basis to suggest PSA was associated with or participated in the conduct of any of the 3 separate RICO enterprises alleged in Counts I-III.[3]  But this admission must also be taken as a concession as to the implausibility of its accusations against PSA overall given that Uber accuses PSA no less damningly than it does the other defendant medical providers of being in league with the Simon firm.  That even Uber in all its ardor is constrained nonetheless to admit there is no evidence of PSA being a participant in the alleged RICO enterprises implicitly admits its claims against PSA have no basis in plausible fact.

## II.    LEGAL STANDARDS

### A.  12(b)(6)

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009), which holds "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

---

[3] Again, PSA does not concede in any way that Uber has adequately pleaded the existence of *any* RICO enterprise. PSA anticipates that the other Defendants who are actually accused of being a part of these alleged enterprises will amply articulate the failures of Uber's Complaint in this regard.  To the extent the Court finds Uber has failed to plead the existence of any RICO enterprise, PSA would separately move for dismissal of the §1962(d) claim against it on the grounds that "Any claim under section 1962(d) based on a conspiracy to violate [any of] the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." Irish v. Ferguson, 970 F. Supp. 2d 317, 361–62 (M.D. Pa. 2013).

statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678 (citation omitted); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (*quoting* Iqbal, 556 U.S. at 678).

Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

"[W]here the well-pleaded facts do not **permit the court to infer more than the mere possibility of misconduct,** the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." Gordon v. Pasquarello, No. CV 22-1565, 2023 WL 2505538, at *14–15 (E.D. Pa. Mar. 14, 2023)(internal citations omitted, emphasis in the original).

**B. §1962(d)**

"§1962 prohibits conspiracies to knowingly further the affairs of the enterprise and mere agreement to commit the predicate acts is not sufficient to support a charge of conspiracy under § 1962(d)." Odesser v. Cont'l Bank, 676 F. Supp. 1305, 1312 (E.D. Pa. 1987), *citing* Seville Indus. Machinery v. Southmost Machinery, 742 F.2d 786, 792 n. 8 (3d Cir.1984) *cert. denied* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985). "More comprehensive knowledge is required: the complaint must contain allegations that defendants knew of the pattern and its aim. In sum, in order to state a claim under subsection (d), a plaintiff must allege (1) agreement to commit the predicate acts of fraud, and (2) knowledge

that those acts were part of a pattern of racketeering activity conducted in such a way as to violate § 1962(a), (b), or (c)." Id.

### C. **Unjust Enrichment**

Under Pennsylvania law, to establish a claim for unjust enrichment, a plaintiff must show, "(1) benefits conferred on defendant by plaintiff, (2) appreciation of such benefits by defendant, and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." Argue v. Triton Digital Inc., 734 F. App'x 148, 151 (3d Cir. 2018) (*quoting* Mark Hershey Farms, Inc. v. Robinson, 171 A.3d 810, 817 (Pa. Super. 2017)). To succeed on an unjust enrichment claim, a plaintiff must show that circumstances exist that make it "unconscionable' for the defendant to retain the benefit conferred." Id. (*quoting* Robinson, 171 A.3d at 817).

### III.    **LEGAL ARGUMENT**

As demonstrated by Uber's own "factual" allegations against PSA detailed above, Uber's Complaint does not even attempt to connect PSA with any other defendant medical provider. There is no communication amongst them identified, no allegation that PSA shared its records with them, and no allegation that PSA was even aware of their existence. As regards the Simon firm, the only connection even alluded to between PSA and the Simon firm is that 4 patients of PSA were also represented by the firm. There are no specific communications alleged between the firm and PSA, nor any interaction whatsoever. Uber just alleges in wholly conclusory fashion that Simon somehow "directed" the treatment of these 4 patients without offering any facts to justify the conclusion.

At bottom, Uber's claim against all the medical providers is premised solely on the notion that there was such an incredible volume of patients seen in common amongst the

defendants that the sheer numbers themselves establish a fraudulent conspiracy.  As detailed above, however, Uber's Complaint not only describes no such volume with respect to PSA, it identifies the *exact opposite*: a limited universe of 4 patients whom, even by Uber's barebones, self-serving descriptions, had different numbers of visits, varied findings, and varied accident circumstances.  The only false "statement" attributed to PSA with respect these 4 patients is Dr. Piccillo and/or Dr. Harvey's expressions of *opinion* that the injuries they treated the patient for were related to the accident reported by the patient.  But Uber does not even pretend to offer any facts which suggest these opinions were not sincerely held other than that the patients were represented by the Simon firm.

Incredibly, Uber's Complaint implicitly concedes *it has no evidence at all* which might undermine the truthful sincerity of Dr. Piccillo's or Dr. Harvey's opinions in the individual claims of Claimant's A, B, D and/or E, given its blanket averment that the fraud it alleges could not "be remediated on a case-by-case basis."  (Compl., ¶12).  In other words, Uber alleges it paid so much money to lawyers and experts defending the underlying claims to supposedly justify a RICO case, but none of these lawyers or experts *could prove in any one case* that the opinion of Drs. Piccillo and/or Harvey was even *wrong* (much less intentionally false).

Uber thus comes to this forum arguing that its *only* ability to prove PSA's opinions false in any one case is by exposing an alleged "pattern" across "dozens" of cases in which its lawyers *failed every time* to prove what Uber claims was such obvious fraud that PSA *had* to have been in on it.  The sum of "evidence" Uber offers to support this risible premise lies entirely in supposed similarities spanning "dozens of state court lawsuits" (¶10), but its

Complaint makes clear PSA could only possibly have been involved as a treater in <u>two</u> such cases.

Certainly, Courts have found allegations of fraud plausibly pleaded against medical providers based on "patterns" across patient records for 12(b)(6) purposes, but only when the patterns were alleged across *hundreds* or *thousands* of patients listing specific indicia of non-credible findings which were identical across the board. *See*, e.g., <u>Gov't Emps. Ins. Co. (GEICO) v. Korn</u>, 310 F.R.D. 125, 128-131 (D.N.J. 2015)(Alleging a pattern across "thousands of HCFA-forms" and collecting cases identifying similarly massive volumes of allegedly false records as the plausible basis to allege fraud). No Court, however, has found a plausible inference of fraud, much less a massive RICO conspiracy involving lawyers and numerous unrelated medical providers, based solely on the entirely siloed treatment of just 4 patients over the course of 2 years, each with varying accident circumstances, varying findings, varying lengths of treatment, and varying numbers of visits.

Uber clearly knows all this, which is why it comically attempts to create the false impression of a greater number of claims involving PSA by rebranding the claims described in paragraphs 49 and 50 in later paragraphs as Claimants "B" and "E". Any RICO conspiracy claim *legitimately* derived from an alleged massive volume of claims in common amongst defendants would not have to so pathetically disguise its dearth of evidence by recycling the same two claims under different descriptions in disparate paragraphs.

A.    **UBER FAILS TO OFFER ANY FACTS TO SUPPORT ITS §1962(d) <u>CLAIM AGAINST PSA</u>**

In addition to the complete inapplicability to PSA of its volume-based claim of fraud, Uber fails to offer any facts whatsoever connecting PSA to any other defendant. It fails to identify any communication or awareness by PSA that any of the other medical provider

14

defendants were (or even might be) later involved in the treatment of the 4 patients identified as having been seen at PSA.  Regarding the Simon firm, Uber fails to identify any facts identifying communications or coordination with PSA concerning any patient.

RICO Section 1962(d) provides for liability if a defendant shares a common purpose with his co-conspirators and "knowingly agree[s] to facilitate a scheme, which includes the operation or management of a RICO enterprise." Hausknecht v. John Hancock Life Ins. Co. of New York, 614 F. Supp. 3d 168, 188 (E.D. Pa. 2022), citing Smith v. Berg, 247 F.3d 532, 538 (3d Cir. 2001). To succeed on such a claim, a plaintiff must establish that the defendant had "knowledge that those acts were part of a pattern of racketeering activity conducted in such a way as to violate § 1962(a), (b), or (c)." Odesser v. Cont'l Bank, 676 F. Supp. 1305, 1312 (E.D. Pa. 1987) (citation omitted); Smith, 247 F.3d at 537 n.11 (holding that those who "merely provide services" cannot be held liable under Section 1962(d) and "liability will arise only from services which were purposefully and knowingly directed at facilitating a criminal pattern of racketeering activity."). "Accordingly, as with a Section 1962(c) RICO claim, a claim under Section 1962(d) requires the plaintiff to show that defendants agreed to the commission of a pattern of racketeering." Breslin v. Brainard, 2003 WL 22351297, at *13 (E.D. Pa. Oct. 14, 2003), aff'd 128 F. App'x 237 (3d Cir. 2005).

Even if the Court accepts as true the existence of RICO enterprises involving the Simon firm and the other defendant medical providers, there is zero evidence or facts offered to even suggest PSA had any knowledge of or agreed to further any alleged racketeering acts committed by the enterprises.  "[I]t is not enough for a complaint to simply make "conclusory allegations of concerted action but [be] devoid of facts actually reflecting joint action." Abbott v. Latshaw, 164 F.3d 141, 148 (3d Cir.1998). "Moreover, mere inferences from the complaint

are inadequate to establish the necessary factual basis." The Knit With v. Knitting Fever, Inc.,
2011 WL 1161716, at *4 (E.D. Pa. Mar. 30, 2011), aff'd, 625 F. App'x 27 (3d Cir. 2015)

Rather, the "[p]laintiff must allege facts to show that each Defendant objectively
manifested an agreement to participate, directly or indirectly, in the affairs of a RICO
enterprise through the commission of two or more predicate acts." Id., citing Smith v. Jones,
Gregg, Creehan & Gerace, LLP, 2008 WL 5129916, at *7 (W.D.Pa. Dec. 5, 2008). "Bare
allegations of conspiracy described in general terms may be dismissed." Id.

"Because the core of a RICO civil conspiracy is an agreement to commit predicate
acts, a RICO civil conspiracy complaint must allege specifically such an agreement." Id.,
quoting Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 25 (2d Cir.1990).  Uber offers
nothing even approaching such specificity, alleging instead generally in conclusory fashion
that the Simon firm commits fraud and therefore PSA must have agreed to commit the same
fraud by treating 4 patients who happened to have been represented by the firm and who,
unbeknownst to PSA, (apparently) later went on to receive treatment with other providers
alleged to be members of a RICO conspiracy with Simon.

The Court in The Knit With v. Knitting Fever, Inc. dismissed a 1962(d) claim based
on similarly generalized conclusions in which "nothing on the face of the Complaint allows
any reasonable inference" that the defendant "agreed to facilitate" a fellow defendant's
predicate acts.  Id. at *8. The Court stated: "Merely because Mrs. Elalouf was married to Sion
Elalouf and had responsibility for approving and paying invoices from KFI's foreign suppliers
as part of her employment does not, by any logical stretch, imply that she was voluntarily
engaged in efforts, pursuant to an explicit agreement, to disguise an unlawful racketeering

enterprise." Id., *citing United States v. Pearce*, 912 F.3d 159, 162 (6th Cir. 1990)("[M]ere association with conspirators is not enough to establish participation in a conspiracy.").

*At best*, even accepting Uber's implausible factual allegations and conclusory statements as true, the Complaint alleges nothing more than PSA's mere association with the supposed RICO enterprises through individualized treatment of just 4 patients in common. This is not, by any stretch even of Uber's imagination, enough to establish PSA's knowing participation in any conspiracy.

### B.    UBER DOES NOT IDENTIFY ANY BENEFITS CONFERRED ON PSA WHICH MIGHT SUSTAIN AN UNJUST ENRICHMENT CLAIM[4]

Uber's theory of Unjust Enrichment against PSA is so convoluted as to be facially implausible. Despite 202 paragraphs across 63 pages, Uber's sole allegation of "fact" supporting its unjust enrichment claim against PSA is found in paragraph 200. Therein, Uber states "the Chiropractor Defendants have been and will continue to be unjustly enriched by benefits received pursuant to the fraudulent scheme, including through payments derived directly or indirectly from Marc Simon and Simon & Simon. Such benefit was at Uber's expense given that Uber has been required to incur substantial legal expense as a result of the scheme."

First, and most importantly, not a single averment anywhere else in Uber's Complaint identifies "payments derived directly or indirectly" by PSA from Marc Simon or the Simon

---

[4] PSA does not concede Uber has adequately alleged an amount-in-controversy sufficient to establish diversity jurisdiction. Uber makes generalized reference to legal fees incurred in defense of suits brought by Simon as alleged damages but assigns no actual dollar figure to them. To the extent the Court finds this insufficient to establish an amount-in-controversy greater than $75,000.00 and dismisses the RICO claims, PSA respectfully submits the Court should decline to exercise supplemental jurisdiction over Uber's Unjust Enrichment claim. Oxford Fin. LLC v. McLellan, No. CV 19-4839, 2020 WL 1975072, at *3 (E.D. Pa. Apr. 23, 2020)(The Court may decline supplemental jurisdiction over state law claims if all original jurisdiction claims are dismissed).

firm. In fact, there is no allegation of any kind identifying how or even whether PSA received any payment at all for the services rendered to the 4 patients identified as having treated there.

But even assuming for the sake of argument that PSA got paid something by someone for its services rendered to the 4 patients, the Complaint offers no facts even attempting to explain how those payments might be traced to legal expenses Uber incurred in its (obviously failed) defenses against the lawsuits brought by Simon. Uber's unjust enrichment theory is just a bizarre doubling-down on its implausible premise that PSA *must* have committed fraud because the patient's complaints of injury were so obviously frivolous that no one could possibly have believed them while, at the same time, Uber's lawyers were so incompetent in every such instance they could not successfully rebut a single one of the claims.

If Uber has an unjust enrichment claim in this circus, it would be against the lawyers it paid to represent it in the underlying cases against the Simon firm. After all, according to Uber, these lawsuits involved: auto accidents which could not possibly have caused any injury; doctors whose records were "boilerplate" and time-stamped with signatures evidencing the treatment did not occur; and plaintiffs who confessed that the records of their treatment were inaccurate. *None of these things can possibly be true* if Uber's lawyers lost every case so miserably that Uber must shop its failed state court defenses in the forum of this Court.

"[T]he benefit to the defendant must be more than remote to support an unjust enrichment claim." Century Indem. Co. v. URS Corp., 2009 WL 2446990, at *6–8 (E.D. Pa. Aug. 7, 2009), *citing* Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 447 (3d Cir.2000). The "key inquiry in determining whether a Pennsylvania unjust enrichment claim may proceed is whether the defendant received a benefit *unjustly*, and ... while *direct* conferral of a benefit is not required, the relationship between plaintiff and defendant may not be too

18

remote." Id., *citing* Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC, 737 F. Supp.2d 380, 444 (E.D. Pa. 2010) (emphasis in original).

"[T]he most significant element of the doctrine is whether the enrichment of the defendant is *unjust.* The doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff." Oxford Fin. LLC v. McLellan, 2020 WL 1975072, at *3-5 (E.D. Pa. Apr. 23, 2020), *citing*, inter alia, Torchia v. Torchia, 499 A.2d 581, 582 (Pa. Super. 1985).

Uber's Unjust Enrichment claim against PSA is ultimately nothing more than a single conclusory allegation assuming that PSA must have benefited *somehow* because of the grand scheme it alleges. But it offers no facts at all concerning how or even whether PSA received any benefit at all.  The Complaint instead imagines its expenditure of defense costs against "dozens of lawsuits" *which clearly could not have involved PSA* given PSA's involvement in exactly 2 Uber claims overall, somehow generated some kind benefit to PSA. How Uber concocts this labyrinthian theory of benefit to PSA is a mystery, as Uber's defense costs should (presumably) have been the one thing *preventing* any benefit to PSA if Uber's allegations were remotely true.

Even accepting Uber's imagined unjust enrichment theory to be plausible, it fails because an unjust enrichment plaintiff "must describe the benefit conferred with some specificity" and "unjust enrichment claims cannot be based on 'speculative' or 'intangible' benefits." Salvitti v. Lascelles, 669 F. Supp. 3d 405, 415 (E.D. Pa. 2023). Where a Plaintiff does not provide sufficient factual support explaining what benefit it conferred on Defendant and instead offers merely bare conclusions that *some* benefit was conferred, the claim should be dismissed. Tignor v. Dollar Energy Fund, Inc., 745 F.Supp.3d 189, 206 (W.D. Pa.

19

2024)(Bare conclusions and unwarranted inferences of unjust enrichment not entitled to the assumption of truth).

## IV.    **CONCLUSION**

Nothing better summarizes the knowing implausibility of Uber's claims against PSA than its pathetic attempt to create a false impression of some greater volume of claims with the pleading equivalent of plastic glasses, fake nose, and a mustache.  No legitimate RICO conspiracy plaintiff would have to dress up the *same claims* with different descriptions dozens of paragraphs apart if there existed any genuine support for its volume fraud theory.  That Uber feels compelled to do so against PSA not only demonstrates the lack of good faith basis for its claims, but also that it should be precluded from any attempt to compound its deception with an amended complaint.

For these reasons and all of those detailed throughout the above Memorandum, it is respectfully submitted that Uber's Complaint against Philadelphia Spine Associates, Dr. Ethel Harvey, and Dr. Daniel Piccillo should be dismissed with prejudice.

BARATTA LAW, LLC

DATED:  11/3/25                    BY:    _____
                                                          ANDREW P. BARATTA, ESQUIRE
                                                          *Attorney for Defendants, Philadelphia*
                                                          *Spine Associates, LLC, Daniel Piccillo,*
                                                          *D.C., and Ethel Harvey, D.C.*
                                                          Attorney I.D. No. 82250
                                                          BARATTA LAW, LLC
                                                          3500 READING WAY
                                                          HUNTINGDON VALLEY, PA 19006
                                                          215-914-8132

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UBER TECHNOLOGIES, INC.,

          PLAINTIFF,              CASE NO. 2:25-CV-05365

  v.

MARC SIMON, et. al.

          DEFENDANTS.

_____

## CERTIFICATION OF MEET AND CONFERRAL

      Pursuant to Judge Kearney's Policies and Procedures, the undersigned certifies that

counsel for Defendants conferred with counsel for Plaintiff on the relief sought in the instant

Motion via Zoom conferences on October 15 and October 28, as well as in follow-up written

emails. As described in Defendants' Motion, the issues could not be narrowed further given

the disagreement between counsel regarding the plausibility of inferences upon which the

viability of Plaintiff's claims rest.


                             BARATTA LAW, LLC

DATED: 11/3/25         BY: _____
                             ANDREW P. BARATTA, ESQUIRE
                             *Attorney for Defendants, Philadelphia Spine*
                             *Associates, LLC, Daniel Piccillo, D.C., and Ethel*
                             *Harvey, D.C.*
                             Attorney I.D. No. 82250
                             BARATTA LAW, LLC
                             3500 READING WAY
                             HUNTINGDON VALLEY, PA 19006
                             215-914-8132