**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UBER TECHNOLOGIES, INC.,

               PLAINTIFF,                  CASE NO. 2:25-CV-05365

    v.

MARC SIMON, et. al.

               DEFENDANTS.

_____

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS OF**
**DEFENDANTS PHILADELPHIA SPINE ASSOCIATES, LLC, DAN PICCILLO,**
**D.C. AND ETHEL HARVEY, D.C.**

# <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ............................................................................................... ii-iii

I.    UBER'S CLAIMS AGAINST PSA ARE AN IMPLAUSIBLE TAUTOLOGY.............    1

    A.    BREAKDOWN OF THE ALLEGATIONS AGAINST PSA…………………………...    2

II.    LEGAL STANDARDS ...........................................................................................    11

    A.    12(b)(6) .......................................................................................................    11

    B.    § 1962(d) ....................................................................................................    11

    C.    Unjust Enrichment ...................................................................................    12

III.    LEGAL ARGUMENT ...........................................................................................    12

    A.    UBER FAILS TO OFFER ANY FACTS TO SUPPORT THE EXISTENCE OF
        ANY AGREEMENT BETWEEN PSA AND ANY OTHER DEFENDANT………….    14

    B.    UBER DOES NOT IDENTIFY ANY BENEFITS CONFERRED ON PSA WHICH
        MIGHT SUSTAIN AN UNJUST ENRICHMENT CLAIM…………………………….    17

IV. CONCLUSION.........................................................................................................    19

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Abbott v. Latshaw*, 164 F.3d 141 (3d Cir. 1998)....................................................................15

*Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429 (3d Cir. 2000).........................18

*Argue v. Triton Digital Inc.*, 734 F. App'x 148 (3d Cir. 2018).............................................12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................11

*Breslin v. Brainard*, 2003 WL 22351297, at *13  (E.D. Pa. Oct. 14, 2003), *aff'd* 128 F.
         App'x  237 (3d Cir. 2005) ..........................................................................................14

*Century Indem. Co. v. URS Corp.*, 2009 WL 2446990 (E.D. Pa. Aug. 7, 2009).................18

*Gordon v. Pasquarello,* No. 22-1565, 2023 WL 2505538 (E.D. Pa. Mar. 14, 2023)...........11

*Hausknecht v. John Hancock Life Ins. Co. of New York*, 614 F. Supp. 3d 168 (E.D. Pa.
         2022) ...........................................................................................................................14

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990) ...............................15

*Irish v. Ferguson*, 970 F. Supp. 2d 317 (M.D. Pa. 2013) .......................................................2

*Mark Hershey Farms, Inc. v. Robinson*, 171 A.3d 810 (Pa. Super. 2017) ..........................12

*Odesser v. Cont'l Bank*, 676 F. Supp. 1305 (E.D. Pa. 1987) ..........................................11, 14

*Oxford Fin. LLC v. McLellan,* -, 4839, 2020 WL 1975072 (E.D. Pa. Apr. 23, 2020)..........18

*Salvitti v. Lascelles*, 669 F. Supp. 3d 405 (E.D. Pa. 2023) ..................................................19

*Seville Indus. Machinery v. Southmost Machinery*,  742 F.2d 786, 792 n. 8 (3d Cir.1984)
         *cert. denied* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d  327 (1985).......................11

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F.
         Supp.2d 380 (E.D. Pa. 2010) .....................................................................................18

*Smith v. Berg*, 247 F.3d 532 (3d Cir. 2001) .........................................................................14

*Smith v. Jones, Gregg, Creehan & Gerace, LLP*, 2008 WL 5129916 (W.D.Pa. Dec. 5, 2008) ..................................................................................................................15

*Tatis v. Allied Interstate, LLC*, 882 F.3d 422 (3d Cir. 2018)................................................11

*The Knit With v. Knitting Fever, Inc.*, 2011 WL 1161716, at *4 (E.D. Pa. Mar. 30, 2011), aff'd, 625 F. App'x  27 (3d Cir. 2015)..........................................................................15

*Tignor v. Dollar Energy Fund, Inc.*, 745 F. Supp. 3d 189 (W.D. Pa. 2024) ........................19

*Torchia v. Torchia*, 499 A.2d 581 (Pa. Super. 1985).............................................................18

*United States v. Pearce*, 912 F.3d 159 (6th Cir. 1990).........................................................16

**FEDERAL RULES**

Fed. R. Civ. P. 12…………………………………………………………………….…11

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UBER TECHNOLOGIES, INC.,

                            CASE NO. 2:25-CV-05365

    v.

MARC SIMON, et. al.

---

**MEMORANDUM OF LAW IN SUPPORT OF THE PSA DEFENDANTS' MOTION**
**TO DISMISS PURSUANT TO RULE 12(b)(6)**

Defendants Philadelphia Spine Associates, LLC, Ethel Harvey, D.C., and Daniel

Piccillo, D.C. (sometimes hereafter referred to as "PSA" or the "Philadelphia Spine

Defendants"), submit the following Memorandum in Support of their Motion to Dismiss

Plaintiff's Complaint:

## I.    UBER'S CLAIMS AGAINST PSA ARE AN IMPLAUSIBLE TAUTOLOGY

Uber's transparent motivation for filing this lawsuit is execrable, but its inclusion of

Philadelphia Spine Associates and its Doctors as Defendants is particularly unconscionable.

The scant allegations offered against PSA are so conclusory and admittedly imagined out of

"information and belief" that even Uber is too embarrassed to accuse PSA of being part of any

supposed "RICO enterprise."  Instead, Uber alleges PSA's doctors conspired to further the

aims of alleged enterprises by opining that injuries suffered by four patients were related to

the accident and subsequent pain each patient indisputably reported.  But even on the face of

Uber's self-serving characterizations, the Complaint admits the treatment provided to these

four patients was unique.  More damningly, doctors *hired by the defense* in the underlying

lawsuits *admitted PSA's treatment and opinions were correct*.  In the end, the only "fact"

offered in support of PSA's involvement in any supposed conspiracy is that they treated 4

patients who happened to have been represented by Simon.

1

Because they are not alleged to be part of any RICO enterprise, the PSA defendants will leave it to the other Defendants to articulate Uber's patent failure to adequately plead the existence of *any* RICO enterprise and the clear bar against Uber's substantive RICO claims under *res judicata* and <u>Noerr-Pennington</u>.  PSA incorporates and adopts these obvious arguments to the extent they establish the failure of Uber to plead any RICO enterprise, as doing so would of course eliminate any possible viability of a §1962(d) claim.[1]

Focusing on just the limited allegations offered against PSA, it is clear Uber has failed in all respects to state a plausible claim for relief under either §1962(d) or for Unjust Enrichment against the PSA Defendants.

## B.  <u>BREAKDOWN OF THE ALLEGATIONS AGAINST PSA</u>

Detailed below in bold-face type are the few paragraphs sprinkled throughout Uber's Complaint which offer any allegations against PSA, accompanied by commentary pointing out the conclusory and implausible nature of each:

**¶6:  Dr. Harvey, Dr. Piccillo, and their chiropractic practice "support the scheme" by "fraudulent" records which "support false diagnoses of serious injuries and are made for the purpose of inflating damages claims."**

These conclusory allegations are the epitome of Uber's claims against PSA and, as shown below, are never supported by anything more than (illogical) leaps of "information and belief".  Uber offers no facts to establish a plausible inference that any treatment provided by PSA was even *inappropriate* much less "fraudulent" nor any facts supporting an allegation of "false diagnoses".  Instead, Uber spins a tautology that everything the Simon firm does is

---

[1] To the extent the Court finds Uber has failed to plead the existence of any RICO enterprise, PSA would separately move for dismissal of the §1962(d) claim against it on the grounds that "Any claim under section 1962(d) based on a conspiracy to violate [any of] the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." <u>Irish v. Ferguson</u>, 970 F. Supp. 2d 317, 361–62 (M.D. Pa. 2013).

fraud, 4 patients of PSA were represented by the Simon firm, and therefore the causation opinions offered by PSA's doctors must have been fraudulent.

**¶45**:  **"After an emergency room visit, these claimants _typically_ received chiropractic and physical therapy treatment, _often_ from Defendants Harvey and Picillo at Philadelphia Spine Associates."**

Whatever the words "typically" or "often" mean in this context, Uber's own Complaint admits they _do not apply to PSA_.  Out of 18 example Claimants identified throughout the Complaint, PSA treated only 4 of them.  This is critical because the plausibility of Uber's claim of conspiratorial agreement between PSA and Simon depends entirely on an allegedly massive "volume" of claims in "dozens of state court lawsuits filed against Uber" by the Simon firm (¶10); "Mass referrals" to and "at least 30 lawsuits" involving Burt and Premier (¶17, 27); and "1,278 medical exams of Simon & Simon patients" by Yarus (¶21).

The Complaint offers no facts at all to support an allegation that Simon clients "typically" or "often" receive treatment from PSA, and its own allegations demonstrate the exact opposite to be true. In short, Uber's conspiracy theory against PSA is invented out of an allegedly grand volume of patients that its Complaint admits does not exist.

**¶46**:  **"Claimants commonly visited these clinics more than twenty times, typically on a compressed time frame."**

This averment, too, is inapplicable to PSA on the face of the Complaint as out of the 4 PSA patients identified (Claimants A, B, D, & E), Claimant B had only 17 visits (¶83)(claimants A, D & E are alleged to have had 27, 22, and 39 visits respectively (see ¶73, 99, 108)).  The Complaint also facially negates the plausibility of any alleged "compressed" time frame with respect to PSA's treatments as Claimant A's treatment occurred over the course of more than 3 months (¶73); no time frame at all is identified for Claimant B's treatment; Claimant D's treatment is identified as lasting more than 4 months (¶103); and

3

Claimant E's treatment is characterized as having lasted "several months" (¶108).  Again, the plausibility of a conspiracy claim against PSA is destroyed by Uber's admission that the facts it alleges do not apply to the 4 PSA patients identified.

**¶47:** **"Upon information and belief in many instances no actual treatment was delivered to the claimants involved" based on the timing of e-signatures affixed to electronic medical records.**

Nothing better exposes the contrived nature of Uber's accusations against PSA than its feeble grasping at timestamps of e-signatures on a few electronic medical records in 2 patient charts as "evidence" of PSA's alleged involvement in a supposedly grand RICO conspiracy involving "dozens of lawsuits" and (apparently) more than 1,200 patients.

That this is Uber's big smoking gun against PSA exposes the disingenuousness of Uber's "information and belief" about anything. Electronic medical records cannot be altered once generated.  If a patient is scheduled for a specific time in the system but arrives earlier or later, the original appointment time in the record does not change.  Whenever the doctor has time to review the record and affix his electronic signature, the timestamp of his signature is recorded without regard for when the patient was in the facility.  Doctors obviously review electronic medical records simply when they have the time do so, sometimes in batches.  But *even if accepted as true* that timestamped e-signatures reflect some inappropriate behavior by the doctor, Uber offers nothing to establish such impropriety *had anything to do with the fact that Simon represented the patient.* Even if it is accepted that PSA created falsified records, Uber offers no facts to establish they did so based on some agreement with Simon or any other defendant.

**¶48:** **"Records from another clinic controlled by Defendants Harvey and Piccillo", Spinal Associates, contain only the date of the visit, with no indication of the scheduled time, and feature a copy-pasted signature from the attending provider (usually either Harvey or Piccillo)."**

4

This paragraph perfectly captures the inanity of PSA's inclusion in this lawsuit. *There is no such "other clinic".* But even if the Court is required to accept the truth of this ridiculous allegation, it obviously has no relevance to establishing any connection to Simon or the other defendants and is plainly offered merely to smear the doctors in the eyes of the Court. This paragraph exposes that Uber has included PSA in this case because the predetermined script for its press release lawsuits requires a certain cast of allegedly shady characters: A plaintiff's lawyer; A medical provider performing procedures; and a chiropractor. The Complaint itself identifies multiple other chiropractors who treated just the 18 "example" claimants. That Uber just threw a dart to single out PSA with no legitimate evidence or investigation is best evidenced by this flagrantly false allegation.[2]

**¶49**: **"The combination of unnecessary emergency room visits and subsequent chiropractor records was designed to create a false evidentiary basis for the claim", citing as an "example" a patient involved in what Uber characterizes as a minor accident who went to Temple's E.R. two days later reporting arm pain and where she was told after discharge she could return to work. Nine days later the patient sought treatment at PSA reporting a pain level of 9/10. "Upon information and belief, the reported pain level was the result of coaching by Simon & Simon and/or the medical provider."**

Although transparently dressed up to suggest an illusion of some greater number of claimants, this paragraph simply refers to Claimant B. Uber admits it just imagines out of "information and belief" the circular theory that simply because the patient was represented by Simon, *someone must* have "coached" the patient to lie about her pain (an allegation Uber makes despite admitting it has no idea who might have provided the coaching it *imagines* occurred). Again, Uber's entire "factual" support for accusing PSA of conspiracy with respect to Claimant B is nothing more than Simon represented the patient.

---

[2] The allegations of this paragraph are just one of many <u>indisputably false</u> factual allegations made by Uber against PSA which have been identified in a Rule 11 Motion served on Uber's counsel on December 8, 2025.

¶50  :  **"In a similar case, another claimant"** was in an accident Uber characterizes as minor and went to Temple's E.R. the next day complaining of 10/10 pain that was "as bad as it could possibly be" and discharged with a suggestion that he take Ibuprofen. "Nevertheless, five days later, at the direction of Simon & Simon, he was attending his first of 39 appointments at Philadelphia Spine Associates."

This paragraph is dressed up as well to suggest a greater number of claimants, but just refers to Claimant E. Again, the only allegation offered to support a conspiracy claim against PSA regarding Claimant E is that Simon represented the patient. But even if it is accepted as true that Simon "directed the patient to" PSA, there is no allegation that PSA *knew* this; had any reason to doubt the veracity of their patient's complaint of severe pain; or offered any opinion *because* Simon represented the patient.

But the implausibility of Uber's conspiracy claim against PSA is best laid bare by its premise that PSA's conspiratorial intent is inferable by the *impossibility* that Claimant E had *actually suffered* the sprains and strains of the cervical and lumbar spine PSA opined were caused by the accident Claimant E reported.

Attached as Exhibit "A" is the report of *just one* of the medical experts *hired by the defense* to refute the causation of Claimant E's injuries prior to *settling the case* (as reflected by the public court docket). The defense expert explains Defendant Dr. Harvey diagnosed "sprains of the cervical, thoracic, and lumbar spine." (Id., pg. 2). After discussing all the additional records of treatment, the defense expert stated that *Claimant E had in fact suffered "sprains/strains of his cervical and lumbar spine" as a result of the accident he reported.* (See pg. 6. It is not just implausible; it is simply *impossible* for PSA's causation opinion to be characterized in good faith as evidence of conspiratorial fraudulent intent when the defense's own expert *agreed the opinion was entirely appropriate*. [3]

---

[3] On a Motion to Dismiss, the Court may "consider documents integral to or explicitly relied upon in the complaint" if "the plaintiff's claims are based on the document." Mator v. Wesco Distribution, Inc., 102 F.4th

**¶¶70-117:  In these paragraphs, Uber purports to identify the specific "examples of the scheme in operation against Uber" which it alleges "illustrate the pattern of corrupt activity directed at Uber."  These paragraphs describe 5 claimants, A-E, only four of whom are identified as having treated at PSA. According to the Complaint, of the 4 claimants who treated at PSA, three sought treatment at an emergency room prior to coming to PSA (¶81, 98, 107).  Claimant B was administered a steroid shot for pain at Temple's E.R. (¶81), and Claimant D was provided a lidocaine patch by Chestnut Hill Hospital's E.R. (¶98). Philadelphia Police responded to the scenes of all 4 accidents, along with EMS at one of them (¶71, 80, 97, 106).**

Uber once again offers no facts other than the 4 PSA patients were represented by Simon to support its accusation of conspiratorial intent.  Most glaringly <u>absent</u> from the descriptions of the 4 PSA patient claims is *any* communication about patient care by PSA *to or from any other Defendant*. In fact, there is no allegation that PSA was *even aware of the existence* of the other Defendants' involvement with any patient.  Although these paragraphs variously allege the treatment provided at PSA was "directed by the Simon" firm (¶72) or the patient travelled to PSA "at the direction of Simon & Simon" (¶82, 99, 108), such allegations are offered in a conclusory vacuum with zero factual support.  Uber's conspiracy conclusion is based solely on the fact that PSA made its records of treatment available to the Simon firm. There is not a single communication or other interaction identified between the Simon firm and PSA which remotely justifies the conclusion that PSA provided care and causation opinions which its doctors did not sincerely believe were reasonable and necessary.

Regarding the treatment itself, the only "factual" allegations offered to even suggest the treatment provided at PSA to Claimants A, B, D, or E was somehow inappropriate is,

_____

172, 178 (3d Cir. 2024)(internal citations omitted).  Uber's claims are based *entirely* on the documents submitted in the underlying litigations. As pointed out in the Rule 11 Motion served on Uber's counsel on December 8, Uber's use of flagrantly bad faith mischaracterizations and indisputably false "facts" to invent the *rumor* of a RICO conspiracy case against the PSA defendants is so obviously evidenced by the attached defense medical report that sanctions beyond mere dismissal of the Complaint are clearly warranted.

again, the timing of e-signatures stamped on electronic records; allegedly "boilerplate" findings from visit to visit for each claimant; and characterizations of how Claimant's D and E "later" described some of their treatment.

Although discussed above, it is worth noting here again that a medical provider sitting down at one time to review several records of previous dates of treatment when the time is available to do so is not just a usual and customary practice, it is the standard of care. But even if accepted as a true indication of some illicit intent by PSA, Uber offers no facts to justify a conclusion that such illicit intent had anything to do with the fact that Simon represented the patient.

As to allegations of "boilerplate" findings, these are not just conclusory, they are belied by Uber's own Complaint, which describes the findings by PSA concerning Claimant A to be much different than those of Claimant B (cf. ¶73 & 83); offers no description at all of the findings made by PSA for Claimants D & E; and describes each patient as having had vastly different numbers of visits over different periods of time. That these 4 claims are the *best* evidence of "boilerplate" treatment Uber could come up with says everything about the legitimacy of Uber's inclusion of PSA in this case.

But Uber's most flagrantly dishonest characterizations concern Claimants D & E. Uber alleges as to both that the neck and back strains/sprains diagnosed by PSA and related to their accidents were false because the patients had "suffered no injury" (¶102); the injuries were "non-existent" (¶108); and the treatment provided to both at PSA was "medically unnecessary (¶102; 110). The defense doctor's report attached as Exhibit "A" obviously exposes the bad faith of these allegations with respect to Claimant E. But it is Uber's explicit mischaracterization in paragraph 100 of the report of an "independent medical examiner"

8

concerning Claimant D which indisputably demonstrates Uber's accusations against PSA to be worthy not just of dismissal but also Rule 11 sanction.

The "independent medical examiner" *hired by Uber's counsel* in the case brought by Simon on behalf of Claimant D is attached as Exhibit "B". As is evident, after examining Claimant D and reviewing all other records, *Uber's own expert* not only *agreed* with the PSA doctors' causation opinion, but he also specifically stated all of the care provided at PSA was "reasonable and appropriate." Uber nonetheless alleges in paragraph 102 that PSA's treatment was "medically unnecessary, given that Claimant D had suffered no injury." [4]

**¶144:** **"Harvey, Piccillo and Philadelphia Spine Associates have participated and likely will in the future continue to participate in the scheme by diagnosing non-existent injuries, performing unnecessary medical procedures, and producing fraudulent medical records at the direction of Simon & Simon and Marc Simon. The volume of fraudulent medical records that the chiropractic defendants produce plays a key role in advancing the scheme and assisting in the efforts of the enterprise's corrupt endeavors. The high volume of alleged treatments allows Simon & Simon to paint the picture of a serious injury, and to justify more invasive procedures allegedly performed by Burt. The records produced by the chiropractic defendants are fraudulent, purporting to memorialize treatment that was either unnecessary, not administered as described, or never administered at all."**

This paragraph lists each of the conclusory statements upon which Uber's conspiracy claim against PSA is premised. It alleges "non-existent injuries" and "unnecessary medical procedures" and "fraudulent medical records" but, as detailed above, the Complaint fails to support these accusations with any facts at all; fails to offer any facts establishing PSA did anything because of Simon's involvement as counsel; and Uber's own experts in the underlying cases specifically opined the opinions and treatments provided by PSA were reasonable and necessary. Uber also claims a "high volume of alleged treatments" but, again

---

[4] The safe harbor period for PSA's Rule 11 Motion has not yet expired as of the date of this filing, but Uber's counsel has offered no explanation to date for why they felt there was a good faith basis to allege the causation opinions by PSA concerning Claimants D and E were *fraudulent* when their own experts explicitly told them the opinions were entirely justified.

as detailed above, this is the exact *opposite* of what its Complaint describes with respect to PSA.

Moreover, how PSA's doctors are supposed to have intended their records to be utilized by Dr. Burt (or anyone else) for *any* purpose is a complete mystery as *there is no allegation that PSA even knew who Burt was or consulted with him in any way*.  Again, Uber's conclusory claim that "the records produced by the chiropractic defendants are fraudulent" is based on nothing more than the fact that PSA treated 4 patients who happened to be represented by the Simon law firm and made their records available to the firm.  That Simon represented the patients is ultimately the *only* "fact" offered to support the allegation that the doctors of PSA *must have been lying* when they indicated in their treatment records for Claimants A, B, D, & E that the injuries they treated were, in their opinion, the result of the accidents the patients reported being involved in (See ¶161(c); 162(c); 164(c); & 165(c)). Uber offers no facts whatsoever to suggest the PSA doctors offered these opinions just because the Simon firm represented the patients.

**¶193-202:  These Paragraphs are the specific Counts brought against PSA, which are limited to §1962(d) and Unjust Enrichment (Counts IV & V respectively).**

By limiting its RICO claim against PSA to §1962(d), Uber admits there is no good faith basis to allege PSA's direct participation in the conduct of any RICO enterprises. This implicitly admits the implausibility of the conspiracy claim against PSA given that Uber accuses PSA no less damningly than it does the other defendant medical providers of being in league with the Simon firm.

## II.   **LEGAL STANDARDS**

### A.  **12(b)(6)**

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009), which holds "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678 (citation omitted); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (*quoting* Iqbal, 556 U.S. at 678).

"[W]here the well-pleaded facts do not **permit the court to infer more than the mere possibility of misconduct,** the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." Gordon v. Pasquarello, No. CV 22-1565, 2023 WL 2505538, at *14–15 (E.D. Pa. Mar. 14, 2023)(internal citations omitted, emphasis in the original).

### B.  **§1962(d)**

"§1962 prohibits conspiracies to knowingly further the affairs of the enterprise and mere agreement to commit the predicate acts is not sufficient to support a charge of conspiracy under § 1962(d)." Odesser v. Cont'l Bank, 676 F. Supp. 1305, 1312 (E.D. Pa. 1987), *citing* Seville Indus. Machinery v. Southmost Machinery, 742 F.2d 786, 792 n. 8 (3d Cir.1984) *cert. denied* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985).  "More comprehensive knowledge is required: the complaint must contain allegations that defendants knew of the pattern and its aim. In sum, in order to state a claim under subsection (d), a plaintiff must allege (1) agreement to commit the predicate acts of fraud, and (2) knowledge

11

that those acts were part of a pattern of racketeering activity conducted in such a way as to violate § 1962(a), (b), or (c)." Id.

### C. **Unjust Enrichment**

Under Pennsylvania law, to establish a claim for unjust enrichment, a plaintiff must show, "(1) benefits conferred on defendant by plaintiff, (2) appreciation of such benefits by defendant, and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." Argue v. Triton Digital Inc., 734 F. App'x 148, 151 (3d Cir. 2018) (*quoting* Mark Hershey Farms, Inc. v. Robinson, 171 A.3d 810, 817 (Pa. Super. 2017)). To succeed on an unjust enrichment claim, a plaintiff must show that circumstances exist that make it "unconscionable' for the defendant to retain the benefit conferred." Id. (*quoting* Robinson, 171 A.3d at 817).

## III.    **LEGAL ARGUMENT**

Uber's Complaint does not even attempt to establish an agreement between PSA and any other defendant medical provider.  There is no communication amongst them identified, no allegation that PSA shared its records with them, and no allegation that PSA was even aware of their existence. As regards the Simon firm, the only connection even alluded to between PSA and the Simon firm is that 4 patients of PSA were represented by the firm and PSA made their records available to them.  There are no specific communications alleged between the firm and PSA, nor any interaction whatsoever.  Uber just alleges in wholly conclusory fashion that Simon somehow "directed" the treatment of these 4 patients without offering any facts to justify the conclusion.

As alleged in paragraph 144, Uber asks the Court to infer a conspiracy between Simon and PSA based solely on the notion that there was such an incredibly "high volume" of

patients seen in common amongst the defendants that the sheer numbers themselves leave room for no other conclusion. But Uber's Complaint not only describes no such volume with respect to PSA; it identifies the *exact opposite*: a limited universe of 4 patients whom, even by Uber's barebones, self-serving descriptions, had different numbers of visits, varied findings, and varied accident circumstances. The only false "statement" attributed to PSA with respect these 4 patients is Dr. Piccillo and/or Dr. Harvey's expressions of *opinion* that the injuries they treated the patient for were related to the accident reported by the patient. Uber does not and cannot offer any facts which suggest these opinions were not sincerely held; offers no facts to suggest the opinions were offered because Simon represented the patients; and flies in the face of the fact that the experts hired in the underlying cases explicitly stated the opinions and treatment provided by PSA were reasonable and necessary.

Incredibly, the Complaint implicitly admits *it has no evidence at all* which might undermine the truthful sincerity of Dr. Piccillo's or Dr. Harvey's opinions in the individual claims of Claimant's A, B, D and/or E, given its blanket averment that the fraud it alleges could not "be remediated on a case-by-case basis." (Compl., ¶12). In other words, Uber alleges none of the lawyers or experts it hired in the underlying cases could establish that the opinions of Drs. Piccillo and/or Harvey were even *wrong* (much less intentionally false or offered just because it was Simon representing them).

The real reason Uber lost and/or settled the underlying cases has nothing to do with any fraud or deception, it has to do with defense medical reports, two of which are attached hereto, which establish exactly why the fraud Uber alleges could not be remediated on a case-by-case basis: Uber's own experts told them their fraud claims against PSA *had no basis in fact*.

13

A.    **UBER FAILS TO OFFER ANY FACTS TO SUPPORT THE EXISTENCE OF ANY AGREEMENT BETWEEN PSA AND ANY OTHER DEFENDANT**

Uber offers no facts whatsoever establishing any agreement between PSA and any other defendant.  It fails to identify any communication or awareness by PSA that any of the other medical provider defendants were (or even might be) later involved in the treatment of the 4 patients identified as having been seen at PSA.  Regarding the Simon firm, Uber fails to identify any communications or coordination with PSA concerning any patient other than merely providing copies of patient records.

RICO Section 1962(d) provides for liability if a defendant shares a common purpose with his co-conspirators and "knowingly agree[s] to facilitate a scheme, which includes the operation or management of a RICO enterprise." Hausknecht v. John Hancock Life Ins. Co. of New York, 614 F. Supp. 3d 168, 188 (E.D. Pa. 2022), *citing* Smith v. Berg, 247 F.3d 532, 538 (3d Cir. 2001). To succeed on such a claim, a plaintiff must establish that the defendant had "knowledge that those acts were part of a pattern of racketeering activity conducted in such a way as to violate § 1962(a), (b), or (c)." Odesser v. Cont'l Bank, 676 F. Supp. 1305, 1312 (E.D. Pa. 1987) (citation omitted); Smith, 247 F.3d at 537 n.11 (holding that those who "merely provide services" cannot be held liable under Section 1962(d) and "liability will arise only from services which were purposefully and knowingly directed at facilitating a criminal pattern of racketeering activity."). "Accordingly, as with a Section 1962(c) RICO claim, a claim under Section 1962(d) requires the plaintiff to show that defendants agreed to the commission of a pattern of racketeering." Breslin v. Brainard, 2003 WL 22351297, at *13 (E.D. Pa. Oct. 14, 2003), *aff'd* 128 F. App'x 237 (3d Cir. 2005).

Even if the Court accepts as true the existence of RICO enterprises involving the Simon firm and the other defendant medical providers, there is zero evidence or facts offered

to even suggest PSA agreed to further any alleged racketeering acts committed by the

enterprises.  "[I]t is not enough for a complaint to simply make "conclusory allegations of

concerted action but [be] devoid of facts actually reflecting joint action." Abbott v. Latshaw,

164 F.3d 141, 148 (3d Cir.1998). "Moreover, mere inferences from the complaint are

inadequate to establish the necessary factual basis."  The Knit With v. Knitting Fever, Inc.,

2011 WL 1161716, at *4 (E.D. Pa. Mar. 30, 2011), aff'd, 625 F. App'x 27 (3d Cir. 2015)

Rather, the "[p]laintiff must allege facts to show that each Defendant objectively

manifested an agreement to participate, directly or indirectly, in the affairs of a RICO

enterprise through the commission of two or more predicate acts." Id., citing Smith v. Jones,

Gregg, Creehan & Gerace, LLP, 2008 WL 5129916, at *7 (W.D.Pa. Dec. 5, 2008). "Bare

allegations of conspiracy described in general terms may be dismissed." Id.

"Because the core of a RICO civil conspiracy is an agreement to commit predicate

acts, a RICO civil conspiracy complaint must allege specifically such an agreement." Id.,

quoting Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 25 (2d Cir.1990).  Uber offers

no facts at all to establish any agreement between PSA and any other defendant, alleging

instead generally in conclusory fashion that the Simon firm commits fraud and therefore PSA

must have agreed to commit the same fraud by treating 4 patients who happened to have been

represented by the firm and who, unbeknownst to PSA, (apparently) later went on to receive

treatment with other providers alleged to be members of a RICO conspiracy with Simon.

Iqbal instructs that when analyzing a 1962(d) claim under the plausibility standard, the

Court must first eliminate merely conclusory allegations. 129 S.Ct. at 1950.  Once so stripped,

Uber's Complaint is revealed to be asking the Court to infer PSA's conspiratorial intent from

an alleged "high volume" of claims in common between PSA and the other Defendants which

15

the Complaint itself establishes did not occur; and from treatment and opinions of causation which were confirmed by Uber's own experts to have been reasonable and necessary.

Even giving Uber's allegations every benefit of the doubt, the very most it alleges is parallel conduct.  But <u>Twombly</u> states "when allegations of parallel conduct are set out ... they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." 127 S.Ct. at 1966.

Allegations that a medical provider treated 4 patients in ways Plaintiff avers to have been objectionable, *with no evidence the provider did anything different than it does with patients not represented by the Simon firm*, is the very definition of parallel conduct which could just as well be independent action. Such allegations, "absent a plausibly-alleged 'meeting of the minds, fail to 'nudge their claims across the line from conceivable to plausible.'" <u>Am. Dental Ass'n v. Cigna Corp.</u>, 605 F.3d 1283, 1296 (11th Cir. 2010), *citing* <u>Twombly</u>, at 570 & 1974.

The Court in <u>The Knit With v. Knitting Fever, Inc</u>. dismissed a 1962(d) claim based on similarly generalized conclusions in which "nothing on the face of the Complaint allows any reasonable inference" that the defendant "agreed to facilitate" a fellow defendant's predicate acts.  <u>Id</u>. at *8. The Court stated: "Merely because Mrs. Elalouf was married to Sion Elalouf and had responsibility for approving and paying invoices from KFI's foreign suppliers as part of her employment does not, by any logical stretch, imply that she was voluntarily engaged in efforts, pursuant to an explicit agreement, to disguise an unlawful racketeering enterprise." <u>Id</u>., *citing United States v. Pearce*, 912 F.3d 159, 162 (6th Cir. 1990)("[M]ere association with conspirators is not enough to establish participation in a conspiracy.").

16

*At best*, even accepting Uber's implausible factual allegations and conclusory statements about the quality of PSA's treatment and opinions as true, the Complaint alleges nothing more than PSA's mere association with the supposed RICO enterprises and parallel conduct.

### B.    UBER DOES NOT IDENTIFY ANY BENEFITS CONFERRED ON PSA WHICH MIGHT SUSTAIN AN UNJUST ENRICHMENT CLAIM

Uber's theory of Unjust Enrichment against PSA is so convoluted as to be facially implausible.  Despite 202 paragraphs across 63 pages, Uber's sole allegation of "fact" supporting its unjust enrichment claim against PSA is found in paragraph 200.  Therein, Uber states "the Chiropractor Defendants have been and will continue to be unjustly enriched by benefits received pursuant to the fraudulent scheme, including through payments derived directly or indirectly from Marc Simon and Simon & Simon. Such benefit was at Uber's expense given that Uber has been required to incur substantial legal expense as a result of the scheme."

First, and most importantly, not a single averment anywhere else in Uber's Complaint identifies "payments derived directly or indirectly" by PSA from Marc Simon or the Simon firm. In fact, there is no allegation of any kind identifying how or even whether PSA received any payment at all for the services rendered to the 4 patients identified as having treated there.

But even assuming for the sake of argument that PSA got paid something by someone for its services rendered to the 4 patients, the Complaint offers no facts even attempting to explain how those payments might be traced to legal expenses Uber incurred in defending lawsuits filed by Simon on behalf of the patients.  Uber's unjust enrichment theory is just a bizarre doubling-down on its implausible premise that PSA *must* have committed fraud because the patients were represented by Simon.

17

"[T]he benefit to the defendant must be more than remote to support an unjust enrichment claim." Century Indem. Co. v. URS Corp., 2009 WL 2446990, at *6–8 (E.D. Pa. Aug. 7, 2009), citing Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 447 (3d Cir.2000). The "key inquiry in determining whether a Pennsylvania unjust enrichment claim may proceed is whether the defendant received a benefit *unjustly*, and ... while *direct* conferral of a benefit is not required, the relationship between plaintiff and defendant may not be too remote." Id., citing Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC, 737 F. Supp.2d 380, 444 (E.D. Pa. 2010) (emphasis in original).

"[T]he most significant element of the doctrine is whether the enrichment of the defendant is *unjust*. The doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff." Oxford Fin. LLC v. McLellan, 2020 WL 1975072, at *3-5 (E.D. Pa. Apr. 23, 2020), citing, inter alia, Torchia v. Torchia, 499 A.2d 581, 582 (Pa. Super. 1985).

Uber's Unjust Enrichment claim against PSA is ultimately nothing more than a single conclusory allegation assuming that PSA *must* have benefited *somehow* because of the grand scheme it alleges. But it offers no facts at all concerning how or even whether PSA received any benefit at all. The Complaint instead imagines its expenditure of defense costs against "dozens of lawsuits" somehow generated some kind benefit to PSA. How Uber concocts this labyrinthian theory of benefit to PSA is a mystery, as Uber's defense costs should (presumably) have been the one thing *preventing* any benefit to PSA if Uber's allegations were remotely true.

Even accepting Uber's imagined unjust enrichment theory to be plausible, it fails because an unjust enrichment plaintiff "must describe the benefit conferred with some

18

specificity" and "unjust enrichment claims cannot be based on 'speculative' or 'intangible' benefits." <u>Salvitti v. Lascelles</u>, 669 F. Supp. 3d 405, 415 (E.D. Pa. 2023). Where a Plaintiff does not provide sufficient factual support explaining what benefit it conferred on Defendant and instead offers merely bare conclusions that *some* benefit was conferred, the claim should be dismissed. <u>Tignor v. Dollar Energy Fund, Inc</u>., 745 F.Supp.3d 189, 206 (W.D. Pa. 2024)(Bare conclusions and unwarranted inferences of unjust enrichment not entitled to the assumption of truth).

## IV.    <u>CONCLUSION</u>

Uber has an agenda to use the federal court system as a cudgel against personal injury lawsuits it cannot otherwise defeat in the state court systems of major urban centers across the country. With an unlimited litigation budget at its disposal, its game plan is to deploy the thermonuclear device of Civil RICO to wantonly destroy lawyers and doctors in America's largest cities as examples to all others of what happens to those whom Uber identifies as the enemy of its profit.

Uber has targeted Philadelphia Spine Associates, Dr. Dan Piccillo, and Dr. Ethel Harvey for inclusion on its enemies list for no reason other than their names appear in a few records of treatment of 4 patients who happened to have been represented by the Simon law firm and brought personal injury claims against Uber.  Uber's Complaint is filled not only with illogical and unsupported leaps of imagination, but it is also premised on outright lies which are evident on the very face of the documents referred to as supportive of them.  Uber accuses PSA of conspiracy without identifying a single fact which supports even the inference of an agreement between PSA and any other defendant.

Uber has unconscionably and blithely blown up the lives and reputations of Dr. Piccillo and Dr. Harvey based on claims of fraudulent treatment and causation opinions which *multiple* medical experts working on Uber's behalf explicitly advised are false and unjustified.

For these reasons and all of those detailed throughout the above Memorandum, it is respectfully submitted that Uber's Complaint against Philadelphia Spine Associates, Dr. Ethel Harvey, and Dr. Daniel Piccillo should be dismissed with prejudice.

BARATTA LAW, LLC

DATED:  December 12, 2025          BY: _____

ANDREW P. BARATTA, ESQUIRE
*Attorney for Defendants, Philadelphia Spine Associates, LLC, Daniel Piccillo, D.C., and Ethel Harvey, D.C.*
Attorney I.D. No. 82250
BARATTA LAW, LLC
3500 READING WAY
HUNTINGDON VALLEY, PA 19006
215-914-8132

20

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UBER TECHNOLOGIES, INC.,

             PLAINTIFF,                     CASE NO. 2:25-CV-05365

   v.

MARC SIMON, et. al.

             DEFENDANTS.

_____

## CERTIFICATION OF MEET AND CONFERRAL

      Pursuant to Judge Kearney's Policies and Procedures, the undersigned certifies that counsel for Defendants conferred with counsel for Plaintiff on the relief sought in the instant Motion via Zoom conferences on October 15 and October 28, as well as in follow-up written emails. Undersigned counsel also provided notice to Uber's counsel of a Rule 11 Motion detailing the knowingly false allegations offered in Uber's Complaint. As described in Defendants' Motion to Dismiss, the issues could not be narrowed further given the disagreement between counsel regarding the plausibility of inferences upon which the viability of Plaintiff's claims rest.

                                           BARATTA LAW, LLC

DATED: December 12, 2025        BY:   _____

                                         ANDREW P. BARATTA, ESQUIRE
                                         *Attorney for Defendants, Philadelphia*
                                         *Spine Associates, LLC, Daniel Piccillo,*
                                         *D.C., and Ethel Harvey, D.C.*
                                         Attorney I.D. No. 82250
                                         BARATTA LAW, LLC
                                         3500 READING WAY
                                         HUNTINGDON VALLEY, PA 19006
                                         215-914-8132

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UBER TECHNOLOGIES, INC.,

                                           CASE NO. 2:25-CV-05365

v.

MARC SIMON, et. al.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court through the CM/ECF system, which shall be available for viewing and downloading therein. By electronically filing, the CM/ECF system shall send notification of such filing to counsel of record for each party and those registered to receive a Notice of Electronic Filing for this case.

Dated: December 12, 2025                  BARATTA LAW, LLC

                               BY:   _____

                                      ANDREW P. BARATTA, ESQUIRE
                                      *Attorney for Defendants, Daniel Piccillo, D.C.,*
                                      *and Ethel Harvey, D.C.*
                                      Attorney I.D. No. 82250
                                      BARATTA LAW, LLC
                                      3500 READING WAY
                                      HUNTINGDON VALLEY, PA 19006
                                      215-914-8132