**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UBER TECHNOLOGIES, INC. | : | Case No. 2:25-cv-05365-MAK |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SIMON & SIMON, P.C., MARC SIMON, | : | |
| CLIFTON BURT, PREMIER PAIN & | : | |
| REHAB CENTER, PC, ETHEL | : | |
| HARVEY, DANIEL PICCILLO, | : | |
| PHILADELPHIA SPINE ASSOCIATES, | : | |
| LLC, and LANCE YARUS, | : | |
| | : | |
| Defendants. | : | |

# BRIEF IN SUPPORT OF THE MOTION OF

# DEFENDANTS CLIFTON BURT AND PREMIER

# PAIN & REHAB CENTER, PC

# TO DISMISS COMPLAINT

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................. 1

II. STANDARD OF REVIEW ................................................................................. 2

    A. Standard Pursuant To Rule 12(b)(6). .................................................... 2

    B. Heightened Requirements Pursuant To Rule 9(b). ............................... 3

III. LEGAL ARGUMENT ......................................................................................... 4

    A. The Court Must Dismiss Uber's RICO Fraud Claims For Failing To
    Satisfy Iqbal and Rule 9(b). .................................................................. 5

        1. Uber's Fraud Claims Are Merely Conclusory. ........................... 5

        2. Uber's Fraud Claims Lack the Allegations Of Date, Place, Time,
        And Substance Necessary Under Rule 9(b). ................................ 7

    B. The Court Must Dismiss The Complaint Because Uber Fails To State A
    Claim For Relief Against The Premier Defendants. ............................... 9

        1. The Court Must Dismiss Counts II And III Of The Complaint As
        To The Premier Defendants Because Uber Fails To State A Claim
        Against The Premier Defendants Under § 1962(c) Of The RICO
        Act. ............................................................................................... 9

            a. Uber Lacks Standing To Assert Its Alleged RICO Claims........... 10

            b. Uber Fails To Sufficiently Plead An Association-In-Fact
            Enterprise. .................................................................................... 11

            c. Uber Fails To Plead An Enterprise Separate And Distinct
            From The Conduct Of The Premier Defendants' Normal
            Business Affairs. .......................................................................... 13

        2. The Court Must Dismiss Count IV Of The Complaint Because
        Uber Fails To State A Claim Against The Premier Defendants
        Under  § 1962(d) Of The RICO Act. ......................................... 13

            a. Uber Fails To Plead An Underlying Claim For Violation Of
            § 1962(c). .................................................................................... 14

            b. Uber Fails To Plead A Viable RICO Conspiracy. ........................ 14

180155967.1

3. The Court Must Dismiss Count V Of The Complaint As To The Premier Defendants Because Uber Fails To State A Claim For Unjust Enrichment Against The Premier Defendants............................. 15

IV. CONCLUSION............................................................................................................. 16

180155967.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ............................................................................. *passim*

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................1, 2, 3, 7

*In re Burlington Coat Factory*,
   114 F.3d 1410 (3d Cir. 1997) .............................................................................4

*Castle v. Crouse*,
   No. 03-5252, 2004 WL 257389 (E.D. Pa. Feb. 11, 2004) ....................................15

*City of Pittsburgh v. West Penn Power Co.*,
   147 F.3d 256 (3d Cir. 1997) ...............................................................................10

*FL Receivables Trust v. Bagga*,
   No. 03-4108, 2005 WL 563535 (E.D. Pa. Mar. 8, 2005) ................................10, 11

*Fowler v. UPMC*,
   578 F.3d 203 (3d Cir. 2009) ...............................................................................2, 3

*Kaiser v. Stewart*,
   No. 96-6643, 1997 WL 476455 (E.D. Pa. Aug. 19, 1997) ..................................14

*Kerik v. Tacopina*,
   64 F. Supp. 3d 542 (S.D.N.Y. 2014) ...................................................................10

*Kolar v. Preferred Real Estate Inv., Inc.*,
   Civ. A. No. 07-3864, 2008 WL 2552860 (E.D. Pa. June 19, 2008)(*Kolar II*),
   *aff'd* ...............................................................................................................8, 12, 14

*Kolar v. Preferred Real Estate Inv., Inc.*,
   No. 08-3119, 2010 WL 104500 (3d Cir. Jan. 12, 2010) ......................................7, 8

*Lightning Lube, Inc. v. Witco Corp.*,
   4 F.3d 1153 (3d Cir. 1993) ..................................................................................14

*Lum v. Bank of Am.*,
   361 F.3d 217 (3d Cir. 2004) ..................................................................................7

*Maio v. Aetna*,
   221 F.3d 472 (3d Cir. 2000) ...............................................................................10

180155967.1

*Marangos v. Swett,*
   341 Fed.Appx. 752 (3d Cir. 2009)..................................................................5

*McHale v. NuEnergy Group,*
   2002 WL 321797 (E.D. Pa. Feb. 27, 2002) ................................................3, 4

*Mega Concrete, Inc. v. Smith,*
   No. 09-4234, 2011 WL 1103831 (E.D. Pa. Mar. 24, 2011) ..........................12

*Mullarkey v. Tamboer,*
   Civ. No. 09-4518, 2009 WL 5205963 (D.N.J. Dec. 23, 2009)....................3, 5

*Parker v. Learn the Skills Corp.,*
   219 Fed.Appx. 187 (3d Cir. 2007)................................................................14

*In re Pharmaceutical Industry Average Wholesale Price Litigation,*
   263 F. Supp. 2d 172 (2003) ..........................................................................12

*Phillips v. County of Allegheny,*
   515 F.3d 224 (3d Cir. 2008)............................................................................2

*Pioneer Contracting, Inc. v. Eastern Exterior Wall Sys., Inc.,*
   No. Civ. A. 04cv01437, 2005 WL 747221 (E.D. Pa. Mar. 29, 2005) ............7

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action,*
   No. 2:06-cv-5774, 2009 WL 2043604 (D.N.J. July 10, 2009) .....................10

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,*
   742 F.2d 786 (3d Cir. 1984)........................................................................4, 7

*Smith v. Jones, Gregg, Creehan & Gerace, LLP,*
   No. 2:08-cv-365, 2008 WL 5129916 (W.D. Pa. Dec. 5, 2008) ....................14

*Styer v. Hugo,*
   619 A.2d 347 (1993), *aff'd* 637 A.2d 276 (1994)........................................15

*Toner v. Allstate Ins. Co.,*
   821 F. Supp. 276 (D. Del. 1993)..................................................................2, 4

*United Food and Commercial Workers Union and Employers Midwest Health*
   *Benefits Fund v. Walgreen Co.,*
   719 F.3d 849 (7th Cir. 2013) ........................................................................13

*United Nat'l Ins. Co. v. Equip. Ins. Managers, Inc.,*
   Nos. 95-0116 and 95-892, 1995 WL 631709 (E.D. Pa. Oct. 27, 1995)........15

*Westchester Cty. Indep. Party v. Astorino,*
   137 F. Supp. 3d 586 (S.D.N.Y. 2015)...........................................................10

180155967.1

*Western Assocs. Ltd. P'ship v. Market Square Assocs.*,
235 F.3d 629 (D.C. Cir. 2001) ...................................................................7

*Yucaipa Am. All. Fund I, LP v. Ehrlich*,
716 Fed.Appx. 73 (3d Cir. 2017) ..............................................................10

*Zied v. Barnhart*,
2008 WL 2563519 (M.D. Pa. June 20, 2008) .............................................2

**Statutes**

18 U.S.C. § 1341 ...........................................................................................5

18 U.S.C. § 1343 ...........................................................................................5

18 U.S.C. § 1961(3) .....................................................................................11

18 U.S.C.  § 1961(4) .....................................................................................11

18 U.S.C. § 1962 ..........................................................................................14

18 U.S.C. § 1962(a) ......................................................................................14

18 U.S.C. § 1962(b) .................................................................................13, 14

18 U.S.C. § 1962(c) ............................................................................ *passim*

18 U.S.C. § 1962(d) ..........................................................................13, 14, 15

Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-
1968.................................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 8 .....................................................................................3, 4, 5

Fed. R. Civ. P. 9(6) .......................................................................................4

Fed. R. Civ. P. 9(b) ............................................................................. *passim*

Fed. R. Civ. P. 12(b)(6)...........................................................................1, 2, 3

180155967.1

Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), Defendants Clifton Burt ("Dr. Burt") and Premier Pain & Rehab Center, PC ("Premier," and collectively with Dr. Burt, the "Premier Defendants"), file this Brief in Support of their Motion to Dismiss the Complaint of Plaintiff Uber Technologies, Inc. ("Uber")(the "Motion"). The Premier Defendants seek an Order dismissing Uber's Complaint (the "Complaint") with prejudice as to the Premier Defendants, because (1) Uber fails to state its claims against the Premier Defendants with particularity; and (2) Uber fails to state a claim against the Premier Defendants upon which the Court can grant any relief.[1] A true and correct copy of the Complaint is attached hereto and incorporated herein as Exhibit A.

## I.     **INTRODUCTION**

Uber seeks money damages against the Premier Defendants pursuant to claims for violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO")(Count II and III); conspiracy to violate RICO (Count IV); and unjust enrichment (Count V). Uber's RICO claims are frivolous, baseless, and constitute nothing more than a jumble of vague, wholly conclusory factual allegations, and unsupported legal conclusions. Thus, the RICO fraud and conspiracy claims fail to meet the established pleading standards forth in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Likewise, Uber's vague factual allegations fail to meet the heightened pleading standards of Rule 9(b).

Not only are Uber's allegations replete with generalized assertions, speculation, and legal conclusions, but they are also devoid of factual allegations, as to the Premier Defendants, sufficient to assert a cause of action against them. The Court should not allow Uber to "unlatch the doors of

---

[1] The Premier Defendants understand that the other Defendants are also filing Motions to Dismiss. In the interest of judicial economy, to the extent the arguments set forth in those briefs are also applicable to the Premier Defendants, the Premier Defendants incorporate them as if set forth at length herein.

discovery" simply by filing the insufficient Complaint, devoid of the factual allegations required by *Iqbal* and Rule 9(b)'s mandated specificity. *See Iqbal*, 129 S. Ct. 1937 (2009*); Toner v. Allstate Ins. Co.,* 821 F. Supp. 276, 284, *n6* (D. Del. 1993). Forcing the Premier Defendants to undergo discovery so that Uber can try to develop facts to support its baseless Complaint is another harm and abuse that Rule 9(b) is intended to prevent. *Id.* As such, the Court must grant the Motion.

## II.     STANDARD OF REVIEW

### A.     Standard Pursuant To Rule 12(b)(6).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The United States Supreme Court's decision in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and in *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009) altered the way courts analyze a Rule 12(b)(6) motion to dismiss. Indeed, the Third Circuit observed that "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." *Fowler v. UPMC*, 578 F.3d 203, 210 (3d Cir. 2009).

After *Twombly,* it is no longer sufficient to allege mere elements of a cause of action. *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008). Rather, a complaint must set forth facts suggestive of the proscribed conduct sufficient to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a cause of action. *Id.* at 233-34. A court, however, need not assume that the plaintiff can prove facts that were not alleged in its complaint and also should not "credit [the] [C]omplaint's 'bald assertions' or 'legal conclusions.'" *Zied v. Barnhart,* 2008 WL 2563519, at *3 (M.D. Pa. June 20, 2008) (internal citations omitted). Mere conclusory allegations will not "unlock the doors of discovery" for the

plaintiff and are not to be considered when the court is determining whether the factual allegations of the complaint are enough to state a plausible claim. *Iqbal,* 129 S. Ct. at 1950.

In *Iqbal,* the Supreme Court set forth the following two-pronged approach for federal courts to apply in determining whether a complaint should be dismissed:

> (1)      The court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth"; and

> (2)      After identifying the complaint's "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Id.; see also Fowler,* 578 F.3d at 210- 11.

Accordingly, if a plaintiff shows only that his or her claim is merely conceivable, dismissal of the complaint is warranted. *Twombly,* 550 U.S. at 570; *Iqbal,* 129 S. Ct. at 1949 (stating that all civil complaints must "contain more than an unadorned, the defendant-unlawfully-harmed-me accusation"). "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal,* 129 S. Ct. at 1949.

Uber's Complaint fails to meet the standards of Rule 12(b)(6) leaving its RICO claims and unjust enrichment claim wholly deficient. As such, the Court must grant the Motion.

### B.    <u>Heightened Requirements Pursuant To Rule 9(b).</u>

The general standard of review applied in analyzing a defendant's motion to dismiss under Rule 12(b)(6) is altered by Rule 9(b). Specifically, Rule 9(b) "requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud." *McHale v. NuEnergy Group,* 2002 *WL* 321797, at *6 (E.D. Pa. Feb. 27, 2002). Fraud claims that satisfy the Rule 8 standard as applied by *Iqbal* must then meet the more rigorous pleading standard of Rule 9(b). *Cf. Mullarkey v. Tamboer,* Civ. No. 09-4518, 2009 WL 5205963, at *17-18 (D.N.J. Dec. 23, 2009)(fraud claims

dismissed under Rule 8 *Iqbal* standard without reaching heightened pleading requirements of Rule 9(b)).

"Four reasons exist for the required heightened pleading in fraud cases. First, it protects defendant[s] from frivolous suits. Second, it puts defendant[s] on notice as to the conduct complained of so defendant[s] will have information adequate to form a defense. Third, it prevents fraud actions in which all the facts are learned after the complaint is filed by way of the discovery process. Finally, it serves to protect defendant[s] from damage to [their] reputation and goodwill." *Toner v. Allstate Ins. Co.,* 821 F. Supp. 276, 284 (D. Del. 1993) (citation omitted). Rule 9(6) serves to "place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *McHale,* 2002 WL 321797, at *6 (citing *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir. 1984)); *see also In re Burlington Coat Factory,* 114 F.3d 1410, 1418 (3d Cir. 1997) ("Rule 9(b)'s heightened pleading standard gives notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous lawsuits brought solely to extract settlements.").

Uber's Complaint fails to meet the heightened standards of Rule 9(6) leaving its RICO claims wholly deficient. As such, the Court must grant the Motion.

## III. <u>LEGAL ARGUMENT</u>

The Court must dismiss Uber's Complaint as to the Premier Defendants, with prejudice, because (a) Uber fails to satisfy the requirements of *Iqbal* and Rule 9(b); and (b) Uber fails to state a claim against the Premier Defendants for which the Court can grant relief.

180155967.1

A. **The Court Must Dismiss Uber's RICO Fraud Claims For Failing To Satisfy Iqbal and Rule 9(b).**

The Court must dismiss Uber's RICO fraud claims for failure to satisfy the requirements of *Iqbal* and Rule 9(b). Uber's RICO fraud claims are based on its allegation that the Premier Defendants engaged in a RICO enterprise and upon predicate acts of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343. *See* Exhibit A, ¶¶ 179 – 198. Uber's fraud-based claims fail because Uber has plead only conclusory allegations without supporting facts, and has failed to allege the date, time, place, content, sender, or recipient of any allegedly fraudulent communication.

1. **Uber's Fraud Claims Are Merely Conclusory.**

As with any allegation, fraud claims must first meet the general pleading requirements of Rule 8, as interpreted by *Iqbal*. *See Mullarkey,* 2009 WL 5205963, at *17-18. Under the first step in *Iqbal*, a court must separate out allegations that are not entitled to the assumption of truth. Factual allegations that do no more than assert the elements of the cause of action are not entitled to the assumption of truth. Bald allegations that a communication was made "knowingly or fraudulently" or was "false" are not entitled to an assumption of truth under *Iqbal. See Mullarkey,* 2009 WL 5205963, at *17-18 (finding such allegations "not sufficient to state a cognizable claim" under *Iqbal*); *see also Marangos v. Swett,* 341 Fed.Appx. 752, 757 (3d Cir. 2009) (allegations that defendants were "involved in a cover-up" and conspiracy not entitled to assumption of truth under *Iqbal*).

Here, Uber's allegations of fraud are merely recitations of legal conclusions couched in factual language or are the type of bald allegations prohibited by *Iqbal*. While Uber admits that each plaintiff was actually in a motor vehicle accident and sought treatment prior to seeing the Premier Defendants, Uber takes a conclusory leap to allege that Dr. Burt diagnoses non-existent injuries, performs unnecessary medical procedures, and fabricates fraudulent medical records. *See*

Exhibit A, ¶¶ 17, 36, 38, 71 – 73, 80 – 82, 89 – 91, 97 – 100, 104, 106 – 109, 125. Uber ignores its admissions that Dr. Burt reviewed medical records (including MRIs) and performed a physical examination of each patient prior to making the decision to perform a medial branch nerve block and radiofrequency ablation. *See* Exhibit A, ¶¶ 36, 38, 74, 75, 84, 92, 104, 112, 113, and 129. Furthermore, Uber makes allegations without *any* factual basis, or allegations upon "upon information and belief," such as (1) the Premier Defendants operate at the direction of Simon & Simon; (2) Burt is compensated directly or indirectly by Marc Simon and Simon & Simon (the "Simon Defendants"); (3) the Simon Defendants provided lucrative compensation to the Premier Defendants; (4) plaintiffs suffered no trauma and have non-existent injuries; (5) Dr. Burt participates in a scheme "because he has few if any options to legitimately earn a living as a pain management physician"; (6) the Premier Defendants created fraudulent medical records and caused them to be transmitted through interstate wires and mail to the Simon Defendants for use in lawsuits; and (7) the Premier Defendants were aware of their role in the larger scheme. *See* Exhibit A, ¶¶ 4, 33, 34, 35, 39, 40, 75, 85, 93, 105, 141, 150, 160, 162, 163, 164, 165, and 166.

Uber fails to articulate any facts to support that the Premier Defendants act at the direct of the Simon Defendants. Apparently, this conclusion is reached because Premier received an email related to Simon & Simon patients. There is no detail as to how this relationship began or who is in charge or even who is on the email (which when actually read, provides no direction at all). Instead, it merely identifies patients to be seen. Uber fails to articulate how the allegedly lucrative payment scheme works other than to conclude it exists. Despite the fact that patients have already seen other medical providers whose records are provided to the Premier Defendants for review, Uber concludes the patient's injuries are non-existent. Such a conclusion belies the question, why

did Uber settle these cases if there was no injury when it allegedly spent significant sums of money on experts in litigation?

Uber's relevant allegations, when analyzed as required by *Twombly* and *Iqbal*, are devoid of any factual allegations that, taken as true, make their alleged claims against the Premier Defendants plausible. As such, the Court must grant the Motion.

### 2. Uber's Fraud Claims Lack the Allegations Of Date, Place, Time, And Substance Necessary Under Rule 9(b).

Even if Uber's allegations could be accepted as true under *Iqbal*, they still fail to meet the heightened pleading requirements of Rule 9(b) which require a plaintiff to either plead the date, place or time of the fraud or use alternative means of "injecting precision and some measure of substantiation into their allegations of fraud." *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004) (citing *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d, 791 (3d Cir. 1984)). A plaintiff must also include the general gist of the misrepresentation, who made it, and to whom it was made. *Id.* at 224 - 25; *Pioneer Contracting, Inc. v. Eastern Exterior Wall Sys., Inc.*, No. Civ. A. 04cv01437, 2005 WL 747221, at *6 (E.D. Pa. Mar. 29, 2005) (same).

Where plaintiffs rely on mail and wire fraud as the basis for a RICO violation, the allegations of fraud must comply with Rule 9(b). *Id.* at 223. "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Kolar v. Preferred Real Estate Inv., Inc.*, No. 08-3119, 2010 WL 104500, at *5 (3d Cir. Jan. 12, 2010) (Kolar I) (quoting *Western Assocs. Ltd. P'ship v. Market Square Assocs.*, 235 F.3d 629, 637 (D.C. Cir. 2001)). Even when a particular communication alleged to be fraudulent is identified with specificity, it does not meet the requirements of 9(b) if it "fail[s] to explain with particularity how [the] communications were false or misleading or how they contributed to the alleged fraudulent

scheme." *Kolar v. Preferred Real Estate Inv., Inc.,* Civ. A. No. 07-3864, 2008 WL 2552860, at *6 (E.D. Pa. June 19, 2008)(*Kolar II*)(internal quotation marks and citations omitted), *affd* by *Kolar I,* 2010 WL 104500, at *9.

Here, Uber fails to meet any of the requirements of Rule 9(b). Uber indicates that Dr. Burt "was directed to deliver unnecessary treatment for the purpose of creating a false evidentiary record" in nearly thirty lawsuits. *See* Exhibit A, ¶ 27. Uber then provides examples of seven (7) personal injury claimants that were part of the alleged scheme. *See* Exhibit A, ¶¶ 71 – 133. Although Uber concludes that Dr. Burt diagnosed non-existent injuries, performed unnecessary medical procedures, and fabricated medical records, Uber fails to identify why it believes the injuries are non-existent, why the medical procedures were unnecessary, or how the medical records were fabricated.

Nor does Uber cite any expert report in any of the nearly thirty lawsuits it allegedly spent substantial sums defending that opined that the medical treatment Dr. Burt provided was unreasonable or unnecessary. If such treatment was as fraudulent as Uber concludes, finding an expert to provide such an opinion should have been easy, and certainly an important part of Uber's defense. Uber did not. Instead, Uber admittedly paid money to resolve the litigations.

Likewise, Uber does not allege any facts to substantiate that the Premier Defendants prepared these medical records for any purpose other than in the ordinary course of their business. Uber simply concludes that the records were prepared for and provided to the Simon Defendants for the purpose of a fraudulent scheme. Uber's Complaint is devoid of any specificity as to how the Premier Defendants transmitted any medical records to the Simon Defendants.

Uber's Complaint, however, does allege that the Simon Defendants provided the Premier Defendants with medical records to the Premier Defendants prior to scheduled appointments. *See*

Exhibit A, ¶¶ 4, 36.  Given that Uber concludes that the Premier Defendants diagnosed non-existent injuries, performed unnecessary medical procedures, and fabricated medical records, it is curious why they would even need to consult a plaintiff's prior medical records.

Uber's Complaint also fails to allege any facts to support its conclusion that the Simon Defendants paid the Premier Defendants amounts constituting bribes to extract the fraudulent medical records.  For instance, Uber does not set forth how much the payments were, how they were made, or to whom they were made.  Uber merely concludes that the Simon Defendants made the payments.

Uber's Complaint fails to meet the specificity requirements of Rule 9(b).  As such, the Court must grant the Motion.

> **B.**     **The Court Must Dismiss The Complaint Because Uber Fails To State A Claim For Relief Against The Premier Defendants.**

The Court must dismiss the Complaint against the Premier Defendants because Uber fails to plead facts sufficient to state plausible claims against the Premier Defendants for violation of the RICO Act or for unjust enrichment.

> **1.**     **The Court Must Dismiss Counts II And III Of The Complaint As To The Premier Defendants Because Uber Fails To State A Claim Against The Premier Defendants Under § 1962(c) Of The RICO Act.**

In Count II and III of the Complaint, Uber purports to assert a claim against the Premier Defendants for violation of § 1962(c) of the RICO Act based on a purported Premier Pain & Rehab Center Enterprise and a purported association in fact enterprise, respectively.

However, Uber lacks standing to assert its § 1962(c) RICO claim because it fails to plead a concrete injury to its business or property.  In addition, Uber fails to allege facts sufficient to plead a purported association-in-fact enterprise.  Lastly, Uber fails to plead an enterprise separate

and distinct from the conduct of the Premier Defendants' normal business affairs. As such, the Court must grant the Motion.

### a.     <u>Uber Lacks Standing To Assert Its Alleged RICO Claims.</u>

To assert a claim under § 1962(c), a plaintiff must allege (1) an injury to plaintiff's business or property, and (2) that defendant's RICO violations proximately caused plaintiff's injury. *Maio v. Aetna*, 221 F.3d 472, 482-83 (3d Cir. 2000). The RICO Act protects only injuries to plaintiff's business or property, "meaning that many injuries are insufficient to establish RICO standing." *Westchester Cty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 612 (S.D.N.Y. 2015). A plaintiff must plead an injury to business or property that constitutes a particular "concrete financial loss." *Maio*, 221 F.3d at 483. *See FL Receivables Trust v. Bagga*, No. 03-4108, 2005 WL 563535, at *3 (E.D. Pa. Mar. 8, 2005) (To qualify as a 'concrete financial loss,' a plaintiff's injury cannot be speculative or contingent on future events. Rather, it must be an ascertainable out-of-pocket loss."). Injuries speculative in nature are not ripe for adjudication. *Yucaipa Am. All. Fund I, LP v. Ehrlich*, 716 Fed.Appx. 73, 78 (3d Cir. 2017)*; see also Kerik v. Tacopina*, 64 F. Supp. 3d 542, 560 (S.D.N.Y. 2014) (holding, plaintiff "must allege actual, quantifiable injury" and show concrete financial loss).

RICO standing requires more than the mere allegation of a general theory of injury. *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774, 2009 WL 2043604, at *11 (D.N.J. July 10, 2009). A plaintiff cannot simply state that some injury to his or her business or property resulted from a RICO violation. *Id*. Rather, a plaintiff must plead factually supported injuries to business or property. *Id.* at *14 (citing *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1997)).

Here, Uber asserts that because of the alleged pattern of racketeering activity, "it has incurred substantial expenses in defending these false or inflated claims" that have damaged Uber

in its business or property. *See* Exhibit A, ¶¶ 146, 147. On the contrary, Uber alleges that when it sought to take the depositions of the Premier Defendants, it was dismissed from the litigation, thus not having to incur any additional expenses. *See* Exhibit A, ¶ 11. Uber also alleges that such injury is on-going and continuous. *See* Exhibit A, ¶ 148. This alleged injury is insufficient to confer standing on Uber under § 1962(c) because "[a] plaintiff's injury cannot be speculative or contingent on future events. Rather, it must be an ascertainable out-of-pocket loss." *FL Receivables Trust*, 2005 WL 563535, at *3.

Here, Uber fails to allege any alleged damage caused by the Premier Defendants with any specificity. As such, the Court must grant the Motion.

### b. Uber Fails To Sufficiently Plead An Association-In-Fact Enterprise.

Uber purports to assert a claim against the Premier Defendants for violation of § 1962(c), alleging that the Simon Defendants and the Premier Defendants constitute an "enterprise" and formed an "association in fact" that constituted an "Association-in-Fact Enterprise." *See* Exhibit A, ¶ 188. However, Uber fails to plead facts that plausibly imply the existence of relationships between and among the members of the alleged Association-in-Fact, or that its various members acted with a "common purpose."

To state a claim under § 1962(c), plaintiff must allege that (1) a person conducted (2) an enterprise through (3) a pattern of (4) racketeering activity. 18 U.S.C. § 1962(c). The RICO Act defines a "person" as "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). An "enterprise," on the other hand, includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Id.* § 1961(4).

An "enterprise" may include any group of individuals "associated in fact" provided the "members of the *de facto* association joined together in pursuit of a common purpose." *Kolar v. Preferred Real Estate Investments, Inc.*, No. 07-3864, 2008 WL 2552860, at *4 (E.D. Pa. June 19, 2008). An association-in-fact enterprise "must have a 'structure,' meaning it must have (1) a common purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose." *Mega Concrete, Inc. v. Smith*, No. 09-4234, 2011 WL 1103831, at **8-9 (E.D. Pa. Mar. 24, 2011).

Uber alleges no facts from which the Court can imply that the Simon Defendants and the Premier Defendants, agreed with each another, much less agreed to act with a "common purpose." *See* Exhibit A, ¶¶ 188 – 192. Uber does not allege when the alleged members of the "Association-in-Fact Enterprise" began to or came to any agreement on how to work together to "convert marginal motor vehicle claims into million-dollar-plus lawsuits against Uber and other defendants." *See* Exhibit A, ¶ 68. Nor does Uber allege how the purported enterprise allegedly communicated, coordinated, or made decisions. *See In re Pharmaceutical Industry Average Wholesale Price Litigation,* 263 F. Supp. 2d 172, 184 (2003) (finding no RICO enterprise where there were no allegations that RICO defendants associated together acting with a common communication network, decision-making process or organizational structure and further finding the allegation that each RICO defendant "was aware that there were likely other [RICO defendants] engaged in parallel schemes" to be "insufficient to establish an association-in-fact RICO enterprise" because there was "no rim to connect the spokes"). As such, the Court must grant the Motion.

180155967.1

### c. Uber Fails To Plead An Enterprise Separate And Distinct From The Conduct Of The Premier Defendants' Normal Business Affairs.

Section 1962(c) of the RICO Act requires a plaintiff to identify a "person"—*i.e.*, the defendant—distinct from the RICO enterprise. *United Food and Commercial Workers Union and Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013). This "person" must have "conducted or participated in the conduct of the 'enterprise's affairs,' not just [its] own affairs." *Id.* at 854.

Uber identifies the Simon Defendants and the Premier Defendants as an Association-in-Fact but does not allege that the Premier Defendants conducted the affairs of the "Association-in-Fact," as opposed to conducting their own normal business affairs; namely providing medical care to its patients. *See* Exhibit A, ¶¶ 188 – 192. The fact that Uber alleges that the Premier Defendants acted illegally does not indicate that they were acting on behalf of a distinct enterprise. *United Food*, 719 F.3d at 855. "A corporation, after all, is perfectly capable of breaking the law on its own behalf." *Id.* Rather, Uber must allege sufficient facts from which the Court can plausibly imply that the Premier Defendants undertook coordinated activity on behalf of the "Association-in-Fact Enterprise," as opposed to conducting their own affairs to further their own goals. *Id.* at 856. Uber fails to do so. As such, the Court must grant the Motion.

### 2. The Court Must Dismiss Count IV Of The Complaint Because Uber Fails To State A Claim Against The Premier Defendants Under § 1962(d) Of The RICO Act.

In Count IV of the Complaint, Uber purports to assert a claim against the Premier Defendants for violation of § 1962(d) of the RICO Act based on an alleged conspiracy to violate § 1962(c) of the RICO Act but fails to (a) plead a valid underlying claim for violation of § 1962(c), and (b) properly plead a conspiracy, generally. As such, the Court must grant the Motion.

13

### a. Uber Fails To Plead An Underlying Claim For Violation Of § 1962(c).

"It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). A § 1962(d) claim based on a conspiracy to violate a separate subsection of § 1962 necessarily fails if the substantive claim under the other subsection fails. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993). In other words, if a plaintiff fails to plead a viable claim under §§ 1962(a), (b), or (c) of the RICO Act, plaintiff's § 1962(d) claim must also fail. *Id. See also Kolar*, 2008 WL 2552860, at *7 (dismissing § 1962(d) claim where plaintiff failed to state a claim under §§ 1962(a) or 1962(c)); *Kaiser v. Stewart*, No. 96-6643, 1997 WL 476455, at **9-10 (E.D. Pa. Aug. 19, 1997) (dismissing § 1962(d) claims where plaintiff failed to state a claim under §§ 1962(b) or 1962(c)).

Here, Uber purports to plead a § 1962(d) claim against the Premier Defendants based on an alleged conspiracy to violate § 1962(c) which, as discussed above, fails. *See* Exhibit A, ¶¶ 194 – 198. Because Uber fails to state a claim for violation of § 1962(c), its claim for violation of § 1962(d) based on a conspiracy to violate § 1962(c) must also fail. *Lighting Lube*, 4 F.3d at 1191. As such, the Court must grant the Motion.

### b. Uber Fails To Plead A Viable RICO Conspiracy.

To plead a viable RICO conspiracy under § 1962(d), Uber must allege facts to show that each member of the alleged enterprise "objectively manifested an agreement to participate, directly or indirectly, in the affairs of a RICO enterprise through the commission of two or more predicate acts." *Smith v. Jones, Gregg, Creehan & Gerace, LLP*, No. 2:08-cv-365, 2008 WL 5129916, at *7 (W.D. Pa. Dec. 5, 2008). Uber cannot premise a § 1962(d) claim on a purported conspiracy by and between the Premier Defendants because it violates the intracorporate conspiracy doctrine. As a general rule, agents of an entity cannot conspire with that entity. *Parker v. Learn the Skills Corp.*,

219 Fed.Appx. 187, 189-90 (3d Cir. 2007). This rule applies both to RICO conspiracy claims and general civil conspiracy claims. *Id.* Moreover, a corporation cannot conspire with its own agent unless the agent acts in pursuit of his or her own interests, and not for the benefit of the corporation. *Castle v. Crouse*, No. 03-5252, 2004 WL 257389, at *6 (E.D. Pa. Feb. 11, 2004).

Here, Dr. Burt is an officer of Premier and thus cannot conspire with Premier. Nor does Uber allege that Dr. Burt was ever acting in his own interest as opposed to the alleged interests of the Premier Defendants. To the contrary, Uber alleges, albeit conclusory, that the Premier Defendants acted together, with the Simon Defendants, to engage in a pattern of racketeering activity. *See, e.g.*, Exhibit A, ¶¶ 194 – 196. Accordingly, Uber fails to plead a valid conspiracy under § 1962(d) because the Premier Defendants cannot conspire to violate the RICO Act with each other. *See United Nat'l Ins. Co. v. Equip. Ins. Managers, Inc.*, Nos. 95-0116 and 95-892, 1995 WL 631709, at **5-6 (E.D. Pa. Oct. 27, 1995) (dismissing § 1962(d) claim based on alleged conspiracy by and between corporation and its agents). As such, the Court must grant the Motion.

3. **The Court Must Dismiss Count V Of The Complaint As To The Premier Defendants Because Uber Fails To State A Claim For Unjust Enrichment Against The Premier Defendants.**

In Count V of the Complaint, Uber purports to assert a claim against the Premier Defendants for unjust enrichment. *See* Exhibit A, ¶¶ 200 - 202. A successful unjust enrichment action requires benefits conferred on one party by another, appreciation of such benefits by the recipient, and acceptance and retention of these benefits under such circumstances that it would be inequitable for the recipient to retain the benefits without payment of value. *Styer v. Hugo*, 619 A.2d 347 (1993), *aff'd* 637 A.2d 276 (1994).

Here, Uber fails to allege what benefits it conferred on the Premier Defendants, nor can it because Uber did not confer any benefits on the Premier Defendants. Nor does Uber allege any benefits that the Premier Defendants inappropriately retained. Without such allegations, Uber

cannot prevail on a claim for unjust enrichment against the Premier Defendants. As such, the Court must grant the Motion.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Premier Defendants respectfully requests that the Court enter an Order dismissing Uber's Complaint in its entirety, with prejudice, as to the Premier Defendants.

Dated: December 12, 2025

**FOX ROTHSCHILD LLP**

*/s/ Stephanie Nolan Deviney*
Stephanie Nolan Deviney, Esquire
Attorney ID 80770
Eagleview Corporate Center
747 Constitution Drive, Suite 100
Exton, PA 19341-0673
Phone: (610) 458-7500
Email: SDeviney@FoxRothschild.com
*Attorneys for Defendants, Clifton Burt*
*and Premier Pain & Rehab Center, PC*

180155967.1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UBER TECHNOLOGIES, INC. | : | Case No. 2:25-cv-05365-MAK |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SIMON & SIMON, P.C., MARC SIMON, | : | |
| CLIFTON BURT, PREMIER PAIN & | : | |
| REHAB CENTER, PC, ETHEL | : | |
| HARVEY, DANIEL PICCILLO, | : | |
| PHILADELPHIA SPINE ASSOCIATES, | : | |
| LLC, and LANCE YARUS, | : | |
| Defendants. | : | |

## CERTIFICATE REGARDING MEET AND CONFER

Pursuant to Judge Kearney's Policies and Procedures, the undersigned certifies that counsel for the Premier Defendants conferred with counsel for Plaintiff on the relief sought in the instant Motion via Zoom conferences on October 24 and October 31, as well as in follow-up written emails. Although the parties exchanged positions, we could not narrow the issues further given the disagreement between counsel regarding the plausibility of inferences upon which the viability of Plaintiff's claims rest.

Dated:  December 12, 2025          

                              */s/ Stephanie Nolan Deviney*
                              Stephanie Nolan Deviney, Esquire

180155967.1