# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| UBER TECHNOLOGIES, INC., : <br> : <br> PLAINTIFF, : <br> : <br> v. : <br> : <br> SIMON & SIMON, P.C., et al., : <br> : <br> DEFENDANTS. : | No. 2:25-cv-05365-MAK |

## BRIEF IN SUPPORT OF THE MOTION TO DISMISS BY DEFENDANT LANCE YARUS

Nina Spizer (PA No. 82443)
John J. Higson (PA No. 80720)
Silvio Trentalange (PA No. 320606)
**DILWORTH PAXSON LLP**
1650 Market Street, Ste. 1200
Philadelphia, PA 19103
T: 215-575-7000
nspizer@dilworthlaw.com
jhigson@dilworthlaw.com
strentalange@dilworthlaw.com
*Attorneys for Defendant Lance Yarus*

Dated: December 12, 2025

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................... 1

II. RELEVANT BACKGROUND ................................................................................ 2

    A. Uber's Complaint Generally ............................................................................ 2

    B. Allegations Concerning Defendant Yarus ...................................................... 3

III. ARGUMENT ............................................................................................................ 4

    A. Uber Failed to State a RICO Conspiracy Claim (Count IV) Against Dr. Yarus. ......... 5

        1. Uber's RICO Conspiracy Claim Must Be Dismissed Because It Failed to State a Single Substantive RICO Claim. .................................................. 5

        2. Uber's RICO Conspiracy Claim Must Also Be Dismissed Because It Failed to Allege Dr. Yarus Knowingly Conspired to Violate RICO. ............................. 5

            a. Uber Failed to Allege Dr. Yarus Agreed to Commit the Predicate Acts of Fraud. ............................................................................................ 6

            b. Uber Failed to Allege Dr. Yarus Acted With the Requisite Knowledge. 7

    B. Uber Failed to State an Unjust Enrichment Claim (Count V) Against Dr. Yarus. ........ 9

IV. CONCLUSION ....................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Argue v. Triton Digital Inc.*,
 734 F. App'x 148 (3d Cir. 2018) ....................................................................................9

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ........................................................................................................4

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ........................................................................................................4

*Carlton v. Rey*,
 No. 2:24-cv-00499-CFK (E.D. Pa.) ................................................................................7

*Cheeks v. Fort Myer Constr. Corp.*,
 216 F. Supp. 3d 146 (D.D.C. 2016) ................................................................................6

*Knit With v. Knitting Fever, Inc.*,
 625 F. App'x 27 (3d Cir. 2015) .......................................................................................6

*Knit With v. Knitting Fever, Inc.*,
 No. CIV.A. 08-4221, 2011 WL 891871 ......................................................................6, 9

*In re: Liberty State Benefits of Del., Inc.*,
 541 B.R. 219 (D. Del. 2015) ............................................................................................6

*Lightning Lube, Inc. v. Witco Corp.*,
 4 F.3d 1153 (3d Cir. 1993) ..............................................................................................5

*Mark Hershey Farms, Inc. v. Robinson*,
 171 A.3d 810 (Pa. Super. 2017) ......................................................................................9

*Phillips v. Cnty. of Allegheny*,
 515 F.3d 224 (3d Cir. 2008) ............................................................................................4

*Rose v. Bartle*,
 871 F.2d 331 (3d Cir. 1989) ............................................................................................6

*Schmidt v. Skolas*,
 770 F.3d 241 (3d Cir. 2014) ............................................................................................8

*Uber Technologies, Inc. v. Downtown LA Law Group, et al.*,
 No. 2:25-cv-06612 (C.D. Cal.) ........................................................................................1

*Uber Technologies, Inc. v. Law Group of South Florida, LLC, et al.*,
   No. 1:25-cv-22635 (S.D. Fla.) ...................................................................................1

*Uber Technologies, Inc. v. Wingate, Russotti, Shapiro, Moses & Halperin, LLP, et al.*,
   No. 1:25-cv-00522 (E.D.N.Y.) ...................................................................................1

**Statutes**

18 U.S.C. § 1962..............................................................................................................5

18 U.S.C. § 1962(a) .........................................................................................................5

18 U.S.C. § 1962(b) .........................................................................................................5

18 U.S.C. § 1962(c) .........................................................................................................5

18 U.S.C. § 1962(d) ......................................................................................................5, 6

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................................1, 2

Defendant, Dr. Lance Yarus ("Dr. Yarus"), submits this Brief in Support of the Motion to Dismiss, seeking dismissal with prejudice and without leave to amend of Counts IV and V of Plaintiff Uber Technologies, Inc.'s ("Uber") Complaint against him for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

## I.     INTRODUCTION

Uber's lawsuit against Dr. Yarus is an improper attempt to stretch the Racketeer Influenced and Corrupt Organizations Act ("RICO") far beyond its intended scope. Rather than alleging concrete facts showing fraud, Uber wields RICO as a litigation weapon, seeking to recast a respected orthopedic physician's routine medico-legal work as participation in a fictional illegal enterprise and to drive him out of practice. Although the Complaint spans sixty-six pages, it offers only rhetoric and speculation, built on the flawed premise that performing independent medical examinations for a law firm—and being paid for that work—somehow amounts to joining a racketeering conspiracy. That is not what the law allows. RICO was designed to combat organized crime and similar illegal activities, not to intimidate doctors, experts, and other professionals who assist the courts.

Uber's overreach is no anomaly. Rather, this lawsuit reflects a broader strategy: a deterrence campaign in which Uber has filed similar RICO actions nationwide to chill participation by medical professionals, lawyers, and expert witnesses who support injured claimants.[1] By labeling standard medico-legal work as "racketeering," Uber attempts to transform litigation itself into punishment. A tactic closely resembling a SLAPP suit where the burden of defending the case is the true weapon. The result for practitioners like Dr. Yarus is not theoretical. It includes

---

[1] *Uber Technologies, Inc. v. Wingate, Russotti, Shapiro, Moses & Halperin, LLP, et al.*, No. 1:25-cv-00522 (E.D.N.Y.); *Uber Technologies, Inc. v. Law Group of South Florida, LLC, et al.*, No. 1:25-cv-22635 (S.D. Fla.); *Uber Technologies, Inc. v. Downtown LA Law Group, et al.*, No. 2:25-cv-06612 (C.D. Cal.).

reputational harm, professional jeopardy, and the unwarranted stigma that accompanies unfounded allegations of illegal conduct.

Nevertheless, the Complaint's substance only underscores how untenable Uber's theory is. Uber concedes Dr. Yarus acted solely as a non-treating medical expert reviewing records prepared by others. It nowhere adequately alleges Dr. Yarus fabricated injuries, falsified records, or knowingly participated in wrongdoing. At most, Uber objects to the conclusions Dr. Yarus reached, an issue appropriately addressed through cross-examination in the underlying cases, not through the extraordinary machinery of federal racketeering law. Although the Complaint repeatedly invokes terms like "scheme," "enterprise," and "pattern of fraud," Rule 12(b)(6) demands factual allegations, not empty labels.

Uber's unjust enrichment claim fares no better. The Complaint fails to state this claim as well, as it does not allege Uber conferred any benefit on Dr. Yarus—a required element. Instead, it acknowledges Simon & Simon, not Uber, paid him for his expert-evaluation services.

Taken together, these deficiencies reveal how Uber's claims are built on conjecture rather than facts and on insinuation rather than law. Allowing this case to proceed would risk exposing every independent medical examiner or expert witness to RICO liability simply for evaluating a claimant whose injuries a corporate defendant disputes. The Court should reject this misuse of RICO and dismiss the claims against Dr. Yarus.

## II. RELEVANT BACKGROUND

### A. Uber's Complaint Generally

Uber's Complaint brings RICO and unjust enrichment claims against Simon & Simon, P.C., attorney Marc Simon, and several medical providers, including Dr. Clifton Burt, Premier Pain & Rehab Center, Dr. Yarus, and chiropractors Ethel Harvey and Daniel Piccillo of Philadelphia Spine Associates. *See generally* ECF No. 1 (Compl.). The Complaint alleges the

Defendants participated in an enterprise that fabricated and inflated personal-injury claims against Uber through fraudulent medical records and litigation filings. *Id*.

Uber claims that routine motor vehicle accident cases were part of a coordinated scheme in which clients were directed to certain medical providers who allegedly exaggerated diagnoses and billed for unnecessary services. *Id*. According to Uber, the transmission of medical reports and litigation materials via mail and electronic communications constitutes mail and wire fraud, forming the predicate acts of a RICO pattern. *Id*.

Uber further asserts these allegedly inflated claims caused it to pay excessive settlements, incur higher defense costs, and bear increased insurance and risk-management expenses. *Id*. The company contends these losses constitute injury to its business under RICO and that the Defendants were unjustly enriched. *Id*.

### B. Allegations Concerning Defendant Yarus

The Complaint alleges Dr. Yarus acted as the final medical evaluator in the scheme described by Uber, issuing independent medical-examination reports that consistently diagnosed serious, permanent injuries and recommended extensive, costly future care. *Id*. ¶¶ 51-69. Uber claims Dr. Yarus employed highly similar templates across hundreds of reports, attributing causation to the underlying accidents in nearly identical language and projecting long-term treatment such as repeated injections, radiofrequency ablations, and multi-level spinal surgeries. *Id*.

With respect to certain claimants, Uber alleges Dr. Yarus attributed severe spinal injuries to Claimant A despite normal MRIs; diagnosed Claimant B with cervical radiculopathy, facet pain, and permanent impairment following a low-impact collision; and interpreted Claimant E's imaging as showing disc protrusions and herniations not identified by other providers, concluding that surgical intervention would be required. *Id*. ¶¶ 78, 88, 117.

Uber further asserts Dr. Yarus performed over 1,200 examinations of Simon & Simon clients over three years, received approximately $1.5 million in compensation, and transmitted his reports via mail and interstate wires constituting predicate acts of mail and wire fraud, forming the basis for the RICO conspiracy (Count IV) and unjust enrichment (Count V) claims. *Id.* ¶¶ 52, 160(d), 162(d), 165(d).

**III. ARGUMENT**

To survive this Motion to Dismiss, Uber's Complaint must "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Uber's claims are facially plausible if Uber "pleads factual content that allows the [C]ourt to draw the reasonable inference that [Yarus] is liable for the misconduct alleged." *Id.* (alterations added). When deciding this Motion to Dismiss, this Court must "accept all factual allegations as true, construe the [C]omplaint in the light most favorable to [Uber] and determine whether, under any reasonable reading of the [C]omplaint, [Uber] may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (alterations added). However, in assessing the plausibility of Uber's Complaint, this Court need not credit either Uber's "bald allegations" or "legal conclusions," particularly where the Complaint is "devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678, 681 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

Uber's claims against Dr. Yarus fail because the Complaint does not plausibly allege either a RICO conspiracy or unjust enrichment. The RICO conspiracy claim (Count IV) fails because Uber does not allege any substantive RICO violation by Dr. Yarus, and even if it did, it fails to allege Dr. Yarus knowingly agreed to participate in a conspiracy to commit predicate acts of mail or wire fraud. Uber's attempts to infer Dr. Yarus's knowledge from his role as a medical expert or from his reliance on medical records are insufficient, as he did not treat patients or prepare reports

4

knowing them to be false. Similarly, Uber fails to allege Dr. Yarus was unjustly enriched (Count V) by benefits conferred by Uber, as he was compensated by Simon & Simon for his work, not by Uber, and the Complaint makes no factual allegations tying him to the alleged enrichment. Accordingly, both the RICO conspiracy and unjust enrichment claims against Dr. Yarus must be dismissed.

### A. Uber Failed to State a RICO Conspiracy Claim (Count IV) Against Dr. Yarus.

#### 1. Uber's RICO Conspiracy Claim Must Be Dismissed Because It Failed to State a Single Substantive RICO Claim.

Uber's RICO conspiracy claim (Count IV) against Dr. Yarus arises under 18 U.S.C. § 1962(d), which makes it unlawful to conspire to violate §§ 1962(a), (b), or (c). Because a § 1962(d) conspiracy cannot stand without a viable substantive RICO claim, Uber's failure to state a substantive violation necessarily defeats its conspiracy claim. S*ee Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient."). For the same reasons provided in Defendants Simon & Simon and Marc Simon's lead Motion to Dismiss and Brief in Support, which are incorporated herein by reference, Uber failed to state any viable substantive RICO claim. As such, no viable RICO conspiracy claim exists against Dr. Yarus.

#### 2. Uber's RICO Conspiracy Claim Must Also Be Dismissed Because It Failed to Allege Dr. Yarus Knowingly Conspired to Violate RICO.

Yet even if the Court finds Uber did state a substantive RICO violation, the Court must nonetheless dismiss Uber's RICO conspiracy claim because it failed to allege that Dr. Yarus knowingly conspired to violate RICO.

5

To plead a RICO conspiracy against Dr. Yarus, Uber must allege both "agreement to commit the predicate acts of fraud" and "knowledge that those acts were part of a pattern of racketeering activity" prohibited by § 1962. *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989). To meet the agreement requirement, Uber must allege facts showing that Dr. Yarus "objectively manifested an agreement to participate, directly or indirectly, in the affairs of a RICO enterprise through the commission of two or more predicate acts." *Knit With v. Knitting Fever, Inc.*, No. CIV.A. 08-4221, 2011 WL 891871, at *5 (E.D. Pa. Mar. 10, 2011). To meet the knowledge requirement, Uber must plead "specific facts" supporting an inference that Dr. Yarus knowingly agreed to join the alleged conspiracy. *In re: Liberty State Benefits of Del., Inc.*, 541 B.R. 219, 248 (D. Del. 2015). To survive dismissal, Uber must plead such facts describing the conspiracy's general composition, objectives, and Dr. Yarus's role; conclusory assertions of concerted action or inferences unsupported by particularized facts are insufficient. *Rose*, 871 F.2d at 366; *Knit With v. Knitting Fever, Inc.*, 625 F. App'x 27, 36 (3d Cir. 2015). Uber failed to satisfy either requirement.

### a. Uber Failed to Allege Dr. Yarus Agreed to Commit the Predicate Acts of Fraud.

Uber fails to plead the essential element of agreement because the Complaint contains no factual allegations showing Dr. Yarus entered into any agreement to participate in a RICO conspiracy. The closest Uber comes is a bare assertion that Dr. Yarus and others "conspire[d]" and "agree[d]" to assist the alleged enterprise, a conclusory statement lacking any supporting facts. *See* ECF No. 1 (Compl.) ¶¶ 145, 149, 194. Such generalized and unsupported allegations are insufficient as a matter of law, as Uber cannot state a § 1962(d) claim based on conclusory assertions alone. *See Knit With*, 625 F. App'x at 36 ("Bare allegations of conspiracy described in general terms may be dismissed."); *see also Cheeks v. Fort Myer Constr. Corp.*, 216 F. Supp. 3d

146, 162 (D.D.C. 2016) (finding plaintiffs failed to allege an agreement sufficient to state a RICO conspiracy claim where they only alleged defendants, "conspired to violate [RICO] (i.e., each Defendant agreed that a conspirator would conduct or participate in the affairs of the Enterprise) through a pattern of racketeering, (i.e., the commission of acts indictable . . . all in violation of 18 U.S.C. § 1962(d)).").

### b. Uber Failed to Allege Dr. Yarus Acted With the Requisite Knowledge.

Uber also fails to plead the knowledge element of a RICO conspiracy because it relies solely on unsupported inferences rather than factual allegations showing Dr. Yarus knowingly joined any unlawful scheme. Uber attempts to infer knowledge from two theories: first, that Dr. Yarus supposedly knew his reports were false because he did not communicate his treatment recommendations to claimants; and second, that he allegedly knew the claimants were not seriously injured. *See*, *e.g.*, ECF No. 1 (Compl.) ¶¶ 61, 67. Neither theory withstands scrutiny.

As the Complaint acknowledges, Dr. Yarus served as a medical expert—not a treating provider—and his role was thus limited to examining claimants and their medical records and offering opinions on potential future care for litigation purposes. *Id.* ¶ 31. A medical expert does not give treatment recommendations to patients. That responsibility lies solely with treating providers. Indeed, in a *Daubert* hearing before Judge Kenney, Dr. Yarus expressly explained this distinction, stating he is "not a treating physician" and therefore does not provide patients with treatment recommendations. *See Carlton v. Rey*, No. 2:24-cv-00499-CFK (E.D. Pa.), ECF No. 55 at 31:20-25 (Dr. Yarus stating, "I'm not a treating physician, so it's inappropriate for me to do that. I write [the report], and if whoever gets ahold of it can refer her [to] a treating physician, they will

7

[give the patient the treatment recommendations].").[2] What is more, the Complaint itself even acknowledges Dr. Yarus's reports are "litigation documents," not medical records created by a treating physician. *See* ECF No. 1 (Compl.) ¶ 63. Uber, as a result, cannot infer knowledge of a RICO scheme from conduct fully consistent with Dr. Yarus's proper role as an expert witness.

Nor can Uber infer knowledge from its allegation that Dr. Yarus's opinions were false because the claimants were not seriously injured. The Complaint admits Dr. Yarus prepared his reports based on the medical records generated by Dr. Burt and the Chiropractor Defendants, yet it does not allege Dr. Yarus knew those records were allegedly fraudulent. *Id*. ¶¶ 31, 33. It is therefore implausible to infer that Dr. Yarus knowingly issued false reports when he relied on seemingly legitimate medical documentation reflecting actual injuries. Further, allegations that Dr. Yarus's reports contained similar opinions across multiple examinations (*id*. ¶¶ 52-59) or that he diagnosed serious, permanent injuries requiring long-term care (*id*. ¶¶ 77-78, 86-88, 116-117, 123) merely reflect standard medical practice and professional judgment, not fraudulent intent. This conduct is entirely consistent with accepted medico-legal practice where patients present with similar trauma and clinical profiles. Dr. Yarus's medical opinions are indeed grounded in record review and clinical assessment. Uber's disagreement with his expert conclusions does not convert them into fraud. Likewise, the fact that Dr. Yarus allegedly earned approximately $1.5 million for performing over 1,200 evaluations (*id*. ¶ 52) demonstrates only that he conducted a high volume of expert work—a lawful and routine aspect of his profession.

At bottom, Uber's disagreement with Dr. Yarus's medical opinions does not constitute evidence he knowingly authored false reports—particularly given that expert conclusions are, by

---

[2] Because this transcript is a matter of public record, the Court may properly consider it at the motion-to-dismiss stage. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

nature, opinions. As courts have repeatedly held, "[t]hose who innocently provide services without knowledge that they are aiding a criminal pattern of racketeering will not incur liability." *Knit With*, 2011 WL 891871, at *9 n.4. Here, as in *Knit With*, Uber's Complaint contains no particularized facts suggesting Dr. Yarus had any awareness of, or agreement with, an illegal racketeering scheme. *See id.* at *9. Uber's allegations therefore do not plausibly support the inference that Dr. Yarus acted with the requisite knowledge to sustain a RICO conspiracy claim.

### B. Uber Failed to State an Unjust Enrichment Claim (Count V) Against Dr. Yarus.

Uber's unjust enrichment claim against Dr. Yarus fails because the Complaint does not allege any of the elements required to state such a claim. To plead unjust enrichment, Uber must allege: (1) benefits conferred on Dr. Yarus by Uber; (2) appreciation of such benefits by Dr. Yarus; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for Dr. Yarus to retain the benefit without payment of value. *Argue v. Triton Digital Inc.*, 734 F. App'x 148, 151 (3d Cir. 2018) (quoting *Mark Hershey Farms, Inc. v. Robinson*, 171 A.3d 810, 817 (Pa. Super. 2017)). Yet Uber does not even attempt to allege it conferred any benefit on Dr. Yarus. The Complaint's generalized unjust enrichment allegations reference only other Defendants—specifically, "Clifton Burt, Premier Pain & Rehab Center, and the Chiropractor Defendants"—and do not mention Dr. Yarus at all. *See* ECF No. 1 (Compl.) ¶ 200. And to the extent Uber points to its allegation that Dr. Yarus "has been paid about $1.5 million" by Simon & Simon for medical expert work (*id.* ¶¶ 21, 52), that allegation cannot support an unjust enrichment claim because Uber does not allege, as it must, that Uber conferred this payment on him. *Argue*, 734 F. App'x at 151.

At most, the Complaint acknowledges Simon & Simon paid Dr. Yarus for professional services he provided. Because Uber pleads no benefit it conferred—and thus no inequitable retention—its unjust enrichment claim against Dr. Yarus must be dismissed.

## IV. CONCLUSION

For all the foregoing reasons, Uber's claims against Dr. Yarus cannot stand. The Complaint relies on conjecture, rhetoric, and impermissible inferences, not on well-pleaded facts showing Dr. Yarus agreed to participate in a racketeering enterprise, knowingly engaged in any fraudulent conduct, or received any benefit from Uber that could support unjust enrichment.

What Uber labels "racketeering" is nothing more than routine medico-legal work performed by a non-treating expert based on his own examinations and medical records generated by others. Allowing such speculative allegations to proceed would distort RICO beyond recognition and chill the participation of medical professionals essential to the fair functioning of the civil-justice system. Consistent with *Twombly*, *Iqbal*, and Third Circuit precedent, this Court should dismiss Counts IV and V against Dr. Yarus with prejudice and without leave for Uber to amend.

Respectfully submitted,

/s/ Silvio Trentalange
Silvio Trentalange (PA No. 320606)
Nina Spizer (PA No. 82443)
John J. Higson (PA No. 80720)
**DILWORTH PAXSON LLP**
1650 Market Street, Ste. 1200
Philadelphia, PA 19103
T: 215-575-7000
nspizer@dilworthlaw.com
jhigson@dilworthlaw.com
strentalange@dilworthlaw.com
*Attorneys for Defendant Lance Yarus*

Dated: December 12, 2025