**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UBER TECHNOLOGIES, INC., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 2:25-cv-05365-MAK |
| SIMON & SIMON P.C., MARC SIMON, | : | |
| CLIFTON BURT, PREMIER PAIN & | : | |
| REHAB CENTER, PC, ETHEL HARVEY, | : | |
| DANIEL PICCILLO, PHILADELPHIA | : | |
| SPINE ASSOCIATES, LLC, AND LANCE | : | |
| YARUS, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS SIMON & SIMON, P.C. AND MARC SIMON'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants Simon & Simon, P.C. and Marc Simon, through their undersigned counsel, respectfully submit this Memorandum of Law in support of their Motion to Dismiss Plaintiff Uber Technologies, Inc.'s Complaint.

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................................1

II.   RELEVANT BACKGROUND .............................................................................3

    A.    Claimants A-E.............................................................................................4

    B.    Claimants F-P.............................................................................................6

    C.    Claimants AA and BB. ...............................................................................6

III.  ARGUMENT ........................................................................................................8

    A.    Legal Standards...........................................................................................8

        1.    Pleading Standards...........................................................................8

        2.    RICO Elements. ...............................................................................9

    B.    The Complaint Should Be Dismissed on Standing Grounds Because Uber
        Fails to Adequately Allege Proximate Causation. ....................................10

        1.    Uber's Injury Is Not Direct Because Neither Uber Nor Anyone Else
            Relied on Any Misrepresentations that Caused Uber's Alleged Injuries. .11

        2.    Uber's Injury Is Difficult, If Not Impossible, to Apportion. ....................14

        3.    Parties Other Than Uber (i.e., Uber's Drivers' Insurance Carrier) Are
            Better Situated to Vindicate Alleged Wrongs...........................................16

    C.    The Simon Defendants' Litigation Activities Are Not Predicate RICO
        Acts and All other Predicate Acts Are Not Adequately Pled. ...............18

    D.    *Noerr-Pennington* Bars Uber's Claims.................................................24

    E.    Uber's Claims are Barred by Releases in Settlements that It Cannot
        Partially Rescind. ....................................................................................26

    F.    Res Judicata Bars Uber's Claims............................................................27

        1.    Final Judgment...............................................................................27

        2.    Same Parties or their Privies. ......................................................28

        3.    Same Cause of Action....................................................................29

    G.    *Rooker-Feldman* Bars Uber's Claims. .................................................30

    H.    Uber Fails to Adequately Allege Conduct of an Enterprise. ..................32

    I.    Uber Fails to State a RICO Conspiracy Claim in Count IV. ..................35

IV.   CONCLUSION....................................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Annulli v. Panikkar*,
    200 F.3d 189 (3d Cir. 1999) ................................................................... 9

*Applebaum v. Fabian*,
    2022 WL 17090172 (3d Cir. Nov. 21, 2022) ............................ 19, 21, 22

*Arthrocare Corp. v. Smith & Nephew, Inc.*,
    2004 WL 896002 (D. Del. Mar. 10, 2004) ............................................ 25

*Bailey v. Walker, Teich, Raiser-PA, LLC, and Uber Techs., Inc.*,
    Phila. C.C.P., 240602258 ........................................................................ 4

*Barbieri v. Wells Fargo & Co.*,
    2014 WL 7330461 (E.D. Pa. Dec. 22, 2014) ....................................... 35

*Bass v. Butler*,
    116 F. App'x 376 (3d Cir. 2004) ......................................................... 31

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................... 8, 35

*Bonavitacola Elec. Contractor, Inc. v. Boro Devs., Inc.*,
    87 F. App'x 227 (3d Cir. 2003) ......................................................... 9, 23

*Boyle v. United States*,
    556 U.S. 938 (2009) ............................................................................... 33

*Bridge v. Phoenix Bond & Indemnity Co.*,
    553 U.S. 639 (2008) ........................................................... 11, 12, 13, 14

*Burger King Corp. v. New England Hood & Duct Cleaning Co.*,
    2001 WL 283161 (E.D. Pa. Mar. 21, 2001) ......................................... 30

*Chaleplis v. Karloutsos*,
    579 F. Supp. 3d 685 (E.D. Pa. 2022) ................................................... 24

*In re Coatsville Area Sch. Dist.*,
    664 Pa. 371 (2021) ............................................................................... 29

*Contreras Madrid v. Wal-Mart Stores, L.P.*,
    2025 WL 1698701 (E.D. Pa. June 17, 2025) ......................................... 2

*Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*,
  758 F. Supp. 2d 153 (E.D.N.Y. 2010) ...................................................................23

*Davis v. Bank of America, N.A.*,
  2014 WL 12778833 (E.D. Pa. Aug. 11, 2014) ........................................................24

*Deck v. Engineered Laminates*,
  349 F.3d 1253 (10th Cir. 2003) ...................................................................19, 20

*Dental Wizard G PC v. Aranbayev*,
  2018 WL 6268298 (E.D. Pa. Nov. 30, 2018) ..........................................................17

*Domanus v. Locke Lord LLP*,
  847 F.3d 469 (7th Cir. 2017) .......................................................................20

*E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961) ...............................................................................24

*Ezekoye v. Ocwen Fed. Bank FSB*,
  179 F. App'x 111 (3d Cir. 2006) ....................................................................29

*Feld Ent. Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*,
  873 F. Supp. 2d 288 (D.D.C. 2012) .................................................................22

*Freedom Med., Inc. v. Gillespie*,
  2013 WL 2292023 (E.D. Pa. May 23, 2013) ..........................................................34

*Gabovitch v. Shear*,
  70 F.3d 1252, 1995 WL 697319 (1st Cir. 1995) .......................................................20

*Gochin v. Haaz*,
  2017 WL 4475973 (E.D. Pa. May 10, 2017) ...........................................................21

*Gordon v. Pasquarello*,
  2023 WL 2505538 (E.D. Pa. Mar. 14, 2023) ..........................................................26

*Hampton v. Progressive Ins. Co.*,
  734 F. Supp. 3d 391 (E.D. Pa. 2024) (Kearney, J.) ..................................................8, 9

*Hemi Grp., LLC v. City of New York*,
  559 U.S. 1 (2010) ...................................................................................11

*Hua v. Lehman XS Tr. Mortg. Pass-Through Certificates, Series 2007-7N*,
  2017 WL 5473458 (E.D. Pa. Nov. 14, 2017) (Kearney, J.) ..................................27, 30, 31

*I.S. Joseph Co. v. J. Lauritzen A/S*,
  751 F.2d 265 (8th Cir. 1984) .......................................................................20

*In re Ins. Brokerage Antitrust Litig.*,
618 F.3d 300 (3d Cir. 2010).................................................................33

*ITT Corp. v. Intelnet Int'l Corp.*,
366 F.3d 205 (3d Cir. 2004).................................................................31

*J-M Manufacturing Co. v. Simmons Hanly Conroy, LLP*,
2025 WL 843854 (N.D. Ill. Mar. 18, 2025).........................................32

*Jacovetti Law, P.C. v. Shelton*,
2020 WL 5211034 (E.D. Pa. Sept. 1, 2020) ........................................10

*Jefferson v. Oumarou, Uber Techs., Inc. and Raiser-PA, LLC*,
Phila. C.C.P., 240201839 ......................................................................6

*Johnson v. Mukhtarov, Raiser, LLC, Raiser-PA, LLC, Raiser-CA, LLC, Raiser-DC, LLC, Uber Techs., Inc., Russel, and SEPTA*,
Phila. C.C.P., 231203191 ......................................................................5

*Kelly v. Peerstar LLC*,
2023 WL 4785511 (3d Cir. July 27, 2023)...........................................26

*Khalil v. Travelers Indem. Co. of Am.*,
273 A.3d 1211 (Pa. Super. 2022)..............................................27, 28, 29

*Kim v. Kimm*,
884 F.3d 98 (2d Cir. 2018).............................................................19, 20

*Kimmel v. Phelan Hallinan & Schmieg, P.C.*,
847 F. Supp. 2d 753 (E.D. Pa. 2012) ...................................................12

*Knopick v. UBS Fin. Servs., Inc.*,
121 F. Supp. 3d 444 (E.D. Pa. 2015) .............................................11, 17

*Kornafel v. United States Postal Serv.*,
784 F. App'x 842 (3d Cir. 2019) ..........................................................29

*Kovalev v. City of Philadelphia*,
2020 WL 762373 (E.D. Pa. Feb. 14, 2020), *aff'd*, 833 F. App'x 972 (3d Cir. 2021) ....................................................................................................13

*Kovalev v. Stepansky*,
2020 WL 553843 (E.D. Pa. Feb. 4, 2020) ...........................................17

*LabMD Inc. v. Boback*,
47 F.4th 164 (3d Cir. 2022) ...................................................................9

*Larke v. Kayed, Hertz System, Inc., Raiser-PA, LLC and Uber Techs., Inc.*,
    Phila. C.C.P., 231003167 ........................................................................4

*Lawson v. Harriger*,
    2022 WL 2952498 (E.D. Pa. June 23, 2022) .......................................4, 7

*Lewis v. Mainer*,
    2016 WL 10956506 (E.D. Pa. Aug. 23, 2016) ....................................35

*Lewis v. O'Donnell*,
    674 F. App'x 234 (3d Cir. 2017) ........................................................28

*Lightning Lube, Inc. v. Witco Corp.*,
    4 F.3d 1153 (3d Cir. 1993)..................................................................34

*Lingle v. PSB Bancorp., Inc.*,
    123 F. App'x 496 (3d Cir. 2005) ........................................................27

*Lynch v. Cap. One Bank (USA), N.A.*,
    2013 WL 2915734 (E.D. Pa. June 14, 2013) ................................11, 12

*Macauley v. Est. of Nicholas*,
    7 F. Supp. 3d 468 (E.D. Pa. 2014) .....................................................32

*Maio v. Aetna, Inc.*,
    221 F.3d 472 (3d Cir. 2000)................................................................11

*McHale v. NuEnergy Grp.*,
    2002 WL 321797 (E.D. Pa. Feb. 27, 2002) .......................................23

*Mega Concrete, Inc. v. Smith*,
    2011 WL 1103831 (E.D. Pa. Mar. 24, 2011).....................................34

*Morse v. Lower Merion Sch. Dist.*,
    132 F.3d 902 (3d Cir. 1997).................................................................9

*Moss v. BMO Harris Bank, N.A.*,
    258 F. Supp. 3d 289 (E.D.N.Y. 2017) ................................................33

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*,
    571 F.3d 299 (3d Cir. 2009)........................................................28, 29

*Nayak v. C.G.A. L. Firm*,
    620 F. App'x 90 (3d Cir. 2015) ............................................................5

*Nolan v. Galaxy Scientific Corp.*,
    269 F. Supp. 2d 635 (E.D. Pa. 2003) .................................................19

*Pac-W. Distrib. NV LLC v. AFAB Indus. Servs., Inc.*,
  2022 WL 717276 (E.D. Pa. Mar. 10, 2022)...........................................27

*Puro-Tec, LTD v. Carotenuto*,
  2019 WL 2089993 (E.D. Pa. May 13, 2019) ...................................14

*Purpura v. Bushkin, Gaimes, Gains, Jonas & Stream*,
  317 F. App'x 263 (3d Cir. 2009) ...........................................31

*Rajaratnam v. Motley Rice, LLC*,
  449 F. Supp. 3d 45 (E.D.N.Y. 2020) .................................21, 22

*Raney v. Allstate Ins. Co.*,
  370 F.3d 1086 (11th Cir. 2004) ...........................................19

*Robinson v. Fye*,
  192 A.3d 1225 (Pa. Commw. Ct. 2018) ..............................28

*Rothberg v. Marger*,
  2013 WL 1314699 (D.N.J. Mar. 28, 2013)...........................10

*Sarpolis v. Tereshko*,
  26 F. Supp. 3d 407 (E.D. Pa. 2014), *aff'd*, 625 F. App'x 594 (3d Cir. 2016) ..................16, 27

*Schwartz v. Laws. Title Ins. Co.*,
  970 F. Supp. 2d 395 (E.D. Pa. 2013) ...................................33

*Shelton v. Chaudhry*,
  763 F. Supp. 3d 675 (E.D. Pa. 2025) ................................1, 2

*Silverberg v. City of Philadelphia*,
  87 F. App'x 152 (3d Cir. 2021) ......................................31, 32

*Simon Property Grp., Inc. v. Palombaro*,
  682 F. Supp. 2d 508 (W.D. Pa. 2010)..................................25

*Snow Ingredients, Inc. v. SnoWizard, Inc.*,
  833 F.3d 512 (5th Cir. 2016) ........................................19, 20

*Speaks v. Ali, Uber Techs., Inc., and Raiser, LLC*,
  Phila. C.C.P., 241203208............................................4

*State Farm Mut. Auto Ins. Co. v. Rosenfeld*,
  683 F. Supp. 106 (E.D. Pa. 1988) ..................................20, 21

*Sullivan v. Mayes and Hertz System, Inc.*,
  Phila. C.C.P., 231200009...........................................6

*SupplyOne, Inc. v. Triad Packaging, Inc.*,
  2014 WL 3676524 (E.D. Pa. July 24, 2014)....................................................29, 30

*In re Suprema Specialties, Inc. Sec Litig.*,
  438 F.3d 256 (3d Cir. 2006)...........................................................................9

*Sylla and Simmons v. Shaikh and John Doe (1-Unlimited) and ABC Corp. (1-Unlimited)*,
  N.J. Super., CAM-L-000222-24 .....................................................................6

*T. Levy Assocs., Inc. v. Kaplan*,
  2016 WL 10920370 (E.D. Pa. Nov. 16, 2016) (Kearney, J.)...........................33, 34

*Trapp v. AMS Servicing LLC*,
  616 F. App'x 46 (3d Cir. 2015) ....................................................................31

*Tri-Cnty. Concerned Citizens Ass'n v. Carr*,
  2001 WL 1132227 (E.D. Pa. Sept. 18, 2001), *aff'd*, 47 F. App'x 149 (3d Cir. 2002) .....................................................................................................15, 16

*Trustees of University of Pennsylvania v. St. Jude Children's Research Hosp.*,
  940 F. Supp. 2d 233 (E.D. Pa. 2013)..............................................................25

*Uber Tech., Inc. v. Downtown LA Law Grp, LLP et al.*,
  Case No.: 2:25-cv-06612 (C.D. Cal.) ...............................................................1

*Uber Tech., Inc. v. Law Grp. of S. Fla., LLC et al.*,
  Case No.: 1:25-cv-22635 (S.D. Fla) ................................................................1

*Uber Tech., Inc. v. Wingate, Russotti, Shapiro, Moses & Halperin, LLP et al.*,
  Case No.: 1:25-cv-00522 (E.D.N.Y.) ...............................................................1

*United Mine Workers of Am. v. Pennington*,
  381 U.S. 657 (1965).....................................................................................24

*United States v. Console*,
  13 F.3d 641 (3d Cir. 1993)............................................................................20

*United States v. Eisen*,
  974 F.2d 246 (2d Cir. 1992)...........................................................................20

*United States v. Koziol*,
  993 F.3d 1160 (9th Cir. 2021) .......................................................................20

*Walter v. Palisades Collection, LLC*,
  480 F. Supp. 2d 797 (E.D. Pa. 2007) ..........................................................12, 13

*Waris v. Mackey,*
    2009 WL 4884204 (E.D. Pa. Dec. 15, 2009) ........................................28

*Williams v. BASF Catalysts LLC,*
    765 F.3d 306 (3d Cir. 2014) .............................................................30

*Yucaipa Am. All. Fund I, LP v. Ehrlich,*
    716 F. App'x 73 (3d Cir. 2017) .........................................................15

*Zoria v. Mazzocone,*
    1996 WL 165509 (E.D. Pa. Mar. 29, 1996).........................................24

**Statutes**

42 Pa. C.S.
    § 2503(9) .....................................................................................18, 30
    § 8351(a) ...........................................................................................17
    § 8353(3) ...........................................................................................18

18 U.S.C.
    § 201 ..................................................................................................21
    § 201(b)(3)-(4) ..................................................................................22
    § 1341 ................................................................................................21
    § 1343 ................................................................................................21
    § 1961 ........................................................................................*passim*
    § 1961(d) .............................................................................................9

**Other Authorities**

Fed. R. Civ. P.
    § 9(b) ...................................................................................................9
    § 11 ........................................................................................1, 10, 18
    § 12(b)(6) .............................................................................................8

## I.     INTRODUCTION

Disguised as a lawsuit, which is utterly baseless, this proceeding is in reality a business tactic—and a particularly ugly and vicious one at that—to suppress lawsuits arising from careless Uber drivers.   In a coordinated series of lawsuits filed in federal courts in New York,[1] Los Angeles,[2] Miami,[3] and now Philadelphia, Uber is attacking the lawyers and their firms who have the temerity to bring personal injury lawsuits against Uber for auto accidents caused by Uber drivers.   Uber's motive and purpose is an obvious one: to deter lawsuits against Uber and its drivers.   Uber's strategy is a nuclear one: if you are a lawyer who dares to sue Uber or its drivers (or a doctor who agrees to treat the victims of the Uber drivers' negligence), Uber will destroy your career—call you a fraud, accuse you of criminal racketeering, seek "eight figures" in damages, and demand the surrender of your law license.   With bottomless pockets, Uber can file federal Racketeer Influenced and Corrupt Organizations Act ("RICO") lawsuits against personal injury law firms, seeking to relitigate state court lawsuits that it already lost or paid to settle— without ever complaining of any supposed fraud—only to roll all of those settlements and losses into a subsequent federal action claiming it was all a criminal conspiracy.   There are countless flaws with this lawsuit, which is outrageous, shameful, and a gross departure from civility in the profession.   The Complaint should be dismissed in its entirety.

Marc Simon is Uber's Philadelphia target for an obvious reason. Uber viewed Mr. Simon as wounded in this Court, and an easy hit, because of two recent Rule 11 sanctions orders against Mr. Simon and his firm.  Although those matters were serious, they were isolated incidents relating to discrete issues that are irrelevant to the claims in this case.  Judge McHugh's opinion in *Shelton*

---

[1] *Uber Tech., Inc. v. Wingate, Russotti, Shapiro, Moses & Halperin, LLP et al.,* Case No.: 1:25-cv-00522 (E.D.N.Y.).

[2] *Uber Tech., Inc. v. Downtown LA Law Grp, LLP et al.,* Case No.: 2:25-cv-06612 (C.D. Cal.).

[3] *Uber Tech., Inc. v. Law Grp. of S. Fla., LLC et al.,* Case No.: 1:25-cv-22635 (S.D. Fla).

*v. Chaudhry* related to issues of jurisdiction and venue. 763 F. Supp. 3d 675, 683-84 (E.D. Pa. 2025). Judge Pappert's opinion in *Contreras Madrid v. Wal-Mart Stores, L.P.*, related to the Simon firm's procedures for signing complaints. 2025 WL 1698701, at *5-6 (E.D. Pa. June 17, 2025). Neither sanctions order has anything to do with, or even slightly resembles, the outrageous fraud and criminal conspiracy claims that Uber cavalierly lobs against Mr. Simon and his firm.

Regardless, and even taking Uber's baseless allegations as true,[4] this Court should dismiss the Complaint with prejudice and without leave to amend.

First, Uber lacks RICO standing because it fails to plead that any alleged misrepresentations are the proximate cause of its alleged injury. Indeed, Uber specifically pleads that it was dismissed from each and every case involving Dr. Clifton Burt, the doctor alleged to have been at the center of every case involving allegedly fraudulent injuries. Compl. ¶ 11. For this reason, Uber did not plead (and could not have pled) that it paid any verdicts or settlement in such cases. Instead, Uber's purported "injuries" are only its fees and costs incurred in each case from the time it was sued until the time it was voluntarily dismissed. That injury was not proximately caused by any alleged misrepresentations because: 1) those fees and costs were not caused by *anyone's* reliance on alleged misrepresentations; 2) apportioning such fees and costs to alleged misrepresentations is speculative and impossible; and 3) Uber's insurer—who actually pays the settlements and verdicts—is the party better situated to vindicate the alleged wrongs.

Second, when stripped of conclusory allegations, the Complaint's alleged acts of mail and wire fraud are simply litigation activities (the predicate acts supposedly taken by the Simon

---

[4] Uber's allegations in this action that the victims of its drivers' negligence were not injured are such an outrageous misrepresentation of the underlying medical records—and in some cases in direct contradiction with the *defense* medical experts' opinions—that it is apparent Uber's counsel failed to do any meaningful pre-suit investigation.

Defendants are filing and serving complaints in tort lawsuits). Third Circuit law makes clear that litigation activities—even if allegedly fraudulent—do not constitute RICO predicate acts. And while there is an exception for "witness bribery," that is not met here because the Complaint does not plead bribery as a predicate act and the few mentions of "bribery" are conclusory and supported by no factual allegations.

Third, numerous other legal doctrines foreclose Uber's claims: the *Noerr-Pennington* doctrine; release by settlement; res judicata; the *Rooker-Feldman* doctrine; failure to establish a RICO "enterprise"; and failure to plead a RICO "conspiracy." For any and all of these reasons, detailed below, the Court should dismiss the Complaint with prejudice.

## II.    <u>RELEVANT BACKGROUND</u>

Plaintiff alleges that the Simon Defendants "orchestrated" a scheme to bring lawsuits on behalf of personal injury claimants while "fabricat[ing] a false record of medical treatment and exaggerated injury…[i]n order to pursue inflated claims in state court and to extract large settlements from Uber." DE 1, Compl. ¶¶ 2-3. Despite that introductory line in the Complaint claiming that the Simon Defendants committed fraud to "extract large settlements from Uber," Uber does not allege to have actually paid any settlements or verdicts to any of the personal injury claimants. Instead, Uber claims damages comprising its fees and costs "incurred" in defending these lawsuits "in excess of what would have otherwise been required." *Id.* ¶¶ 146-148.

Uber pleads (and public docket information confirms) that Uber was voluntarily dismissed from all cases involving Dr. Burt.  Compl. ¶ 11. Being that all cases referenced in the Complaint involve Dr. Burt (Compl. ¶¶ 38, 74, 84, 92, 104, 112), Uber was voluntarily dismissed from all of the cases referenced in the Complaint. Thus, Uber's supposed injury of fees and costs incurred defending cases referenced in the Complaint is limited to its fees and costs incurred between the time it was sued and the time it was voluntarily dismissed. The reasonable inference drawn from

the Complaint is that Uber's insurer actually paid any settlements or verdicts for Uber's drivers who remained in the cases following Uber's dismissal. *See* Compl. ¶ 26; *see also id.* ¶ 66.

The Complaint claims that the fraud "spans many separate cases against different defendants," but offers five personal injury claimants as examples of cases brought against Uber. *Id.* ¶¶ 12, 71-117. It summarily references eleven other cases in a single paragraph (*id.* ¶ 38), and two other cases against "different defendants." *Id.* ¶¶ 118-133.

### A.    Claimants A-E.

Claimant A (Dajuan Speaks) was in an auto accident on April 26, 2024. Compl. ¶ 71. He sued Uber and others on December 30, 2024. Compl. ¶ 161. Claimant A subsequently dismissed Uber from the case. Compl. ¶ 11; *see also* Stipulation of Dismissal Without Prejudice dated May 12, 2025 filed in *Speaks v. Ali, Uber Techs., Inc., and Raiser, LLC*, Phila. C.C.P., 241203208.[5] The case remains pending.

Claimant B (Yasmeen Bailey) was in an auto accident on November 12, 2022. Compl. ¶ 81. She sued Uber and others on June 20, 2024. Compl. ¶ 162. Claimant B subsequently dismissed Uber from the case. Compl. ¶ 11; *see also* Stipulation of Dismissal Without Prejudice dated May 12, 2025 filed in *Bailey v. Walker, Teich, Raiser-PA, LLC, and Uber Techs., Inc.*, Phila. C.C.P., 240602258. The case was tried and the jury entered a defense verdict on November 13, 2025.

Claimant C (Rasheed Larke) was in an auto accident on March 10, 2023. Compl. ¶ 89. He sued Uber and others on October 30, 2023. Compl. ¶ 163. Claimant C subsequently dismissed Uber from the case. Compl. ¶ 11; *see also* Stipulation of Dismissal Without Prejudice dated April 1, 2025 filed in *Larke v. Kayed, Hertz System, Inc., Raiser-PA, LLC and Uber Techs., Inc.*, Phila.

---

[5] This Court may take judicial notice of public records, including docket sheets, at the motion to dismiss stage, especially dockets of cases that are explicitly relied upon in the Complaint. *See Lawson v. Harriger*, 2022 WL 2952498, at *1-2 (E.D. Pa. June 23, 2022).

C.C.P., 231003167. Per the public docket, the case settled in May 2025. 

.[6]

Claimant D (Bahijah Johnson) was in an auto accident on July 23, 2023. Compl. ¶ 97. He sued Uber and others on December 29, 2023. Compl. ¶ 164. Claimant D subsequently dismissed Uber from the case. Compl. ¶ 11; *see also* Stipulation of Dismissal Without Prejudice dated February 3, 2025 filed in *Johnson v. Mukhtarov, Raiser, LLC, Raiser-PA, LLC, Raiser-CA, LLC, Raiser-DC, LLC, Uber Techs., Inc., Russel, and SEPTA*, Phila. C.C.P., 231203191. Per the public docket, the case settled in February 2025.

Claimant E (Jonathan Jefferson) was in an auto accident on February 22, 2023. Compl. ¶

---

[6] The Complaint plainly relies on the settlements. *See, e.g.*, Compl. ¶ 51 ("Marc Simon & Simon & Simon use these false medical records to manufacture inflated lifetime damages estimates and then use these estimates to induce **large settlements from Uber and other defendants**.") (emphasis added). As relied upon and undisputedly authentic, this Court may review the settlements without converting the Motion into one for summary judgment. *See Nayak v. C.G.A. L. Firm*, 620 F. App'x 90, 93 n.3 (3d Cir. 2015) ("the settlement agreement attached as an exhibit to the motion to dismiss is 'an undisputedly authentic document' that was properly considered").

106. He sued Uber and others on February 15, 2024. Compl. ¶ 165. Claimant E subsequently dismissed Uber from the case. Compl. ¶ 11; *see also* Stipulation of Dismissal Without Prejudice dated January 17, 2025 filed in *Jefferson v. Oumarou, Uber Techs., Inc. and Raiser-PA, LLC*, Phila. C.C.P., 240201839. Per the public docket, the case settled in July 2025. ████

████████████████████████████████████████████████

████████████████████████

### B. <u>Claimants F-P.</u>

Claimants F-P are summarily referenced in a single paragraph of the Complaint as being subjects of reports prepared by Dr. Burt. Compl. ¶ 38. The Complaint says nothing else about them, presumably because they do not support Uber's theory of the case. Public docket information shows that five cases settled (G, H, K, I, and M), two cases resulted in verdicts for plaintiff (F and J), one was dismissed without prejudice (O), and three remain pending (L, N, and P).

### C. <u>Claimants AA and BB.</u>

The Complaint alleges that Claimants AA and BB are cases brought "against other defendants," not Uber. Compl. ¶ 118.

Claimant AA (Racquel Sullivan) was in an auto accident on December 22, 2022. Compl. ¶ 119. She brought a lawsuit against parties other than Uber on November 30, 2023. Compl. ¶ 124. Per the public docket, she won a jury trial and was awarded $58,022.74 on October 30, 2025. *See Sullivan v. Mayes and Hertz System, Inc.*, Phila. C.C.P., 231200009.

Claimant BB (Heaven Simmons) was in an auto accident on October 8, 2022. Compl. ¶ 125. Per the public docket, she brought a lawsuit against parties other than Uber on January 23, 2024. *See Sylla and Simmons v. Shaikh and John Doe (1-Unlimited) and ABC Corp. (1-Unlimited)*, N.J. Super., CAM-L-000222-24. Per the public docket, the case settled in March 2025.███

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

The foregoing information is summarized in the following chart of all cases referenced in the Complaint[7]:

| Claimant | Court and Case Number | Date Filed | Date Uber Answered Denying Allegations | Date Uber Dismissed by Stipulation | Status as to Remaining Defendants |
|---|---|---|---|---|---|
| A (Dajuan Speaks) | Phila. C.C.P., 241203208 | 12/30/24 | 3/14/25 | 5/12/25 | In suit |
| B (Yasmeen Bailey) | Phila. C.C.P., 240602258 | 6/20/24 | 8/26/24 | 5/12/25 | Verdict for Defense on 11/13/25 |
| C (Rasheed Larke) | Phila. C.C.P., 231003167 | 10/30/23 | 6/13/24 | 4/1/25 | Settled ████ **Rhynhart Decl. Ex. 1** |
| D (Bahijah Johnson) | Phila. C.C.P., 231203191 | 12/29/23 | 2/15/24 | 2/3/25 | Settled ████ **Rhynhart Decl. Ex. 2** |
| E (Jonathan Jefferson) | Phila. C.C.P., 240201839 | 2/15/24 | 4/1/24 | 1/17/25 | Settled ████ **Rhynhart Decl. Ex. 3** |
| F (Jazmyn Coriano) | Phila. C.C.P., 230602771 | 6/28/23 | 9/25/23 | 11/25/24 | Verdict for Plaintiff on 6/18/25 ($6,000 in pain and suffering) |
| G (Heavin Akins) | Phila. C.C.P., 231100811 | 11/7/23 | 2/7/24 | 5/12/25 | Settled ████ **Rhynhart Decl. Ex. 5** |
| H (Jahleel Bennett) | Phila. C.C.P., 230703127 | 7/31/23 | N/A | 10/12/23 | Settled ████ **Rhynhart Decl. Ex. 6** |
| I (Jajaira Melendez) | E.D. Pa., 2:24-cv-01068 | 3/12/24 | 4/8/24 | 11/8/24 | Settled ████ **Rhynhart Decl. Ex. 7** |
| J (James Drayton) | Phila. C.C.P., 231100542 | 11/3/23 | 1/17/24 | 5/7/25 | Verdict for Plaintiff on 6/17/25 ($10,000—$1300 in pain and suffering, $8700 in future medicals) |

---

[7] Unless otherwise noted, this chart is based on public docket information and the Court can take judicial notice of these public filings. *Lawson*, 2022 WL 2952498, at *1-2.

| Claimant | Court and Case Number | Date Filed | Date Uber Answered Denying Allegations | Date Uber Dismissed by Stipulation | Status as to Remaining Defendants |
|---|---|---|---|---|---|
| K (Denita Woodson) | Phila. C.C.P., 240101724 | 1/15/24 | 3/6/24 | 1/31/25 | Settled ████ **Rhynhart Decl. Ex. 8** |
| L (Geraldine Fulton) | Phila. C.C.P., 240103241 | 1/29/24 | 5/20/24 | 5/6/25 | In suit |
| M (Dajuan Samuel) | Phila. C.C.P., 240202190 | 2/20/24 | 5/13/24 | 5/6/25 | Settled ████ **Rhynhart Decl. Ex. 9** |
| N (Rashondah Coleman) | Phila. C.C.P., 240703431 | 7/31/24 | 9/23/24 | 8/5/25 | In suit |
| O (Enrique Santiago) | E.D. Pa., 2:24-cv-02683 | 6/18/24 | 8/13/24 | 5/13/25 | Dismissed without prejudice on 7/10/25 |
| P (Deniece Harvey) | Phila. C.C.P., 241003920 | 10/30/24 | 2/4/25 | 5/12/25 | In suit |
| AA (Racquel Sullivan) | Phila. C.C.P., 231200009 | 11/30/23 | Uber Not Defendant | Uber Not Defendant | Verdict for Plaintiff on 10/30/25 ($58,022.74 – $30,000 for future medical expenses, $25,000 for pain and suffering, $3,022.74 in delay damages) |
| BB (Heaven Simmons) | N.J. Super., CAM-L-000222-24 | 1/23/24 | Uber Not Defendant | Uber Not Defendant | Settled ████ **Rhynhart Decl. Ex. 4** |

## III.   ARGUMENT

### A.   Legal Standards.

#### 1. Pleading Standards.

"If a plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face,' the court should dismiss the complaint" under Fed. R. Civ. P. 12(b)(6). *Hampton v. Progressive Ins. Co.*, 734 F. Supp. 3d 391, 394 (E.D. Pa. 2024) (Kearney, J.) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard requires that "the pleading

show 'more than a sheer possibility…a defendant has acted unlawfully.'" *Id.* (quoting *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019)). And while this Court accepts well-pleaded allegations as true, it must "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Id.* Further, the Court is not required to credit "unwarranted deductions" of fact. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997).

Uber's allegations of fraud are further subject to Rule 9(b)'s heightened pleading requirements. *In re Suprema Specialties, Inc. Sec Litig.*, 438 F.3d 256, 270 (3d Cir. 2006). "In the context of RICO mail fraud allegations, this means that the complaint must identify the purpose of the mailing within the defendant's fraudulent scheme and specify the fraudulent statement, the time, place, and speaker and content of the alleged misrepresentation." *Bonavitacola Elec. Contractor, Inc. v. Boro Devs., Inc.,* 87 F. App'x 227, 231 (3d Cir. 2003). "Put another way, the 'who, what, when and where details of the alleged fraud' are required." *Id.*

### 2. RICO Elements.

"Establishing liability under…the RICO statute requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, plus [(5)] an injury to business or property, and (6) the racketeering activity must have been the 'but for' cause as well as the proximate cause of the injury." *LabMD Inc. v. Boback*, 47 F.4th 164, 179 (3d Cir. 2022). Further, only the specifically enumerated crimes listed in Section 1961(d) constitute RICO predicate acts, and that list is "exhaustive" to ensure that ordinary tort claims do not become "federalized." *See Annulli v. Panikkar*, 200 F.3d 189, 200 (3d Cir. 1999) ("[I]f garden-variety state law crimes, torts, and contract breaches were to constitute predicate acts of racketeering (along with mail and wire fraud), civil RICO law, which is already a behemoth, would swallow state civil and criminal law whole. Virtually every litigant would have the incentive to file their breach of contract and tort claims

under the federal civil RICO Act, as treble damages and attorney's fees would be in sight. We will not read language into [RICO] to federalize every state tort, contract, and criminal law action.").

Civil RICO is considered the "litigation equivalent of a thermonuclear device." *Jacovetti Law, P.C. v. Shelton*, 2020 WL 5211034, at *1 (E.D. Pa. Sept. 1, 2020). "[B]ecause the 'mere assertion of a RICO claim…has an almost inevitable stigmatizing effect on those named as defendants,…courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" *Rothberg v. Marger*, 2013 WL 1314699, at *10 (D.N.J. Mar. 28, 2013) (citation omitted) (quoting *Figueroa Ruiz v. Algeria*, 896 F.2d 645, 650 (1st Cir. 1990)).

**B.      The Complaint Should Be Dismissed on Standing Grounds Because Uber Fails to Adequately Allege Proximate Causation.**

When pleading that "Uber is a Victim of the Scheme and has Suffered Injury," Uber alleges that it "has incurred substantial expense in defending these false or inflated claims" and that "unnecessary medical treatment…allowed [the Simon Defendants]…***to attempt to*** fraudulently induce significantly larger settlement payouts out of Uber..." Compl. ¶ 146 (emphasis added). Uber in the same paragraph sets forth its only damages as being "forced to incur legal costs in defending these lawsuits in excess of what would have otherwise been required" and that "[t]hese costs have included out-of-pocket costs, including attorney's fees, fees for independent medical examiners, and costs and expenses related to discovery to investigate the false statements and unnecessary treatments that resulted from the scheme." Compl. ¶ 146.

Uber only alleges that the Simon Defendants "attempt(ed) to induce" Uber to pay out settlements because, bound by Rule 11, it cannot plead that it actually paid out any settlements in any cases cited in its lawsuit. Per Uber's allegations, it was dismissed by stipulation from every case in which Burt was the treating doctor, and the dismissal in each case occurred before that case resolved. Compl. ¶ 11.

While Uber pleads that such settlements were in fact consummated in ¶¶ 26 and 51—which is true—Uber never alleges that *Uber* actually paid those settlements, or includes any reference to consummated settlements or settlement payments in its "injury" allegations at ¶¶ 146-148. Thus, the only injury that Uber alleges are fees and costs incurred in cases in which it was voluntarily dismissed prior to any settlement or verdict.

In order to establish threshold RICO "standing," a plaintiff must plead its injuries were proximately caused by the alleged RICO violations. *Maio v. Aetna, Inc.*, 221 F.3d 472, 482-83 (3d Cir. 2000) (RICO standing requires that "plaintiff's injury was proximately caused by the defendant's violation of 18 U.S.C. § 1962"); *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992)) ("[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well.").

"The Supreme Court requires the examination of three factors to determine whether an alleged RICO violation proximately caused a plaintiff's harm: (1) the directness of the injury, (2) the difficulty of apportioning damages, and (3) whether there are direct victims of the alleged violation that could better vindicate the policies underlying RICO." *Knopick v. UBS Fin. Servs., Inc.*, 121 F. Supp. 3d 444, 460 (E.D. Pa. 2015) (citing *Holmes*, 503 U.S. at 269-70). As detailed below, Uber satisfies none of these three factors here. Accordingly, Uber has failed to allege a RICO violation proximately caused its harm and Uber lacks threshold RICO standing.

### 1. Uber's Injury Is Not Direct Because Neither Uber Nor Anyone Else Relied on Any Misrepresentations that Caused Uber's Alleged Injuries.

For RICO claims premised on mail or wire fraud, "[s]ome form of reliance on the defendant's misrepresentation is necessary to properly establish proximate cause…." *Lynch v. Cap. One Bank (USA), N.A.*, 2013 WL 2915734, at *3 (E.D. Pa. June 14, 2013) (citing *Bridge v.*

*Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 659 (2008)). "[I]t is a matter of basic logic that a misrepresentation cannot cause, much less proximately cause, injury, unless someone relies upon it." *Id.* (citing *Central Transp., LLC v. Atlas Towing, Inc.,* 884 F. Supp. 2d 207, 215-16 (E.D. Pa. 2012); *Kimmel v. Phelan Hallinan & Schmieg, P.C.*, 847 F. Supp. 2d 753, 771 (E.D. Pa. 2012); *Walter v. Palisades Collection, LLC*, 480 F. Supp. 2d 797, 807 (E.D. Pa. 2007)). A plaintiff will not be able to establish even but-for cause 'without showing that *someone* relied on the defendant's misrepresentations" alleged to have caused the plaintiff's harm. *Id.* at *3 (quoting *Bridge*, 553 U.S. at 659).

Uber's alleged injuries of fees and costs incurred in the underlying suits were not a direct result of any predicate acts because no one's reliance on the alleged misrepresentations caused that injury. Those fees and costs were clearly not the result of *Uber's* own reliance. The Complaint pleads that Uber did not rely on any alleged misrepresentations, but instead *defied* them by hiring counsel, denying the claims in responsive pleadings, and then obtaining voluntary dismissal in those cases without prejudice. *See Kimmel*, 847 F. Supp. 2d at 771 (dismissing RICO claim for lack of proximate causation where plaintiffs retained an attorney after they "grew very worried they were becoming the victims of a scam" and then contested proceedings in which they were eventually dismissed without prejudice because "[Plaintiffs'] conduct following the defendants' allegedly wrongful actions was, in Judge Robreno's trenchant words, 'the opposite of reliance; it's defiance'") (quoting *Walter*, 480 F. Supp. 2d at 806 (dismissing RICO claim for lack of proximate causation for attorney's fees incurred in allegedly fraudulent debt collection action because "[a]fter being (falsely) told they were liable on the debt, [plaintiffs] hired lawyers and fought (and won) the lawsuits")).

Judge Robreno's well-reasoned opinion in *Walter*, which has been cited with approval by

many courts in this District,[8] involved nearly identical facts as here. In *Walter*, like here, the defendant in underlying state court litigation brought RICO claims against the plaintiff in federal court claiming those state proceedings were fraudulent. 480 F. Supp. 2d at 799-801. Just like here, the RICO plaintiffs claimed as injuries their "counsel fees and costs to defend the actions." *Id.* at 801. The Court rejected that this injury was proximately caused by any alleged misrepresentations:

> If Plaintiffs paid the debt after falsely being told by Defendants that they were liable on it, Plaintiffs would be able to demonstrate reliance. Plaintiffs' course of action, though, is the opposite of reliance; it's defiance. After being (falsely) told they were liable on the debt, they hired lawyers and fought (and won) the lawsuits.

*Id.* at 806. Here, Uber not only hired counsel and filed answers denying all of the underlying claimants' allegations, but defied the allegations to such an extent that Uber actually secured voluntary dismissal in those cases. Thus, Uber's fees and costs were clearly incurred as a result of its defiance of, not reliance upon, the alleged misrepresentations.

The Supreme Court's *Bridge* opinion makes clear that this Court must consider other third parties' reliance as well. *Bridge*, 553 U.S. at 658 (while first-party reliance is not required to demonstrate proximate causation, "none of this is to say that a RICO plaintiff alleging injury 'by reason of' a pattern of mail fraud can prevail without showing that *someone* relied on the defendant's misrepresentations." (emphasis in original)). Uber's fees and costs were clearly not the result of *anyone else's* reliance because, to the extent others relied on misrepresentations (i.e. the jury by entering a verdict, or Uber's insurer by paying a settlement), Uber pleads that its fees and costs do not extend beyond the point in time that it was dismissed in the underlying cases. *See supra* at 3-4. Thus, any reliance by third parties occurred *only after* Uber's alleged injury occurred,

---

[8] This Court has cited *Walter* with approval. *See Kovalev v. City of Philadelphia*, 2020 WL 762373, at *4 (E.D. Pa. Feb. 14, 2020), *aff'd*, 833 F. App'x 972 (3d Cir. 2021) (citing *Walter* for proposition that "alleged injuries of unpaid contested debt and withdrawn lawsuits are not specific injuries giving rise to RICO liability").

meaning such reliance did not cause Uber's injury. *Puro-Tec, LTD v. Carotenuto*, 2019 WL 2089993, at *5 (E.D. Pa. May 13, 2019) ("Although predicate act IV concerns the Moore Report, Plaintiff admitted that no one relied on the report until Green, on Newsome's behalf, brought the counterclaim in the Bucks County Litigation. ... No one relied on the Moore Report during the time period in which the repairs to the Taney Street Properties were taking place."). Indeed, *Bridge* makes clear that the type of third-party reliance sufficient to demonstrate proximate causation must be reliance that results in the alleged injury. *Cf. Bridge*, 553 U.S. at 658 ("If, for example, the county had not accepted petitioners' false attestations of compliance with the Single, Simultaneous Bidder Rule, and as a result had not permitted petitioners to participate in the auction, respondents' injury would never have materialized."). In other words, any reliance by others after Uber is voluntarily dismissed constitutes "an intervening cause breaking the chain of causation between [the Simon Defendants' alleged] misrepresentations and [Uber's] injury." *Id.* at 659. Lastly, regardless of whether Uber was dismissed in the underlying cases before resolution (which it admits it was), it was not harmed by others' reliance on the alleged misrepresentations because it never paid any money in settlements or jury verdicts to anyone, only attorneys fees and costs in challenging the alleged misrepresentations.

Accordingly, because Uber itself did not rely on the alleged misrepresentations—and because no other party's reliance caused Uber's injury—none of the alleged misrepresentations directly caused Uber's alleged injury.

### 2. Uber's Injury Is Difficult, If Not Impossible, to Apportion.

Setting aside that Uber cannot demonstrate that reliance by anyone on alleged Simon Defendant misrepresentations caused its injury, Uber's claimed injury also cannot be reasonably apportioned and tied to any alleged misconduct.

As an initial matter, Uber cannot decide if the Claimants were not injured at all, or if they

were actually injured but exaggerated their injuries. For example, Uber pleads that Claimant A both "suffered no injury" (Compl. ¶ 74) and "suffered no serious injury" (Compl. ¶ 78). Despite its contradictory pleading, Uber concedes that "[i]n most of these cases, emergency room records reflect a diagnosis of a minor injury…" Compl. ¶ 44.

Notably, Uber never alleges that an accident was staged, or was not real; Uber's allegations focus solely on the injuries asserted and treatment provided.   In other words, Uber might have incurred fees and costs in every case where one of its drivers was involved in an accident. But even if it were plausible that some cases "would have…never been filed," Uber concedes there is a universe of cases that still would have been filed but should have "been resolved for nuisance value." Compl. ¶ 146. Further, two cases filed against Uber by Jazmyn Coriano (Claimant F) and James Drayton (Claimant J) resulted in verdicts after Uber was dismissed from the matter in the amounts of $6,000 (for pain and suffering) and $10,000 ($8,700 for future medical costs and $1,300 for pain and suffering), respectively. With no way to distinguish whether a case would have never been filed, or would have been filed but then settled for nuisance value, or how long a "nuisance value" case would have lasted before being settled, or how much effort Uber's counsel would have employed defending those cases until nuisance value settlements were reached, or what portion of Uber's fees and costs at trial in the cases that went to verdict would have been incurred without the supposedly fraudulent medical records, Uber's damages are entirely speculative and hypothetical. *Yucaipa Am. All. Fund I, LP v. Ehrlich*, 716 F. App'x 73, 78 (3d Cir. 2017) (affirming dismissal of RICO claim where injury was alleged attorney's fees, the amount of which "require[d] a significant degree of factual speculation"). Indeed, how long a "nuisance value" case would last before it is settled (and thus how much fees and costs would be incurred until that time) is affected by *other* factors as well, like how much decision-making Uber's insurer

has in the defense, or the existence of other defendants in the case where multiple cars (or trucks) are involved. This analysis becomes even more speculative and impossible in apportioning what Uber would have spent on a case with a lower verdict without a jury receiving evidence of claimed fraudulent documents. *See Tri-Cnty. Concerned Citizens Ass'n v. Carr*, 2001 WL 1132227, at *8 (E.D. Pa. Sept. 18, 2001), *aff'd*, 47 F. App'x 149 (3d Cir. 2002) (dismissing RICO claim because allowing recovery for alleged injury would "require complicated rules for apportioning damages" like "identification and valuation of other sources of positive and negative effects on Plaintiffs' properties"). Further, defending nuisance value claims is necessarily driven by the settlement value of those claims. Asking the Court to hypothesize about the underlying cases' settlement value in the absence of alleged misconduct is improper under RICO. *See Sarpolis v. Tereshko*, 26 F. Supp. 3d 407, 425 (E.D. Pa. 2014), *aff'd*, 625 F. App'x 594 (3d Cir. 2016) ("[I]t is essentially Plaintiff's contention that but for the actions of the Defendants…then Plaintiff would have been offered (and presumably accepted) a higher settlement amount than the amount that was actually offered by the defendants in the State Court Action. This contention can only be speculation, and speculative injuries do not confer standing under RICO.").

Ultimately, rather than rescind the settlement agreements or seek new trials in the state courts, Uber would rather have this Court hypothesize about settlements that were never agreed to or guess what would happen at trials that never took place. This is an improper use of RICO.

### 3. Parties Other Than Uber (i.e., Uber's Drivers' Insurance Carrier) Are Better Situated to Vindicate Alleged Wrongs.

Finally, by Uber's own allegations, other parties are direct victims that could better vindicate the policies underlying RICO. Uber alleges that "false statements" were transmitted "by interstate wires to *an insurance carrier*." Compl. ¶ 94 (emphasis added). Indeed, the "object" of the alleged scheme was to "inflate the value of lawsuits against named parties *and their insurers*

to secure larger settlement payouts." Compl. ¶ 26 (emphasis added); *see also id.* ¶ 66. Thus, any "direct" victim of Uber's alleged scheme are the "insurance carrier[s]" of the named parties in the underlying cases that actually paid any settlements or verdicts, not Uber, which admits it paid no settlements or verdicts.[9] Further these verdicts and settlements paid by the insurers for the cases Uber cites in their Complaint would dwarf any attorney's fees and costs Uber allegedly spent to defend the cases for the limited period from initiation of a lawsuit until it was voluntarily dismissed. And, Uber does not even allege it "paid" those fees, but only "incurred" them. Compl. ¶ 146. The reasonable inference drawn is that its insurance carriers pay Uber's fees and costs as well. Because there is a more "immediate victim [] better situated to sue," Uber's indirect injuries do not demonstrate proximate causation. *Knopick*, 121 F. Supp. 3d at 464 ("[W]here the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims…there is no need to broaden the universe of actionable harms to permit RICO suits by parties who have been injured only indirectly."); *see also Kovalev v. Stepansky*, 2020 WL 553843, at *4 n.3 (E.D. Pa. Feb. 4, 2020) ("It is not enough for [plaintiff] to allege that his insurance company paid out more than it had to pay without the alleged RICO violations; this does not constitute financial loss to him."); *Dental Wizard G PC v. Aranbayev*, 2018 WL 6268298, at *3 (E.D. Pa. Nov. 30, 2018) ("[P]laintiffs were not the targets of the pleaded mail fraud…Instead, the alleged RICO predicate acts of defendants targeted patients, insurers, third-party payors, and dentists employed by defendants…As the direct victims of the described schemes, the patients, insurers and third-party payors, and dentists are in a better position to vindicate the policies underlying RICO than plaintiffs.").

---

[9] Yet, without explanation, Uber appears to be seeking repayment of those settlements and verdicts that it did not pay in its recent ███████ settlement demand in this case, which Uber provided to the Court in its recent status report.

Uber was not without remedy in any of the underlying cases. To the extent the allegations in the Complaint are true (and they are not), Uber could have brought *Dragonetti* wrongful use of civil proceedings actions, in which fees and costs are recoverable. *See* 42 Pa. C.S. §§ 8351(a); 8353(3). Uber could have also sought fees and costs in the underlying cases under 42 Pa. C.S. § 2503(9) (permitting counsel fees as part of taxable costs where "the conduct of another party in commencing the matter … was arbitrary, vexatious or in bad faith"). Uber did not seek such fees and costs in the underlying cases, because none of the underlying cases were brought in bad faith.

Rather than properly utilize state court proceedings to redress its alleged injuries, Uber instead chose to rely on an inapplicable federal statute, RICO, in this case. But that statute strictly requires proximate causation, and Uber has failed to adequately plead that requirement. Therefore, the Complaint should be dismissed with prejudice for lack of RICO standing.

C.     **The Simon Defendants' Litigation Activities Are Not Predicate RICO Acts and All other Predicate Acts Are Not Adequately Pled.**

Not only does Uber fail to plead the proximate causation needed to establish RICO standing, Uber also fails in another fundamental respect: by alleging no RICO predicate acts.

The Complaint states that the Simon Defendants' "[p]attern of [r]acketeering [a]ctivity" was making "numerous materially false statements knowingly, and with reckless disregard for the truth, in demand letters and litigation documents." *Id.* ¶ 158 (emphasis added). Notably, again bound by Rule 11, Uber does not allege the use of any *pre-suit* demand letters, because the Simon Defendants sent none. All alleged mail and wire fraud undertaken by the Simon Defendants took place in litigation. *See* Compl. ¶ 161(a) (filing complaint and serving complaint); 162(a) (filing complaint and serving complaint); 163(a) (filing complaint and serving complaint); 164(a) (filing complaint); 165(a) (filing complaint).

The predicate acts alleged to have been taken by the other defendants all involve the

preparation of medical reports used in those litigations. Indeed, the quote by Judge McHugh referenced *three times* in the Complaint – purportedly serving as Uber's proof of a "scheme" – states that the challenged medical reports are "litigation documents." Compl. ¶¶ 9, 63, 136.[10]

But "it is well established that fraudulent litigation activity cannot act as a predicate offense for a civil-RICO claim." *Applebaum v. Fabian*, 2022 WL 17090172, at *1 (3d Cir. Nov. 21, 2022) (affirming dismissal of RICO claim "premised on Appellees' alleged misrepresentations throughout state court proceedings"); *see also Nolan v. Galaxy Scientific Corp.*, 269 F. Supp. 2d 635, 643 (E.D. Pa. 2003) (holding "the filing of litigation documents known to contain falsehoods" does not "constitute predicate acts under RICO" because "[s]uch a decision would have sweeping consequences"). Thus, the Complaint can and should be dismissed in its entirety, with prejudice, for this reason alone.

In the meet and confer process for this Motion to Dismiss, Uber disregarded the Third Circuit's *Applebaum* decision and its holding that fraudulent litigation acts cannot serve as a predicate offense for a RICO claim as "non-precedential." But *Applebaum* cites cases throughout the country standing for this "well established" principle: *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018) (holding that "allegations of frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act" because it would "spawn a retaliatory action" for every unsuccessful lawsuit and "inundate federal courts with procedurally complex RICO pleadings"); *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 525 (5th Cir. 2016) ("allowing such charges would arguably turn many state-law actions for malicious prosecutions into federal RICO actions"); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088 (11th Cir. 2004)

---

[10] As set forth above, the Simon Defendants object to the Complaint's references to impertinent sanctions opinions as a transparent attempt to bias this Court against them.

(deciding that the "alleged conspiracy to extort money through the filing of malicious lawsuits" were not predicate acts of extortion or mail fraud under RICO); and *Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003) (deciding that meritless litigation is not a predicate act of extortion under RICO). *See also I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265, 267-68 (8th Cir. 1984) ("[L]itigation is as American as apple pie. If a suit is groundless or filed in bad faith, the law of torts may provide a remedy. Resort to a federal criminal statute is unnecessary."); *Domanus v. Locke Lord LLP*, 847 F.3d 469, 483 (7th Cir. 2017) ("there are many tools available to discipline lawyers who foment frivolous litigation," and the "path to relief…is not through RICO"); *Gabovitch v. Shear*, 70 F.3d 1252 (table), 1995 WL 697319, at *2 (1st Cir. 1995) ("proffering false affidavits and testimony to [a] state court" does not constitute a predicate act of extortion or mail fraud under RICO). The Court should reject Uber's glib dismissal of this nationwide law.

Uber relies on *United States v. Console*, 13 F.3d 641 (3d Cir. 1993), *United States v. Eisen*, 974 F.2d 246 (2d Cir. 1992), and *State Farm Mut. Auto Ins. Co. v. Rosenfeld*, 683 F. Supp. 106 (E.D. Pa. 1988) to argue that lawyers defrauding insurance companies with inflated medical bills can constitute racketeering activity. First, and unlike here, *Console* and *Eisen* are both <u>criminal</u> RICO cases to which the long line of caselaw above does not apply. *See United States v. Koziol*, 993 F.3d 1160, 1174 (9th Cir. 2021) (distinguishing *Kim*, *Snow*, *Deck*, *Vemco*, and *I.S. Joseph* as "cases [that] turn on the scope of civil liability under RICO and related policy concerns" like "ensuring access to the courts, promoting finality, and avoiding collateral litigation" that do not apply to criminal cases). Further, none of these cases help Uber. *Console* did not involve *litigation* activity at all. The defendants were convicted of submitting fraudulent claims to their clients' *own* insurance companies "pursuant to New Jersey's No-Fault law." *Console*, 13 F.3d at 648. *Eisen* clearly states that "Congress did not wish to permit instances of federal or state court perjury as

20

such to constitute a pattern of RICO racketeering acts" and that "it will not be the fact of the perjuries alone that suffices to bring the matter within the scope of RICO." *Eisen*, 974 F.2d at 254. And *Rosenfeld* involved "fictitious" accidents, which are not alleged here. 683 F. Supp. at 108. Further, the defendant in *Rosenfeld* previously pled guilty to mail fraud in conjunction with the alleged scheme, which precluded him from disputing having committed mail fraud in the follow-on civil case. *Id.*

Uber also argued in the meet and confer process that the cases *Applebaum* relies upon make an exception for witness bribery. However, that exception does not apply here for the simple reason that Uber **did not plead bribery as a predicate act**. Instead, the Complaint only references the wire fraud (18 U.S.C. § 1343) and mail fraud (18 U.S.C. § 1341) statutes. Nor does Uber allege any facts establishing violation of the federal bribery statute.

The Complaint references bribery only in passing, and only in a conclusory way. Stringing together the few paragraphs that even use the term "bribe," the Complaint alleges only that "Burt is compensated directly or indirectly by Marc Simon and Simon & Simon" and that "such compensation operates as a bribe" to "induce Burt to produce fraudulent records." Compl. ¶¶ 5, 40. Conclusorily stamping conduct "bribery" does not make it so. *See Gochin v. Haaz*, 2017 WL 4475973, at *8 (E.D. Pa. May 10, 2017) (rejecting conclusory bribery allegations). The Complaint does not allege facts showing any corrupt agreement between the Simon Defendants and Burt, including: the amount paid to Burt; how any such payment originated from the Simon Defendants (either "directly or indirectly"); Burt's acceptance of any offer; or what the terms were of any such agreement (i.e. what specifically Burt agreed to do in exchange for such payment). These missing allegations are critical to sufficiently plead bribery as a RICO predicate act. *Compare Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 78 (E.D.N.Y. 2020) (dismissing RICO action and finding

predicate acts premised on 18 U.S.C. § 201 inadequately pled because "plaintiff fails to provide any examples of suspect reimbursements that would warrant the plausible inference of a bribe to secure or influence [witness's] testimony"), *with Feld Ent. Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 319 (D.D.C. 2012) (finding bribery under 18 U.S.C. § 201(b)(3)-(4) adequately pled as RICO predicate act where plaintiff "alleges that the defendants paid [fact witness] approximately $200,000 in order to influence [him] to participate in the lawsuit…").

Further, the "smoking gun" email that Uber references in Paragraphs 4 and 36 of the Complaint says nothing about payment to Dr. Burt or any quid pro quo. Uber pleads no facts about this email to draw any reasonable inference about it other than what it shows—the Simon Defendants' clients are being evaluated for certain treatments. The email does not say "Simon & Simon instruct[ed] Burt to perform specific procedures on specific patients at specific times" (Compl. ¶ 4) or that "in exchange for…providing unnecessary treatment, Burt is compensated directly or indirectly by Marc Simon and Simon & Simon" (Compl. ¶ 5). Because Uber does not plead bribery in a non-conclusory way (let alone as a predicate act), the witness bribery exception to *Applebaum* does not apply.

Regardless, the Simon Defendants' acts are not bribery. As zealous advocates, the Simon Defendants try to maximize their clients' recoveries for real, legitimate injuries, as any lawyer would. Indeed, insurance defense lawyers pursue the inverse objective—to *minimize* claims to maximize their clients' profits. *See Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 183 (E.D.N.Y. 2010) (recounting the dismissal of RICO claims and sanctions awarded in the plaintiffs' prior case "against two lawyers, their respective law firms, a consulting doctor, and two insurance adjustment agents…alleging that the [] defendants engaged in a

fraudulent scheme to maximize the insurance company's profits by 'systematically deny[ing] coverage, delay[ing] settlement, and compel[ing] claimants…to litigate.").

Finally, to the extent that this Court finds that any alleged predicate acts are outside of litigation, they are inadequately pled. Mail and wire fraud requires "(1) a scheme to defraud, (2) use of the mail or interstate wires to further that scheme, and (3) fraudulent intent." *Bonavitacola*, 87 F. App'x at 231. "In order to plead mail or wire fraud as a predicate act, as to which each defendant must have participated two or more times, plaintiffs must allege facts giving rise to a strong inference of scienter on the part of each defendant." *McHale v. NuEnergy Grp.*, 2002 WL 321797, at *4 (E.D. Pa. Feb. 27, 2002)

The Complaint pleads no facts showing that the Simon Defendants knew statements in their litigation documents were false. The Complaint only conclusorily alleges that they "made numerous materially false statements knowingly, and with reckless disregard for the truth, in demand letters and litigation documents" and "directed the production of these statements knowingly, and with reckless disregard for the truth." Compl. ¶ 158.

To the extent that the *doctor Defendants'* reports were false or described "unnecessary treatment", that only bears on the intent to defraud of the other defendants' and/or Simon's clients that underwent the alleged "unnecessary" treatment. Uber apparently asks this Court to draw a conclusion that *all* defendants and all the claimants shared intent to defraud—and all had knowledge of falsity—based only on parallel conduct amongst the separate Defendants. For example, Uber pleads that the Premier Pain Defendants created fraudulent medical records because Dr. Burt uses the same language in his reports regarding his treatment rationale (but pleads no other facts to rule out that these patients may have needed the same treatment and does not include the claimant patients in this fraud lawsuit). Compl. ¶¶ 38-39. Uber also pleads that Philadelphia

23

Spine Defendants did not actually treat the claimants based on when records are prepared and signed (but pleads no other facts to demonstrate that when the records were prepared and signed necessarily indicates the time when the claimants were treated or the intent or involvement of any of the claimants in the alleged falsified treatment). Compl. ¶ 47. Uber then pleads Defendant Yarus "produce[s] false reports" that "invariably confirm the existence of serious, permanent injuries and recommend extensive, lifelong medical care" because the reports have "substantially similar language" and "draw[] virtually the same" conclusion. Compl. ¶¶ 53-56. These instances of parallel conduct cannot be taken together to show any sort of intent to defraud by any one defendant, let alone all. *Chaleplis v. Karloutsos*, 579 F. Supp. 3d 685, 708 (E.D. Pa. 2022); *Zoria v. Mazzocone*, 1996 WL 165509, at *3 (E.D. Pa. Mar. 29, 1996). Further, other defendants' misdiagnoses or inaccurate appointment records certainly do not create a "strong inference" that the *Simon Defendants'* had any sort of intent to defraud. Indeed, the Simon Defendants are not licensed doctors capable of second guessing the medical findings and opinions in these reports and the Simon Defendants certainly did not control the free will and informed consent that each of the individual claimants exercised when they underwent these procedures.

For these reasons, no predicate acts are adequately alleged and the failure to adequately allege them only further shows that all acts are litigation activities not actionable under RICO.

### D.     *Noerr-Pennington* Bars Uber's Claims.

The rationale for *Applebaum*'s clear rule that litigation activities do not constitute RICO predicate acts is further set forth in the *Noerr-Pennington* doctrine, which protects litigants' First Amendment rights to petition the government for redress. *See E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965). Under *Noerr-Pennington*, "those who petition any government department for redress are generally immune from statutory liability for said petitioning conduct, including litigation."

*Davis v. Bank of America, N.A.*, 2014 WL 12778833 at *1 n. 1 (E.D. Pa. Aug. 11, 2014). "Although the *Noerr-Pennington* doctrine originally applied to antitrust cases, courts have expanded its application to other contexts," including RICO. *Id.* Where, as here, "a plain reading of the Complaint shows that…alleged unlawful activity took place for the sole purpose of effectuating…litigation," the RICO claim is barred by *Noerr-Pennington*. *Id.*

*Noerr-Pennington*'s "very narrow" exception for "sham litigation" is not present here. *Trustees of University of Pennsylvania v. St. Jude Children's Research Hosp.*, 940 F. Supp. 2d 233, 247 (E.D. Pa. 2013). Litigation is a "sham" if it is: "(1) objectively baseless and (2) subjectively motivated to interfere with business competition by using a governmental procedure as 'an anticompetitive weapon.'" *Simon Property Grp., Inc. v. Palombaro*, 682 F. Supp. 2d 508, 510-11 (W.D. Pa. 2010). "If a party has probable cause to file a lawsuit, that lawsuit cannot be 'sham litigation.'" *Id.* Here, the allegations are that the cases involve "marginal" and "low-value" claims—not that they lack probable cause in the first place (like staged accidents). Compl. ¶¶ 2, 3, 68. Indeed, the Complaint concedes that "in most of these cases, emergency records reflect a diagnosis of a minor injury." Compl. ¶ 44. Thus, the sham litigation exception does not apply. Regardless, the Complaint does not allege sham litigation. It references "sham litigation" only about claims "against other defendants" without any specific mention of who those other defendants are, which are irrelevant. Compl. ¶ 8. Finally, Claimants J (James Drayton), F (Jazmyn Coriano) and AA (Racquel Sullivan) are cases that resulted in jury verdicts for plaintiff, meaning the actions were definitionally not "shams." *See Arthrocare Corp. v. Smith & Nephew, Inc.,* 2004 WL 896002, at *4 (D. Del. Mar. 10, 2004) ("a jury verdict in plaintiff's favor proved the litigation had merit" and was therefore not a sham). Thus, on the face of the Complaint, the exception does

not apply and *Noerr-Pennington* requires dismissal.[11]

**E.** **Uber's Claims are Barred by Releases in Settlements that It Cannot Partially Rescind.**

████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████        ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████    ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████    *see also Kelly v. Peerstar LLC*, 2023 WL 4785511, at *3 (3d Cir. July 27, 2023) (integration clause stating that settlement was the parties' "entire agreement and understanding" and "supersede[d] all prior…agreements" was fraud-insulating). ████████████████

██████████████████████████████████████ *See Gordon v. Pasquarello*, 2023 WL 2505538, at *28 (E.D. Pa. Mar. 14, 2023) ("integration clause with a fraud-insulating provision" made misrepresentations prior to agreement "not a recognizable fraud predicate offense under the RICO statute.").

████████████████████████████████████████████████████

---

[11] Uber claims *Noerr-Pennington* is an affirmative defense that cannot be decided on a motion to dismiss. This argument is meritless. *See Trustees*, 940 F. Supp. 2d at 241-243 ("when there is no dispute over the predicate facts of the underlying legal proceeding, a court may decide probable cause [and thus *Noerr-Pennington* applicability] as a matter of law") (alternation in original) (quoting *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 63 (1993)). Here, even taking the allegations as true, the exception does not apply.

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████ *Lingle v. PSB Bancorp., Inc.*, 123 F. App'x 496, 500 (3d Cir. 2005) ("Under Pennsylvania law, partial rescission of contracts is not allowed."). Further, an attempt in this Court to rescind a settlement reached in another court is an improper use of a RICO proceeding. *Sarpolis*, 26 F. Supp. 3d at 425 (rejecting RICO claim "to the extent Plaintiff [was] seek[ing] to rescind [a] settlement" allegedly "reached through fraudulent actions"). If Uber ██████████████████████ ██████████████████ then it must move to rescind the settlements in the underlying cases in full, and proceed in trying the cases before a jury.

**F.     <u>Res Judicata Bars Uber's Claims.</u>**

RICO claims premised on other completed litigations like the ones here are often foreclosed by res judicata. *See, e.g.*, *Hua v. Lehman XS Tr. Mortg. Pass-Through Certificates, Series 2007-7N*, 2017 WL 5473458, at *6 (E.D. Pa. Nov. 14, 2017) (Kearney, J.) (dismissing complaint with RICO claims challenging earlier state court proceedings, finding plaintiffs were "barred from relitigating their claims under *res judicata*"). A claim is precluded under res judicata where there is "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Id.* at *3.

**1.   Final Judgment.**

Most of the cases referenced in the Complaint are subject to final judgments by way of either settlement (Claimants C, D, E, G, H, I, K, M, and BB) or verdict (Claimants B, F, J, and AA). Both the verdicts and settlements are final judgments on the merits for purposes of claim preclusion. *Khalil v. Travelers Indem. Co. of Am.*, 273 A.3d 1211, 1226 (Pa. Super. 2022)

("[m]arking a case settled, discontinued and ended has the same effect as the entry of judgment" for purposes of res judicata); *Pac-W. Distrib. NV LLC v. AFAB Indus. Servs., Inc.*, 2022 WL 717276, at *3 (E.D. Pa. Mar. 10, 2022) ("A judgment entered with prejudice pursuant to a settlement is a final judgment on the merits for purposes of res judicata…Courts 'apply res judicata and claim preclusion as a consequence of settlement agreements because by doing so we encourage settlements and serve the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that prevent relitigation of settled questions at the core of' a dispute.") (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 281 (3d Cir. 2014)).

### 2. Same Parties or their Privies.

Uber cannot avoid res judicata by arguing that the Simon Defendants were not parties in the underlying actions because they are in privity with the parties in those actions. *See Lewis v. O'Donnell*, 674 F. App'x 234, 237 n.5 (3d Cir. 2017) (affirming dismissal of RICO claim for res judicata and finding attorneys in privity with their client in the prior action); *Waris v. Mackey*, 2009 WL 4884204, at *8 (E.D. Pa. Dec. 15, 2009) (attorneys of client in prior action were in privity with the client for purposes of res judicata); *Khalil v. Travelers Indem. Co. of Am.*, 273 A.3d 1211, 1228 & n.10 (Pa. Super. 2022) (lawyers sued for "committing misconduct in prior lawsuits while serving as counsel to the parties" are in privity with their clients for purposes of res judicata). Therefore, res judicata applies and Uber cannot now litigate (or relitigate) claims and issues that could have been (or were) raised in the underlying proceedings.

Similarly, Uber cannot claim that res judicata does not apply because it was dismissed prior to the cases being resolved by either settlement or verdict. For all of the cases settled, ███████ ███████████████████████████ For the cases that went to verdict, Uber was still a named party in that suit. Regardless, Uber is also in privity with its drivers who had the verdicts entered against them because they shared the same legal interests. *See Robinson v. Fye*, 192 A.3d 1225, 1234 (Pa.

Commw. Ct. 2018) ("Overall, privity between parties lies when there exists "mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right."); *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.,* 571 F.3d 299, 312-13 (3d Cir. 2009) (listing as one basis for privity "the nonparty was adequately represented by someone with the same interests who [wa]s a party").

### 3.  Same Cause of Action.

The underlying cases and Uber's RICO action raise the same cause of action because they are premised on "an essential similarity of the underlying events." *Kornafel v. United States Postal Serv.*, 784 F. App'x 842, 843 (3d Cir. 2019). Uber could have asserted fraud defenses or counterclaims in the underlying cases, and the Complaint pleads no reason why Uber did not do so. *See Khalil*, 273 A.3d at 1227 ("Under res judicata principles, since Appellant could have raised fraud on these occasions, her failure to take advantage of these opportunities precludes her from alleging fraud in the present case…").

Under both federal and Pennsylvania law, these final judgments bar this Court's consideration of claims and issues that were *or could have been raised* in the underlying matters. *Ezekoye v. Ocwen Fed. Bank FSB*, 179 F. App'x 111, 113 (3d Cir. 2006) (affirming dismissal of RICO claim based on alleged fraud in underlying mortgage foreclosure litigation and stating: "As these claims could have been raised in Ezekoye's state court complaint, they are barred by the doctrine of claim preclusion."); *In re Coatsville Area Sch. Dist.*, 664 Pa. 371 (2021) ("[R]es judicata, or claim preclusion, prohibits parties involved in prior, concluded litigation from subsequently asserting claims in a later action that were raised, or could have been raised, in the previous adjudication."). Any cases that the claimants won at trial necessarily resulted in findings of fact adverse to Uber's theory that the cases were meritless, so both claim and issue preclusion apply to those judgments and foreclose Uber's contrary position now.

Further, the *relief* Uber now seeks (fees and costs incurred in the underlying cases) is also barred. Primarily, "claims for attorneys' fees, whether triggered by contract or statute, are generally considered a part of the same cause of action as the underlying liability question." *SupplyOne, Inc. v. Triad Packaging, Inc.*, 2014 WL 3676524, at *4 (E.D. Pa. July 24, 2014). Therefore, res judicata and collateral estoppel foreclose Uber from raising issues like fees and costs that were or could have been raised in the underlying actions. *See Burger King Corp. v. New England Hood & Duct Cleaning Co.*, 2001 WL 283161, at *2 (E.D. Pa. Mar. 21, 2001) ("A claim against an adverse party for attorneys' fees and costs that were incurred in the prosecution of a substantive claim is part of the same cause of action as that underlying the substantive claim…Thus, it is barred by the doctrine of claim preclusion."). Simply put, if Uber wanted to recover its fees and other defense costs in the underlying suits, it should have sought them in those cases. *See* 42 Pa. C.S. § 2503(9) (authorizing recovery of fees as part of taxable costs where "the conduct of another party in commencing the matter … was arbitrary, vexatious or in bad faith").

Therefore, Uber's claims and requested relief are barred by res judicata.

### G. *Rooker-Feldman* Bars Uber's Claims.

Uber's claims must also be dismissed under the *Rooker-Feldman* doctrine, which "strips federal courts of jurisdiction over controversies that are essentially appeals from state court judgments." *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014). Uber's present action attempts to do just that, as many of the underlying state cases that Uber challenges in the Complaint resulted in jury verdicts for the plaintiff or settlements leading to final judgments.

*Rooker-Feldman* applies when "(1) the federal plaintiff lost in state court; (2) the plaintiff complain[s] of injuries caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Hua*, 2017 WL 5473458, at *3 (quoting *Great W. Mining & Mineral*

*Co. v. Fox Rothschild LLP*, 615 F.3d 159, 164 (3d Cir. 2010)).

Uber's Complaint clearly challenges final judgments (verdicts and settlements) entered in state court that were rendered before the present action was filed. Uber also plainly seeks this Court's review and rejection of those judgments. Notwithstanding its request for this Court's de facto appellate review of numerous state court cases, Uber argues that *Rooker-Feldman* does not apply because *Uber* was not a "loser" in those state courts due to it being voluntarily dismissed in each case prior to verdict or settlement. However, the *nature* of Uber's claims would require the Court to determine that the state jury verdicts were wrong and that the final judgments pursuant to the settlements were void. This runs afoul of *Rooker-Feldman*. *See ITT Corp. v. Intelnet Int'l Corp.*, 366 F.3d 205, 210 (3d Cir. 2004) ("If the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling, then the issues are inextricably intertwined and the district court has no subject matter jurisdiction to hear the suit."); *Trapp v. AMS Servicing LLC*, 616 F. App'x 46, 47 (3d Cir. 2015) (affirming district court's dismissal "under *Rooker–Feldman* because the requested federal relief would necessarily imply that the Superior Court's decision was erroneous."). It also does not matter that the Simon Defendants were not parties in those cases, all that matters is that *Uber* was. *Bass v. Butler*, 116 F. App'x 376, 385 (3d Cir. 2004) ("[T]he *Rooker-Feldman* doctrine only requires identity of the party against whom the doctrine is being invoked.").

Accordingly, both this Court and the Third Circuit have barred RICO claims that necessarily require a rejection of state court judgments under *Rooker-Feldman*. *See Hua*, 2017 WL 5473458, at *3 (barring RICO claim premised on state foreclosure action under *Rooker-Feldman* because "the requested federal relief would necessarily imply that the Superior Court's decision was erroneous"); *Purpura v. Bushkin, Gaimes, Gains, Jonas & Stream*, 317 F. App'x 263, 265 (3d

Cir. 2009) (RICO action challenging state court divorce judgment was "precisely the kind of action that the *Rooker-Feldman* doctrine is designed to preclude"); *Silverberg v. City of Philadelphia*, 87 F. App'x 152, 155 (3d Cir. 2021) (rejecting RICO claim under *Rooker-Feldman* as a "backdoor attack on adverse state-court judgments"). This Court should do the same here and bar Uber's claims under *Rooker-Feldman.*

To the extent that Uber is not deemed a state court "loser" then that only shows its injuries were not proximately caused by any alleged misrepresentations as set forth in Section B *supra*. In fact, its position that it did not "lose" in these cases is the death knell to any argument that it relied on alleged misrepresentations.

Ultimately, with Uber's fraud allegations in the cases that settled and went to verdict barred by the above doctrines, and with four cases in suit where Uber's remedy is to bring its fraud allegations in those active cases, Uber can point to only one case, Claimant B (Yasmeen Bailey), that resulted in a defense verdict where neither Uber nor anyone alleged fraud. That cannot support an alleged RICO "scheme."

### H.    Uber Fails to Adequately Allege Conduct of an Enterprise.

Uber's claims separately fail for its inadequate allegations establishing any RICO enterprise.Uber alleges the existence of three alternative enterprises: 1) the "Simon & Simon Enterprise" (Count I); 2) the "Premier Pain & Rehab Center Enterprise" (Count II); and 3) an "Association-in-Fact Enterprise" (Count III). None of these alleged enterprises is adequately pled.

First, the "Simon & Simon Enterprise" and "Premier Pain & Rehab Center Enterprise" are not RICO enterprises because those entities are alleged to have conducted the racketeering. Compl. ¶ 2 ("The scheme in question is orchestrated and directed by Marc Simon **and the Simon & Simon law firm**."); ¶ 139 ("Burt, **Premier Pain & Rehab Center**, and Yarus are often critical to these other cases as well, conspiring with Marc Simon and Simon & Simon to diagnose non-existent

serious injuries."); ¶ 140 ("The fraudulent documents produced by Defendant **Premier Pain &**

**Rehab Center** and Defendant Burt are crucial to advancing **Simon & Simon's** scheme."). This

indistinction between "person" and "enterprise" fails RICO. *Macauley v. Est. of Nicholas*, 7 F.

Supp. 3d 468, 481-82 (E.D. Pa. 2014) (party "cannot allege RICO claims against a

company…where the company is the enterprise"); *J-M Manufacturing Co. v. Simmons Hanly*

*Conroy, LLP*, 2025 WL 843854, at *7 (N.D. Ill. Mar. 18, 2025) (law firm not enterprise where

"entire Complaint is based on [firm] being part of an enterprise, rather than the enterprise itself").

In tacit recognition of this, Uber alleges the existence of a separate "Association-in-Fact"

enterprise "distinct from the culpable persons and their respective corrupt activities." Compl. ¶

153. This Court has previously set forth the elements of an "association-in-fact" enterprise:

> (1) "some sort of structure ... within the group for the making of decisions,
> whether it be hierarchical or consensual. There must be some mechanism for
> controlling and directing the affairs of the group on an on-going, rather than
> ad hoc, basis"; (2) the associates must "function as a continuing unit, meaning
> each person performs a role in the group consistent with the organizational
> structure established by the first element and which furthers the activities of
> the organization"; and (3) the association must be "an entity separate and apart
> from the pattern of activity in which it engages."

*T. Levy Assocs., Inc. v. Kaplan*, 2016 WL 10920370, at *1 (E.D. Pa. Nov. 16, 2016) (Kearney, J.)

(quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 365 (3d Cir. 2010)).

First, the Complaint does not plead a structure. Structure requires "a purpose, relationships

among those associated with the enterprise, and longevity sufficient to permit these associates to

pursue the enterprise's purpose." *Schwartz v. Laws. Title Ins. Co.,* 970 F. Supp. 2d 395, 402 (E.D.

Pa. 2013) (citing *Boyle v. United States*, 556 U.S. 938, 940 (2009)). The complaint fails to plead a

shared purpose between the Defendants and alleges only parallel conduct among them. *See supra*

at 23-24. Parallel conduct is insufficient under RICO, which does not cover "hub and spoke"

enterprises that lack a "unifying rim." *See In re Ins. Brokerage.,* 618 F.3d at 374-75; *see also*

*Schwartz*, 970 F. Supp. At 404 ("the allegations implied parallel conduct between the insurers with no common purpose among them, rather than the concerted action as required by *Boyle.*"). Indeed, the amount of other non-defendants purportedly in on this scheme—eighteen separate clients who brought eighteen separate fraudulent claims and the Emergency Medical Technicians, hospitals and ER doctors who would have had to fraudulently treated all of them before the Defendant Doctors ever issued their reports—only demonstrates the existence of an improper hub and spoke enterprise. *See Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 302 (E.D.N.Y. 2017) ("plaintiff's inclusion of non-defendants in the alleged ACH Network Enterprise is emblematic of a 'hub and spokes' enterprise structure that other courts have consistently and correctly rejected").

Second, the Complaint does not plead a continuing unit that functions to achieve a common purpose. A system of referrals that the parties engage in for their own benefit—even if mutually beneficial—is not a RICO enterprise. *See Mega Concrete, Inc. v. Smith*, 2011 WL 1103831, at *10 (E.D. Pa. Mar. 24, 2011) ("there are no facts to support a reasonable inference that any of the moving defendants engaged in activities constituting 'participation' in the affairs of the enterprise, as opposed to simply their own ostensibly legitimate business affairs."); *Freedom Med., Inc. v. Gillespie,* 2013 WL 2292023, at *17 (E.D. Pa. May 23, 2013) ("Individuals' separate and uncoordinated commission of RICO predicate acts does not automatically create an enterprise.").

Finally, the association is not separate from the alleged misconduct. In addressing this prong, "it is [the] normal practice to determine if the enterprise would still exist were the predicate acts removed from the equation." *T. Levy*, 2016 WL 10920370 at *2. The Complaint alleges that the enterprise was "constructed" ***in order to*** conduct the alleged predicate acts. Compl. ¶ 26. Indeed, the Complaint pleads that Dr. Burt is only involved "because he has few if any other options to legitimately earn a living as a pain management physician due to his lengthy legal and

regulatory history" (Compl. ¶ 141) and that Dr. Yarus is only involved for his "willingness to produce false reports that align with the narrative advanced by Simon & Simon…" Compl. ¶ 52. Because Uber alleges that the enterprise exists only for the purpose of the alleged misconduct, the requisite separation for RICO purposes does not exist here.

For all of these reasons, the Complaint fails to plead any "association-in-fact" enterprise.

### I.     <u>Uber Fails to State a RICO Conspiracy Claim in Count IV.</u>

Uber's claim alleging a conspiracy to violate RICO fails for all the reasons the substantive RICO claims fail. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient."). The RICO conspiracy claim independently fails for lack of: "(1) knowledge of the corrupt enterprise's activities; and (2) agreement to facilitate those activities." *Barbieri v. Wells Fargo & Co.,* 2014 WL 7330461, at *7 (E.D. Pa. Dec. 22, 2014). Here, Uber pleads no facts establishing an "agreement" between the Defendants other than stating: "Defendants did unlawfully, knowingly, and intentionally combine, conspire, and agree together with each other…" Compl. ¶ 194. This is entirely conclusory. At most, the Complaint pleads only "parallel conduct," which does not support an "agreement" for purposes of a conspiracy. *Lewis v. Mainer*, 2016 WL 10956506, at *4 (E.D. Pa. Aug. 23, 2016). Indeed, *Twombly* makes clear that "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 556-57. Therefore, Count IV should be dismissed.

### IV.     <u>CONCLUSION</u>

For any and all of the foregoing reasons, the Simon Defendants respectfully request that the Court grant the Motion and dismiss the Complaint with prejudice and without leave to amend.

## CERTIFICATE OF SERVICE

I, Daniel E. Rhynhart, hereby certify that on December 12, 2025, a true and correct copy of the foregoing was served via ECF on all counsel of record.

*/s/ Daniel E. Rhynhart*
Daniel E. Rhynhart