**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UBER TECHNOLOGIES, INC., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 2:25-cv-05365-MAK |
| SIMON & SIMON P.C., MARC SIMON, | : | |
| CLIFTON BURT, PREMIER PAIN & | : | |
| REHAB CENTER, PC, ETHEL HARVEY, | : | |
| DANIEL PICCILLO, PHILADELPHIA | : | |
| SPINE ASSOCIATES, LLC, AND LANCE | : | |
| YARUS, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' CONSOLIDATED MEMORANDUM OF LAW IN SUPPORT OF
THEIR JOINT MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Pursuant to the Court's February 4, 2026 Order (ECF 81), Defendants, through each of their respective undersigned counsel, respectfully submit this Consolidated Memorandum of Law in support of their Joint Motion to Dismiss Plaintiffs Uber Technologies, Inc. ("Uber") and Federal Express Corporation's ("FedEx") Amended Complaint.

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   ARGUMENT ..............................................................................................................6

    A.    The *Noerr-Pennington* Doctrine Bars Uber's and FedEx's Claims. .......................6

        1.    All Conduct Alleged in the Amended Complaint Is Protected Petitioning Activity Impermissibly Burdened by Plaintiffs' RICO Claims. ................7

        2.    The Sham Litigation Exception Is Not (and Cannot Be) Pled. ...................9

            a.    The Underlying Cases Were (and Are) Not Objectively Baseless. ....................................................................................10

            b.    The Underlying Cases Were (and Are) Not Subjectively Baseless. ....................................................................................11

    B.    The Amended Complaint Should Be Dismissed on Standing Grounds for Failure to Plead Proximate Causation. ...................................................................13

        1.    Plaintiffs' Injuries Were Not Caused By Reliance on Misrepresentations. ....................................................................................14

            a.    Cases Uber and FedEx Have *Not* Settled. ......................................16

            b.    Settled Cases Where Plaintiffs Also Seek "Settlement Costs." .....17

                i.    The Settlements Themselves Are Fraud-Insulating. ...........18

                ii.    Uber Does Not Plausibly Allege It Paid Settlements .........20

                iii.    Any Settlements Uber and FedEx Agreed to Broke the Causal Chain Due to Their Knowledge. ............................21

        2.    Uber's and FedEx's Injuries Are Difficult, If Not Impossible, to Apportion. ...............................................................................................23

        3.    Per the Allegations, Other Parties (*i.e.*, Uber's Drivers' Insurance Carriers) Are Arguably Better Situated to Vindicate Alleged Wrongs. ...................25

        4.    Uber and FedEx Were Not Injured as a Result of any Third Party's Reliance. ...............................................................................................26

    C.    The Simon Defendants' Litigation Activities Are Not Predicate RICO Acts and the Other Defendants' Alleged Acts Are Not Mail or Wire Fraud. ........27

        1.    The Exception for "Bribery" Is Not Met Because Bribery Is Neither Pled as a Predicate Act Nor Plausible Under the Allegations. .........................28

        2.    None of the Defendants' Alleged Predicate Acts Are Pled as Mail or Wire Fraud Under Required Pleading Standards. ...............................................30

        3.    Because the Only "Predicate Acts" Allegedly Committed by Marc Simon Are Filing and Serving Complaints, He Personally Should Be Dismissed. ....................................................................................33

    D.    Uber and FedEx Fail to Plausibly Allege Conduct of an Enterprise. ...................33

E.    Res Judicata Bars Uber's and FedEx's Claims.....................................................36

F.    *Rooker-Feldman* Bars Uber's and FedEx's Claims.............................................38

G.    Uber and FedEx Fail to State a RICO Conspiracy Claim in Count IV.................39

    1.    Knowledge of Corrupt Activities.................................................................39

        a.    The Philadelphia Spine Associates ("PSA") Defendants. .............40

        b.    The Premier Defendants. ...............................................................42

        c.    Dr. Yarus.......................................................................................43

        d.    The Simon Defendants....................................................................44

    2.    Lack of Agreement Between Defendants. ....................................................44

III.    CONCLUSION..............................................................................................................45

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D. Bedell Wholesale Co., Inc. v. Philip Morris Inc.*,
    263 F.3d 239 (3d Cir. 2001)............................................................................8

*Abbott v. Latshaw*,
    164 F.3d 141 (3d Cir. 1998).........................................................................44

*Applebaum v. Fabian*,
    2022 WL 17090172 (3d Cir. Nov. 21, 2022).............................................27, 28, 33

*Armstrong Surgical Center, Inc v. Armstrong County Mem. Hosp.*,
    185 F.3d 154 (3d Cir. 1999).........................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................21, 31, 35

*Barbieri v. Wells Fargo & Co.*,
    2014 WL 7330461 (E.D. Pa. Dec. 22, 2014)...............................................39

*BE & K Constr. Co. v. NLRB*,
    536 U.S. 516 (2002)......................................................................................6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................21, 29, 35, 43, 44

*Biofeedtrac, Inc. v. Kolinor Optical Enters. & Consultants, S.R.L.*,
    832 F. Supp. 585 (E.D.N.Y. 1993)..............................................................35

*Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*,
    87 F. App'x 227 (3d Cir. 2003)....................................................................30

*Boyle v. United States*,
    556 U.S. 938 (2009)......................................................................................34

*Bridge v. Phoenix Bond & Indemnity Co.*,
    553 U.S. 639 (2008).......................................................................14, 23, 26

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*,
    140 F.3d 949 (3d Cir. 1998).........................................................................23

*Burger King Corp. v. New England Hood & Duct Cleaning Co.*,
    2001 WL 283161 (E.D. Pa. Mar. 21, 2001)................................................38

*Campbell v. Pennsylvania Sch. Boards Ass'n*,
972 F.3d 213 (3d Cir. 2020) ................................................................9, 10

*Cedric Kushner Promotions Ltd. v. King*,
533 U.S. 158 (2001) ..............................................................................33

*Central Transp., LLC v. Atlas Towing, Inc.*,
884 F. Supp. 2d 207 (E.D. Pa. 2012) .....................................................14

*Cheminor Drugs, Ltd. v. Ethyl Corp.*,
168 F.3d 119 (3d Cir. 1999) ...................................................................11

*City of Columbia v. Omni Outdoor Advertising, Inc.*,
499 U.S. 365 (1991) ..............................................................................12

*In re Coatsville Area Sch. Dist.*,
664 Pa. 371 (2021) ............................................................................37, 38

*Contreras Madrid v. Wal-Mart Stores, L.P.*,
2025 WL 1698701 (E.D. Pa. June 17, 2025) ...........................................2

*Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*,
758 F. Supp. 2d 153 (E.D.N.Y. 2010) ...............................................17, 30

*Davis v. Bank of America, N.A.*,
2014 WL 12778833 (E.D. Pa. Aug. 11, 2014) ..........................................6

*Deck v. Engineered Laminates*,
349 F.3d 1253 (10th Cir. 2003) ..............................................................28

*Doe v. Princeton Univ.*,
30 F.4th 335 (3d Cir. 2022) ....................................................................40

*Domanus v. Locke Lord LLP*,
847 F.3d 469 (7th Cir. 2017) ..................................................................28

*Drummond v. Zimmerman*,
454 F. Supp. 3d 1210 (S.D. Fla. 2020) ...................................................34

*E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961) ................................................................................6

*Ezekoye v. Ocwen Fed. Bank FSB*,
179 F. App'x 111 (3d Cir. 2006) .............................................................37

*Ford Motor Co. v. Knight Law Group*,
2025 WL 3306280 (C.D. Cal. Nov. 24, 2025) ......................................8, 11

*G. Daniel Glass, O.D. v. Singer Optical Grp., Inc.*,
　1995 WL 717411 (E.D. Pa. Dec. 1, 1995) ................................................................19

*Gabovitch v. Shear*,
　70 F.3d 1252, 1995 WL 697319 (1st Cir. 1995) ......................................................28

*Gochin v. Haaz*,
　2017 WL 4475973 (E.D. Pa. May 10, 2017) ...........................................................29

*Gordon v. Pasquarello*,
　2023 WL 2505538 (E.D. Pa. Mar. 14, 2023) ...........................................................19

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*,
　615 F.3d 159 (3d Cir. 2010) ....................................................................................38

*Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*,
　806 F.3d 162 (3d Cir. 2015) ....................................................................................13

*Holmes v. Securities Investor Protection Corp.*,
　503 U.S. 258 (1992) .................................................................................................14

*Hua v. Lehman XS Tr. Mortg. Pass-Through Certificates, Series 2007-7N*,
　2017 WL 5473458 (E.D. Pa. Nov. 14, 2017) (Kearney, J.) .........................36, 38, 39

*I.S. Joseph Co. v. J. Lauritzen A/S*,
　751 F.2d 265 (8th Cir. 1984) ...................................................................................28

*In re Ins. Brokerage Antitrust Litig.*,
　618 F.3d 300 (3d Cir. 2010) ....................................................................................34

*ITT Corp. v. Intelnet Int'l Corp.*,
　366 F.3d 205 (3d Cir. 2004) ....................................................................................39

*Jackson v. Rohm & Haas Co.*,
　2009 WL 948741 (E.D. Pa. Mar. 20, 2009) ..............................................................7

*Jacovetti Law, P.C. v. Shelton*,
　2020 WL 5211034 (E.D. Pa. Sept. 1, 2020) ..............................................................3

*Jannuzzio v. Danby*,
　2022 WL 2541678 (E.D. Pa. July 7, 2022) ..............................................................30

*Kelly v. Peerstar LLC*,
　2023 WL 4785511 (3d Cir. July 27, 2023) .........................................................18, 19

*Khalil v. Travelers Indem. Co. of Am.*,
　273 A.3d 1211 (Pa. Super. 2022) ............................................................................37

*Kim v. Kimm*,
  884 F.3d 98 (2d Cir. 2018)..................................................................28

*Kimmel v. Phelan Hallinan & Schmieg, P.C.*,
  847 F. Supp. 2d 753 (E.D. Pa. 2012) ............................................14, 17

*Knit With v. Knitting Fever, Inc.*,
  2011 WL 891871 (E.D. Pa. Mar. 10, 2011)........................................44

*Knopick v. UBS Fin. Servs., Inc.*,
  121 F. Supp. 3d 444 (E.D. Pa. 2015) .....................................14, 26, 31

*Kornafel v. United States Postal Serv.*,
  784 F. App'x 842 (3d Cir. 2019) .........................................................37

*Kovalev v. City of Philadelphia*,
  2020 WL 762373 (E.D. Pa. Feb. 14, 2020), *aff'd*, 833 F. App'x 972 (3d Cir.
  2021) ...................................................................................................16

*Kovalev v. Stepansky*,
  2020 WL 553843 (E.D. Pa. Feb. 4, 2020) ...........................................26

*LabMD Inc. v. Boback*,
  47 F.4th 164 (3d Cir. 2022) ................................................................13

*Lawson v. Harriger*,
  2022 WL 2952498 (E.D. Pa. June 23, 2022) .......................................22

*Lewis v. Mainer*,
  2016 WL 10956506 (E.D. Pa. Aug. 23, 2016) .....................................44

*Lewis v. O'Donnell*,
  674 F. App'x 234 (3d Cir. 2017) .........................................................37

*Lightning Lube, Inc. v. Witco Corp.*,
  4 F.3d 1153, 1191 (3d Cir. 1993)........................................................39

*Lingle v. PSB Bancorp., Inc.*,
  123 F. App'x 496 (3d Cir. 2005) ...................................................19, 20

*Lundy v. Hochberg*,
  79 F. App'x 503 (3d Cir. 2003) .....................................................22, 23

*Lynch v. Cap. One Bank (USA), N.A.*,
  2013 WL 2915734 (E.D. Pa. June 14, 2013) .......................................14

*Macauley v. Est. of Nicholas*,
  7 F. Supp. 3d 468 (E.D. Pa. 2014) ......................................................33

*Maio v. Aetna, Inc.*,
    221 F.3d 472 (3d Cir. 2000) ................................................................................ 14

*Malibu Media, LLC v. Doe*,
    238 F. Supp. 3d 638 (M.D. Pa. 2017) ................................................................. 13

*Marangos v. Swett*,
    341 F. App'x 752 (3d Cir. 2009) ........................................................................ 32

*Mega Concrete, Inc. v. Smith*,
    2011 WL 1103831 (E.D. Pa. Mar. 24, 2011) ..................................................... 34

*In re Merck Mumps Vaccine Antitrust Litig.*,
    2024 WL 4432076 (3d Cir. Oct. 7, 2024) .......................................................... 12

*Moss v. BMO Harris Bank, N.A.*,
    258 F. Supp. 3d 289 (E.D.N.Y. 2017) ............................................................... 36

*Mover's & Warehousemen's Ass'n of Greater New York, Inc. v. Long Island*
    *Moving & Storage Ass'n, Inc.*,
    1999 WL 1243054 (E.D.N.Y. Dec. 16, 1999) ............................................. 10, 11

*Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick*,
    587 A.2d 1346 (Pa. 1991) .................................................................................. 20

*Naprstek v. Marriott Int'l*,
    2024 WL 113804 (S.D.N.Y. Jan. 10, 2024) ...................................................... 29

*Nayak v. C.G.A. L. Firm*,
    620 F. App'x 90 (3d Cir. 2015) .................................................................... 18, 21

*Nayak v. McNees Wallace & Nurick LLC*,
    700 F. App'x 172 (3d Cir. 2017) ....................................................................... 19

*Nolan v. Galaxy Scientific Corp.*,
    269 F. Supp. 2d 635 (E.D. Pa. 2003) ........................................................... 37, 33

*Pac-W. Distrib. NV LLC v. AFAB Indus. Servs.*,
    2022 WL 717276 (E.D. Pa. Mar. 10, 2022) ...................................................... 37

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192, 1196 (3d Cir. 1993) .................................................................. 40

*Professional Real Estate Investors v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ...................................................................................... 10, 13

*Purpura v. Bushkin, Gaimes, Gains, Jonas & Stream*,
    317 F. App'x 263 (3d Cir. 2009) ....................................................................... 39

*Raney v. Allstate Ins. Co.*,
  370 F.3d 1086 (11th Cir. 2004) ........................................................................28

*Relevant Group, LLC v. Nourmand*,
  116 F.4th 917 (9th Cir. 2024) ............................................................................9

*Reyes v. Zion First Nat. Bank*,
  2012 WL 947139 (E.D. Pa. Mar. 21, 2012)......................................................39

*Ricoh USA, Inc. v. Innovative Software Sol., Inc.*,
  2020 WL 7024290 (E.D. Pa. Nov. 30, 2020) (Kearney, J.).................................40

*Romero v. Allstate Ins. Co.*,
  2017 WL 3881219 (E.D. Pa. Sept. 5, 2017) (Kearney, J.) ..............................6, 7, 8

*Rose v. Bartle*,
  871 F.2d 331 (3d Cir. 1989)..............................................................................39

*Rothberg v. Marger*,
  2013 WL 1314699 (D.N.J. Mar. 28, 2013)...........................................................3

*Sarpolis v. Tereshko*,
  26 F. Supp. 3d 407 (E.D. Pa. 2014), *aff'd*, 625 F. App'x 594 (3d Cir. 2016) .............20, 24, 25

*Shelton v. Chaudhry*,
  763 F. Supp. 3d 675 (E.D. Pa. 2025) ....................................................................2

*Smith v. Berg*,
  247 F.3d (3d. Cir. 2001)....................................................................................39

*Snow Ingredients, Inc. v. SnoWizard, Inc.*,
  833 F.3d 512 (5th Cir. 2016) .............................................................................28

*Sosa v. DIRECTV, Inc.*,
  437 F.3d 923 (9th Cir. 2006) .......................................................................7, 8, 9

*State Farm Mut. Auto. Ins. Co. v. Abrams*,
  2000 WL 574466 (N.D. Ill. May 11, 2000).........................................................35

*SupplyOne, Inc. v. Triad Packaging, Inc.*,
  2014 WL 3676524 (E.D. Pa. July 24, 2014)........................................................38

*T. Levy Assocs., Inc. v. Kaplan*,
  2016 WL 10920370 (E.D. Pa. Nov. 16, 2016) (Kearney, J.)...........................34, 36

*The Knit With v. Knitting Fever, Inc.*,
  2011 WL 1161716 (E.D. Pa. Mar. 30, 2011), *aff'd*, 625 F. App'x 27 (3d Cir.
  2015) .............................................................................................................44, 45

*Tri-Cnty. Concerned Citizens Ass'n v. Carr*,
2001 WL 1132227 (E.D. Pa. Sept. 18, 2001), *aff'd*, 47 F. App'x 149 (3d Cir.
2002) ..............................................................................................................25

*Trustees of University of Pennsylvania v. St. Jude Children's Research Hosp.*,
940 F. Supp. 2d 233 (E.D. Pa. 2013) ...............................................................9, 13

*Uber Tech., Inc. v. Downtown LA Law Grp, LLP et al.*,
Case No.: 2:25-cv-06612 (C.D. Cal.) ....................................................................1

*Uber Tech., Inc. v. Law Grp. of S. Fla., LLC et al.*,
Case No.: 1:25-cv-22635 (S.D. Fla) .....................................................................1

*Uber Tech., Inc. v. Wingate, Russotti, Shapiro, Moses & Halperin, LLP et al.*,
Case No.: 1:25-cv-00522 (E.D.N.Y.) .....................................................................1

*United Mine Workers of Am. v. Pennington*,
381 U.S. 657 (1965) ..............................................................................................6

*Walter v. Palisades Collection, LLC*,
480 F. Supp. 2d 797 (E.D. Pa. 2007) ...................................................14, 16, 17

*Walther v. Patel*,
2011 WL 382752 (E.D. Pa. Feb. 4, 2011) ...........................................................32

*In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*,
868 F.3d 132 (3d Cir. 2017).................................................................................13

*Yucaipa Am. All. Fund I, LP v. Ehrlich*,
716 F. App'x 73 (3d Cir. 2017) ...........................................................................24

**Statutes**

42 Pa. C.S.
§ 2503(9) ...............................................................................................................5
§ 8351(a) ................................................................................................................5
§ 8353(3) ................................................................................................................5

18 U.S.C.
§ 1341.....................................................................................................................28
§ 1343.....................................................................................................................28
§ 1961 et seq. ............................................................................................... *passim*

Pa. Stat. § 7361(d)...................................................................................................27

**Other Authorities**

Fed. R. Civ. P.
 8.................................................................................................................20
 8(a)(2) .........................................................................................32
 9(b)..........................................................................................5, 30, 32
 11...........................................................................................1, 20
 56.................................................................................................40

Pa. R. Civ. P. 1030...................................................................................5

Phila. Loc. R. 215(A)(5) ..........................................................................27

## I.    __INTRODUCTION__

In the Amended Complaint, Uber doubles down on its scorched earth attacks on a personal injury firm and several medical practices. Although Uber asked to amend its original Complaint to address the flaws that the Defendants identified in their motions to dismiss, it did nothing of the sort. Instead, Uber filed an Amended Complaint that corrects none of its pleading deficiencies—unsurprisingly, because there are no true facts supporting Uber's spurious allegations. Instead, Uber added a new plaintiff, FedEx, with even weaker claims. FedEx complains about only three cases, two of which are still in suit in the Philadelphia Court of Common Pleas. Uber's case actually got weaker by the addition of FedEx's meager complaint.

Disguised as a lawsuit, this proceeding is in reality an Uber business tactic—and a particularly ugly and vicious one at that—to suppress lawsuits arising from careless Uber drivers (or, as Uber now calls them, in an effort to claim the drivers are independent contractors and not employees of Uber, "drivers logged into the Uber application"). Am. Compl. ¶ 66.  In a coordinated series of lawsuits filed in federal courts in New York,[1] Los Angeles,[2] Miami,[3] and now Philadelphia, Uber is attacking lawyers who have filed personal injury lawsuits against Uber and its drivers for auto accidents caused by its drivers.  Uber's strategy is a nuclear one: if you are a lawyer who dares to sue Uber or its drivers (or a doctor who agrees to treat the victims of the Uber drivers' negligence), Uber will destroy your career—call you a fraud, accuse you of criminal conduct, seek "eight figures" in damages, and demand the surrender of your professional license. With bottomless pockets, Uber can file federal Racketeer Influenced and Corrupt Organizations Act ("RICO") lawsuits against personal injury law firms and medical practices, seeking to

---

[1] *Uber Tech., Inc. v. Wingate, Russotti, Shapiro, Moses & Halperin, LLP et al.,* Case No.: 1:25-cv-00522 (E.D.N.Y.).

[2] *Uber Tech., Inc. v. Downtown LA Law Grp, LLP et al.,* Case No.: 2:25-cv-06612 (C.D. Cal.).

[3] *Uber Tech., Inc. v. Law Grp. of S. Fla., LLC et al.,* Case No.: 1:25-cv-22635 (S.D. Fla).

relitigate state court lawsuits that it already lost or paid to settle—without ever arguing or even raising any supposed fraud in the underlying cases—only to roll all of those settlements and losses (and active lawsuits) into a subsequent federal action claiming it was all a criminal conspiracy. There are countless flaws with this lawsuit, which is outrageous, shameful, and a gross departure from civility in the profession. The Amended Complaint should be dismissed in its entirety.

Marc Simon is Uber's Philadelphia target for an obvious reason. Uber views both Mr. Simon and expert witness Dr. Yarus as wounded in this Court, and easy targets, because of two Rule 11 sanctions orders against Mr. Simon and his firm last year, including one that collaterally referenced Dr. Yarus. Those matters are serious, but separate and unrelated, and are being addressed with the utmost care and respect. However, they are irrelevant to the claims in this case. Judge McHugh's opinion in *Shelton v. Chaudhry* related to issues of jurisdiction and venue.[4] Judge Pappert's opinion in *Contreras Madrid v. Wal-Mart Stores, L.P.* related to the Simon Firm naming Wal-Mart managers as defendants and failing to properly review and sign complaints.[5] Judge Pappert specifically noted in his Order that Mr. Simon and his firm had put in place remedial measures to ensure that the issues raised by Judge McHugh did not happen again. Neither order has anything to do with, or even resembles, the outrageous fraud and criminal conspiracy claims that Uber cavalierly lobs against Mr. Simon and the other Defendants. Nonetheless, Uber quotes these orders throughout its Amended Complaint as if the issues are the same, or even related.

Although Uber continues to allege in the Amended Complaint that the Simon Defendants have filed state court cases against Uber and its drivers that are a "fraud," Uber does not treat those state court cases that way. Indeed, between filing the Original Complaint on September 18, 2025

---

[4] 763 F. Supp. 3d 675, 683-84 (E.D. Pa. 2025).
[5] 2025 WL 1698701, at *5-6 (E.D. Pa. June 17, 2025).

and filing the Amended Complaint on January 26, 2026, public docket information shows Uber joined in the settlement of two cases that Uber alleged were fraudulent in the Original Complaint.[6] Worse, public docket information also shows that only days after filing the *Amended Complaint*, Uber joined in settling Claimant A's case—the lead "pattern" case that is first set forth by Uber in *both* the Original Complaint and the Amended Complaint.[7] While Uber and FedEx are telling this Court that they are being defrauded in the Philadelphia Court of Common Pleas, they are at the same time saying nothing about that in the Common Pleas court filings—because it is not true— and instead negotiating settlements and utilizing those settlements in that same state court to procure final judgments. If any "fraud on the court" is being committed, it is being done by Uber.

Regardless, and even taking Uber's baseless allegations as true,[8] this Court should dismiss the Amended Complaint with prejudice. Civil RICO is considered the "litigation equivalent of a thermonuclear device."[9] "[B]ecause the mere assertion of a RICO claim…has an almost inevitable stigmatizing effect on those named as defendants…courts should strive to flush out frivolous RICO allegations at an early stage of the litigation."[10] This Court should flush out Uber's and FedEx's frivolous RICO claims now.  If discovery is permitted, this Court will be giving a roadmap to every other corporation that faces tort litigation: file a RICO action against the law firms that sue you repeatedly; assert a conspiracy between the law firm and the medical experts who testify in those cases; defame the law firm and doctors publicly under the cover of a litigation press release; get to discovery, obtain internal emails from your opposing law firm and its experts; take depositions;

---

[6] Phila. C.C.P. No. 240103241 (Case L); Phila. C.C.P. No. 241003920 (Case P).
[7] Case A settled on February 3, 2026 (Phila. C.C.P. No. 241203208).
[8] Like the Original Complaint, Uber's allegations are such an outrageous misrepresentation of the underlying medical records that it is apparent Uber's counsel did no serious pre-suit investigation.
[9] *Jacovetti Law, P.C. v. Shelton*, 2020 WL 5211034, at *1 (E.D. Pa. Sept. 1, 2020).
[10] *Rothberg v. Marger*, 2013 WL 1314699, at *10 (D.N.J. Mar. 28, 2013) (citation omitted).

and bankrupt those firms with ruinous legal fees, lost referrals, and the departures of clients. There is no justification to allow this matter to proceed to discovery. Uber's and FedEx's frivolous RICO claims should be dismissed now because they are legally baseless.

First, the *Noerr-Pennington* doctrine prohibits Uber's and FedEx's claims, which impermissibly infringe on petitioning activity that is protected by the First Amendment in the absence of sham litigation. While the word "sham" is now littered throughout the Amended Complaint (when it was nearly absent in the Original Complaint), that exception is not met because the cases are objectively successful and because they are subjectively motivated to procure the results they seek and attain. The only sham litigation being conducted is Uber's and FedEx's weaponization of the RICO statute for the ulterior purpose of chilling litigation against them.

Second, the Amended Complaint fails to plead RICO standing because there are no misrepresentations that are the proximate cause of Uber's and FedEx's alleged injury. Some form of reliance is necessary to demonstrate proximate cause, but the allegations here make clear that Uber and FedEx have *defied* alleged misrepresentations, not relied on them. Uber's and FedEx's alleged settlement payments were not caused by anyone's reliance because the settlement agreements themselves contain integration clauses that are "fraud-insulating." Those settlements were also made at a time when Plaintiffs had full knowledge of facts they now allege constitute "fraud" (indeed, Uber is joining in settlements of cases that it calls fraudulent even *after the filing of this action*), which constitutes a break in any conceivable causal chain. Further, it is not plausible that Uber paid any settlements in the first place since it simultaneously pleads that it was dismissed, before the settlements were reached, from each and every case where Dr. Burt treated the plaintiff. Proximate cause is also inadequately pled because apportioning the Plaintiffs' alleged injury to any alleged misrepresentations is speculative and impossible (*e.g.*, without alleged exaggerations

4

of injury, Uber and FedEx would have paid less attorneys' fees or costs to defend the case because it would have been a smaller case—but how much less?). And, Uber does not allege that it paid for settlements. Per the allegations, other parties, like the drivers who reached the settlements or the insurers who actually paid them are arguably better situated to vindicate alleged wrongs.

Third, the Amended Complaint still pleads alleged "mail and wire fraud" predicate acts that are purely litigation activities (*e.g.*, filing and serving complaints), which the Third Circuit and cases across the country have held are categorically not RICO predicate acts. And, while there is an exception for "witness bribery," Uber and FedEx do not plead bribery as a predicate act and the few references to "bribery" in the Amended Complaint are merely conclusory. Further, the medical reports are, per Plaintiffs, "litigation documents," and also not pled with particularity.

Numerous other reasons foreclose Plaintiffs' claims: failure to establish a RICO "enterprise"; res judicata; the *Rooker-Feldman* doctrine; and, finally, failure to plead "conspiracy."

Uber and FedEx were not (and are not) without recourse in any of the underlying cases. First, they could have pleaded (and still can plead) fraud in the underlying cases. Pa. R. Civ. P. 1030. Uber and FedEx could have also brought *Dragonetti* wrongful use of civil proceedings actions, in which fees and costs are recoverable, if they successfully defended any action they believed was frivolous. *See* 42 Pa. C.S. §§ 8351(a); 8353(3). They also could have sought fees and costs (and still can) in the underlying cases under 42 Pa. C.S. § 2503(9) (permitting counsel fees where "the conduct of another party in commencing the matter…was arbitrary, vexatious or in bad faith"). Uber and FedEx have never sought such fees and costs in the underlying cases because none of those claims were frivolous or brought in bad faith—and because Uber and FedEx are not winning those cases. Ultimately, whatever remedy Uber and FedEx have—and they are entitled to none—it does not lie in federal law, especially pursuant to the thermonuclear RICO statute.

## II.    **ARGUMENT**[11]

### A.    The *Noerr-Pennington* Doctrine Bars Uber's and FedEx's Claims.

Before we get to the elements of a RICO claim and Plaintiffs' failure to plead them, there is a simple and clear reason that the Amended Complaint must be dismissed: the *Noerr-Pennington* doctrine, which bars claims based on supposedly fraudulent lawsuits filed in the courts.

The First Amendment right to petition the government for a redress of grievances is "one of the most precious of the liberties safeguarded by the Bill of Rights." *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 524 (2002) (citation omitted). The Supreme Court's *Noerr-Pennington* doctrine protects this right by prohibiting the weaponization of federal statutes in a way that burdens petitioning. *See E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965). Under *Noerr-Pennington*, "those who petition any government department for redress are generally immune from statutory liability for said petitioning conduct, including litigation." *Davis v. Bank of America, N.A.*, 2014 WL 12778833 at *1 n. 1 (E.D. Pa. Aug. 11, 2014). "Although the *Noerr-Pennington* doctrine originally applied to antitrust cases, courts have expanded its application to other contexts," including RICO. *Id.* (dismissing RICO claim under *Noerr-Pennington* where "a plain reading of the Complaint shows that…Defendants' alleged unlawful activity took place for the sole purpose of effectuating…litigation").  As this Court has recognized: "The immunity conferred by the *Noerr-Pennington* doctrine embraces all forms of government petitioning, and expressly reaches the petitioning activity of filing, pursuing and participating in a civil lawsuit." *Romero v. Allstate Ins. Co.,* 2017 WL 3881219, at *3 (E.D. Pa. Sept. 5, 2017) (Kearney, J.).  For this reason alone, the Amended Complaint must be dismissed in its entirety.

---

[11] Per the Court's directive in ECF 81, Defendants omit a recitation of the factual background and applicable pleading standards.

1.  **All Conduct Alleged in the Amended Complaint Is Protected Petitioning Activity Impermissibly Burdened by Plaintiffs' RICO Claims.**

When applying *Noerr-Pennington* to RICO claims, the Court "must determine whether [Plaintiff's] RICO lawsuit burdens [Defendants'] petitioning activity. If it does, [the Court] must examine the precise petitioning conduct [Defendants] engaged in to determine whether the burden identified may be imposed consistently with the Constitution." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 932 (9th Cir. 2006). If "a reasonable construction of RICO or the predicate act statutes exist that avoids the burden, [the Court] will adopt that construction." *Id.* Under these rules of construction, *Noerr-Pennington* provides immunity unless RICO "unambiguously" includes the challenged activity "within the scope of conduct it enjoins." *Id.* at 942.

Here, a "successful RICO claim would quite plainly burden" the Simon Defendants' ability to file lawsuits on behalf of their clients and seek relief for injuries caused by Uber's and FedEx's tortious conduct. *See id.* at 932. Indeed, the Amended Complaint's requested relief asks to "prohibit[] Defendants from engaging in the same type of endeavor as the above enterprises engaged in," *i.e.*, filing lawsuits. While that relief is not available to Plaintiffs,[12] it demonstrates that they are not only seeking to burden petitioning against them but to *eliminate it entirely*.

There is also no dispute that the alleged misconduct is "petitioning activity." The Amended Complaint alleges that the Simon Defendants made allegedly false statements "in demand letters and litigation documents." Am. Compl. ¶ 455. The only "predicate acts" allegedly committed by the Simon Defendants are "fil[ing] a complaint and initiat[ing] a lawsuit" and/or "caus[ing] said complaint to be served." *Id.* ¶¶ 460; 464; 470; 473; 477; 480; 484; 487; 488; 492; 495; 497; 499; 501; 504; 506; 508; 510. This is undeniably protected petitioning activity. *See Romero*, 2017 WL

---

[12] Plaintiffs are private parties limited to the potential remedies in Section 1964(c). To the extent they seek equitable relief, that required Plaintiffs to plead irreparable harm, which they did not and cannot do. *See Jackson v. Rohm & Haas Co.*, 2009 WL 948741, at *3-4 (E.D. Pa. Mar. 20, 2009).

3881219, at *3 ("the filing of a lawsuit is itself petitioning conduct protected by the First Amendment and may not be the basis for liability under the *Noerr-Pennington* doctrine.").

To the extent the Amended Complaint alleges predicate acts by other Defendants, those too are protected by *Noerr-Pennington*. First, Plaintiffs themselves refer to the other Defendants' medical reports as "litigation documents" and which "appear to represent a litigation strategy." Am. Compl. ¶¶ 12; 89; 91; 428. Second, it is clear that the reports were prepared "in anticipation of petitioning activity." *Ford Motor Co. v. Knight Law Group*, 2025 WL 3306280, at *8 (C.D. Cal. Nov. 24, 2025); *see also Sosa*, 437 F.3d at 934-35 ("not only petitions sent directly to the court in the course of litigation, but also 'conduct incidental to the prosecution of the suit' is protected by the *Noerr–Pennington* doctrine"); *A.D. Bedell Wholesale Co. v. Philip Morris Inc.*, 263 F.3d 239, 252-53 (3d Cir. 2001) (*Noerr-Pennington* protects acts "incidental to litigation").

In *Ford*, "allegedly false billing statements" that were prepared and then ultimately used in allegedly fraudulent fee petitions were found at the motion to dismiss stage to constitute "petitioning activity" because those bills were prepared "in anticipation of submitting [the] fee petitions." *Ford*, 2025 WL 3306280, at *8. Here, to take Plaintiffs' allegations as true requires a conclusion that *all* the Defendants' challenged medical reports were prepared "in anticipation of petitioning activity" because, without being used in litigation against Plaintiffs, those reports would not have allegedly defrauded them. Indeed, the gravamen of Plaintiffs' mail and wire fraud theory is that the Simon Defendants "direct[ed] Burt, Yarus, and others in creating fraudulent documents" so that the Simon Defendants could file "lawsuits based on these fraudulent documents." Am. Compl. ¶ 10. The Amended Complaint expressly pleads that "[e]ach participant in the scheme acts with the understanding and agreement that their fraudulent medical records will be used as a basis to demand substantial settlements and assert sham claims in litigation." Am.

Compl. ¶ 37; *see also* ¶ 7 ("Burt performs these procedures not out of medical necessity but for the purpose of fabricating fraudulent medical records to support Simon & Simon's lawsuits."); ¶ 8 ("The fraudulent records [the PSA Defendants] produce…are made for the purpose of artificially inflating damages claims."). In other words, the alleged misrepresentations in the medical reports are only "fraudulent" *because* those same alleged misrepresentations are ultimately used for litigation purposes against Plaintiffs. Thus, the same alleged "misrepresentations" constitute "petitioning" whether made before or after litigation is filed. *See Sosa*, 437 at 936 (finding "prelitigation" demand letters containing alleged misrepresentations protected because the "same demands" would ultimately be "asserted in a petition to the court").

Ultimately, "petitioning" must be construed broadly to give the "breathing space" required under *Noerr-Pennington*. *Id.* at 931-34. Indeed, *Noerr-Pennington* "overprotects" even "baseless petitions so as to ensure citizens may enjoy the right of access to the courts without fear of prosecution." *Relevant Group, LLC v. Nourmand*, 116 F.4th 917, 927-28, 934-35 (9th Cir. 2024). Under these principles, all Defendants' conduct is petitioning immunized by *Noerr-Pennington*.

## 2. The Sham Litigation Exception Is Not (and Cannot Be) Pled.

Although *Noerr-Pennington* contains a "very narrow" exception for "sham litigation," it does not apply here. *Trustees of University of Pennsylvania v. St. Jude Children's Research Hosp.*, 940 F. Supp. 2d 233, 247 (E.D. Pa. 2013). Uber and FedEx attempt to wedge their case into this very narrow exception by sprinkling the words "sham litigation" more than twenty times across the Amended Complaint where they had not existed before. But merely saying "sham litigation" does not make it so. The test is not whether the plaintiff uses those words but rather whether the Amended Complaint satisfies the two-pronged sham litigation test. "First, the suit must be objectively baseless," meaning that "[i]f an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*." *Campbell*

*v. Pennsylvania Sch. Boards Ass'n*, 972 F.3d 213, 219 (3d Cir. 2020) (citing *Professional Real Estate Investors v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993) ("PRE")).  Second, "the fact that a suit may lack any objective merit is not itself determinative" and the Court "must then inquire into the plaintiff's subjective motivations for bringing suit." *Id.*  This additional step is taken "to ascertain whether the actual motivation is to dragoon the 'governmental process' itself into use as a competitive tool…" *Id.* Only if "both these objective and subjective tests are satisfied is *Noerr-Pennington* protection lost and the suit permitted to proceed." *Id.* As detailed below, Uber and FedEx do not and cannot plead both objective and subjective baselessness in any legally sufficient way. Thus, the exception is not met and *Noerr-Pennington* requires dismissal.

### a. The Underlying Cases Were (and Are) Not Objectively Baseless.

The Amended Complaint claims that the underlying lawsuits "are objectively baseless because, among other things…they involve no substantial injury and no claim for damages for which a claimant could recover in a personal injury suit." Am. Compl. ¶ 31. But that is not the standard. If "an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*." *PRE*, 508 U.S. at 60. Further, "[a] winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham." *Id.* at 60 n.5. Per Plaintiffs' own allegations, the underlying suits were reasonably calculated to elicit a favorable outcome *because they did produce favorable outcomes*. Of the 13 suits against Uber and FedEx that are actually detailed in the Amended Complaint, Plaintiffs plead that 7 have resulted in settlements for the Simon Defendants' clients. Am. Compl. ¶¶ 149; 167; 186; 212; 233; 250; 312.[13] This itself shows the suits were not objectively baseless. *Mover's & Warehousemen's*

---

[13] Of the remaining six cases, only one resulted in a verdict for the defense. Am. Compl. ¶ 137. As discussed *infra*, Claimant A has now also settled, meaning 8 of the 13 cases against Uber or FedEx detailed in the Amended Complaint are settled. When considering all 21 cases against Uber and FedEx (*i.e.*, including those in Paragraph 51), 14 have now settled. Further, per public docket

*Ass'n of Greater New York, Inc. v. Long Island Moving & Storage Ass'n, Inc.*, 1999 WL 1243054, at *6 (E.D.N.Y. Dec. 16, 1999) ("resolution [by settlement] does not lend itself well to the label 'objectively baseless'"). Incredibly, the Amended Complaint removed cases from the Original Complaint where claimants won jury verdicts (F, J, AA), because they are devastating to any "sham litigation" argument.

Plaintiffs cannot call the cases "objectively baseless" simply by claiming "fraud." Finding objective baselessness on the grounds of misrepresentations requires pleading that the "alleged misrepresented facts [] infect the core of [the party's] claim and the government's resulting actions." *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 123 (3d Cir. 1999). That standard is not (and cannot be) pled here because the "core" of the Simon Defendants' clients' claims in the underlying matters is that they were injured as a result of Uber's and FedEx's (and/or their drivers') negligence. While Plaintiffs allege certain misrepresentations "inflated" the claimants' injuries, that does not alter the "core" of the negligence actions or otherwise deprive them of their legitimacy. *See Ford*, 2025 WL 3306280, at *11 (dismissing RICO claims against lemon law lawyers alleged to have fraudulently inflated attorneys fees applications on *Noerr-Pennington* grounds, stating: "even accepting as true the allegation that some of Defendants' purported work entitling them to fees was fictitious, that misrepresentation is not sufficient on its own to deprive the entire fee petition process—let alone the entire lawsuit—of legitimacy.").

### b. The Underlying Cases Were (and Are) Not Subjectively Baseless.

The Amended Complaint also does not sufficiently plead subjective baselessness. It merely pleads that the underlying suits are "subjectively baseless because Marc Simon and Simon & Simon know the lawsuits are fraudulent and play an active role in directing the creation of

---

information, each of the cases brought "against others" (BB, CC, DD, EE, FF, GG) have also settled, meaning 20 of all 27 cases named in the Amended Complaint have settled.

fraudulent documents." Am. Compl. ¶ 31. That hollow allegation is legally meaningless. In the Third Circuit, there is no standalone exception to *Noerr-Pennington* for "fraud." *In re Merck Mumps Vaccine Antitrust Litig.*, 2024 WL 4432076, at *6 n.12 (3d Cir. Oct. 7, 2024) (rejecting a standalone exception to *Noerr-Pennington* immunity for petitions containing fraudulent misrepresentations). Alleged fraud bears only on the above "objectively baseless" test. *Id.*

Indeed, the Third Circuit has made clear that "[e]ven if a petition would be objectively meritless with the truth, the petition is not a sham unless the 'plaintiff pass[es] the second[] subjective test' by showing that the petitioner's subjective 'purpose was [*not*] to secure the *outcome* of the [governmental] process' that they invoked." *Id.* at *5 (quoting *Armstrong Surgical Center, Inc v. Armstrong County Mem. Hosp.*, 185 F.3d 154, 158 n.2 (3d Cir. 1999)) (emphasis in original). Thus, if the Simon Defendants were filing personal injury lawsuits to achieve something other than the relief they were seeking in court, *i.e.*, a financial recovery for their clients, there might be an argument for subjective baselessness. But that is not what is happening here. Everyone agrees the Simon Defendants are attempting to obtain the remedy they are seeking in court. Uber and FedEx merely complain that the Simon Defendants are seeking *too much* money for their clients, supposedly through unnecessary medical treatment and inflated damages claims. But this is not sham litigation. "[A] 'sham' situation involves a defendant whose activities are 'not genuinely aimed at procuring favorable government action' at all, not one 'who genuinely seeks to achieve his governmental result, but does so *through improper means*.'" *Id.* (quoting *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 380 (1991)) (emphasis in original).

Finally, there is no grounds for subjective baselessness due to the number of lawsuits filed. While a "series of petitions [] filed with or without regard to merit and for the purpose of using the governmental process (as opposed to the outcome of that process) to harm a market rival and

12

restrain trade" may establish subjective baselessness, that requires the Court to "perform a holistic review that may include looking at the defendant's filing success—*i.e.*, win-loss percentage—as circumstantial evidence of the defendant's subjective motivations." *In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 157 (3d Cir. 2017) (quoting *Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162, 180 (3d Cir. 2015)). Here, only *one* of the 21 cases against Plaintiffs referenced in the Amended Complaint is alleged to have resulted in a defense verdict, precluding any plausible conclusion that the cases were subjectively baseless based on win-loss percentage. The number of settlements (14 of the 21 Uber and FedEx cases; 20 of all 27 cases in the Amended Complaint) further destroys any "serial petition" argument. *Malibu Media, LLC v. Doe*, 238 F. Supp. 3d 638, 645 (M.D. Pa. 2017) (dismissing claim under *Noerr-Pennington* and finding serial petition exception not met where 73 of the 77 lawsuits had settled).

Because sham litigation is not and cannot be pled, the underlying Simon Firm cases brought against Uber and FedEx are immunized and *Noerr-Pennington* requires dismissal.[14]

## B. The Amended Complaint Should Be Dismissed on Standing Grounds for Failure to Plead Proximate Causation.

Setting aside that the Amended Complaint must be dismissed under the *Noerr-Pennington* doctrine, Plaintiffs' Amended Complaint must also be dismissed for lack of RICO standing.

"Establishing liability under…the RICO statute requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, plus [(5)] an injury to business or property, and (6) the racketeering activity must have been the 'but for' cause as well as the proximate cause of the injury." *LabMD Inc. v. Boback*, 47 F.4th 164, 179 (3d Cir. 2022). The injury and causation

---

[14] Uber claims *Noerr-Pennington* is an affirmative defense that cannot be decided on a motion to dismiss. This is incorrect. *Trustees*, 940 F. Supp. at 241-243 ("when there is no dispute over the predicate facts of the underlying legal proceeding, a court may decide probable cause [and thus *Noerr-Pennington* applicability] as a matter of law") (quoting *PRE*, 508 U.S. at 63).

elements make up "RICO standing" – the threshold requirement under which a plaintiff must plead its injuries were proximately caused by the alleged RICO violations. *Maio v. Aetna, Inc*., 221 F.3d 472, 482-83 (3d Cir. 2000); *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992) ("[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well.").

"The Supreme Court requires the examination of three factors to determine whether an alleged RICO violation proximately caused a plaintiff's harm: (1) the directness of the injury, (2) the difficulty of apportioning damages, and (3) whether there are direct victims of the alleged violation that could better vindicate the policies underlying RICO." *Knopick v. UBS Fin. Servs., Inc.*, 121 F. Supp. 3d 444, 460 (E.D. Pa. 2015) (citing *Holmes*, 503 U.S. at 269-70). Here, none of Uber's or FedEx's claimed injuries of their "incurred substantial expense, including defense costs, in litigating and settling false or artificially inflated claims" (Am. Compl. ¶¶ 440; 442) were proximately caused by Defendants' alleged conduct under the Supreme Court's three-part test.

### 1. Plaintiffs' Injuries Were Not Caused By Reliance on Misrepresentations.

The only predicate acts Plaintiffs allege are mail and wire fraud, which require "[s]ome form of reliance on the defendant's misrepresentation [] to properly establish proximate cause." *Lynch v. Cap. One Bank (USA), N.A*., 2013 WL 2915734, at *3 (E.D. Pa. June 14, 2013) (citing *Bridge v. Phoenix Bond & Indemnity Co*., 553 U.S. 639, 659 (2008)). "[I]t is a matter of basic logic that a misrepresentation cannot cause, much less proximately cause, injury unless someone relies upon it." *Id.* at *3 (citing *Central Transp., LLC v. Atlas Towing, Inc.,* 884 F. Supp. 2d 207, 215-16 (E.D. Pa. 2012); *Kimmel v. Phelan Hallinan & Schmieg, P.C.*, 847 F. Supp. 2d 753, 771 (E.D. Pa. 2012); *Walter v. Palisades Collection, LLC*, 480 F. Supp. 2d 797, 807 (E.D. Pa. 2007)). "A plaintiff will not be able to establish even but-for cause 'without showing that *someone* relied on the defendant's misrepresentations.'" *Id.* at *3 (quoting *Bridge*, 553 U.S. at 659).

14

Uber and FedEx reference the following cases in the Amended Complaint:

| Claimant | Court | Case Number | Date Filed | Uber or FedEx a Defendant? | Date Uber Dismissed by Stipulation? | Status as to Remaining Defendants |
|----------|-------|-------------|-----------|----------------------------|-------------------------------------|------------------------------------|
| A | P.C.C.P. | 241203208 | 12/30/24 | Uber | 5/12/25 | Settled in February 2026 |
| B | P.C.C.P. | 240602258 | 6/20/24 | Uber | 5/12/25 | Verdict for Defense on 11/13/25 |
| C | P.C.C.P. | 231003167 | 10/30/23 | Uber | 4/1/25 | Settled in May 2025 |
| D | P.C.C.P. | 231203191 | 12/29/23 | Uber | 2/3/25 | Settled in February 2025 |
| E | P.C.C.P. | 240201839 | 2/15/24 | Uber | 1/17/25 | Settled in July 2025 |
| G | P.C.C.P. | 231100811 | 11/7/23 | Uber | 5/12/25 | Settled in August 2025 |
| H | P.C.C.P. | 230703127 | 7/31/23 | Uber | 10/12/23 | Settled in March 2025 |
| I | E.D. Pa. | 24-cv-01068 | 3/12/24 | Uber | 11/8/24 | Settled in May 2025 |
| K | P.C.C.P. | 240101724 | 1/15/24 | Uber | 1/31/25 | Settled in June 2025 |
| L | P.C.C.P. | 240103241 | 1/29/24 | Uber | 5/6/25 | Settled in December 2025 |
| M | P.C.C.P. | 240202190 | 2/20/24 | Uber | 5/6/25 | Settled in September 2025 |
| N | P.C.C.P. | 240703431 | 7/31/24 | Uber | 8/5/25 | In suit |
| O | E.D. Pa. | 24-cv-02683 | 6/18/24 | Uber | 5/13/25 | Dismissed without prejudice on 7/10/25 |
| P | P.C.C.P. | 241003920 | 10/30/24 | Uber | 5/12/25 | Settled in December 2025 |
| Q | P.C.C.P. | 241004064 | 7/25/23 | Uber | 5/15/25 | Settled July 2025 |
| R | P.C.C.P. | 240600009 | 5/31/24 | Uber | 5/12/25 | Settled October 2025 |
| S | P.C.C.P. | 240603302 | 6/28/24 | Uber | 5/14/25 | In suit |
| T | P.C.C.P. | 240603302 | 6/28/24 | Uber | 5/14/25 | In suit |
| U | P.C.C.P. | 250303533 | 3/26/25 | FedEx | N/A | In suit |
| V | E.D. Pa. | 24-cv-03413 | 11/22/24 | FedEx | N/A | Settled November 2025 |
| W | P.C.C.P. | 250702507 | 7/23/25 | FedEx | N/A | In suit |

15

None of these cases establish that any of Plaintiffs' alleged injuries were proximately caused by alleged misrepresentations.[15] The cases fall into two groups: those that Uber and FedEx have *not* settled (B, N, O, S, T, U and W); and those they have (A, C, D, E, G, H, I, K, L, M, P, Q, R, and V).

### a. Cases Uber and FedEx Have *Not* Settled.

For the majority of the cases listed in the Amended Complaint, Uber and FedEx settled those cases without ever pleading or claiming a fraud in the underlying action, and by executing fraud-insulating settlement agreements and releases, as detailed below. For the remaining cases that did not settle, those are: the active cases pending in court against Uber's drivers (N, S, and T) and FedEx (U and W); a case against an Uber driver that was dismissed without prejudice (O), and a case that resulted in a defense verdict for an Uber driver (B). In none of those cases did Uber or FedEx assert any fraud, and Uber was dismissed voluntarily from all cases. Significantly, in all of the non-settled cases, Uber and FedEx allegedly incurred fees and costs—but those would not have been proximately caused by any alleged racketeering because Uber and FedEx did not pay those fees and costs in reliance upon any supposed misrepresentation by the Simon Firm, but rather in *defiance* of the underlying personal injury claims.

Judge Robreno's well-reasoned opinion in *Walter*, which has been cited with approval by many courts in this District,[16] involved nearly identical facts as what Uber and FedEx allege here.

---

[15] Defendants address the cases against Uber and FedEx that are not only detailed in the Amended Complaint (A, B, C, D, E, H, Q, R, S, T, U, V, W), but also those summarily referenced in Paragraph 51 (G, I, K, L, M, N, O, P) out of an abundance of caution but maintains that they should not be grounds for Uber's or FedEx's injury. The cases brought "against others" (BB, CC, DD, EE, FF, GG) certainly cannot be grounds for Uber's or FedEx's injury.

[16] This Court has cited *Walter* with approval. *See Kovalev v. City of Philadelphia*, 2020 WL 762373, at *4 (E.D. Pa. Feb. 14, 2020), *aff'd*, 833 F. App'x 972 (3d Cir. 2021) (citing *Walter* for proposition that "alleged injuries of unpaid contested debt and withdrawn lawsuits are not specific injuries giving rise to RICO liability").

In *Walter*, like here, the defendant in underlying state court litigation brought RICO claims against the plaintiff in federal court claiming those state proceedings were fraudulent. 480 F. Supp. 2d at 799-801. Just like here, the RICO plaintiffs claimed as injuries their "counsel fees and costs to defend the actions." *Id.* at 801. The Court rejected this argument entirely:

> If Plaintiffs paid the debt after falsely being told by Defendants that they were liable on it, Plaintiffs would be able to demonstrate reliance. ***Plaintiffs' course of action, though, is the opposite of reliance; it's defiance.*** After being (falsely) told they were liable on the debt, they hired lawyers and fought (and won) the lawsuits.

*Id.* at 806 (emphasis added). Similarly, here, Uber and FedEx hired counsel and fought the suits. Uber in particular defied the allegations to such an extent that it actually secured voluntary dismissal in each case. Thus, Uber's and FedEx's fees and costs were incurred as a result of their defiance of, not reliance upon, alleged misrepresentations. *See also Kimmel*, 847 F. Supp. 2d at 771 (dismissing RICO claim for lack of proximate causation where plaintiffs retained an attorney after they "grew very worried they were becoming the victims of a scam" and then contested proceedings in which they were eventually dismissed without prejudice because "[Plaintiffs'] conduct following the defendants' allegedly wrongful actions was, in Judge Robreno's trenchant words, 'the opposite of reliance; it's defiance'") (quoting *Walter*, 480 F. Supp. 2d at 806).

Finally, any remedy Plaintiffs seek for the ongoing cases is something the underlying courts should determine. *See Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 173-74 (E.D.N.Y. 2010) ("allowing the federal RICO statute to usurp underlying legitimate state court litigation as proposed by plaintiffs here would inappropriately bypass the state tribunal where the action is pending and which properly controls that proceeding.").

### b. Settled Cases Where Plaintiffs Also Seek "Settlement Costs."

The settled cases (A, C, D, E, G, H, I, K, L, M, P, Q, R, and V) also make clear that no one's reliance on any alleged misrepresentations proximately caused any injury to Uber or FedEx.

### i.    The Settlements Themselves Are Fraud-Insulating.

First, the settlements themselves establish that nobody relied on any purported misrepresentations.[17] The settlements in Uber cases—including the settlement executed *less than three weeks ago* in Case A (the lead "pattern" case set forth in the Amended Complaint)—all state that Uber, its insurer, and the claimant are each "Parties" to those settlements and that its terms are "binding upon the Parties." Declaration of Daniel E. Rhynhart ("Rhynhart Decl.") ¶¶ 5-6. The settlements then provide:

> **Entire Agreement**. This Release sets forth the entire agreement and understanding between the Parties. The Parties intend the terms and conditions of this Release to govern all issues related to Releasor's legal claims and/or litigation against the Released Parties in connection with the Incident. Any modifications to this Release must be in writing and signed by Releasor and an officer of Uber Technologies, Inc. Releasor has not relied on any oral statements that are not included in this Release. This Release supersedes all prior agreements and understandings concerning the subject matter of this Release.

*Id.* ¶ 10. Similarly, in the single FedEx case that settled, the settlement provides:

> **Entire Agreement.** Releasor acknowledges and agrees that this Release contains the entire agreement of and between all of the parties and fully supersedes any and all prior understandings, representations, warranties and agreements regarding this matter.
> …
> **Waiver.** This Agreement is the entire and final Agreement between the parties. It is the sole understanding between the parties.

*Id.* ¶¶ 18-19.

These integration clauses are "fraud-insulating" as a matter of law under Pennsylvania law, which governs. *Id.* ¶¶ 7, 17; *see Kelly v. Peerstar LLC*, 2023 WL 4785511, at *3 (3d Cir. July 27,

---

[17] Because the settlements are expressly referenced and relied upon in the Amended Complaint (¶¶ 149, 167, 186, 212, 233, 250, 312) and because they are indisputably authentic, the Court may consider them without converting the Motion into one for summary judgment. *See Nayak v. C.G.A. L. Firm*, 620 F. App'x 90, 93 n.3 (3d Cir. 2015) ("the settlement agreement attached as an exhibit to the motion to dismiss is 'an undisputedly authentic document' that was properly considered").

2023) (integration clause stating that settlement was the parties' "entire agreement and understanding" and "supersede[d] all prior…agreements" was fraud-insulating). This is critical because "[t]he parol evidence rule applies in cases brought under civil RICO when the alleged predicate act is mail and/or wire fraud." *G. Daniel Glass, O.D. v. Singer Optical Grp., Inc.,* 1995 WL 717411, at *4 (E.D. Pa. Dec. 1, 1995). Therefore, the RICO claims predicated on alleged mail and/or wire fraud in the settled cases are barred at the motion to dismiss stage. *See Gordon v. Pasquarello*, 2023 WL 2505538, at *28 (E.D. Pa. Mar. 14, 2023) (granting motion to dismiss RICO claim where "integration clause with a fraud-insulating provision" made misrepresentations prior to agreement "not a recognizable fraud predicate offense under the RICO statute.").

Further, the Simon Defendants are Parties, if not express third-party beneficiaries, to the settlements. The Uber settlements state that the terms "inure to the benefit of the Parties" and their "attorneys" and "agents and representatives, if any, without limitation." Rhynhart Decl. ¶ 6. The FedEx settlement states that it "inure[s] to the benefit of… the executors, administrators, personal representatives, heirs, successors and assigns of Releasor." *Id.* ¶ 18. This clear language expressly covers the Simon Defendants. *Nayak v. McNees Wallace & Nurick LLC*, 700 F. App'x 172, 176 (3d Cir. 2017) (finding attorneys of released party covered by release that applied to "Company and its … agents, … attorneys").[18]  Indeed, settlements in Pennsylvania *routinely* cover attorneys as beneficiaries to protect them from the exact type of scenario Uber and FedEx are creating here.

Despite previously agreeing (and continuing to agree) of their own free volition to the settlements, Uber and FedEx now apparently seek recission of only certain terms (but not the releases, dismissals, etc.). However, "[u]nder Pennsylvania law, partial rescission of contracts is

---

[18] Notably, the settlements also state the lawsuit is dismissed "with prejudice and without costs to any Party" and with "each party to bear its own costs and attorney's fees." Rhynhart Decl. ¶¶ 8-9; *see also id.* ¶¶ 15-16.

not allowed." *Lingle v. PSB Bancorp., Inc.*, 123 F. App'x 496, 500 (3d Cir. 2005). It would also upset the well-established policy of upholding settlements. *Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick*, 587 A.2d 1346, 1349 (Pa. 1991) ("Lawyers would be reluctant to settle a case for fear some enterprising attorney representing a disgruntled client will find a way to sue them for something that 'could have been done, but was not.'.... A long-standing principle of our courts has been to encourage settlements; we will not now act so as to discourage them.").

Finally, an attempt in this Court to rescind a settlement reached in another court is an improper use of a RICO proceeding. *See Sarpolis v. Tereshko*, 26 F. Supp. 3d 407, 423, 425 (E.D. Pa. 2014), *aff'd*, 625 F. App'x 594 (3d Cir. 2016) (rejecting RICO claim "to the extent Plaintiff [was] seek[ing] to rescind [a] settlement" allegedly "reached through fraudulent actions" in the Philadelphia Court of Common Pleas, stating "if Plaintiff has a valid claim for fraud in the inducement, this Court is not the proper forum for Plaintiff to bring such a claim").

### ii.    Uber Does Not Plausibly Allege It Paid Settlements.

Second, it is not plausible that Uber actually paid any settlements. Uber cryptically pleads that it has incurred "costs" of settlement (Am. Compl. ¶ 440) or "settlement expenses" (Am. Compl. ¶ 39). Whatever that means, it certainly does not plead that Uber *paid* settlements.

Constrained by Rule 11, Uber goes to great lengths to avoid pleading who actually paid the settlements. For example, Paragraph 14 states: "Uber, FedEx, and other targets of the scheme relied on Defendants' misrepresentation. Such reliance resulted in, among other things, settlement payments that would not have been made or that would have been made in a lesser amount but for the fraud." Am. Compl. ¶ 14; *see also* ¶¶ 98; 312. There is no "who" in that second sentence for a reason. While Uber is begging the Court to draw the inference that *Uber* paid settlements, that inference is not plausible or logical because Uber simultaneously pleads that "Simon & Simon dismissed Uber from each of the then-pending nearly thirty cases in which Burt was a treating

20

physician." Am. Compl. ¶¶ 15; 99. *That is every Uber case at issue.* Indeed, every Uber "pattern" case acknowledges that Uber was dismissed before any settlement was reached by its drivers or their insurance carrier.  Am. Compl. ¶¶ 116; 136; 148; 166; 185; 211; 232; 249; 263; 275.

Thus, Uber has not plausibly (or even logically) alleged that it has paid settlements. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (Rule 8 not satisfied where "well-pleaded facts do not permit the court to infer more than the mere possibility" of the inference being asked to be drawn because plaintiffs must plead enough factual content to "nudge" their claims "across the line from conceivable to plausible") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### iii.    Any Settlements Uber and FedEx Agreed to Broke the Causal Chain Due to Their Knowledge.

To the extent Uber joined in the settlement of cases A, C, D, E, G, H, I, K, L, M, P, Q, and R, it did so voluntarily and with knowledge of alleged "fraud" because it had already been dismissed from all those cases after ascertaining the "fraud" in discovery. Am. Compl. ¶¶ 99. Indeed, the "smoking gun" email Plaintiffs excerpt in Paragraph 47 has an exhibit sticker showing it was used at a deposition in 2022, suggesting Uber has been aware of these issues for *years*. Moreover, Plaintiffs' allegations show that Uber settled these cases even after being told by "independent medical experts" that the claimants' injuries were degenerative, not caused by the accidents, or otherwise inconsistent with the claimants' medical reports. *See, e.g.*, Am. Compl. ¶¶ 153; 156; 180; 191; 218; 229. For example, Paragraph 156 refers to an "independent medical expert" who found that Claimant D's MRI "reflected typical disc generation that was unrelated to any single event." Am. Compl. ¶ 156.  That report of Dr. Andrew Shaer, properly part of the motion to dismiss record as "explicitly relied upon" and integral to the Amended Complaint,[19] was dated June 19, 2024 and concluded: "It is therefore my opinion, within a reasonable degree of medical

---

[19] *Nayak*, 620 F. App'x at 93 n.3 (document complaint relies on can be used in 12(b)(6) motion).

certainty, that there is no imaging evidence of injury as a result of the accident of July 23, 2023." Declaration of Andrew P. Baratta ("Baratta Decl."), Ex. C. This report was produced by counsel for "Uber Technologies" on January 9, 2025. *Id.* Yet, per public docket information, Claimant D's case settled the next month in February 2025. *See* Case No. Phila. C.C.P. 231203191.[20] As another example, Paragraph 180 refers to the report of a "medical records reviewer" that did not find any protrusion or herniation in Claimant E's MRI. Am. Compl. ¶ 180. That report of Dr. Michael Murray was dated November 22, 2024 and stated that "I do not appreciate any compelling objective data to support Dr. Yarus' opinion that [Claimant E's] subject accident resulted in any unresolved injuries. [Claimant E's] subject incident did not result in any injuries that require future diagnostic testing, medical surveillance, or treatment." Baratta Decl., Ex. D. Yet, per public docket information, Claimant E's case settled months later in February 2025. *See* Case No. Phila. C.C.P. 240201839. And perhaps most incredibly, the report of the "physicians who reviewed the MRI" of Claimant H referenced in Paragraph 191 was actually filed as an exhibit in the underlying case on March 7, 2025, ***together with Judge McHugh's sanctions order***, as the basis for a motion in limine to exclude Dr. Yarus. *See* Case No. Phila. C.C.P. 230703127, Dkt. No. 25031679. Yet, per the public docket, that motion was mooted because the case nonetheless ***settled*** thereafter.

Thus, to the extent Uber is settling these cases, it has been doing so with full knowledge of the exact same facts it now claims constitutes "fraud" and even after the defense in those cases makes the same arguments that Uber now makes here. This knowledge forecloses any conceivable mail or wire fraud. *Lundy v. Hochberg*, 79 F. App'x 503, 505 (3d Cir. 2003) (affirming dismissal of RICO claim premised on mail and wire fraud where victim knew or should have known from

---

[20] This Court may take judicial notice of public records, including docket sheets, at the motion to dismiss stage, especially dockets of cases that are explicitly relied upon in the Amended Complaint. *See Lawson v. Harriger*, 2022 WL 2952498, at *1-2 (E.D. Pa. June 23, 2022).

public record about the alleged fraud but "forged ahead" anyway) (citing *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 949, 528-29 (3d Cir. 1998)). The decision to settle constitutes "an intervening cause breaking the chain of causation between [Defendants' alleged] misrepresentations and [Uber's] injury." *Bridge*, 553 U.S. at 659 ("if the county knew petitioners' attestations were false but nonetheless permitted them to participate in the auction, then arguably the county's actions would constitute an intervening cause breaking the chain of causation between petitioners' misrepresentations and respondents' injury.").

Even worse, Uber joined in the settlement of Cases L and P *after* Uber filed its Original Complaint in this action on September 18, 2025, and joined in the settlement of Case A *even after* Uber filed the Amended Complaint on January 26, 2026.[21] The only plausible explanation for Uber settling these cases even after making salacious allegations of fraud in this action is not that Uber or anybody is relying on misrepresentations, but instead that Uber is knowingly settling cases to manufacture injury in this case. As for FedEx, the single case FedEx settled that is referenced in the Amended Complaint cannot be a RICO "scheme." Regardless, it was settled two months after the Original Complaint was filed and widely publicized. Am. Compl. ¶ 312; *Lundy*, 79 F. App'x at 505 (no "scheme to defraud" where it was ascertainable from the "available public record").

At bottom, none of Uber's or FedEx's alleged "pattern" cases demonstrate that any alleged injury to FedEx or Uber was caused by anyone's reliance on alleged misrepresentations.

### 2. Uber's and FedEx's Injuries Are Difficult, If Not Impossible, to Apportion.

For the second prong, Uber's and FedEx's claimed injuries cannot be reasonably apportioned and tied to any alleged misconduct. Notably, Uber and FedEx never allege that an

---

[21] Per public docket information, Case A settled on February 3, 2026 (Phila. C.C.P. No. 241203208); Case L settled on December 17, 2025 (Phila. C.C.P. No. 240103241); Case P settled on December 30, 2025 (Phila. C.C.P. No. 241003920).

accident was staged, or was not real—if that were the case, then they could claim there should have been no lawsuit at all, and all costs, fees and settlements would be damages. No, Uber and FedEx allege exaggerated injuries and unnecessary treatment. While Plaintiffs now allege that some of "the underlying lawsuits would not have been brought," they clearly concede that a universe of cases still would exist even without the alleged misrepresentations. Am. Compl. ¶ 10 (alleging the cases "would have been resolved through the no-fault system, or could have been resolved through compulsory arbitration."). Thus, Plaintiffs would have incurred fees and costs and/or paid settlements and judgments in any cases where one of their drivers was involved.

So, Uber and FedEx come before this Court seeking some unidentified quantum of damages, comprised of some increased amount of fees and costs, and perhaps some increased settlement amount above the number that would be appropriate for a less severe injury with less medical treatment. How does the Court calculate such damages? First, the Court would have to hold mini-trials for each of the twenty-one underlying cases to determine the nature and severity of each victim's injury (and in some of the active cases, these mini-trials will take place before even the state court addresses the merits). Then the Court would have to determine the harm caused by the fraud, if any at all. For example, the Court would need to determine how much the claimants' injuries *should have been* valued, how much expense Uber and FedEx *should have* incurred based on those values, and either hold a new trial on those facts or construct a hypothetical settlement negotiation around them. The required hypothesizing and speculation forecloses RICO standing. *See Yucaipa Am. All. Fund I, LP v. Ehrlich*, 716 F. App'x 73, 78 (3d Cir. 2017) (affirming dismissal of RICO claim where injury was alleged attorney's fees, the amount of which "require[d] a significant degree of factual speculation"); *Sarpolis*, 26 F. Supp. 3d at 425 ("[I]t is essentially Plaintiff's contention that but for the actions of the Defendants…then Plaintiff would have been

24

offered (and presumably accepted) a higher settlement amount than the amount that was actually offered by the defendants in the State Court Action. This contention can only be speculation, and speculative injuries do not confer standing under RICO.").

The number of hypothetical scenarios that could play out abound given Plaintiffs' allegation that some of these cases would have been in the compulsory arbitration program (the Philadelphia Common Pleas early resolution forum for cases seeking less than $50,000, which permits appeals for trial *de novo* following arbitration). A claimant in compulsory arbitration could: a) settle during arbitration; b) receive an arbitration award and not appeal; c) appeal an arbitration award and proceed to trial; or d) appeal an arbitration award and thereafter settle before trial. What expense would be incurred in these scenarios not only depends on the time and effort expended by the defense, but also *other* factors as well, like how much decision-making the defense's insurer has, or the existence of other defendants in the case where multiple vehicles are involved. Limited tort cases also have various exceptions based on the facts, like whether the driver was in a vehicle registered in another state. All these iterations and external variables further preclude RICO standing. *See Tri-Cnty. Concerned Citizens Ass'n v. Carr*, 2001 WL 1132227, at *8 (E.D. Pa. Sept. 18, 2001), *aff'd*, 47 F. App'x 149 (3d Cir. 2002) (dismissing RICO claim where determining alleged injury would "require complicated rules for apportioning damages" like "identification and valuation of other sources of positive and negative effects…").

### 3. Per the Allegations, Other Parties (*i.e.*, Uber's Drivers' Insurance Carriers) Are Arguably Better Situated to Vindicate Alleged Wrongs.

For the third prong, and by Plaintiffs' own allegations, other parties are direct victims that could better vindicate the policies underlying RICO. Beyond vaguely referring to "other targets" (Am. Compl. ¶ 14), it is clear that the "insurer" of the Uber drivers that cause the accidents is the alleged victim of the scheme. *See, e.g.*, Am. Compl. ¶¶ 30, 38, 92, 451, 455, 460 (repeated

references to insurers and insurance carriers). Further, because it is not plausible that Uber paid any settlements since it was dismissed from every case (leaving only the Uber driver as a named defendant), the plausible inference is that the Uber *drivers'* insurers actually makes the payments.

Because there is arguably a more "immediate victim [] better situated to sue," proximate causation fails. *Knopick*, 121 F. Supp. 3d at 464 ("[W]here the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims…there is no need to broaden the universe of actionable harms to permit RICO suits by parties who have been injured only indirectly."); *Kovalev v. Stepansky*, 2020 WL 553843, at *4 n.3 (E.D. Pa. Feb. 4, 2020) ("It is not enough for [plaintiff] to allege that his insurance company paid out more than it had to pay without the alleged RICO violations; this does not constitute financial loss to him.").

### 4. Uber and FedEx Were Not Injured as a Result of any Third Party's Reliance.

Finally, the Supreme Court's *Bridge* opinion makes clear that this Court must consider other third parties' reliance as well. 553 U.S. at 658 (while first-party reliance is not required to demonstrate proximate causation, "none of this is to say that a RICO plaintiff alleging injury 'by reason of' a pattern of mail fraud can prevail without showing that *someone* relied on the defendant's misrepresentations." (emphasis in original)). The only third party alleged to have relied on alleged misrepresentations is, incredibly, the "Philadelphia Court of Common Pleas and other courts in Pennsylvania" by relying upon the Simon Defendants' "misrepresentations regarding the amount in controversy of these lawsuits in declining to order the cases to compulsory arbitration." Am. Compl. ¶ 34. But the Amended Complaint nowhere pleads that the Philadelphia Court of Common Pleas was ever *asked* to transfer any of these cases to the compulsory arbitration program, so it is not plausible that the Court "decline[d] to order" such cases to arbitration. Regardless, this theory also fails because even if the cases had been transferred to compulsory

arbitration, the Simon Defendants' clients would still be permitted to appeal arbitration awards and return their case to the Trial Division for a trial de novo. 42 Pa. Stat. § 7361(d); Phila. Loc. R. 215(A)(5). Finally, even if Plaintiffs could somehow show that the court relied on any misrepresentations, they do not and cannot plead that such reliance caused their harm.

For all these reasons, Plaintiffs have failed to adequately plead proximate causation. Therefore, the Amended Complaint should be dismissed for lack of RICO standing.

### C.    The Simon Defendants' Litigation Activities Are Not Predicate RICO Acts and the Other Defendants' Alleged Acts Are Not Mail or Wire Fraud.

Even setting *Noerr-Pennington* immunity and lack of RICO standing aside, the Amended Complaint still fails because "it is well established that fraudulent litigation activity cannot act as a predicate offense for a civil-RICO claim." *Applebaum v. Fabian*, 2022 WL 17090172, at *1 (3d Cir. Nov. 21, 2022) (affirming dismissal of RICO claim "premised on Appellees' alleged misrepresentations throughout state court proceedings"); *see also Nolan v. Galaxy Scientific Corp.*, 269 F. Supp. 2d 635, 643 (E.D. Pa. 2003) (holding "the filing of litigation documents known to contain falsehoods" does not "constitute predicate acts under RICO" because "[s]uch a decision would have sweeping consequences").

As discussed, the only predicate acts alleged to have been committed by the Simon Defendants in the Amended Complaint are filing and serving complaints. Am. Compl. ¶¶ 460; 464; 470; 473; 477; 480; 484; 487; 488; 492; 495; 497; 499; 501; 504; 506; 508; 510. The predicate acts alleged to have been committed by the other Defendants all involve, in *Plaintiffs' view*, the preparation of medical reports in anticipation of and used in those litigations. *Supra* Section II.A.1. Indeed, the unrelated quote by Judge McHugh referenced *three times* in the Amended Complaint – purportedly serving as Plaintiffs' proof of a "scheme" – states that the challenged medical reports are "litigation documents." Am. Compl. ¶¶ 12, 89, 428. This backfires on Plaintiffs—if the medical

reports are litigation documents, then their preparation cannot be predicate acts under *Applebaum.*

Plaintiffs dismiss *Applebaum* as "non-precedential." But *Applebaum* cites cases throughout the country standing for this "well established" principle: *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018) (holding that "allegations of frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act" because it would "spawn a retaliatory action" for every unsuccessful lawsuit and "inundate federal courts with procedurally complex RICO pleadings"); *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 525 (5th Cir. 2016) ("allowing such charges would arguably turn many state-law actions for malicious prosecutions into federal RICO actions"); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088 (11th Cir. 2004) (deciding that the "alleged conspiracy to extort money through the filing of malicious lawsuits" were not predicate acts of extortion or mail fraud under RICO); and *Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003) (deciding that meritless litigation is not a predicate act of extortion under RICO).[22] The Court should reject Plaintiffs' glib dismissal of this nationwide law.

### 1. The Exception for "Bribery" Is Not Met Because Bribery Is Neither Pled as a Predicate Act Nor Plausible Under the Allegations.

Plaintiffs' counsel argued in the meet and confer process that the cases *Applebaum* relies upon make an exception for witness bribery. However, that exception does not apply here because Plaintiffs did not, either in the Original or Amended Complaint, plead bribery as a predicate act. Instead, the Amended Complaint *still* only pleads violations of the wire fraud (18 U.S.C. § 1343) and mail fraud (18 U.S.C. § 1341) statutes. That alone puts an end to that argument.

---

[22] *See also I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265, 267-68 (8th Cir. 1984) ("[L]itigation is as American as apple pie. If a suit is groundless or filed in bad faith, the law of torts may provide a remedy. Resort to a federal criminal statute is unnecessary."); *Domanus v. Locke Lord LLP*, 847 F.3d 469, 483 (7th Cir. 2017) ("there are many tools available to discipline lawyers who foment frivolous litigation," and the "path to relief…is not through RICO"); *Gabovitch v. Shear*, 70 F.3d 1252 (table), 1995 WL 697319, at *2 (1st Cir. 1995) ("proffering false affidavits and testimony to [a] state court" does not constitute a predicate act of extortion or mail fraud under RICO).

If further argument is needed, Plaintiffs also do not allege any facts establishing bribery. The Amended Complaint references bribery only in passing, and only in a conclusory way. Stringing together the few paragraphs that even use the term "bribe," the Amended Complaint alleges only that "Burt is compensated directly or indirectly by Marc Simon and Simon & Simon" and that "such compensation operates as a bribe" to "induce Burt to produce fraudulent records and provide unnecessary treatment." Am. Compl. ¶¶ 7, 60. Like its other allegations, the Amended Complaint relies largely on passive voice sentence structure, stating that the compensation "operates as a bribe." Plaintiffs omit the subject of that sentence because there is no factual basis to make an allegation that "the Simon Defendants bribed Burt."

The Amended Complaint does not allege facts showing any corrupt agreement between the Simon Defendants and Dr. Burt to improperly influence Dr. Burt, including: the amount paid to Dr. Burt to corruptly influence him; how any such payment originated from the Simon Defendants; Dr. Burt's acceptance of any offer; or what the terms were of any such agreement (*i.e.*, what specifically Dr. Burt agreed to do in exchange for such payment). The Amended Complaint simply pleads the unremarkable allegation that Dr. Burt's per-procedure payment was $3,200. *Id.* ¶ 58. No allegations state that such payment is disproportionate to the procedure performed or why that amount would improperly influence Dr. Burt. No allegations state that the payment was made by the Simon Defendants (because it was not)—only that the Simon Defendants "indirectly" caused such payments to be made through some unnamed "third-party funder." *Id.* These allegations come nowhere close to meeting Rule 8. *Twombly*, 550 U.S. at 557 ("conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality"); *Naprstek v. Marriott Int'l,* 2024 WL 113804, at *8 (S.D.N.Y. Jan. 10, 2024) ("conclusory allegation of bribery, without more, does not even begin to satisfy the *Twombly-Iqbal* standard"); *see also Gochin v. Haaz*, 2017

WL 4475973, at *8 (E.D. Pa. May 10, 2017).

As zealous advocates, the Simon Defendants try to maximize their clients' recoveries for real, legitimate injuries, as any lawyer would. Indeed, insurance defense lawyers pursue the inverse objective—to *minimize* claims to maximize their clients' profits. *See Curtis*, 758 F. Supp. at 183 (recounting the dismissal of RICO claims and sanctions awarded in the plaintiffs' prior case "against two lawyers, their respective law firms, a consulting doctor, and two insurance adjustment agents…alleging that the [] defendants engaged in a fraudulent scheme to maximize the insurance company's profits by 'systematically deny[ing] coverage, delay[ing] settlement, and compel[ing] claimants…to litigate.''). There is no reason any court should consider RICO claims against the plaintiffs' bar while insulating insurance defense lawyers from liability for mirror-image conduct.

### 2. None of the Defendants' Alleged Predicate Acts Are Pled as Mail or Wire Fraud Under Required Pleading Standards.

Not only are the alleged predicate acts of mail or wire fraud protected litigation acts, which fail to establish a RICO claim, Uber and FedEx also separately fail to adequately plead such predicate acts anyway. Mail and wire fraud requires "(1) a scheme to defraud, (2) use of the mail or interstate wires to further that scheme, and (3) fraudulent intent." *Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*, 87 F. App'x 227, 231 (3d Cir. 2003). Because Rule 9(b) applies, the "who, what, when and where details of the alleged fraud" must also be pled. *Id.*

First, the other Defendants' activities (preparing their respective medical reports) are not predicate acts at all because those documents did not directly cause Plaintiffs' harm and are at most acts further down the causal chain. *Jannuzzio v. Danby*, 2022 WL 2541678, at *9 (E.D. Pa. July 7, 2022) ("The predicate act or acts alleged in relation to the RICO claim, must be the direct cause of the alleged financial harm, and courts may not engage in a multi-step analysis to link the predicate act tenuously to the claimed injury. In essence, in order to show proximate cause, the

claimed injury must be the next link in the chain of causation after the predicate act."); *Knopick v. UBS Fin. Servs., Inc.,* 121 F. Supp. 3d 444, 464 (E.D. Pa. 2015) (finding no "direct link between the fraud and the later harm" because finding a link between the fraud and harm "required the Court to move well beyond that first step, something the Court cannot and will not do.").

Regardless, none of the predicate acts by the other Defendants are pled with Rule 9(b) particularity because there are no allegations of *when* each Defendant used mailings or wires to transmit their allegedly fraudulent documents. For example, Paragraphs 461 and 463 simply plead the date when Dr. Burt and Dr. Yarus *prepared* their respective reports, but not when those Defendants used mailings or wires to transmit them. Am. Compl. ¶¶ 461, 463. And while Paragraph 462 pleads the date when the PSA Defendants allegedly transmitted their report to an "electronic patient records portal," there is no date pled as to when the PSA Defendants allegedly "thereafter caused all such fraudulent documents to be transmitted to Marc Simon and Simon & Simon via interstate wires." *Id.* ¶ 462. These defects apply throughout the Amended Complaint.

Further, Plaintiffs do not even meet the Rule 8 standard for pleading "fraudulent intent." The allegations of intent in the Amended Complaint are boilerplate (*see* Am. Compl. ¶¶ 455-58) and nothing more than "threadbare recitals" of legal conclusions insufficient to survive a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678. Plaintiffs never actually plead *facts* plausibly showing fraudulent intent. Instead, Plaintiffs ask this Court to infer it. For example, the PSA Defendants are accused of preparing twenty-seven reports for treatment that "did not occur as described" simply because two reports were signed within a few minutes of the appointment's start time. Am. Compl. ¶ 104. But there is nothing pled suggesting that the appointments could not have simply started before the listed start times. For Dr. Burt, he is accused of making fraudulent diagnoses because he uses a "fill-in-the-blank form." *Id.* ¶ 53. But nothing is pled making it plausible that using a template

form when treating patients with similar injuries requiring similar treatments is "fraudulent." Then

for Dr. Yarus, Plaintiffs allege that he produces reports adopting Dr. Burt's records "in return for

compensation from Simon & Simon in the form of payment of hundreds of dollars for the report,

as well as the promise—whether implicit or explicit—of up to millions of dollars in payment for

similar false reports in other cases." *Id.* ¶ 113. It is not plausible that a litigation expert is

committing fraud or lying in his expert report due to the mere fact that he is being paid or is hoping

for repeat business from that lawyer. If so, every civil litigation would involve RICO claims. And,

it would mean Uber is engaging in racketeering as well. In Case B, for example, Plaintiffs plead

that the defense's "independent medical expert" opined that Claimant B's MRI did not show

accident-related trauma. *Id.* ¶ 123. Under Plaintiffs' logic, that paid-for expert opinion led to the

defense verdict against Claimant B (*id.* ¶ 137) and Claimant B now has a RICO claim against Uber.

Finally, and for every case, the allegations of the Simon Defendants' fraudulent intent are

entirely conclusory. There are no allegations that the Simon Defendants know that anything in any

of the underlying medical records are untrue, nor could they know since they are not doctors.

Accordingly, the Amended Complaint does not plausibly plead any scheme or intent to

defraud by the Defendants. *See Marangos v. Swett*, 341 F. App'x 752, 757 (3d Cir. 2009)

("Assuming, arguendo, that these allegations meet the standard of particularity required by Rule

9(b), and assuming their veracity, we agree with the District Court that they are insufficient under

the less rigid pleading standard set forth in Rule 8(a)(2) to permit a plausible inference of a scheme

or an intent to defraud[.]"); *Walther v. Patel,* 2011 WL 382752, at *6 (E.D. Pa. Feb. 4, 2011)

("Though this allegation identifies the general content of the representation, it does not present any

facts suggesting the representations were made knowing of their falsity.").

For these reasons, no predicate acts are adequately alleged under either Rule 8 or 9(b).

### 3. Because the Only "Predicate Acts" Allegedly Committed by Marc Simon Are Filing and Serving Complaints, He Personally Should Be Dismissed.

The only "predicate acts" alleged to have been committed personally by Marc Simon with any sort of particularity are the filing and serving of complaints. Am. Compl. ¶¶ 460; 464; 470; 473; 477; 480; 484; 487; 488; 492; 495; 497; 499; 501; 504; 506; 508; 510. That activity is definitionally and categorically not mail or wire fraud, and thus cannot be grounds for RICO liability against him personally. *See Applebaum*, 2022 WL 17090172, at *1; *Nolan*, 269 F. Supp. at 643. Accordingly, at a minimum, Defendant Marc Simon should be dismissed with prejudice.

### D. Uber and FedEx Fail to Plausibly Allege Conduct of an Enterprise.

Plaintiffs' claims separately fail for insufficiently pleading any RICO enterprise.

First, the "Simon & Simon Enterprise" (Count I) and "Premier Pain & Rehab Center Enterprise" (Count II) are not RICO enterprises because those entities are themselves "persons" alleged to have conducted the racketeering activity. *See, e.g.*, Am. Compl. ¶ 427 ("Defendant Simon & Simon and Defendant Marc Simon organized and effectuated this scheme."); ¶ 433 ("The fraudulent documents produced by Defendant Premier Pain & Rehab Center and Defendant Burt are crucial to advancing Simon & Simon's scheme."). This indistinction between "person" and "enterprise" fails RICO liability as a matter of law. *Cedric Kushner Promotions Ltd. v. King*, 533 U.S. 158, 161 (2001) ("person" and "enterprise" must be distinct); *Macauley v. Est. of Nicholas*, 7 F. Supp. 3d 468, 481-82 (E.D. Pa. 2014) (party "cannot allege RICO claims against a company…where the company is the enterprise").

Recognizing this, Plaintiffs allege the existence of a "Association-in-Fact" enterprise (Count III) "distinct from the culpable persons and their respective corrupt activities." Am. Compl. ¶ 450. This Court has previously set forth the elements of an "association-in-fact" enterprise:

> (1) "some sort of structure ... within the group for the making of decisions, whether it be hierarchical or consensual. There must be some mechanism for

33

> controlling and directing the affairs of the group on an on-going, rather than ad hoc, basis"; (2) the associates must "function as a continuing unit, meaning each person performs a role in the group consistent with the organizational structure established by the first element and which furthers the activities of the organization"; and (3) the association must be "an entity separate and apart from the pattern of activity in which it engages."

*T. Levy Assocs., Inc. v. Kaplan*, 2016 WL 10920370, at \*1 (E.D. Pa. Nov. 16, 2016) (Kearney, J.) (quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 365 (3d Cir. 2010)).

First, the Amended Complaint does not plead a structure. The Supreme Court has made clear "structure" requires: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). The Amended Complaint simply pleads a system of referrals that the parties engage in for their own benefit. Even if mutually beneficial, such a system of referrals is not a RICO enterprise. *See Mega Concrete, Inc. v. Smith*, 2011 WL 1103831, at \*10 (E.D. Pa. Mar. 24, 2011) ("there are no facts to support a reasonable inference that any of the moving defendants engaged in activities constituting 'participation' in the affairs of the enterprise, as opposed to simply their own ostensibly legitimate business affairs.").

The Defendants' alleged parallel conduct is also insufficient under RICO, which does not cover "hub and spoke" enterprises that lack a "unifying rim." *See In re Ins. Brokerage.*, 618 F.3d at 374-75. There is no "unifying rim" pled in the Amended Complaint because there are no plausible allegations that either Marc Simon or Simon & Simon controlled the other Defendants. Plaintiffs merely plead that the Simon Defendants refer clients to Dr. Burt. Even if doing so furthered some illicit scheme, that does not mean that the Simon Defendants operated or managed a RICO enterprise. *Drummond v. Zimmerman*, 454 F. Supp. 3d 1210, 1219 (S.D. Fla. 2020) ("courts have held that merely providing standard legal services will not subject an attorney to RICO liability, even where the attorney's services furthered the enterprise's goal or where the

attorney knew of the illicit nature of the enterprise's affairs."); *State Farm Mut. Auto. Ins. Co. v. Abrams,* 2000 WL 574466, at *11 (N.D. Ill. May 11, 2000); *Biofeedtrac, Inc. v. Kolinor Optical Enters. & Consultants, S.R.L,* 832 F. Supp. 585, 591 (E.D.N.Y. 1993).

While Plaintiffs go on to plead that the Simon Defendants "also directed the specific procedure that was to be purportedly performed on each patient, before Burt had even examined the patients," that allegation is not plausible. Am. Compl. ¶ 46. Plaintiffs attempt to draw this inference by pointing to heavily redacted emails regarding appointments on March 31, 2022 and November 18, 2020, respectively. *Id.* ¶¶ 46-47. But no Claimants at issue in the entire Amended Complaint are alleged to have had appointments with Dr. Burt on those dates. *See generally* Am. Compl. Further, it is not plausible that, even generally, these emails demonstrate that the Simon Defendants directed specific procedures. The Amended Complaint pleads the opposite; that Burt made diagnoses and treatment decisions for each Uber and FedEx Claimant *after* examining that specific Claimant. *Id.* ¶¶ 107; 125; 142; 158; 177; 193; 204; 222; 240; 256; 269; 287; 300; 319. Thus, the "obvious alternative explanation" is that Dr. Burt made diagnoses and treatment decisions for himself, not based on emails from Simon & Simon of which he was not even a recipient. *Iqbal*, 556 U.S. at 682 (drawing inference of illegality is not plausible where there is "obvious alternative explanation") (quoting *Twombly*, 550 U.S. at 570). Indeed, Plaintiffs plead that Claimant R did *not* receive a radiofrequency ablation (Am. Compl. ¶ 240), which shows the illegality is not plausible (or else the Simon Defendants would have compelled it to be done).

Second, the Complaint does not plead a continuing unit that functions to achieve a common purpose. Not only is the "hub" rimless, but it requires various different, non-defendant "spokes" in every case. For example, it requires a new claimant to agree to lie about or exaggerate their injury and then consent to their nerves being burned. And it also requires different Emergency

Medical Technicians, hospitals, ER doctors, and MRI technicians to fraudulently treat or diagnose each claimant before the Defendant Doctors even issue their reports.  The number of different non-defendants purportedly in on the scheme in each underlying case shows no continuing unit. *See Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 302 (E.D.N.Y. 2017).

Finally, the association is not separate from the alleged misconduct. In addressing this prong, "it is [the] normal practice to determine if the enterprise would still exist were the predicate acts removed from the equation." *T. Levy*, 2016 WL 10920370 at *2. Attempting to avoid that prong, the Amended Complaint adds a throw-away line that the "association-in-fact enterprise" also "encompassed legitimate claims and treatment." Am. Compl. ¶ 450. But to take the allegations in the Amended Complaint as true requires finding that every case where Dr. Burt provided treatment is fraudulent. The Amended Complaint pleads that Dr. Burt's standard appointment report itself "is not a legitimate individualized medical record" and "composed of predetermined, default statements which remain across patient files." *Id.* ¶ 53. The Amended Complaint also pleads that Dr. Yarus "has identified a serious injury, found causal attribution, and recommended lifetime medical care in 100% of the hundreds of cases in which he has testified for Simon & Simon clients." *Id.* ¶ 77. Thus, per Plaintiffs' allegations, the enterprise only exists to perpetrate misconduct. Therefore, "separateness" fails.  As such, Plaintiffs fail to plead a RICO enterprise.

### E.    Res Judicata Bars Uber's and FedEx's Claims.

Res judicata separately bars Plaintiffs' RICO claims premised on other completed litigations. *See, e.g.*, *Hua v. Lehman XS Tr. Mortg. Pass-Through Certificates, Series 2007-7N*, 2017 WL 5473458, at *6 (E.D. Pa. Nov. 14, 2017) (Kearney, J.) (dismissing complaint with RICO claims challenging earlier state court proceedings, finding plaintiffs were "barred from relitigating their claims under *res judicata*"). A claim is precluded under res judicata where there is "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a

subsequent suit based on the same cause of action." *Id.* at *3. All three prerequisites are met here.

First, there is a final judgment. Most of the cases referenced in the Amended Complaint are subject to final judgments by way of either settlement (Claimants A, C, D, E, G, H, I, K, L, M, P, Q, R, V, BB, CC, DD, EE, FF, GG) or verdict (Claimant B). Both are final judgments for res judicata purposes. *Khalil v. Travelers Indem. Co. of Am.*, 273 A.3d 1211, 1226 (Pa. Super. 2022); *Pac-W. Distrib. NV LLC v. AFAB Indus. Servs.*, 2022 WL 717276, at *3 (E.D. Pa. Mar. 10, 2022).

Second, these are the same parties or their privies. Plaintiffs cannot avoid res judicata by arguing that the Simon Defendants were not parties in the underlying actions because they are in privity with the parties in those actions. *See Lewis v. O'Donnell*, 674 F. App'x 234, 237 n.5 (3d Cir. 2017) (affirming dismissal of RICO claim for res judicata and finding attorneys in privity with their client in the prior action); *Khalil*, 273 A.3d at 1228 & n.10 (lawyers sued for "committing misconduct in prior lawsuits while serving as counsel to the parties" are in privity for res judicata).

Third, the underlying cases and Plaintiffs' RICO action raise the same cause of action because both are premised on "an essential similarity of the underlying events." *Kornafel v. United States Postal Serv.*, 784 F. App'x 842, 843 (3d Cir. 2019). Uber and FedEx could have asserted fraud defenses or counterclaims in the underlying cases, and the Amended Complaint pleads no reason why they did not do so. *See Khalil*, 273 A.3d at 1227 ("Under res judicata principles, since Appellant could have raised fraud on these occasions, her failure to take advantage of these opportunities precludes her from alleging fraud in the present case…"); *Ezekoye v. Ocwen Fed. Bank FSB*, 179 F. App'x 111, 113 (3d Cir. 2006) (affirming dismissal of RICO claim based on alleged fraud in underlying mortgage foreclosure litigation and stating: "As these claims could have been raised in Ezekoye's state court complaint, they are barred by the doctrine of claim preclusion."); *In re Coatsville Area Sch. Dist.*, 664 Pa. 371 (2021) ("[R]es judicata, or claim

preclusion, prohibits parties involved in prior, concluded litigation from subsequently asserting claims in a later action that were raised, or could have been raised, in the previous adjudication.").

Finally, the *relief* Uber and FedEx now seek (fees and costs incurred in the underlying cases) is also barred. Primarily, "claims for attorneys' fees, whether triggered by contract or statute, are generally considered a part of the same cause of action as the underlying liability question." *SupplyOne, Inc. v. Triad Packaging, Inc.*, 2014 WL 3676524, at *4 (E.D. Pa. July 24, 2014); *see also Burger King Corp. v. New England Hood & Duct Cleaning Co.*, 2001 WL 283161, at *2 (E.D. Pa. Mar. 21, 2001) (claim for "attorneys' fees and costs" is "part of the same cause of action as that underlying the substantive claim…Thus, it is barred by the doctrine of claim preclusion.").

## F.   *Rooker-Feldman* Bars Uber's and FedEx's Claims.

Plaintiffs' claims must also be dismissed under the *Rooker-Feldman* doctrine, which "prohibits federal courts from exercising jurisdiction in 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Hua*, 2017 WL 4240911, at *4 (quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 164 (3d Cir. 2010)). *Rooker-Feldman* applies when "(1) the federal plaintiff lost in state court; (2) the plaintiff complain[s] of injuries caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Id.*

Here, Plaintiffs' claims are facially barred under *Rooker-Feldman* because Plaintiffs complain of injuries caused by state-court judgments (*i.e.*, settlements that have resulted in final judgments in state court). While meeting and conferring, Plaintiff Uber claimed it was not a "loser" in state court because it was voluntarily dismissed in each case prior to verdict or settlement. However, both Uber's and FedEx's requested relief requires setting aside the final judgments and

undoing the settlements that are now part of final judgments. This runs afoul of *Rooker-Feldman*. *See ITT Corp. v. Intelnet Int'l Corp.*, 366 F.3d 205, 210 (3d Cir. 2004) ("If the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling, then the issues are inextricably intertwined and the district court has no subject matter jurisdiction to hear the suit."). Finally, both this Court and the Third Circuit have disposed of RICO claims on *Rooker-Feldman* grounds. *See Hua*, 2017 WL 4240911, at *5; *Purpura v. Bushkin, Gaimes, Gains, Jonas & Stream*, 317 F. App'x 263, 265 (3d Cir. 2009) (affirming dismissal of RICO action challenging allegedly fraudulent state court divorce judgment).

### G.    Uber and FedEx Fail to State a RICO Conspiracy Claim in Count IV.

Plaintiffs' RICO conspiracy fails for all the reasons the substantive RICO claims fail. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient."). The claim independently fails for lack of: "(1) knowledge of the corrupt enterprise's activities; and (2) agreement to facilitate those activities." *Barbieri v. Wells Fargo & Co.,* 2014 WL 7330461, at *7 (E.D. Pa. Dec. 22, 2014).

### 1.    Knowledge of Corrupt Activities.

"[W]here a defendant is alleged to have conspired with a RICO enterprise to violate § 1962(c) by providing it what would ordinarily be lawful professional services, liability will arise only from services which were purposefully and knowingly directed at facilitating a criminal pattern of racketeering activity." *Reyes v. Zion First Nat. Bank*, 2012 WL 947139, at *6 (E.D. Pa. Mar. 21, 2012). Those who "merely provide services" cannot be held liable, and "liability will arise only from services which were purposefully and knowingly directed at facilitating a criminal pattern of racketeering activity." *Smith v. Berg*, 247 F.3d at 537, n.11 (3d. Cir. 2001); *see also Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989).

### a. The Philadelphia Spine Associates ("PSA") Defendants.

The allegation that the PSA Defendants knowingly provided unnecessary treatment and false causation opinions is implausible on its face because it is *directly contradicted* by the same "independent" medical examination reports the Amended Complaint relies upon as support for its claims. *See* ¶¶ 123, 153, 156, 218, 280, 365, 372, 387, 388, 419. As this Court has written, "[a]lthough we accept facts [plaintiff] alleges as true at this stage, it is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Ricoh USA, Inc. v. Innovative Software Sol., Inc.*, 2020 WL 7024290, at *7 (E.D. Pa. Nov. 30, 2020) (Kearney, J.). The Court can consider these "independent" medical expert reports because they are unquestionably integral to Plaintiffs' claims; they are repeatedly referenced throughout the Amended Complaint and Plaintiffs' damages include "fees" paid to "independent" experts hired to refute the injury claims made by each example claimant. *See id.* ¶¶ 440, 442. General pleading standards provide no protection from the truth exposed by the expert reports just because Plaintiffs made the strategic choice not to attach them as formal exhibits to the Amended Complaint. "[W]here a document is integral to or explicitly relied upon in the complaint, it may be considered without converting the motion to dismiss into one for summary judgment under Rule 56." *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("We now hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

The expert reports in the Uber and FedEx cases – *paid for and accepted by the Plaintiffs as authoritative* – destroy all pretense to plausibility of the conspiracy claim made against PSA. First, in the report of the "independent" medical expert for Claimant A, the expert agreed the myofascial sprain/strain of the cervical, thoracic, and lumbar spine complained of by the patient

and diagnosed by PSA was caused by the accident in question and that the treatment provided by PSA was reasonable and appropriate. Baratta Decl., Ex. A at 4. Then, in the report of the "independent" medical expert for Claimant B, the expert obtained a history from the patient of neck and back pain from the accident in question and implicitly agreed the patient did in fact suffer the facet pain and facet syndrome treated by PSA and diagnosed as resulting from the accident in question. *Id.*, Ex. B at 4 ¶ 7.  In the report of the "independent" medical expert for Claimant D, referenced in paragraph 153 of the Amended Complaint, the defense expert agreed the lumbar sprain diagnosed and treated by PSA "would be the diagnosis referable to the incident in question"; the treatment provided by PSA was "reasonable and appropriate"; and the MRI ordered by PSA was "reasonable to have been ordered." *Id.*, Ex. C at 6-7.  Finally, in the report of the "independent" medical expert for Claimant E, referenced in paragraph 180 of the Amended Complaint, the expert concedes (albeit grudgingly) the accuracy of the causation opinion offered by PSA as to the sprains/strains of J.J.'s cervical and lumbar spine.  *Id.*, Ex. D at 6.

The reports in the cases brought "against others" are more of the same. In the multiple reports of the "independent" medical experts for Claimant EE, referenced in paragraphs 387-388 of the Amended Complaint, one expert explicitly agreed with a peer review which found the treatment prescribed by PSA to have been reasonable and necessary (finding just the last few visits prescribed to have been non-compensable due to the patient's non-compliance with the treatment plan). *Id.*, Ex. E-1 at 3. The other defense expert plainly agreed with the causation opinion of PSA. *Id.*, Ex. E-2 at 4. The peer reviewer referred to by *both* experts opined unequivocally PSA's diagnoses and causation opinion were reasonable and appropriate. *Id.*, Ex. E-3 at 4-5.  Next, in the report of the "independent" medical expert for Claimant FF, the expert agreed the auto crash in question resulted in "sprains/strains/contusions and possibly one or more nerve root traction

injuries." *Id.*, Ex. F. These are the very injuries PSA is alleged to have diagnosed, treated, and related to the crash. *See* Am. Compl. ¶ 393. Finally, in the report of the "independent" medical expert for Claimant GG, referenced in paragraph 419 of the Amended Complaint, the expert stated Claimant GG's injuries from the crash were consistent with the cervical and lumbar sprain strain diagnosed and treated by PSA and, further, the chiropractic treatment was appropriate for the affected areas. Baratta Decl., Ex. G at 5.

These expert reports recognized as authoritative by the Amended Complaint demonstrate, *at a minimum*, that PSA provided reasonable and necessary treatment. It is simply *impossible* for PSA's causation opinions to have been *fraudulent* when medical experts hired by the defense in the underlying cases to rebut the opinions *agreed they were accurate*.   In short, Plaintiffs' Amended Complaint pleads facts which demonstrate indisputably PSA provided entirely lawful professional services to the 10 Simon-represented patients they are described as treating.

**b.  The Premier Defendants.**

As to Dr. Burt, who prepared medical reports in the ordinary course of treating patients who were admittedly involved in motor vehicular accidents, Plaintiffs admit that Dr. Burt reviewed medical records of prior treatments (including MRIs), took a medical history, and performed a physical examination of each patient all prior to making the decision to perform a medial branch nerve block, and **then** made a decision to administer the radiofrequency ablation.[23] Thus, Plaintiffs' own allegations show Dr. Burt made bona fide diagnoses and treatment decisions.

---

[23] Am. Compl. ¶¶ 46; 48; 51; 64; 69; 101; 103; 105; 107; 119; 121; 123; 125; 126; 138; 140; 142; 143; 150; 152; 156; 158;159; 168; 170; 173; 177; 178; 187; 190-195; 204-206; 213; 216-218; 221-223; 234; 237; 239-241; 251; 253-254; 256; 265; 266; 267; 269; 278; 280; 285; 287; 288; 290; 294; 297; 300-301; 311; 313; 315-316; 319-320; 331; 334; 335; 337; 346; 349; 351; 360; 362; 364; 374; 377-379; 390; 393; 395; 404; 407; 409; 411. For Claimant U specifically, it would have been unnecessary for that claimant to "seek medical clearance related to a medication he was taking" prior to the procedure if Dr. Burt was not actually performing the procedures. *Id.* ¶ 288.

### c.  Dr. Yarus.

As to Dr. Yarus, the Amended Complaint fails to plausibly allege that he acted with the knowledge required to sustain a RICO conspiracy claim. Instead of alleging particularized facts establishing such knowledge, Plaintiffs seek to draw an inference that Dr. Yarus supposedly "knew" certain claimants suffered no substantial injuries and therefore must have known his reports were false. *See, e.g.*, Am. Compl. ¶¶ 112, 132, 181. These allegations are conclusory and unsupported by factual content demonstrating contemporaneous awareness of fraud.

Critically, the Amended Complaint affirmatively alleges that Dr. Yarus prepared his reports based on medical records generated by Dr. Burt and the PSA Defendants. *See* Am. Compl. ¶¶ 110, 130, 180. Yet Plaintiffs do not allege that Dr. Yarus knew those underlying records were fraudulent. That omission is fatal. Indeed, the newly added MRI allegations undermine any inference of knowledge: Plaintiffs acknowledge that MRIs obtained by the PSA Defendants gave Dr. Burt's procedures "the appearance of legitimacy." *Id*. ¶ 72. Since Plaintiffs concede that the medical records appeared legitimate on their face, it is implausible to infer that Dr. Yarus knowingly issued false reports while relying on them. *Twombly*, 550 U.S. at 556-57.

Nor do Plaintiffs' remaining allegations cure this deficiency. Assertions that Dr. Yarus's reports contained similar opinions across multiple examinations (Am. Compl. ¶¶ 79–81, 109, 129), that he diagnosed serious or permanent injuries requiring long-term care (*id*. ¶¶ 77, 88, 109, 129), or that certain claimants did not ultimately pursue recommended treatment (*id*. ¶¶ 9, 37, 85) describe, at most, professional medical judgment and common medico-legal practice. The same is true of allegations that other experts disagreed with his conclusions (*id*. ¶¶ 229, 387–88, 419). Disagreement among experts is routine and does not transform medical opinion into fraud. *See id*. ¶¶ 89-91 (acknowledging that Dr. Yarus's reports are medical expert litigation documents that opposing experts may challenge). Likewise, the allegation that Dr. Yarus earned approximately $3

million for performing thousands of evaluations (*id.* ¶¶ 26, 75) reflects only a high volume of lawful expert work, not participation in a criminal enterprise.

At bottom, Plaintiffs' theory rests on disagreement with Dr. Yarus's expert opinions, but "those who innocently provide services without knowledge that they are aiding a criminal pattern of racketeering will not incur liability." *Knit With v. Knitting Fever, Inc.*, 2011 WL 891871, at *9 n.4 (E.D. Pa. Mar. 10, 2011). As in *Knit With*, the Amended Complaint pleads no particularized facts showing that Dr. Yarus was aware of—or agreed to further—any unlawful racketeering scheme. *See id.* at *9. Because Plaintiffs fail to allege facts plausibly supporting the requisite knowledge element, Count IV must be dismissed.

### d.  The Simon Defendants.

Finally, there are no allegations plausibly demonstrating that the Simon Defendants knew information in any of the other Defendants' medical reports were false. *Supra* Section II.C.2.

### 2.  Lack of Agreement Between Defendants.

Finally, Plaintiffs plead no facts establishing an "agreement" between the Defendants other than stating: "Defendants did unlawfully, knowingly, and intentionally combine, conspire, and agree to facilitate or further a scheme…" Am. Compl. ¶ 535. This is entirely conclusory. At most, the Amended Complaint pleads only "parallel conduct," which does not support an "agreement" for purposes of a conspiracy. *Lewis v. Mainer*, 2016 WL 10956506, at *4 (E.D. Pa. Aug. 23, 2016). Indeed, *Twombly* makes clear that "[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 556-57.

"It is not enough for a complaint to simply make conclusory allegations of concerted action but [be] devoid of facts actually reflecting joint action." *Abbott v. Latshaw,* 164 F.3d 141, 148 (3d Cir. 1998). "Moreover, mere inferences from the complaint are inadequate to establish the

necessary factual basis." *The Knit With v. Knitting Fever, Inc.,* 2011 WL 1161716, at *4 (E.D. Pa. Mar. 30, 2011), *aff'd,* 625 F. App'x 27 (3d Cir. 2015). Rather, the "[p]laintiff must allege facts to show that each Defendant objectively manifested an agreement to participate, directly or indirectly, in the affairs of a RICO enterprise through the commission of two or more predicate acts" and "bare allegations of conspiracy described in general terms may be dismissed." *Id.*

"Bare allegations of conspiracy described in general terms" is exactly everything Plaintiffs plead. Take PSA for example. The Amended Complaint offers no facts at all to establish that PSA was aware even of the *existence* of Dr. Burt or Dr. Yarus and cites no communication or writing even *remotely* connecting PSA to either doctor. The district court in *The Knit With* dismissed a §1962(d) claim based on similarly generalized conclusions in which "nothing on the face of the Complaint allows any reasonable inference" that the defendant "agreed to facilitate" a fellow defendant's predicate acts. 2011 WL 1161716, at *8. The Amended Complaint similarly fails. For example, Plaintiffs allege Claimant U saw Dr. Burt before treatment at PSA, but PSA's records reflect no awareness at all of the Claimant's treatment with Dr. Burt. Am. Compl. ¶¶ 289, 291. While offered as criticism of PSA's record keeping, this allegation summarily dooms any suggestion of concerted action amongst the medical providers or that they functioned as a unit. Simply put, co-conspirators cannot be unaware of each other while also acting in concert.

## III.   CONCLUSION

For any and all of the foregoing reasons, Defendants respectfully request that the Court grant the Motion and dismiss the Amended Complaint with prejudice and without leave to amend.

Dated: February 23, 2026

Respectfully submitted,

**BARATTA LAW, LLC**

**BLANK ROME LLP**

/s/_____*Andrew P. Baratta*
ANDREW P. BARATTA, ESQUIRE
Attorney I.D. No. 82250
BARATTA LAW, LLC
3500 READING WAY
HUNTINGDON VALLEY, PA 19006
215-914-8132

*Attorney for Defendants, Philadelphia
Spine Associates, LLC, Daniel Piccillo,
D.C., and Ethel Harvey, D.C.*

**FOX ROTHSCHILD LLP**
/s/_____*Stephanie Nolan Deviney*
Stephanie Nolan Deviney, Esquire
Attorney ID 80770
Eagleview Corporate Center
747 Constitution Drive, Suite 100
Exton, PA 19341-0673
Phone: (610) 458-7500
Email: SDeviney@FoxRothschild.com

*Attorneys for Defendants, Clifton Burt
and Premier Pain & Rehab Center, PC*

/s/ Daniel E. Rhynhart_____
James T. Smith (I.D. No. 39333)
Daniel E. Rhynhart (I.D. No. 78248)
Rebecca D. Ward (I.D. No. 79547)
Michael A. Stoolman (I.D. No. 326117)
Maegan S. Spitzer (I.D. No. 335905)
One Logan Square, 130 N. 18th Street
Philadelphia, PA 19103
Phone: (215) 569-5371
Email: Jim.Smith@BlankRome.com
Dan.Rhynhart@BlankRome.com
Rebecca.Ward@BlankRome.com
Michael.Stoolman@BlankRome.com
Maegan.Spitzer@BlankRome.com

*Attorneys for Defendants
Simon & Simon, P.C. and Marc Simon*

**DILWORTH PAXSON LLP**

/s/_____*Silvio Trentalange*
Silvio Trentalange (PA No. 320606)
Nina Spizer (PA No. 82443)
John J. Higson (PA No. 80720)
1650 Market Street, Ste. 1200
Philadelphia, PA 19103
T: 215-575-7000
nspizer@dilworthlaw.com
jhigson@dilworthlaw.com
strentalange@dilworthlaw.com

*Attorneys for Defendant Lance Yarus*

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel E. Rhynhart, hereby certify that on February 23, 2026, a true and correct copy of the foregoing was served via ECF on all counsel of record.


*/s/ Daniel E. Rhynhart*
Daniel E. Rhynhart