**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UBER TECHNOLOGIES, INC. and FEDERAL EXPRESS CORPORATION, <br><br>   Plaintiffs, <br><br>     v. <br><br> SIMON & SIMON P.C., MARC SIMON, CLIFTON BURT, PREMIER PAIN & REHAB CENTER, PC, ETHEL HARVEY, DANIEL PICCILLO, PHILADELPHIA SPINE ASSOCIATES, LLC, AND LANCE YARUS, <br><br>   Defendants. | : <br> : <br> :   CIVIL ACTION <br> : <br> : <br> :   No. 2:25-cv-05365-MAK <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

**DEFENDANTS' JOINT SUPPLEMENTAL MEMORANDUM PURSUANT TO ECF 94**

Pursuant to the Court's April 14, 2026 Order (ECF 94), Defendants Simon & Simon, P.C. and Marc Simon (the "Simon Defendants"), Defendants Clifton Burt and Premier Pain & Rehab Center, PC (the "Premier Pain Defendants"), Defendants Daniel Piccillo, Ethel Harvey, and Philadelphia Spine Associates, LLC (the "PSA Defendants"), and Defendant Lance Yarus (collectively, the "Defendants") jointly submit this post-hearing supplemental Memorandum addressing the question raised by the Court's April 14, 2026 Order regarding *Montway LLC v. Navi Transport Services LLC*, No. 25-381, 2026 WL 866290 (D. Del. Mar. 30, 2026) in connection with oral argument on Defendants' Joint Motion to Dismiss Plaintiffs Uber Technologies, Inc.'s ("Uber") and Federal Express Corporation's ("FedEx") Amended Complaint (ECF 82).

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ..................................................................................................................1

II.   ARGUMENT.........................................................................................................................2

    A.    *Montway's* Legal Analysis Confirms Why Dismissal Is Required. .......................3

    B.    *Montway's* Facts Are the Opposite of those Pled in the Amended
        Complaint......................................................................................................................5

    C.    Protecting the First Amendment Requires Finding the Doctor Defendants'
        Records Are Petitioning Activity..................................................................................7

III.  CONCLUSION......................................................................................................................7

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*,
    87 F. App'x 227 (3d Cir. 2003) .......................................................................................4

*Dockery v. Heretick*,
    2019 WL 2122988 (E.D. Pa. May 14, 2019) ............................................................3

*Ford Motor Co. v. Mikhov*,
    2026 WL 691879 (C.D. Cal. Mar. 10, 2026) ......................................................3, 5

*In re Ins. Brokerage Antitrust Litig.*,
    618 F.3d 300 (3d Cir. 2010).............................................................................................4

*Montway LLC v. Navi Transport Services LLC*,
    2026 WL 866290 (D. Del. Mar. 30, 2026) ...................................................... *passim*

*Rose v. Bartle*,
    871 F.2d 331 (3d Cir. 1989)............................................................................................4

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) .................................................................................3, 5, 6, 7

## I.    <u>INTRODUCTION</u>

Uber's and FedEx's Amended Complaint is premised on conduct that is indisputably "petitioning a court for redress"—filing and serving complaints and sending demand letters after litigation has commenced—and therefore protected by *Noerr-Pennington*. There are also allegations about prelitigation conduct that was required to bring the lawsuits, which was the focus of the motion to dismiss hearing and the *Montway* case that is addressed here.  Specifically, Uber and FedEx allege that the Simon Defendants directed the Premier Pain Defendants, the PSA Defendants, and Dr. Yarus (together the "Doctor Defendants") to prepare otherwise-unnecessary medical reports (because the treatment was either medically unnecessary or did not occur at all) for the sole purpose of preparing complaints against Uber and FedEx. This Court should dismiss this case with prejudice because *Noerr-Pennington* protects both categories of conduct.

In dismissing, this Court does not need to make a sweeping conclusion that all pre-filing medical reports in every personal injury case are always incidental to litigation. The Court need only look to Plaintiffs' allegations here and apply them to the applicable legal question, which *Montway* has succinctly stated: are the prelitigation communications "related to" the petitioning party's "ability to petition a court for redress for [another's] wrongdoing"? That is unquestionably the case here. The Amended Complaint does not simply plead that the medical records are "related" to litigation; it pleads that those records are essential and integral to the petitions themselves. Without these records, Plaintiffs plead, there would be no lawsuits at all. Am. Compl. ¶ 10 ("Absent Burt's purported treatment and Yarus's fraudulent reports, the underlying lawsuits would not have been brought, would have been resolved through the no-fault system, or could have been resolved through compulsory arbitration."). If *Noerr-Pennington* does not cover communications that Plaintiffs themselves allege are so related to petitioning that they are a but-for cause of the petitions, then the First Amendment's protection of conduct "incidental to"

litigation will disappear.

## II.    <u>ARGUMENT</u>

By Order dated April 14, 2026, the Court requested the parties to address the following issue: "[W]hether we [the Court] should be persuaded in this case by Judge Bibas's analysis in *Montway LLC v. Navi Transport Services LLC*, No. 25-381, 2026 WL 866290 (D. Del. March 30, 2026) in studying whether pre-filing documents prepared by outside professionals directed by the filing lawyers and not intended to be filed as part of the state court complaint or sent to the opposing party are 'incidental enough' to the state court tort litigation so as to be considered petitioning activity as one factor in our *Noerr-Pennington* immunity under the Petition Clause analysis applied to the filing lawyers and outside professionals…" ECF 94.

As an initial matter, Defendants want to clarify any uncertainty the Court may have as to whether the documents prepared by the Doctor Defendants are "sent to the opposing party" in the state court litigations. *Cf.* ECF 94 ¶ 1. They are. Plaintiffs expressly plead that the Doctor Defendants' documents are sent to them "in connection with" the underlying lawsuits as part of demands:

> On or about June 20, 2024, Marc Simon and Simon & Simon **filed a sham lawsuit against Uber** on behalf of Claimant B … **In connection with this suit**, Simon & Simon demanded payment of $1,500,000, and **used Yarus's report and the fabricated evidence of unnecessary treatment purportedly provided by Burt and Premier Pain & Rehab Center and Harvey, Piccillo, and Philadelphia Spine Associates to support this demand.**

Am. Compl. ¶ 135 (emphasis added); *id.* ¶¶ 115; 147; 165; 184; 210; 228-230; 292; 310; 327. And while the documents are not physically attached to the state court complaints, they are "part of the state court complaint(s)." Plaintiffs allege that, relying on these documents, each "complaint falsely stated" that "Plaintiff has sustained serious permanent personal injuries and damages" to specific body parts. *Id.* ¶¶ 460, 464, 468, 470, 473, 477, 480, 484, 487, 488, 492, 495, 497.

These clarifications are important, especially under *Montway*'s analysis, as set forth below.

**A.     *Montway's* Legal Analysis Confirms Why Dismissal Is Required.**

*Montway* confirms that Courts in this Circuit apply the **same caselaw** that required dismissal in *Ford Motor Co. v. Mikhov*, 2026 WL 691879 (C.D. Cal. Mar. 10, 2026), and which requires dismissal here too. Judge Bibas recognized that "courts have applied *Noerr-Pennington* to activities 'incidental' to litigation" and cited the Ninth Circuit's *Sosa* decision for the rationale:

> *Noerr-Pennington* immunizes actions "incidental" to filing a lawsuit because holding a plaintiff liable for "prelitigation conduct when the same demands asserted in a petition to the court [would be] protected would render the entire litigation process more onerous," indirectly burdening the plaintiff's rights under the Petition Clause.

*Montway*, 2026 WL 866290, at *3 (alteration in original) (quoting *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 940 (9th Cir. 2006)).[1] While petitioning activity does not extend to third party communications "unrelated to [the petitioning party's] ability to petition a court for redress for [another's] wrongdoing" (*id.*), the converse is true: "communications between private parties are sufficiently within the protection of the Petition Clause to trigger the *Noerr-Pennington* doctrine, so long as they are sufficiently related to petitioning activity." *Sosa*, 437 F.3d at 935.

Defendants here are not requesting a blanket ruling that *all* "pre-filing documents prepared by outside professionals" are always incidental to litigation in any context. Instead, to grant Defendants' motion to dismiss, the Court need only address the Amended Complaint's allegations and see that Plaintiffs themselves plead that the Doctor Defendants' records are "related to" the Simon Defendants' clients' ability to petition courts for redress of Plaintiffs' wrongdoing.

Per the Amended Complaint, Dr. Burt performs his procedures "for the purpose of fabricating fraudulent medical records to support Simon & Simon's lawsuits." Am. Compl. ¶ 7.

---

[1] Accordingly, *Dockery*'s language that conduct must be "based solely" on petitioning is incorrect.

The PSA Defendants, per Plaintiffs, produce their records "for the purpose of artificially inflating damages claims." *Id.* ¶ 8. Then, Dr. Yarus's reports are, per Plaintiffs, the "final step in effectuating the scheme to artificially inflate these claims." *Id.* ¶ 9. The only way to read Plaintiffs' allegations (especially ¶¶ 4-10) is to find that these communications are not only "related to" the Simon Defendants' clients' ability to petition a court for redress of Uber's and FedEx's wrongdoing, but they are *essential* to such petitioning. *Id.* ¶ 10 ("Absent Burt's purported treatment and Yarus's fraudulent reports, the underlying lawsuits would not have been brought, would have been resolved through the no-fault system, or could have been resolved through compulsory arbitration.").

If the Doctor Defendants *do not* prepare their records for a petition to a court (which is the exact opposite of what Plaintiffs pled) then the alleged fraud scheme unravels. Mail and wire fraud requires "fraudulent intent." *Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*, 87 F. App'x 227, 231 (3d Cir. 2003). If the Doctor Defendants do not intend for their reports to be used in petitions to courts, then Plaintiffs' allegations of their fraudulent intent vanish. The RICO conspiracy also vanishes because it requires an "agreement to commit the predicate acts of fraud" and "knowledge that those acts were part of a pattern of racketeering." *Rose v. Bartle,* 871 F.2d 331, 366 (3d Cir. 1989). The RICO "enterprise" also vanishes because there would be no shared "common purpose" among the Defendants, only a "rimless hub-and-spoke" group individuals. *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 374-75 (3d Cir. 2010).

Reading away Plaintiffs' allegations in order to avoid *Noerr-Pennington* immunity leaves an implausible claim that the Simon Defendants are directing the production of these documents without the Doctor Defendants knowing or intending that the records will be used in petitions to a court. Regardless of how implausible that claim would be, it would still not state a viable legal claim. The only way the documents could injure Uber and FedEx is through use *in litigation*—

conduct that is clearly protected petitioning activity. Indeed, Plaintiffs allege that is how the documents actually injure them. Am. Compl. ¶ 135; *see also id.* ¶¶ 115; 147; 165; 184; 210; 228-230; 292; 310; 327. Without transmission of the records to Uber and FedEx – which is unquestionably protected petitioning activity – there is no RICO claim.

### B.      *Montway's* Facts Are the Opposite of those Pled in the Amended Complaint.

Judge Bibas's finding of no petitioning activity in *Montway* is due to the case's significantly different facts. The case involved a claim for misappropriation of trade secrets by a shipping company against one of its competitors, who then brought a counterclaim alleging that the plaintiff falsely reported the alleged trade secrets misappropriation to a private industry board. Plaintiff sought dismissal of the counterclaim on *Noerr-Pennington* grounds.

The reason that the *Montway* plaintiff's communication with the third-party private industry board was not incidental to litigation was because that communication was not "related" to the plaintiff's petition seeking redress for the defendant's misappropriation of trade secrets. The communication only formed the factual basis for the **defendant's** counterclaim. 2026 WL 866290, at *4. Here, the Doctor Defendants' medical records are inextricably related to the petitioners' petitions seeking redress against Uber and FedEx in the state court tort litigations. Indeed, those reports are not even sent to (or used against) Uber and FedEx unless and until there is a lawsuit.

The facts alleged here are more like the case that *Montway* cites for the legal test: *Sosa*.[2] There, the RICO defendant DIRECTV was alleged to have sent plaintiff a prelitigation demand letter stating: "Business records recently obtained by this office show that you purchased illegal signal theft equipment to gain unauthorized access to DIRECTV's programming." *Sosa*, 437 F.3d at 926 & n.1. Plaintiff alleged that, "contrary to its assertion in the letter, DIRECTV had no

---

[2] Of course, the facts are *most* like *Ford*, as discussed at length in the briefing and at oral argument.

business records showing that Sosa had actually used the equipment to access its signal." *Id.* at 941-42. While the communication was between private parties and made before any actual litigation was initiated, it fell within the protection of the Petition Clause as "sufficiently related to petitioning activity" because it related to and contained the same assertions that would have ultimately been "asserted in a petition to the court." *Id.* at 935-36. Here, just like in *Sosa*, that is the Plaintiffs' allegation: that Marc Simon directs the Doctor Defendants to create medical reports containing the same content that will ultimately be "asserted in a petition to the court."[3] Accordingly, such prelitigation conduct is petitioning activity.[4]

Significantly, under Plaintiffs' allegations, the ***timing*** of the filing of the underlying complaints is irrelevant. If the Simon Defendants had filed a complaint against Uber or FedEx on the day of the collision (which all parties here agree an accident did in fact occur), before the claimant sought any medical treatment, and *then* directed the Doctor Defendants to create medical reports to support the allegations, the medical reports would unquestionably be petitioning activity. It would make little sense that the converse (and the way it is alleged to have happened here)— where the Simon Defendants instructed the Doctor Defendants to create medical records to support a lawsuit first, and *then* filed the complaint against Uber or FedEx—would take the medical reports outside protected petitioning activity. Plaintiffs plead this was one scheme: the medical records were created to support litigation against them. It does not matter which occurred first, the medical records or the complaint. It cannot be the law that medical records prepared after the complaint is filed are protected petitioning activity while those created before are not. Otherwise, lawyers

---

[3] Indeed, Uber and FedEx go much further here and actually allege the medical records have no purpose except to prepare complaints against them. It is unclear if (but seems unlikely that) such an allegation was made about the *Sosa* DIRECTV demand letter.

[4] *Sosa* also makes clear that any ambiguity as to whether conduct is protected should be construed in Defendants' favor in order to avoid burdening the right to petition. *Id.* at 932, 940-41.

6

would be incentivized to file complaints immediately before conducting any (let alone the required reasonable) factual investigation.

C.    **Protecting the First Amendment Requires Finding the Doctor Defendants' Records Are Petitioning Activity.**

*Montway* did not address (because the petitioning was between private parties and not to a court) that ultimately "[t]he First Amendment requires that we protect some falsehood in order to protect speech that matters" and that some "false statements…must nevertheless be protected in order fully to vindicate the free speech rights guaranteed by the First Amendment." *Sosa*, 437 at 933. For this reason, *Noerr-Pennington* "overprotects" even "baseless petitions so as to ensure citizens may enjoy the right of access to the courts without fear of prosecution." *Id.* at 934. Further, there is no need or reason to read "petitioning" or what is "incidental to litigation" narrowly because the sham exception "provides adequate protection," *id.* at 936, and which, as discussed in the briefing and at the oral argument, does not apply here.

III.    **CONCLUSION**

For these reasons, and those in the Motion and Replies, the Court should grant the Motion.

7

Dated: April 24, 2026

Respectfully submitted,

**BARATTA LAW, LLC**

**BLANK ROME LLP**

/s/   *Andrew P. Baratta*
ANDREW P. BARATTA, ESQUIRE
Attorney I.D. No. 82250
BARATTA LAW, LLC
3500 READING WAY
HUNTINGDON VALLEY, PA 19006
215-914-8132

*Attorney for Defendants, Philadelphia Spine Associates, LLC, Daniel Piccillo, D.C., and Ethel Harvey, D.C.*

**FOX ROTHSCHILD LLP**

/s/   *Stephanie Nolan Deviney*
Stephanie Nolan Deviney, Esquire
Attorney ID 80770
Eagleview Corporate Center
747 Constitution Drive, Suite 100
Exton, PA 19341-0673
Phone: (610) 458-7500
Email: SDeviney@FoxRothschild.com

*Attorneys for Defendants, Clifton Burt and Premier Pain & Rehab Center, PC*

/s/ *Daniel E. Rhynhart*
James T. Smith (I.D. No. 39333)
Daniel E. Rhynhart (I.D. No. 78248)
Rebecca D. Ward (I.D. No. 79547)
Michael A. Stoolman (I.D. No. 326117)
Maegan S. Spitzer (I.D. No. 335905)
One Logan Square, 130 N. 18th Street
Philadelphia, PA 19103
Phone: (215) 569-5371
Email: Jim.Smith@BlankRome.com
Dan.Rhynhart@BlankRome.com
Rebecca.Ward@BlankRome.com
Michael.Stoolman@BlankRome.com
Maegan.Spitzer@BlankRome.com

*Attorneys for Defendants
Simon & Simon, P.C. and Marc Simon*

**DILWORTH PAXSON LLP**

/s/   *Silvio Trentalange*
Silvio Trentalange (PA No. 320606)
Nina Spizer (PA No. 82443)
John J. Higson (PA No. 80720)
1650 Market Street, Ste. 1200
Philadelphia, PA 19103
T: 215-575-7000
nspizer@dilworthlaw.com
jhigson@dilworthlaw.com
strentalange@dilworthlaw.com

*Attorneys for Defendant Lance Yarus*

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel E. Rhynhart, hereby certify that on April 24, 2026, a true and correct copy of the foregoing was served via ECF on all counsel of record.

/s/ *Daniel E. Rhynhart*
Daniel E. Rhynhart