**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UBER TECHNOLOGIES, INC. and FEDERAL EXPRESS CORPORATION,**<br>**Plaintiffs,** | |
| **v.** | CIVIL ACTION |
| **SIMON & SIMON P.C., MARC SIMON, CLIFTON BURT, PREMIER PAIN & REHAB CENTER, PC, ETHEL HARVEY, DANIEL PICCILLO, PHILADELPHIA SPINE ASSOCIATES, LLC, and LANCE YARUS,**<br>**Defendants.** | No: 2:25-cv-05365-MAK |

**JOINT REPORT ON RULE 26(f) MEETINGS**

Under Federal Rule of Civil Procedure 26(f), this Court's May 13, 2026 Order (ECF No. 101) and this Court's Policies, counsel for Plaintiffs Uber Technologies, Inc. ("Uber") and Federal Express Corporation ("FedEx," and collectively with Uber, "Plaintiffs"), counsel for Defendants Marc Simon and Simon & Simon P.C. (the "Simon Defendants"), counsel for Defendants Clifton Burt and Premier Pain & Rehab Center, PC (the "Premier Pain Defendants"), counsel for Defendants Ethel Harvey, Daniel Piccillo, and Philadelphia Spine Associates, LLC (the "Philadelphia Spine Associates Defendants"), and counsel for Defendant Lance Yarus telephonically conferred on May 20, 22, and 27, 2026, and submit the following report of their meetings for the Court's consideration at the initial pretrial conference on June 9, 2026:

**1. Discussion of specific claims, defenses and relevant issues**

Plaintiffs' discussion: This case arises from an industrial-scale, multi-year RICO scheme in which Simon & Simon and Marc Simon directed the manufacture of false medical records and unnecessary medical care to support inflated damages claims for claimants who in fact suffered

little or no injury. At the center of the scheme, the Simon & Simon firm directed scores—if not hundreds—of claimants for purported radiofrequency ablation treatments by Defendant Clifton Burt at Premier Pain and then used this and other medical treatment as the basis for phony predictions by Lance Yarus and others that the claimants will require millions of dollars' worth of medical care into the indefinite future. Defendants did so to line their own pockets, siphoning recoveries for themselves and frequently leaving claimants with little to nothing. Defendants were able to effectuate this fraud in state court personal injury lawsuits by preventing disclosure of the conveyor belt of treatment that passed claimants from provider to provider with the cynical objective of building a false record. Defendants now attempt the same strategy here, by refusing to volunteer how many Simon & Simon claimants were seen by Burt and by resisting formal discovery into that essential fact. This is the principal discovery disagreement between the parties.

Citing no authority, Defendants ask the Court to declare all information outside of the personal injury cases brought against FedEx and Uber as "irrelevant" and off limits. However, whether a scheme targets multiple victims is relevant to proving a racketeering pattern and hence case law has long recognized that a RICO plaintiff can prove the existence of a pattern through evidence of racketeering activity targeting non-parties. *Banks v. Wolk*, 918 F.2d 418, 424 (3d Cir. 1990) (allowing a RICO plaintiff to prove a pattern of racketeering through proof of acts targeting other victims); *State Farm Mut. Auto. Ins. Co. v. Makris*, Civ. No. 01-5351, 2003 WL 924615, at *7 (E.D. Pa. Mar. 4, 2003) (finding pattern in "common scheme to obtain payments from [plaintiff] and other insurance companies"); *James v. Arango*, Civ. No. 05-2593, 2006 WL 8439482, at *6 (E.D.N.Y. Nov. 20, 2006) (finding pattern even though only one predicate act targeted plaintiff). Applying this fundamental rule, courts have also held that a RICO plaintiff may take discovery of racketeering activity directed at non-parties in order to prove a pattern. *Corley v. Rosewood Care*

*Ctr., Inc.*, 142 F.3d 1041, 1055 (7th Cir. 1998) (finding prejudicial error and reversing where district court improperly prevented plaintiff from taking discovery into predicate acts targeting non-parties); *Sw. Hide Co. v. Goldston*, 127 F.R.D. 481 (N.D. Tex. 1989) (denying motion to preclude discovery of unlawful activity not targeting plaintiff, since it was relevant to proving pattern of racketeering element). Evidence that, *e.g.*, the Simon Defendants scheduled and directed Burt to perform radiofrequency ablations on hundreds of personal injury claimants, that he essentially always performed the procedures directed, that Burt's records for all the procedures repeat the same false and implausible statements, that Burt was compensated by a litigation funder with ties to Simon & Simon, and that Burt's records were then used by Yarus to support inflated damages claims confirms the existence of a RICO pattern. Such evidence is also relevant to proving (i) a RICO enterprise involving the Simon Defendants and Burt; (ii) a RICO conspiracy; and (iii) wire and mail fraud scienter. 18 U.S.C. §§ 1962(a), (d); 18 U.S.C. §§ 1341, 1343. Defendants have themselves placed the overall relationship between Simon & Simon and Premier Pain at issue with their argument that the two are merely engaged in an innocent "referral relationship" among professionals. ECF No. 91 at 12. Plaintiffs are now entitled to discovery into the full extent of Defendants' relationships to test that defense.[1]

It is hardly burdensome for Defendants to produce their scheduling and related records for all claimants who received treatment from Burt. This likely involves no more than a few hundred emails. It is also not burdensome to require the production of the medical records, testimony transcripts, and docket materials for the resulting cases. Such materials have *already* been produced

[1] Philadelphia Spine Associates argues that discovery as to it should be limited to the ten cases in the Amended Complaint. It appears, however, that Philadelphia Spine Associates were involved in a substantial portion of the total Burt pattern cases. Plaintiffs are entitled to discovery as to its broader role to show its knowing participation in the scheme.

in the underlying litigation. Defendants' protestations that such routine discovery amounts to "bludgeoning" is overblown and should be rejected. Their argument that Plaintiffs are improperly acting as private attorneys general is similarly without merit. *Rotella v. Wood*, 528 U.S. 549, 557 (2000) ("The object of civil RICO is thus not merely to compensate victims but to turn them into prosecutors, 'private attorneys general,' dedicated to eliminating racketeering activity.").

Defendants' discussion: Defendants expressly deny Plaintiffs' allegations and discovery will show that Plaintiffs had no good faith basis for filing this lawsuit. There has never been any "scheme" or "fraud" involving the Defendants, and the Simon Defendants do not direct or instruct the medical professional defendants in this case with respect to any medical diagnoses or treatment for the victims of Uber and FedEx drivers. Uber and FedEx have no proof of these false accusations. The defenses will not only be that Plaintiffs do not and cannot demonstrate the elements of their claims, but also affirmative defenses that will be set forth in Defendants' answers. Some Defendants will also be asserting counterclaims.

Dr. Piccillo, Dr. Harvey, and Philadelphia Spine Associates (PSA) also point out that in the underlying litigations, independent medical examiners and reviewers hired by the defense lawyers therein all explicitly acknowledged that the diagnoses, treatment, and opinions reflected in PSA's records were reasonable and necessary and justified. Plaintiffs' allegations against PSA are directly and irrefutably exposed as false by these independent experts. PSA also points out that the Amended Complaint identifies a total of 27 claims at issue. Of these, 19 are alleged to have received an initial course of chiropractic or physical therapy. Of these 19 patients, PSA is alleged to have treated only 10 of them. The treatment provided by PSA to these 10 patients was widely varied in terms of duration, frequency, and findings. Plaintiffs seek leave to attempt to prove their claims by establishing supposed "patterns," but the face of their pleading eliminates the possibility

that any such "patterns" might even conceivably apply to PSA.

**2. Stipulated facts and insurance coverage and deductibles**

The parties anticipate stipulating to facts relating to the underlying personal injury cases. The parties will continue to meet and confer on stipulations as they exchange case files relating to those cases.

Defendants have represented that there is no insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in this action or to indemnify or reimburse for payments made to satisfy the judgment.

**3. Informal disclosures**

Plaintiffs' position: The principal challenge in preparing this case for trial arises from the large number of claimants in the underlying pattern cases who purportedly received radiofrequency ablation treatment from Burt and/or were examined by Yarus. Each such claimant is a witness to the pattern of racketeering activity alleged in the Amended Complaint and has relevant knowledge of the scheme, including among other things, whether they actually received the future medical care that Yarus predicted. As discussed above, evidence of related racketeering activity is squarely relevant to proving RICO's pattern requirement, as well as other RICO elements. *Banks*, 918 F.2d at 424. Consistent with Rule 1, to minimize the need for formal discovery and to expedite the discovery process, Plaintiffs have proposed to informally interview such claimants whose personal injury cases have been settled or otherwise resolved. To confirm that such claimants are no longer represented, Plaintiffs asked Simon & Simon for its position on whether it continued to represent those witnesses. In response, Simon & Simon advised that it has asked William Harvey of Klehr, Harrison, Harvey, Branzburg LLP to act as counsel for those former Simon & Simon clients who opt for representation in connection with this action. Plaintiffs have reached out to Mr. Harvey. At present, he is not yet in a position to say whether any of these claimants have agreed

to his representation. Plaintiffs are scheduled to speak with Mr. Harvey again on June 15, 2026.

For unrepresented claimants, Plaintiffs believe that informal interviews where possible will streamline the fact finding process. For those who do not wish to participate in informal interviews or who are otherwise represented, Plaintiffs believe that formal discovery will be required. Given the likely number of such claimants, a sampling methodology is likely necessary. Plaintiffs propose to meet and confer with Defendants regarding such discovery once they disclose the extent of the scheme, with the goal of minimizing the burden on the claimants and the parties.

Defendants' position: Now that Uber and FedEx have kicked down the door, by getting past the motion to dismiss stage, they want to burn the house down—by taking wide-ranging discovery into every client the Simon Defendants ever represented who was treated by Dr. Burt or examined by Dr. Yarus, supposedly because it's all an "industrial-scale" fraud. Uber and FedEx may want to make this case "industrial-scale," but it is nothing of the sort. FedEx has identified only three cases in the Amended Complaint, and Uber has listed 27 in the two complaints it has filed that are supposedly the "scheme." That should be the universe from which formal discovery is taken. Now Uber and FedEx want to talk to the Simon Defendants' clients informally, in interviews, and ask them if they got the future treatment that Dr. Yarus recommended in his life care plans? This is exactly what you are never permitted to do when you settle a case—you are settling to resolve uncertainties, and all questions in the case go unanswered—and nearly every case listed by Uber and FedEx was settled, for significant dollars. That is also not discovery, it is investigation. Uber and FedEx did not investigate this case before they filed it, and the Simon Defendants intend to show that there is no evidence to support this frivolous case. There was no fraud, no scheme, and the Simon Defendants did not direct these doctors regarding any medical treatment, let alone "phony" treatment. There are also numerous privilege issues involved here, and the Si-

mon Defendants have not waived their attorney-client or work product privilege with the claimants who they represented in the underlying personal injury cases, some of which are active and pending.

The Defendants' position is that whether or not there are "scores" of claimants who treated with Dr. Burt or who used Dr. Yarus as an expert witness, that is irrelevant if those claimants have nothing to do with Uber or FedEx. Uber and FedEx seem to fancy themselves "private attorneys general" who, as they have told us in several calls, believe they can go far beyond claims on their own behalf because they are actually asserting claims on behalf of "the industry" (when asked, Uber's counsel advised this is the "personal injury industry") for harm that the Defendants are supposedly causing to the industry. This makes no sense and is just wrong. Uber and FedEx are private parties who have standing to bring claims in their own names, for their own harm, and nothing else. Although they may want to take invasive discovery into every Simon firm client who ever treated with Dr. Burt or used Dr. Yarus as an expert, conducting such a fishing expedition into irrelevant cases is disproportional to the needs of this case. This is particularly the case where the Court has directed Plaintiffs to show proof of "whether the lawyers' **identified filed complaints** in Philadelphia courts undisputedly constituting petitioning activity fraudulently misrepresent the lawyers' view of their clients' cases including damages." ECF 99 at 38 (emphasis added). Plaintiffs' refusal to draw any boundaries around time frame or even Uber and FedEx cases, and insistence that the Defendants turn over nearly every document in their files, should not be permitted. Plaintiffs should not be permitted to go looking for proof of claims that they never had in the first place. Plaintiffs should not be permitted to use discovery as a weapon to bludgeon these Defendants and every third party that they do business with through invasive, harassing subpoenas, and to fight a war of attrition that leaves all of these Defendants penniless and unable to

proceed to trial. Plaintiffs' refusal to limit discovery in any manner demonstrates the ulterior purpose of filing this sham litigation—not to fight alleged "fraud," but rather as a new form of "tort reform" that will send a chilling message to the personal injury bar and reduce Uber's and FedEx's personal injury litigation expenses.

Defendants also oppose the proposed "informal" interviews as a means for Plaintiffs to take wide-ranging discovery from the Simon Defendants' former clients without calling it discovery and without the protections of the Rules of Civil Procedure. Certainly there should be no such interviews of claimants in *active cases* who are currently represented by Simon & Simon. Current clients cannot be contacted at all other than through counsel. The claimants whose cases are now resolved are represented by independent counsel William Harvey, Esquire of the Klehr Harrison firm and should only be contacted through him. Instead of this informal interview process, there should be limited formal discovery tailored to address the claims in the Amended Complaint involving Uber and FedEx.

The PSA Defendants add that Plaintiffs' own justification for their proposed unlimited scope of discovery does not even mention PSA. There is no good faith argument for PSA to be subjected to the same length and scope of discovery as Plaintiffs seek to engage in concerning the other Defendants.

**4. Additional disclosures [in patent non-ANDA cases only].**

N/A.

**5. Formal Discovery**

<u>Written Discovery Issued To Date</u>: In addition to initial disclosures, the parties have served the following formal party discovery requests, each of which remains pending:

- Plaintiffs' First Set of Requests for Production of Documents to the Simon Defendants
- Plaintiffs' First Set of Requests for Production of Documents to the Philadelphia

Spine Associates Defendants

- Plaintiffs' First Set of Requests for Production of Documents to the Premier Pain Defendants
- Plaintiffs' First Set of Requests for Production of Documents to Lance Yarus
- Uber's First Set of Interrogatories to Simon & Simon
- Uber's First Set of Interrogatories to Philadelphia Spine Associates
- Uber's First Set of Interrogatories to Premier Pain & Rehab Center
- Uber's First Set of Interrogatories to Lance Yarus
- Philadelphia Spine Associates Defendants' Requests for Production to Uber
- Philadelphia Spine Associates Defendants' Requests for Production to FedEx
- Philadelphia Spine Associates Defendants' Requests for Admission to Plaintiffs
- Dr. Yarus' Interrogatories to Plaintiffs
- Dr. Yarus' Requests for Production of Documents to Plaintiffs
- The Premier Pain Defendants' First Set of Requests for Production to Plaintiffs
- The Premier Pain Defendants' First Set of Interrogatories to Plaintiffs

Plaintiffs also served Rule 45 subpoenas for documents on the third parties listed below. Responses to those subpoenas have been stayed consistent with the Court's Order of June 2, 2026 (ECF No. 113) and the Plaintiffs' Certification of Compliance therewith (ECF No. 114):

- Thrivest Legal Funding, LLC
- The Rehab Centre, Inc.
- Penndel Rehab, LLC
- Spinal Care, LLC
- Excelsia Injury Care
- Occupational Therapy and Rehabilitation Services of Pennsylvania, P.C.
- Southwark Physical Therapy, Inc.
- Philadelphia Pain Center
- Precision Health and Wellness Center LLC
- Tri County Pain Management Centers
- Bowden Medicine
- Woudsma Chiropractic Associates, Inc.

Additionally, Plaintiffs have noticed but have not served Rule 45 subpoenas for documents on the third parties listed below:

- Oasis Legal Finance
- Advantage Medical and Rehabilitation, P.C.
- Philly Spine Center Inc.
- West Philadelphia Pain Management Center, Inc.

In addition to this written discovery, the Simon Defendants have served a Rule 30(b)(6)

deposition notice on Uber, and Plaintiffs have served a Rule 30(b)(6) deposition notice on Simon & Simon.

Nature, Sequence, and Timing of Additional Written Discovery, Including Need for Phasing: The parties take differing positions on the nature, sequence, and timing of additional written discovery:

Plaintiffs' position:

Plaintiffs respectfully submit that a six-month combined fact and expert discovery period, lasting until December 10, 2026, is the minimum amount of time required to complete formal discovery. Given the scope of Defendants' scheme, the large number of persons with evidence, and the substantial number of witnesses identified in Defendants' initial disclosures, Plaintiffs propose that the parties be permitted to take 20 fact witness depositions per-side (including one 30(b)(6) deposition of each corporate party as needed), and to the extent the parties are unable to reach agreement on the expedited informal interview process discussed in Section 3 above, depose such other persons (in addition to the 20 fact witness depositions per-side) who have been claimants in the underlying pattern cases as may be required.[2]

With a six-month discovery period, Plaintiffs are aiming to chart a middle course that allows sufficient time to prepare for trial while avoiding unnecessary delay and burden. The Philadelphia Spine Associates Defendants propose a tiered case management order that would involve a first three-month phase of formal discovery limited to only some of the Simon & Simon claimants identified in the Amended Complaint, followed by an opportunity for the Philadelphia Spine

[2] The Simon Defendants have identified far more than 20 witnesses in their initial disclosures. Plaintiffs anticipate that the parties will meet and confer as discovery continues to ascertain which if any of those persons will be trial witnesses whose depositions will be required in advance of trial.

Associates Defendants to file motions for summary judgment, then presumably general discovery as to all remaining parties. There is no efficiency to be gained from this proposal, which would simply force the parties to undertake discovery twice, including taking duplicative depositions. It would also be inconsistent with the Rule 56(d) requirement that the parties be able to take the discovery to which they are entitled before facing summary judgment motions. *See Corley*, 142 F.3d at 1055.

The following chart describes the specific discovery tasks that Plaintiffs presently believe will be necessary to prepare the case for trial and the approximate timing with which Plaintiffs presently contemplate pursuing them. Plaintiffs are not proposing these dates as specific deadlines within the fact discovery period to be so-ordered but rather as an illustration of the amount of work that needs to be done to prepare the case for trial, given the broad scope of the scheme. While Plaintiffs hope that continued meet and confers and informal disclosures will help to streamline this process, given that Defendants have been unwilling thus far even to disclose the number of Simon & Simon claimants who received treatment from Burt, Plaintiffs have no choice at present but to plan for formal discovery that will allow for full disclosure. Consistent with the Court's instructions and June 2, 2026 Order and to minimize the burden on third parties, Plaintiffs' proposal prioritizes party discovery first except as necessary.

| | |
|---|---|
| 6/1/26 | Parties' Initial Disclosures<br>• Plaintiffs produced approximately 155,000 pages of documents.<br>• Defendants produced approximately 700 pages. Defendants deferred additional production until after entry of a stipulated confidentiality agreement, which the parties are continuing to negotiate. |
| 6/9/26 | Rule 16 Conference |
| 6/10/26-6/22/26 | • Meet and confer with Defendants regarding forthcoming responses to Requests for Production.<br>• Defendants' Rule 30(b)(6) deposition of Uber.<br>• Plaintiffs' Rule 30(b)(6) deposition of Simon & Simon. |

<table>
<tr><td></td><td><ul><li>Limited Rule 45 subpoena practice seeking materials from third parties with particularly relevant and otherwise unavailable records, as discussed below.</li><li>Plaintiffs’ responses to Philadelphia Spine Associates Defendants’ requests for production and requests for admission.</li></ul></td></tr>
<tr><td>6/22/26</td><td>Defendants’ deadline to respond to Plaintiffs’ first Requests for Production and Interrogatories</td></tr>
<tr><td>6/22/26–<br>7/13/26</td><td><ul><li>Rule 34 inspections of Defendants’ medical facilities.</li><li>Parties complete productions of documents responsive to first sets of requests and present any unresolved issues for determination by Court.</li></ul></td></tr>
<tr><td>7/13/26–<br>10/26/26</td><td><ul><li>Party depositions of persons involved in orchestration of medical treatment, likely including:<ul><li>Simon & Simon personnel responsible for client intake;</li><li>Simon & Simon medical coordinator(s);</li><li>Defendant Clifton Burt;</li><li>Blessen Abraham (Premier Pain co-owner);</li><li>Premier Pain administrative personnel involved in scheduling by Simon & Simon</li><li>Premier Pain 30(b)(6) deposition;</li><li>Defendant Ethel Harvey;</li><li>Defendant Daniel Piccillo;</li><li>Philadelphia Spine Associates administrative personnel involved in Simon & Simon scheduling; and</li></ul></li><li>To the extent their testimony remains necessary, depositions of certain third parties who effectuated the orchestrated medical care:<ul><li>Representative of Thrivest Legal Funding, LLC (litigation funder who compensated Premier Pain for performing radiofrequency ablations on Simon & Simon claimants);</li><li>Joel Swartz (MRI provider for substantial majority of known Simon & Simon claimants)</li><li>Representative of The Rehab Centre (chiropractor who has been identified as manufacturing false appointment records);</li><li>Representatives of other third party medical providers who treat substantial numbers of Simon & Simon claimants and appear to have uniquely relevant information</li></ul></li><li>Additional written discovery requests and productions.</li><li>Depositions of Marc Simon and Lance Yarus.</li><li>Defendants may also take depositions of their witnesses during this same time period. Interviews—or where necessary depositions—of selection of Simon & Simon claimants who received Burt treatment.</li></ul></td></tr>
<tr><td>10/26/26</td><td>Proposed deadline for expert disclosures</td></tr>
</table>

| | |
|---|---|
| | • Plaintiffs anticipate approximately five expert witnesses: (i) three experts on medical service purportedly delivered; (ii) expert on damages; and (iii) expert on industry practices.<br>• Defendants also anticipate rebuttal experts on the same topics.<br>Fact deposition discovery to continue during this expert phase to the extent not previously concluded. |
| 11/19/26 | Proposed deadline for rebuttal expert reports |
| 11/19/26–12/10/26 | Expert depositions |
| 12/10/26 | Proposed close of discovery |

The Philadelphia Spine Associates Defendants filed a Counterclaim accusing Uber of defamation and false light invasion of privacy. Uber will move to dismiss the Counterclaim, and any discovery relating to the Counterclaim should be deferred until after a decision. Consistent with Rule 1, doing so will avoid increasing the burdens and costs associated with this litigation beyond what is necessary for the parties to pursue and defend valid claims. To the extent that discovery relating to such Counterclaim is permitted to proceed, Uber respectfully submits that the discovery period should be extended to accommodate the additional burdens imposed by such discovery.

Plaintiffs also submit that the scope of discovery in this matter should be limited to facts relevant to the parties' claims and defenses. All of Plaintiffs' intended discovery described above fits that description. The Simon Defendants, however, have indicated their intention to seek discovery into plainly irrelevant matters, including by listing Uber's Chief Legal Officer in their initial disclosures as a witness with discoverable "[i]nformation concerning Uber's tort reform efforts, including but not limited to Uber's lobbying for legislation immunizing it for driver misconduct[,]" and listing several other members of Uber's leadership as witnesses on similar topics. These matters are clearly beyond the proper scope of discovery, and the Simon Defendants' threatened irrelevant apex depositions should not be allowed.

With respect to third party discovery, Plaintiffs will endeavor to prioritize party discovery

and defer third party discovery except where necessary to obtain information otherwise unavailable. Plaintiffs, for example, served a subpoena on the third party litigation funder Thrivest Legal Funding, LLC because it is the entity that has paid $3,200 to Premier Pain for each of the patients referred by Simon & Simon. Its payment records will, among other things, help ascertain the scope of the scheme. Plaintiffs sought such information from Thrivest following Defendants' refusal to disclose such information themselves. Similarly, Plaintiffs sought discovery from chiropractors whose treatments were apparently scheduled by Simon & Simon. Plaintiffs request leave to immediately pursue Rule 45 discovery as to four of these entities: one chiropractor that has been publicly identified as creating records of appointments that never occurred (The Rehab Centre, Inc.), another chiropractor implicated in the same incident (Philly Spine Center Inc.), and two others that appear to be the most deeply involved with Simon & Simon (Penndel Rehab, LLC and Spinal Care, LL). Plaintiffs seek to explore the extent to which Simon & Simon directed those chiropractors' purported treatments and MRI referrals, whether such treatments were actually delivered, and how those chiropractors were compensated. Such information is relevant to proving the scheme, is in their possession exclusively, and cannot be readily obtained from the parties.

<u>Defendants' position</u>:

The Defendants believe that Plaintiffs' attempt to seek discovery into every Simon & Simon case involving either Dr. Burt or Dr. Yarus, even if unrelated to Uber or FedEx, is improper both by common sense and also the Federal Rules of Civil Procedure.

First, that is the definition of a fishing expedition looking for evidence after-the-fact to support allegations pled without proof in the first place. The "scope of discoverable information is not unlimited…discovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it; the plaintiff must have some basis in

fact for the action." *Cauley v. Geisinger Clinic*, No. 24-1435, 2025 WL 1392089, at *2 (3d Cir. May 14, 2025) (quoting *Zuk v. E. Pa. Psychiatric Inst. Of the Med. Coll. of Pa.*, 103 F.3d 294, 299 (3d Cir. 1996)).

Second, Plaintiffs' proposed scope is contrary to the Court's motion to dismiss order which defined and narrowed the main issue in this case as: "The question before us – and eventually to be resolved after discovery and possibly by the jury– is whether the lawyers' **identified filed complaints** in Philadelphia courts undisputedly constituting petitioning activity fraudulently misrepresent the lawyers' view of their clients' cases including damages." ECF 99 at 38 (emphasis added). Further, causation and injury evidence will also necessarily be limited to only Uber and FedEx cases. *See id.* at 2 ("We also need to understand if the lawyers' and doctors' conduct caused **Uber and FedEx** to pay legal fees and settlements rather than continue disputing the underlying claims on the merits.") (emphasis added).

For these reasons, the Defendants believe discovery should be limited in scope to only the underlying lawsuits in the Original Complaint and Amended Complaint which involve Uber or FedEx as a defendant (Claims A, B, C, D, E, F, G, H, I, J, K, L, M, N, O, P, Q, R, S, T, U, V, W). Additional discovery into any counterclaims any Defendant may bring can be accomplished at the same time. Further, the Simon Defendants would take a second Rule 30(b)(6) deposition of Uber (on any additional topics where it is unclear which Uber officer or employee would have knowledge) and a Rule 30(b)(6) deposition of FedEx.

Defendants oppose Plaintiffs' proposal of 20 depositions or more per side as an outrageous, unreasonable and expensive fishing expedition that goes far beyond the scope of the allegations in the Amended Complaint.

Defendants further oppose six months of discovery as excessive when the "scheme" can

be disproven by establishing the absence of any evidence that the Simon Defendants instructed Dr. Burt to perform any false or unnecessary medical treatment. Without that supposed instruction, there is no "scheme" as alleged and further discovery would not be needed.

Philadelphia Spine Associates Defendants' Position: The Philadelphia Spine Associates Defendants propose a tiered case management order which recognizes Plaintiffs' own description of their enterprise-wide discovery efforts as entirely focused on theories concerning Simon & Simon, Premier Pain, Burt, and Yarus, and which further recognizes that the pleaded allegations against PSA are limited to 10 patients, about each one of whom an independent medical examiner in the underlying cases opined PSA's treatment to have been reasonable and necessary. To require PSA to participate in the same length and breadth of discovery as the other parties would impose a burden grossly disproportionate to their alleged role in the case. The burden is not merely financial. Plaintiffs' allegations have already inflicted enormous damage to the professional reputations and personal livelihoods of PSA, and prolonged, enterprise-wide discovery would magnify this damage far beyond what is necessary to fairly test the actual claims pleaded against them. The PSA Defendants therefore request as to them a 3-month discovery period limited to the ten patient claims they are alleged to have participated in as treating providers, with leave to seek summary judgment immediately thereafter.

Need for a F.R.E. 502 Order: The parties are currently negotiating an ESI Agreement that contains a Rule 502 order.

**6. Electronic Discovery**

The parties are finalizing an ESI Agreement, which they expect to submit to the Court shortly.

**7. Expert witness disclosures**

Plaintiffs' Position: Plaintiffs anticipate that they will call approximately five expert wit-

nesses, including (i) experts dealing with each of the types of medical service purportedly delivered by each of the medical provider Defendants; (ii) an expert on damages; and (iii) an expert on practices within the relevant industry (i.e., the personal injury industry). The medical experts would not primarily testify regarding the conditions of the individual personal injury claimants, but would instead focus on the Defendants' own records, practice, and conduct.

Defendants' Position: Defendants believe Plaintiffs' effort to relitigate the underlying personal injury cases by bringing in new medical experts to second-guess and reconsider their own defense medical experts and Defense Independent Medical Examinations (DIMEs) from the underlying cases—after Uber or FedEx settled or otherwise resolved those cases (to say nothing of the active cases)—is inappropriate, unreasonable and irrelevant. Defendants anticipate that they will call rebuttal experts for each Plaintiff expert, and may also call affirmative experts to support any defenses or potential counterclaims they bring.

**8. Settlement or resolution**

Plaintiffs have communicated to Defendants their continued willingness to pursue additional settlement discussions. Per the Court's prior orders, Plaintiffs believe that appointment of a Special Master to address settlement is warranted. Defendants, however, do not support that proposal.

The Simon Defendants specifically see no benefit in continuing settlement discussions given current demands to revoke Marc Simon's law license and end his practice of law (which are unethical demands violative of the Pennsylvania Rules of Professional Conduct and relief this Court cannot grant) and for monetary disgorgement related to cases where neither Uber nor FedEx were a party. Plaintiffs have provided no legal authority for why such relief could be appropriate in a civil action. Settlement cannot be possible until legal and ethical settlement demands are actually made.

The Premier Defendants see no benefit to continued settlement discussions.

The PSA defendants see no benefit in continuing settlement discussions.

**9. <u>Trial</u>**

Lead trial counsel report the following conflicts for trial in the four to eight month period following the June 9, 2026 preliminary conference:

- October 7-9, 2026
- October 15-18, 2026
- October 22, 23, 26, 2026
- November 30-December 10, 2026
- December 28–31, 2026

**10. <u>Referral to Magistrate Judge</u>**

The parties do not all consent to a referral to a Magistrate Judge.

Dated: June 5, 2026

PERKINS COIE, LLP

By: /s/ David W.T. Daniels
David W.T. Daniels

Attorneys for Plaintiffs Uber Technologies, Inc. and Federal Express Corporation

By: /s/ Daniel E. Rhynhart

Attorneys for Defendants Simon & Simon, P.C. and Marc Simon

By: /s/ Stephanie Nolan Deviney

Attorneys for Defendants Premier Pain & Rehab Center PC and Clifton Burt

By: /s/ Silvio Trentalange

Attorneys for Defendant Lance Yarus

By: /s/ Andrew P. Baratta

Attorneys for Defendants Philadelphia Spine Associates LLC, Ethel Harvey, and Daniel Piccillo

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing to be electronically filed with the Clerk of the Court through the CM/ECF system. By electronically filing, the CM/ECF system shall send notification of such filing to counsel of record for each party and those registered to receive a Notice of Electronic Filing for this case.

Dated: June 5, 2026

**PERKINS COIE LLP**

By: /s/ David W.T. Daniels
David W. T. Daniels
DDaniels@perkinscoie.com
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: +1.202.654.6200
Facsimile: +1.202.654.6211

*Counsel for Plaintiffs Uber Technologies, Inc. and Federal Express Corporation*