**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UBER TECHNOLOGIES, INC. and FEDERAL EXPRESS CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>SIMON & SIMON, P.C., MARC SIMON, CLIFTON BURT, PREMIER PAIN & REHAB CENTER, PC, ETHEL HARVEY, DANIEL PICCILLO, PHILADELPHIA SPINE ASSOCIATES, LLC, AND LANCE YARUS,<br><br>Defendants. | CIVIL ACTION<br><br>No. 2:25-cv-05365-MAK |
| SIMON & SIMON, P.C., and MARC SIMON,<br><br>Counterclaimants,<br><br>v.<br><br>UBER TECHNOLOGIES, INC. and FEDERAL EXPRESS CORPORATION,<br><br>Counterclaim-Defendants. | |

**DEFENDANTS/COUNTERCLAIMANTS SIMON & SIMON, P.C. AND**
**MARC SIMON'S MOTION TO COMPEL**

Pursuant to Section III(B)(1) of the Court's Policies and Procedures, Defendants/Counterclaimants Simon & Simon, P.C. and Marc Simon ("the Simon Parties"), by their undersigned counsel, move for an Order compelling Plaintiffs/Counterclaim-Defendants Uber Technologies, Inc. ("Uber") or Federal Express Corporation ("FedEx") to produce documents regarding their alleged "injury" in this case.

Uber and FedEx are refusing to produce documents and information that go to an indispensable element of their civil RICO claims: whether they have "proof of actual monetary loss, i.e., an out-of-pocket loss." *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000). Uber in particular resists producing evidence of injury because it likely has no injury at all.

The Simon Parties already knew that Farmers Insurance Exchange ("Farmers") pays the settlements and verdicts in the underlying Uber cases based on the checks that their clients receive. Discovery is showing that Farmers keeps Uber closely informed about the underlying cases through their resolution. For example, in the Jajaira Melendez case (Claimant I in the Amended Complaint), Farmers told Uber on 2/18/25 that it procured a rebuttal expert with an opinion that Melendez had "no imaging evidence of injury attributable" to the motor vehicle accident. **Ex. 1** at Uber_00142481. Farmers also told Uber: "Simon/Simon office known for waiting till eve of trial to negotiate" and that Farmers was considering "strategic settlement negotiations to try and resolve prior to trial." *Id.* Farmers then wrote to Uber that it "will see if we can get a number closer to $100k." **Ex. 2** at Uber_00142476. Then on 5/8/25, Farmers delivered the news that the "case just settled for $100k!" to which Uber's Heather Hughes responded: "Nice!" **Ex. 3**, Uber_00142483.

Now, Uber says it has been "injured" in the Jajaira Melendez case in the amount of $89,984.23. **Ex. 4**, Response to Interrogatory No. 7. Where is that number coming from, and is it a percentage of the $100,000 settlement that Uber called "nice"? Public information shows that Uber's subsidiary, Rasier, LLC, is a party to a larger "Insurance Program Agreement" with Farmers that covers Uber accidents in Pennsylvania. **Ex. 5**,[1] California Department of Insurance, *Report of Examination of the Farmers Insurance Exchange, et al.* (Oct. 27, 2023), at 41. Starting

---

[1] Publicly available at https://www.insurance.ca.gov/0250-insurers/0300-insurers/0400-reports-examination/upload/Farmers-Insurance-Group-Consolidated-Exam-Report-Final-as-of-12-2021-ADA.pdf.

in March 2023, Uber agreed to indemnify and reimburse *Farmers* for 90% of the losses in the program pursuant to an indemnity agreement between Farmers and *another* Uber subsidiary – Uber's "captive insurer," Aleka Insurance, Inc. ("Aleka"). *Id.* at 42. Under that agreement, Aleka apparently guarantees the indemnification payments back to Farmers. *Id.*

To try to understand Plaintiffs' alleged "injuries," the Simon Parties propounded interrogatories to Uber and FedEx asking them to identify the: i) attorneys' fees; ii) costs; iii) settlements; and iv) verdicts that *they* (not any insurer) paid in the underlying actions and to specifically identify if one of their affiliates (like Aleka) paid any or all of those amounts. **Ex. 4**, Interrogatory No. 7 (Uber); **Ex. 6**, Interrogatory No. 8 (FedEx). Uber and FedEx both responded with an objection based on the "collateral source rule" and listed only the "costs" that they paid. *Id.* Neither identified whether an insurer or an affiliate paid any portion (or all) of those costs. *Id.*

The Simon Parties also propounded document requests on Uber and FedEx for specific documents, including those reflecting the actual payments of the moneys that Plaintiffs are claiming as their injury in this case and the applicable insurance contracts regarding those costs. **Ex. 7**, Requests Nos. 7, 8, 9, 10, 11, 12, 13, 14 (Uber); **Ex. 8**, Requests Nos. 7, 8, 9, 10, 11, and 12 (FedEx). Uber and FedEx responded only that they will "produce documents sufficient to prove [their] damages in this case" (*id.*) even though Rule 26(a)(1)(A) already required them to do that.

The Simon Parties raised these deficiencies immediately and specifically demanded production of the Insurance Program Agreement between Rasier and Farmers and all indemnity and reinsurance agreements between and among Uber, Aleka, and Farmers. The Simon Parties also specifically demanded production of all documents reflecting the actual payments of the costs that Uber and FedEx were claiming as their injury in this suit to understand *who* pays these costs, *when* they are paid, and *how* such payments are made. After meeting and conferring, and despite

at first agreeing to produce these documents, Uber and FedEx are not producing them, employing the exact "run-out-the-clock" strategy they falsely accuse others of. *See* Rule 26.1(f) Certification.

Uber and FedEx invoke the collateral source rule, which is inapplicable to discovery. It is a rule of ***state*** substantive law that precludes, under certain circumstances, evidence at trial of collateral payments to offset a plaintiff's damages award. It does not "create" a plaintiff's injury in the first place, especially for a federal statutory claim that Congress has intentionally limited by requiring "out-of-pocket loss." *Maio*, 221 F.3d at 483; *Kolavev v. Speansky*, 2020 WL 553843, at *4 n.3 (E.D. Pa. Feb. 4, 2020) ("It is not enough for [plaintiff] to allege that his insurance company paid out more than it had to pay without the alleged RICO violations; this does not constitute financial loss to him.") (citing *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994)).

The details and documentation of Uber's, Raiser's and Aleka's agreements with Farmers – and the evidence of who actually pays the "costs" that Uber and FedEx seek trebled – are highly relevant. If discovery shows the "costs" that Uber and FedEx "incurred" are actually paid by others, then they have no out-of-pocket loss and their claims will fail for lack of RICO standing. For Uber specifically, if discovery shows that its "costs" were paid by Aleka as a result of indemnity or reinsurance obligations, then Uber separately lacks RICO standing as a reinsurer. Indeed, the Second Circuit recently affirmed dismissal of RICO claims for lack of RICO standing where a reinsurer claimed to be injured by being the end payor on claims resulting from "personal-injury lawyers and their purported accomplices" seeking to "profit by filing bogus workers' compensation claims…" *Roosevelt Road Re, Ltd. v. Subin*, 2026 WL 2108399, at *1-2 (2d Cir. July 22, 2026). Here, the Simon Parties are entitled to discover whether Uber's and FedEx's alleged harm similarly goes "well beyond the first step" of the causal chain. *Id.* at *2.

Uber and FedEx should be compelled to produce these outcome-determinative documents.

**WHEREFORE,** Defendants/Counterclaimants Simon & Simon P.C. and Marc Simon respectfully request that this Honorable Court issue an Order in the form proposed hereto.

Dated: August 12, 2026

Respectfully submitted,

**BLANK ROME LLP**

*/s/ Daniel E. Rhynhart*
James T. Smith (I.D. No. 39333)
Daniel E. Rhynhart (I.D. No. 78248)
Rebecca D. Ward (I.D. No. 79547)
Michael A. Stoolman (I.D. No. 326117)
Maegan S. Spitzer (I.D. No. 335905)
One Logan Square, 130 N. 18th Street
Philadelphia, PA 19103
Phone: (215) 569-5371
Email: Jim.Smith@BlankRome.com
Dan.Rhynhart@BlankRome.com
Rebecca.Ward@BlankRome.com
Michael.Stoolman@BlankRome.com
Maegan.Spitzer@BlankRome.com

*Attorneys for Defendants/Counterclaimants Simon & Simon, P.C. and Marc Simon*

**CERTIFICATE PURSUANT TO LOCAL RULE 26.1(f)**

I, Michael A. Stoolman, hereby certify that I attempted to resolve this discovery motion with counsel for Uber and FedEx.

On July 24, 2026, I emailed counsel for Uber and FedEx regarding the deficiencies in their July 23, 2026 discovery responses that are at issue in this motion. **Ex. 9** at 10-12. Counsel then scheduled a call, and the parties met and conferred on these issues on July 29, 2026. *Id.* at 9. Daniel Rhynhart and I from Blank Rome attended the call on the Simon Parties' behalf. William Wilder, David Daniels, and Michael Wadden from Ashurst Perkins Coie attended the call on Uber's and FedEx's behalf. On the call, counsel for Uber and FedEx agreed to produce the documents requested in this motion and also agreed to submit supplemental interrogatory responses consistent with these documents.

After the call, on July 29, I wrote to counsel confirming that they "specifically agreed to produce the Insurance Program Agreement between Rasier and Farmers (and all amendments) and all indemnity and/or reinsurance agreements between and among Farmers, Uber, and Aleka" and that they "also specifically agreed to produce the documents (like checks, bank statements, wires, balance sheets, etc.) showing who paid the costs that Uber Technologies, Inc. is claiming as its own injury in this case to establish RICO standing, how such payments were made, and when such payments were made." *Id.* at 4-5. I also asked when the Simon Parties could expect such production. *Id.*

On July 30, counsel for Uber and FedEx wrote that "I cannot confirm the name or title of any *specific* contract or document we would be producing pursuant to these requests, but we will be producing such agreements that we determine to be responsive." *Id.* at 4 (emphasis in original).

That same day, on July 30, I wrote to counsel for Uber and FedEx stating that "Every contract between Uber (or Rasier or Aleka) and Farmers that has any connection to any 'cost' you

are claiming as your injury in this case is relevant and responsive to RFP 9." *Id.* at 3. I then, again, specifically asked for production of the Insurance Program Agreement between Rasier and Farmers and the indemnity agreements between Farmers, Uber, and Aleka by Friday July 31. *Id.* Counsel for Uber responded that "I can confirm that we are in the process of identifying and collecting all insurance contracts that are responsive to your requests" but that a "substantial production" could not be made until "next week." *Id.* at 2.

That next week, on Tuesday August 4, no production had been made so I asked counsel when the Insurance Program Agreement and the indemnity agreements between Uber, Aleka, and Farmers would be produced. *Id.* at 1-2. On Wednesday August 5, counsel for Uber stated that "we are intending to make a substantial production of documents on behalf of Uber on Friday" [August 7]. *Id.* at 1.

Uber made a production on August 7 that included neither the Insurance Program Agreement between Rasier and Farmers, nor any of the indemnity/reinsurance agreements between and among Uber, Aleka, and Farmers. The production also did not include documents reflecting payments of the costs that Uber is claiming as its injury in this action (like checks, wires, balance sheets, bank statements, etc.). **Ex. 10**. On August 8, 2026, I asked counsel for Uber to produce such documents by Tuesday August 11 or confirm they are not producing such documents. *Id.*

None of these materials were produced on August 11 nor was any response to my email sent. Despite the document requests being served on June 23, 2026 and despite Uber and FedEx agreeing to produce such documents on the meet and confer call two weeks ago on July 29, 2026, it is clear that Uber and FedEx will not produce these documents and that the parties are at an impasse.

I also conferred with counsel for the other Defendants in this matter and they consent to the relief sought in the Motion.

Dated: August 12, 2026

*/s/ Michael A. Stoolman*
Michael A. Stoolman

**CERTIFICATE OF SERVICE**

I, Daniel E. Rhynhart, hereby certify that on August 12, 2026, a true and correct copy of the foregoing was served via email on all counsel of record.

*/s/ Daniel E. Rhynhart*
Daniel E. Rhynhart