**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UBER TECHNOLOGIES, INC. and FEDERAL EXPRESS CORPORATION,<br>Plaintiffs,<br>v.<br>SIMON & SIMON, P.C., MARC SIMON, CLIFTON BURT, PREMIER PAIN & REHAB CENTER, PC, ETHEL HARVEY, DANIEL PICCILLO, PHILADELPHIA SPINE ASSOCIATES, LLC, and LANCE YARUS,<br>Defendants. | Case No. 2:25-cv-05365-MAK |

**DEFENDANTS' CLIFTON BURT AND PREMIER PAIN & REHAB CENTER, PC OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO PRESERVE EVIDENCE**

Defendants Clifton Burt and Premier Pain & Rehab Center, PC (collectively, "Premier Pain") respectfully submit this opposition to Plaintiffs' Emergency Motion to Preserve Evidence (the "Motion").

## I. INTRODUCTION

The Motion arises out of Plaintiffs' mistaken belief that Premier Pain deliberately destroyed evidence. This is false and based upon nothing more than speculation and misunderstanding. Rather, it appears that during the routine servicing of the Cosman G4 RFA Generator (the "Device") by Boston Scientific in September 2025, *prior to the commencement of this litigation*, older records were deleted from the Device.[1] Plaintiff, Uber Technologies, Inc. ("Uber"), can only identify one (1) claimant Premier Pain treated after the commencement of this litigation whose records would be on the current machine ("Patient RC"). Those records

[1] Plaintiffs concede that the Device was serviced on September 11, 2025, prior to the commencement of this litigation.

incidentally have already been produced to Uber. However, Premier Pain saw Patient RC on November 5, 2025, three (3) months after Uber was dismissed from the underlying state court litigation (the "State Court Litigation"). A true and correct copy of the state court docket is attached hereto and incorporated herein as Exhibit A. Given Uber was dismissed from the State Court Litigation, it has no damages related to Patient RC. Moreover, the jury rendered a verdict in favor of Patient RC. *See* Exhibit A. Even if the jury had not rendered a verdict in favor of Patient RC, Premier Pain has produced all records for Patient RC. Given such circumstances, there is no basis to take possession of the Device which would interrupt patient care. As such, the Court should deny the Motion.

## II. RELEVANT BACKGROUND

There is no "critical evidence" that is in "imminent danger of spoliation" that would require Premier Pain to disrupt the care that it delivers to its patients. However, this is exactly what Plaintiffs ask the Court to order, the delivery of the Device that delivers pain relief to numerous patients each week.

### A. Scheduling Of Patients And Servicing Of the Device

Premier Pain sees patients at its location in Philadelphia every Wednesday and every other Thursday. Premier Pain is currently scheduled to see patients on Wednesday, August 19th, Wednesday, August 26th, Thursday, August 27th, and so forth. In addition, Premier must schedule its annual service of the Device with Boston Scientific in the upcoming weeks. To service the Device Boston Scientific takes possession of the Device and provides Premier Pain with a loaner device (the "Loaner Device"). *See* Exhibit 5 to the Declaration of David Daniels, "Work Performed: Sent loaner G4-2016."

On September 16, 2025, Boston Scientific completed its service of the Device. *See* Exhibit 5 to the Declaration of David Daniels. However, Boston Scientific did not ship the Device to Philadelphia to be utilized on September 17, 2025, to see patients. Rather, as set forth in the Service Report, Boston Scientific sent the Device to New Brunswick, New Jersey, to a business that, unlike Premier Pain, is staffed five (5) days a week. *See* Exhibit 5 to the Declaration of David Daniels. As such, Premier Pain treated the patients it saw on September 17, 2025, with the Loaner Device which Premier Pain returned to Boston Scientific upon the return of the Device to the Philadelphia location. Accordingly, the newly serviced Device was first used on Wednesday, September 24, 2025, as properly reflected on the screenshots of the Device. *See* Exhibit A to the Declaration of Joseph Bushner.

**B. The August 10, 2026, Inspection**

On Monday, August 10, 2026, counsel for Plaintiffs, David Daniels, Esquire, Michael Wadden, Esquire, Amy Kurland, Esquire, Plaintiffs' expert from California, Dr. Andrew Germanovich, and Plaintiffs' consultant, former FBI Special Agent with over twenty-two years of experience Joseph Bushner attended the inspection of Premier Pain's premises in Philadelphia along with Dr. Blessen Abraham and counsel for Premier Pain, Stephanie Nolan Deviney, Esquire. For over an hour, Premier Pain gave Plaintiffs complete access to its facilities, even allowing them to utilize the Device and to take pictures and videos using the fluoroscopy machine.

Prior to the inspection, on August 5th, counsel for Plaintiffs, Sydney Veatch, Esquire and William Wilder, Esquire, participated in a telephonic meet and confer with Ms. Deviney, wherein counsel discussed that Premier Pain would not allow Plaintiffs to download information

from any computer system or devices.[2] Nevertheless, Plaintiffs showed up with an unopened USB drive and a demand to download information from the Device only. Plaintiffs' counsel even called the Court to intervene. After conceding to allow Premier Pain's counsel to retain the USB drive, the parties, including former Special Agent Bushner, could not get the records to download onto the USB drive provided by Uber's counsel.

Approximately twenty-four hours later, Plaintiffs' counsel wrote to accuse Premier Pain – without evidence and based upon mere speculation - of deliberately destroying evidence and to demand the turnover of the Device. Given the weakness of Plaintiffs' argument, the information already provided to Plaintiffs in discovery, and the need to provide uninterrupted patient care, Premier Pain declined Plaintiffs' demands. Although Plaintiffs allege that Premier Pain has not utilized the Device since July 30th, they are wrong. A close review of Exhibit B to Mr. Bushner's Declaration reveals a space; he did not scroll all the way to the bottom of the screen. *See* Exhibit B. Had Mr. Bushner, who has twenty-two years of experience with the FBI, scrolled to the bottom of the screen, he would have seen that Premier Pain used the Device on Wednesday, August 5th (and has since used it on Wednesday, August 12th). A true and correct copy of a screen shot taken on August 12th is attached hereto and incorporated herein as Exhibit B.

Since the August 10th inspection, Premier Pain determined how to download the records. As set forth in the Operator's Manual, Boston Scientific recommends the use of two specific USB drives: The G4 has been tested with the following external USB disks: SanDisk "Cruzer 128MB" and SanDisk "Cruzer micro 1.0GB". *See* Exhibit 4 to Declaration of David Daniels,

[2] It was also during this meet and confer that Plaintiffs raised for the first time the ability of the Device to record information, a feature Premier Pain did not utilize and was unfamiliar with using. However, Premier Pain indicated it would follow up with Boston Scientific to determine if it could be done.

Esquire, Operator's Manual, 12.2. Unfortunately, neither Uber's counsel nor its consultants brought the proper USB drive to download the records from the Device. Utilizing the type of USB drive tested by Boston Scientific, Premier Pain has been able to download the records.

### C. <u>What Plaintiffs Seek To Preserve</u>

Other than Patient RC, Plaintiffs have not identified any other claimants in this case whose records could possibly be currently stored on the Device. Despite this, Plaintiffs seek to remove the Device from Premier Pain and disrupt patient care. This is unnecessary and outside the appropriate scope of discovery contemplated by the Federal Rules of Civil Procedure.

Patient RC received treatment from Premier Pain, for the second time (presumably because she received relief from the first RFA) on November 5, 2025, three (3) months after Uber was dismissed from the State Court Litigation. *See* Exhibit A. Even if Uber had not been dismissed, Premier Pain has produced the underlying medical records from the November 5, 2025, 10:00 a.m. appointment, including fluoroscopic imaging of the needles in Patient RC's body at 11:38 a.m. *See* Exhibit C, true and correct copies of Patient RC's records with personal identifiers redacted. Despite these contemporaneous fluoroscopic images, Plaintiffs maintain, without citation or basis, that "Burt was in fact not delivering radiofrequency ablation treatments at all." Plaintiffs cite nothing revealed in discovery to support such accusations.

On the contrary, as set forth in Ms. Deviney's August 4th email to Mr. Daniels, Premier Pain has produced a plethora of information regarding each patient, proof of the purchase of the machines, the servicing of the machines, and the various accessories utilized in the procedures performed by Premier Pain such as needles, grounding pads, alcohol swabs, etc. *See* Exhibit 1 to Declaration of David Daniels, Esquire, August 4th, 4:02 p.m. email. Premier Pain recently produced radiology badge reports showing how much radiation the doctors are exposed to and

proof of testing of the aprons worn during the radiofrequency procedures. Plaintiffs choose to ignore this evidence.

This purported emergency motion is nothing more than a fishing expedition designed to punish Premier Pain and interfere with their medical practice. As such a request goes well beyond the scope of permissible discovery, the Court should deny this request and prevent such further fishing expeditions.

## III. CONCLUSION

The Court should deny Plaintiffs' Motion because there has not been any destruction of evidence. Plaintiffs' allegations are not based in fact. Rather, they are based in innuendo and their own inability to download the records when Premier Pain permitted them to do so. Premier Pain has fully cooperated with discovery in this matter and will continue to do so. However, Premier Pain is not willing to interrupt patient care to turnover the Device when the contemporaneous records for all patients have been properly preserved. As such, the Court should deny the Motion in its entirety.

Dated: August 17, 2026

Respectfully submitted,

**FOX ROTHSCHILD LLP**

*/s/ Stephanie Nolan Deviney*
Stephanie Nolan Deviney, Esquire
Attorney ID 80770
Eagleview Corporate Center
747 Constitution Drive, Suite 100
Exton, PA 19341-0673
Phone: (610) 458-7500
Email: SDeviney@FoxRothschild.com
*Attorneys for Defendants, Clifton Burt and Premier Pain & Rehab Center, PC*