**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UBER TECHNOLOGIES, INC., et. al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 2:25-cv-05365-MAK |
| SIMON & SIMON P.C., et. al. | : | |

**PSA DEFENDANTS' MOTION TO COMPEL AMENDED RESPONSES TO REQUESTS FOR ADMISSION**

Philadelphia Spine Associates, Dr. Dan Piccillo, and Dr. Ethel Harvey (hereafter collectively "PSA") respectfully move to compel amended responses to Requests for Admission.

## I. IME REPORTS

PSA's alleged involvement in this case is limited to its treatment of 10 patients represented by the Simon firm, 9 of whom were injured in Uber accidents and one of whom was injured in a Fed Ex accident. Plaintiffs allege PSA "conspired" to further a RICO enterprise by providing unreasonable and unnecessary treatment. But in each of the underlying litigations filed by the Simon firm, defense lawyers representing Uber and/or its drivers and Fed Ex retained experts to conduct Independent Medical Examinations/record reviews. Plaintiffs' Amended Complaint relies on several of these IME reports as support for its allegations. (See Am. Compl., ¶123, 153, 218, 280, 387, 388, and 419).

On May 20, 2026, PSA propounded Requests for Admission, the vast majority of which seek simple admissions of fact as to the expertise of the independent medical examiners and the accuracy of opinions expressed in their reports as to the treatment and diagnoses of PSA. (See Ex. 1 to the Declaration of Andrew P. Baratta). The admissions sought are critical to PSA's defense as each one of the IME doctors who examined these patients or reviewed their records either explicitly determined PSA's treatment to have been reasonable and necessary or found no basis to dispute it.

On June 22, 2026, Plaintiffs provided responses and objections which failed in all respects to meet the requirements of Rule 36. (Plaintiffs' Initial Responses are attached to the Baratta Declaration

at Ex. 2-3).

In response to almost every single one of PSA's requests concerning the IME reports, Uber and Fed Ex stated it "cannot admit or deny this request because it lacks sufficient information to do so." Given just the allegations of the Amended Complaint which explicitly rely on the IME reports, it was transparently disingenuous for Plaintiffs to claim "lack of information" concerning them, but to eliminate all such pretense, on July 22, 2026, undersigned provided to Plaintiffs' counsel copies of each one of the IME reports at issue in PSA's requests for admission. The reports are attached to the Baratta Declaration as Exhibit 7-17.

Thereafter, in meet and confers Plaintiffs' counsel maintained they could not admit or deny *anything* about *any* of the IME experts or their reports because the reports were "commissioned by counsel for independent drivers in the underlying pattern cases. They are not Uber's documents, and it is our understanding that Uber played no role in their creation" and Plaintiffs "cannot make admissions about positions taken by experts based on documents that are not our client's documents." (See Ex. 18 to Baratta Declaration, email of Will Wilder, Esquire dated July 29, 2026).

But this was a knowingly false representation with respect to *at least* three of the IME reports, those concerning Claimants D, E & U. In the lawsuit brought by Claimant D, *Uber's counsel on behalf of Uber* submitted a pretrial memorandum which attached the IME report of Scott Epstein, MD and *identified Epstein as Uber's expert* as to Claimant D's damages. (See Baratta Decl., Ex. 19). With respect to Claimant E, the same Uber lawyer submitted a pretrial memo in defense of that case identifying the IME doctor (Murray) as *Uber's expert*. (See Baratta Decl., Ex. 28). With respect to Claimant U, the IME report of Joseph Bernstein, MD is *directly addressed to Fed Ex's counsel* in the underlying lawsuit, Kerven Moon, Esquire, and states the exam was conducted *at his request*. (See Baratta Dec., Ex. 20.). It is simply impossible for Plaintiffs' counsel's representation that these reports "are not our client's documents" to have been made in good faith.

Plaintiffs' attempt to disclaim ownership of the IME reports concerning Claimants D, E, and U was rivaled in bad faith only by Plaintiffs' non-responses to the requests for admission concerning them. For example, Requests for Admission 39-45 and 46-51 ask Uber to: admit that Dr. Epstein performed an IME of Claimant D; admit the date on which he examined Claimant D; admit that Epstein is an expert for the purpose of opining on the reasonableness and necessity of PSA's treatment of Claimant D; admit that Epstein was tasked with determining the reasonableness and necessity of PSA's treatment of Claimant D; admit that the costs of Dr. Epstein's IME work is a damage Uber seeks in this case; admit that Epstein's opinions concerning Claimant D were accurate; admit that Epstein reviewed PSA's records; admit that Epstein agreed Claimant D suffered a lumbar sprain in her accident; admit that Epstein opined PSA's treatment of Claimant D was reasonable and appropriate; admit that Epstein opined the MRI of Claimant D was reasonable to have been ordered; and that Epstein's report was in Uber's possession before it filed this lawsuit.

Despite literally identifying Epstein as their expert in the underlying lawsuit brought by Claimant D, Uber claimed to "lack sufficient information" to admit or deny *any* of these requests. Uber offered the same plainly false responses with respect to Claimant E, and Fed Ex did the same concerning the IME report of Dr. Bernstein obtained by it in defense of the lawsuit brought by Claimant U.

There are only two possible explanations for Plaintiffs' initial responses concerning the IME reports of Claimants D, E, and U: deliberate deception or complete failure to conduct any reasonable inquiry. Either way, the responses blatantly violated Rule 36, and unfortunately, given Uber's document production of August 6, 2026, it appears deliberate deception is the more likely explanation.

The documents provided by Uber on August 6 consist almost entirely of electronic communications between Uber and Farmers demonstrating Uber's close involvement in every aspect of the underlying litigations from intake to settlement negotiations to trial strategy and verdict. They

demonstrate Uber's access to a shared portal with Farmers in which litigation documents, including IME reports, were actively shared and discussed. Uber's contention that it is somehow in the dark about or lacks access to *anything* produced in the underlying litigations is directly refuted by these documents.

Just by way of example, Exhibit 21 to the Baratta declaration is a litigation action plan for defending Claimant A's case. Exhibit 22 demonstrates similar litigation discussions between Uber and Farmers concerning the lawsuits of Claimants N and Claimant 23 on Uber's extra list of 25 Claimants at issue, which discussions are relevant because the *same IME expert* who examined Claimant A, Dr. Sutton, is acknowledged by Uber as an expert being relied upon to refute the Claimants damages. That Dr. Sutton is known to and repeatedly utilized by Uber as an expert is indisputable, yet Uber claims it somehow "lacks sufficient information" to admit even that Dr. Sutton is an expert at all.

Another example is Exhibit 23 to the Baratta Declaration, which is a discussion between Uber and Farmers concerning the litigation strategy against Claimant B's underlying lawsuit. Therein Dr. Bernstein is specifically discussed as the expert for the defense as to damages. Despite the obvious acknowledgment of Bernstein as an expert whose opinions concerning Claimant B are accurate, and despite the fact that Bernstein was the defense IME expert in *numerous other lawsuits alleged to be at issue in this case*, Uber claims to "lack sufficient information" to admit or deny that Bernstein is an expert or even that he examined Claimant B at all.

Exhibit 24 to the Baratta Declaration is a discussion between Uber and Farmers concerning litigation strategy against the lawsuit of Claimant E. Therein, Uber and Farmers' litigation claim specialists together plan to obtain the IME at issue prior to mediation to strengthen their negotiating position. Exhibit 24 should be viewed in conjunction with Exhibits 25 and 28 to the Baratta Declaration. Exhibit 25 is a discussion between Uber and Farmers concerning the litigation strategy against the lawsuit of Claimant Q. Therein the two claim litigation specialists specifically discuss the

fact that the defense retained Dr. Murray "*to opine on the treatment and injuries of Plaintiff*." Exhibit 28 on the other hand is Uber's pretrial memo submitted by Uber identifying Dr. Murray as Uber's expert "who was retained to perform an IME, [and] reviewed [Claimant E's] medical records including the MRI images."

Dr. Murray is thus the independent expert hired by the defense against both Claimant E and Q's lawsuits and Uber's own document production in this case shows Uber was not only directly involved in the process of retaining him and adopting his opinions as accurate in both litigations, but he was also literally presented as *Uber's* expert. Yet somehow Uber claims to "lack sufficient information" to admit or deny even that Dr. Murray is an expert at all or that the opinions he expressed in defense of the claims of Claimants Q and E are accurate.

PSA's requests for production of documents are attached as Exhibit 26 and 27 to the Baratta Declaration. Therein PSA specifically requests all expert reports relating to the underlying lawsuits (Request number 12). Although Plaintiffs responded by promising to search for and produce said documents, and despite directly referencing them in its Amended Complaint, neither Fed Ex nor Uber has directly produced a single one of the IME reports to date. Given Plaintiffs unquestionable role in procuring, possessing, and relying on the IME reports in defense of the underlying lawsuits, the only conceivable reason for Plaintiffs not to have produced the reports in this case is to manufacture the obviously false argument that they somehow "lack sufficient information" to admit or deny the expertise of the independent examiners and/or the substantive accuracy of the opinions they expressed concerning PSA.

This kind of discovery gamesmanship has been the hallmark of Plaintiffs' production to date, even as they have urgently demanded and promptly received every conceivable document PSA possesses concerning its patients. Unfortunately, as evidenced by Plaintiffs' "Supplemental" responses to RFAs provided on August 18, 2026, it is apparent only an order from the Court will force Plaintiffs

to provide good faith responses to PSA's requests for admission as all efforts by undersigned counsel in this regard have failed.

On June 26, 2026, undersigned wrote a lengthy letter to Plaintiff's counsel outlining the deficiencies in Plaintiffs' RFA responses. (See Baratta Decl., Ex. 4). On July 2, 2026, the parties met and conferred, and Plaintiffs insisted they had no information about any of the IME reports. On July 17, 2026, Plaintiffs' counsel wrote that its initial responses were sufficient because the IME reports were not commissioned by Plaintiffs. On July 22, 2026, undersigned responded by letter rebutting Plaintiffs' assertions and asking Plaintiffs to provide amended responses. Plaintiffs maintained their position. Then on July 31, 2026, undersigned sent to Plaintiffs' counsel *Uber's own documents* concerning the claims of Claimants D and U as examples demonstrating the falsity of Plaintiffs' position. After numerous delays thereafter, Plaintiffs eventually provided on August 18, 2026, the "Supplemental" responses attached to the Baratta Declaration as Exhibit 29.

The Court can see for itself the facial disingenuousness of these so-called "supplemental" responses. First, they relate *only* to the requests concerning Claimants D (40-51) and U (76-82), and the only reason Plaintiffs provided even these responses was due to undersigned having confronted them directly with their own documents identifying the IME doctors as Uber's and/or Fed Ex's experts. Even still, Plaintiffs offer ridiculous qualifications and outright refusals to respond.

But demonstrating Plaintiffs' *continuing* bad faith, they have provided *no* supplemental responses to the requests concerning Claimant E (53-62). Again, in its pretrial memorandum in Claimant E's lawsuit, *Uber's counsel* specifically identified the IME expert who examined Claimant E, Dr. Murray, as *Uber's* expert on damages. Yet Uber claims to "lack sufficient information" to admit or deny Dr. Murray is an expert or that his costs are damages Uber seeks in this case. How can Uber have presented Murray as an expert to the Court of Common Pleas if it "lacked sufficient information" to identify whether he was an expert in the first place?

Federal Rule of Civil Procedure 36(a)(4) requires that, if a matter is not admitted, "the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Critically, "[t]he answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. P. 36(a)(4). Plaintiffs' responses fail in every respect to meet the requirements of the Rule, and it is therefore respectfully requested that Plaintiffs be ordered to amend their responses to each request listed in the proposed Order accompanying this Motion.

## II. ATTORNEY CLIENT PRIVILEGE

In its memorandum Opinion denying Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, the Court pointed out that "what Uber knew" and "why it settled" the underlying lawsuits are fact questions requiring the development of a record. (ECF 99, pg. 35). To develop such a record, PSA submitted requests for admission 178-179 and 187-189.

Uber objected to each of these requests based on attorney-client privilege and the work-product doctrine. But none of these requests seek the disclosure of the substance of any communications between Uber and its counsel nor counsel's mental impressions. What the requests seek are simply underlying facts. "The Supreme Court has distinguished "communications," which are subject to attorney-client privilege, from the discovery of "facts," which are not subject to any claim of privilege. CMPC USA, Inc. v. GWSI, Inc., No. CV 24-2087, 2026 WL 1105139, at *5 (E.D. Pa. Apr. 23, 2026), *citing* Upjohn Co. v. United States, 449 U.S. 383, 395–96 (1981).

Plaintiffs' privilege and work product objections to requests 178-179 and 187-189 seek only the admission of underlying facts, not communications or work product, and Uber should be required to admit or deny each request.

Respectfully submitted,

Dated: August 18, 2026

BARATTA LAW, LLC

BY: ______________________________

ANDREW P. BARATTA, ESQUIRE
*Attorney for Defendants, Philadelphia Spine Associates, LLC, Daniel Piccillo, D.C., and Ethel Harvey, D.C.*
Attorney I.D. No. 82250
BARATTA LAW, LLC
3500 READING WAY
HUNTINGDON VALLEY, PA 19006
215-914-8132

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UBER TECHNOLOGIES, INC.,

PLAINTIFF, CASE NO. 2:25-CV-05365

v.

MARC SIMON, et. al.

DEFENDANTS.

---

**<u>LOCAL RULE 26.1(f) CERTIFICATION</u>**

Pursuant to Judge Kearney's Policies and Procedures, the undersigned certifies that he wrote to Plaintiff's counsel on June 26, 2026 outlining the deficiencies in Plaintiffs' RFA responses. On July 2, 2026, the parties met and conferred. Plaintiffs represented they had no information at all about the IME reports at issue and promised to provide a written explanation of their position. On July 17, 2026, Plaintiffs' counsel wrote that its responses were sufficient because the IME reports were not commissioned by Plaintiffs. On July 22, 2026, undersigned responded by letter rebutting Plaintiffs' assertions and asking Plaintiffs to provide amended responses. Plaintiffs maintained their position. Then on July 31, 2026, undersigned sent to Plaintiffs' counsel documents concerning the claims of Claimants D and U demonstrating the falsity of Plaintiffs' position. Thereafter Plaintiffs' counsel promised to provide amended responses. On August 18, 2026, Plaintiffs' provided their long-promised "supplemental responses" but only did so with respect to the requests applying to Claimants D and U and while maintaining its objections to all other requests.

BARATTA LAW, LLC

DATED: August 18, 2026

BY: ______________________________

ANDREW P. BARATTA, ESQUIRE
*Attorney for Defendants, Philadelphia Spine Associates, LLC, Daniel Piccillo, D.C., and Ethel Harvey, D.C.*
Attorney I.D. No. 82250
BARATTA LAW, LLC
3500 READING WAY
HUNTINGDON VALLEY, PA 19006
215-914-8132

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UBER TECHNOLIGIES, INC., | : | |
| Plaintiff | : | CIVIL ACTION |
| SIMON & SIMON, PC., MARC SIMON, CLIFTON BURT, PREMINER PAIN & REHAB CENTER, INC., ETHEL HARVEY, DANIEL PICCILLO, PHILADELPHIA SPINE ASSOCIATES, LLC AND LANCE YARUS, | : | NO. 2:25-CV-05365-MA |
| Defendants | : | |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court through the CM/ECF system, which shall be available for viewing and downloading therein. By electronically filing, the CM/ECF system shall send notification of such filing to counsel of record for each party and those registered to receive a Notice of Electronic Filing for this case.

Dated: August 18, 2026

BARATTA LAW, LLC

BY: ______________________

ANDREW P. BARATTA, ESQUIRE
*Attorney for Defendants, Philadelphia Spine Associates, LLC, Daniel Piccillo, D.C., and Ethel Harvey, D.C.*
Attorney I.D. No. 82250
BARATTA LAW, LLC
3500 READING WAY
HUNTINGDON VALLEY, PA 19006
215-914-8132