# Exhibit "1"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UBER TECHNOLOGIES, INC.,

PLAINTIFF, CASE NO. 2:25-CV-05365

v.

MARC SIMON, et. al.

DEFENDANTS.

---

**REQUESTS FOR ADMISSION TO PLAINTIFFS BY DEFENDANTS PHILADELPHIA SPINE ASSOCIATES, LLC, DANIEL PICCILLO, AND ETHEL HARVEY**

Defendants, **PHILADELPHIA SPINE ASSOCIATES, LLC, DANIEL PICCILLO, AND ETHEL HARVEY,** through their undersigned counsel, propound the following Requests for Admission to Plaintiffs. For purposes of the pending action only, kindly admit or deny each of the following Requests for Admissions pursuant to the requirements of Federal Rule of Civil Procedure 36. These Request for Admissions are deemed continuing so as to require further answer from now until the time of trial, without further notice, when additional information called for herein is obtained subsequent to filing of answers hereto.

The purpose of these Requests for Admissions is to have a party reveal everything presently known which bears upon the refusal to admit or bears upon the qualification of the admission. At the time of trial, Defendant will move the Court for an Order excluding from evidence all information or physical evidence sought to be presented which was not disclosed in these responses.

For ease of reference, Dr. Piccillo, Dr. Harvey, and Philadelphia Spine Associates are referred to collectively in the below Requests as "PSA".

**REQUESTS**

1. Admit that Claimant A in the Amended Complaint is [redacted].
2. Admit that an IME and medical record review concerning Claimant A was performed by Douglas C. Sutton, M.D.
3. Admit that the cost of Dr. Sutton's work is a damage you seek in this case.

4. Admit that Dr. Sutton was specifically tasked with identifying whether any treatment, diagnoses, and causation opinion reflected by PSA's records were unreasonable and/or unnecessary.
5. Admit that Dr. Sutton performed the IME and record review of Claimant A on September 25, 2025, as part of the defense against the personal injury lawsuit brought by the Simon firm on behalf of Claimant A.
6. Admit that Dr. Sutton is a medical doctor whom Plaintiffs acknowledge is an expert for the purpose of opining on the reasonableness and necessity of the treatment provided to Claimant A for injuries he claims to have sustained in an auto accident which occurred on April 26, 2024.
7. Admit that Dr. Sutton is a medical doctor whom Plaintiffs acknowledge is an expert for the purpose of opining on the causation of injuries he claims to have sustained in an auto accident which occurred on April 26, 2024.
8. Admit that Dr. Sutton's opinions expressed in his report concerning the treatment provided to Claimant A were accurate.
9. Admit that Dr. Sutton reviewed records from Philadelphia Spine Associates.
10. Admit that Plaintiffs had Dr. Sutton's report in their possession and/or available to them before suing PSA in this action.
11. Admit that Dr. Sutton opined in his report that Claimant A sustained myofascial sprain/strain injuries of the cervical, thoracic, and lumbar spine as result of the auto accident alleged in Claimant A's underlying lawsuit brought by the Simon firm.
12. Admit that Dr. Sutton opined in his report that several months of myofascial treatment were reasonable and appropriate for Claimant A's injuries.
13. Admit that PSA's records reflect myofascial treatment to Claimant A for sprain/strain injuries of the cervical, thoracic, and lumbar spine.
14. Admit that Dr. Sutton did not identify any aspect of PSA's treatment as unreasonable or unnecessary.
15. Admit that the records Dr. Sutton reviewed included the Police Crash report.

16. Admit that Dr. Sutton opined that Claimant A underwent three months of chiropractic care at PSA with overall significant improvement in his symptoms.

17. Admit that Dr. Sutton did not opine that the MRI's of Claimant A's cervical and lumbar spine were unreasonable or unnecessary.

18. Admit that the settlement of Claimant A's lawsuit was made in reliance on the accuracy of Dr. Sutton's opinions.

19. Admit that Dr. Sutton's report was addressed to John Silli, Esquire of the Law Office of Jessica Adams.

20. Admit that the Law Office of Jessica Adams is part of the in-house litigation department of Farmers Insurance Company.

21. Admit that Farmers Insurance Company paid to settle the lawsuit of Claimant A after Dr. Sutton's report was provided to John Silli, Esquire.

22. Admit that Farmers was aware of the allegations made in Plaintiffs' lawsuit prior to settling the underlying lawsuit of Claimant A.

23. Admit that Claimant B in the Amended Complaint is [redacted].

21. Admit that an independent medical examination concerning Claimant B was performed by Joseph Bernstein, M.D., M.S. at the request of Frank Love, Esquire of the Law firm of Zarwin Baum.

22. Admit that Dr. Bernstein was specifically tasked with identifying whether any treatment, diagnoses, and causation opinion reflected by PSA's records were unreasonable and/or unnecessary.

23. Admit that the costs associated with Dr. Bernstein's work concerning Claimant B is a damage you seek in this case.

24. Admit that Dr. Bernstein evaluated Claimant B on April 24, 2025.

25. Admit that Dr. Bernstein is a medical doctor whom Plaintiffs acknowledge is an expert for the purpose of opining on the reasonableness and necessity of the treatment provided to Claimant B for injuries she claims to have sustained in the motor vehicle accident which occurred on November 12, 2022.

26. Admit that Dr. Bernstein's opinions expressed in his report concerning the treatment provided to Claimant B were accurate.

27. Admit that Plaintiffs had Dr. Bernstein's report in their possession and/or available to them before suing PSA in this action.

28. Admit that Dr. Bernstein reviewed records of Philadelphia Spine Associates dated from November 23, 2022, through July 20, 2023.

29. Admit that the records Dr. Bernstein reviewed included the Police Crash report.

30. Admit that Dr. Bernstein did not offer any opinion that PSA's treatment of Claimant B was unreasonable or unnecessary.

31. Admit that Claimant B suffered post-traumatic cervical sprain and strain as a result of the car accident of November 12, 2022.

32. Admit that Claimant B suffered post-traumatic lumbar sprain and strain as a result of the car accident of November 12, 2022.

33. Admit that MRI of Claimant B's cervical spine showed disc bulging at C3/4 and C5/6.

34. Admit that the report of an EMG performed on March 23, 2023, on Claimant B reflected a cervical radiculopathy affecting the right C5 nerve root.

35. Admit that Claimant D in the Amended Complaint is [redacted].

39. Admit that an IME concerning Claimant D was performed by Scott K. Epstein, M.D.

40. Admit that Dr. Epstein evaluated Claimant D on October 31, 2024.

41. Admit that Dr. Epstein is an expert for the purpose of opining on the reasonableness and necessity of the treatment provided to Claimant D for injuries she claims to have sustained in an auto accident which occurred on July 23, 2023.

42. Admit that Dr. Epstein was specifically tasked with identifying whether any treatment, diagnoses, and causation opinion reflected by PSA's records were unreasonable and/or unnecessary.

43. Admit that the costs associated with Dr. Epstein's work concerning Claimant D is a damage you seek in this case.

44. Admit that the opinions expressed by Dr. Epstein concerning Claimant D were accurate.
45. Admit that Dr. Epstein reviewed the PSA records related to Claimant D which span July 26, 2023, through May 14, 2024.
46. Admit that Plaintiffs had Dr. Epstein's IME report concerning Claimant D in their possession and/or available to them before suing PSA in this action.
47. Admit that Dr. Epstein identified PSA's records as indicating Claimant D had suffered a lumbar sprain in the auto accident of July 23, 2023.
48. Admit Dr. Epstein agreed Claimant D suffered a lumbar sprain in the accident.
49. Admit that Dr. Epstein opined that PSA's treatment of Claimant D was reasonable and appropriate.
50. Admit that Dr. Epstein opined the October 2023 lumbar MRI of Claimant D was reasonable to have been ordered.
51. Admit that Dr. Epstein's report concerning Claimant D was in Plaintiffs' possession or available to Plaintiffs before Plaintiffs filed suit in this case.
52. Admit that Claimant E in the Amended Complaint is [redacted].
53. Admit that a medical record review concerning Claimant E was performed by Michael Murray, M.D.
54. Admit that Dr. Murray issued a report concerning his record review to Martin Beck, Esquire of McCormick & Priore, P.C. dated November 22, 2024.
55. Admit that Dr. Murray is an expert for the purpose of opining on the reasonableness and necessity of the treatment provided to Claimant E for injuries he claims to have sustained in an auto accident which occurred on February 22, 2023.
56. Admit that Dr. Murray was specifically tasked with identifying whether any treatment, diagnoses, and causation opinion reflected by PSA's records were unreasonable and/or unnecessary.
57. Admit that the costs associated with Dr. Murray's work concerning Claimant E is a damage you seek in this case.
58. Admit that the opinions expressed by Dr. Murray concerning Claimant E were accurate.

59. Admit that Dr. Murray reviewed the PSA records related to Claimant E.

60. Admit that the records Dr. Murray reviewed included the Police Crash report.

61. Admit that Plaintiffs had Dr. Murray's IME report concerning Claimant E in their possession and/or available to them before suing PSA in this action.

62. Admit that Dr. Murray did not disagree with PSA's diagnoses that Claimant E had suffered sprains/strains of his cervical and lumbar spine as a result of the accident of February 22, 2023.

63. Admit that Claimant Q is [redacted].

64. Admit that Dr. Murray also served as a defense medical examiner in the underlying lawsuit brought by Claimant Q for injuries she alleges to have sustained in an auto accident on November 13, 2022.

65. Admit that Dr. Murray issued a report concerning his medical examination of Claimant Q to Greg Mallon, Esquire of Zarwin Baum dated June 7, 2024.

66. Admit that Dr. Murray was specifically tasked with identifying whether any treatment, diagnoses, and causation opinion reflected by PSA's records were unreasonable and/or unnecessary.

67. Admit that the costs associated with Dr. Murray's work concerning Claimant Q is a damage you seek in this case.

68. Admit that Dr. Murray did not disagree with PSA's diagnoses that Claimant Q had suffered sprains/strains of her cervical and lumbar spine as a result of the accident of November 13, 2022.

69. Admit that Dr. Murray's report concerning Claimant E contained the following quoted language: "After a review of the above medical data, it is my opinion that [Claimant E's] February 22, 2023 accident resulted in, at most, sprains/strains of his cervical and lumbar spine. If [Claimant E] in fact sustained the above injuries, they would be typically treated with 6-12 weeks of physical therapy, followed by a home exercise program, and a return to

full and unrestricted activity. It is my opinion that any treatment in excess of this was unrelated to his February 22, 2023 accident."

70. Admit that Dr. Murray's report concerning Claimant Q contained the following quoted language: "After my evaluation of [Claimant Q] and review of the above medical data, it is my opinion that her November 13, 2022 accident resulted in, at most, sprains/strains of his cervical and lumbar spine. If [Claimant Q] in fact sustained these injuries, they would be typically treated with 6-12 weeks of physical therapy, followed by a home exercise program, and a return to full and unrestricted activity. It is my opinion that any treatment in excess of this was unrelated to her November 13, 2022 accident."
71. Admit that the above quoted language from Dr. Murray's reports was cut and pasted from report to report.
72. Admit that Plaintiffs had both of Dr. Murray's reports in their possession or available to them prior to filing suit in this case.
73. Admit that Dr. Murray's use of cut and pasted language in his reports demonstrates his opinions regarding Claimants E and Q to have been fraudulent.
74. Admit that Dr. Murray's participation as an expert in multiple cases on behalf of defense lawyers attempting to minimize or disprove injuries claimed in an auto accident demonstrates that Dr. Murray intended to commit fraud.
75. Admit that Claimant U in the Amended Complaint is [redacted].
76. Admit that an IME concerning Claimant U was performed by Joseph Bernstein, M.D., M.S. on December 23, 2025.
77. Admit that Dr. Bernstein issued a report of his IME of Claimant U dated January 15, 2026.

78. Admit that Dr. Bernstein is a medical doctor whom Plaintiffs acknowledge is an expert for the purpose of opining on the reasonableness and necessity of the treatment provided to Claimant U for injuries she claims to have sustained in the motor vehicle accident which occurred on February 15, 2024.
79. Admit that Dr. Bernstein's opinions expressed in his report concerning the treatment provided to Claimant U were accurate.
80. Admit that Dr. Bernstein was specifically tasked with identifying whether any treatment, diagnoses, and causation opinion reflected by PSA's records were unreasonable and/or unnecessary.
81. Admit that the costs associated with Dr. Bernstein's work concerning Claimant U is a damage you seek in this case.
82. Admit that Plaintiffs had Dr. Bernstein's report in their possession and/or available to them before suing PSA in this action.
83. Admit that Dr. Bernstein's participation as an expert in multiple cases on behalf of defense lawyers attempting to minimize or disprove injuries claimed in an auto accident demonstrates that Dr. Bernstein intended to commit fraud.
84. Admit that Claimant EE in the Amended Complaint is [redacted].
85. Admit that Stuart L. Trager, M.D. performed an independent medical exam of Claimant EE on August 10, 2022, and issued a report concerning same with that same date.
86. Admit that Dr. Trager is a medical doctor who Plaintiffs acknowledge is an expert for the purpose of opining on the reasonableness and necessity of the treatment provided to Claimant EE for injuries she claims to have sustained in the motor vehicle accident which occurred on April 8, 2021.

87. Admit that Dr. Trager was specifically tasked with identifying whether any treatment, diagnoses, and causation opinion reflected by PSA's records were unreasonable and/or unnecessary.

88. Admit that the costs associated with Dr. Trager's work concerning Claimant B is a damage you seek in this case.

89. Admit that Dr. Trager's opinions expressed in his report concerning the treatment provided to Claimant EE were accurate.

90. Admit that Plaintiffs had Dr. Trager's report in their possession and/or available to them before suing PSA in this action.

91. Admit that Dr. Trager reviewed the records of PSA concerning Claimant EE spanning from April 20, 2021, through December 20, 2021.

92. Admit that Dr. Trager reviewed the report of Leadbitter Spine and Sports concerning its review of the chiropractic treatment provided to Claimant EE by PSA.

93. Admit that Dr. Trager expressed no disagreement with the opinion of Leadbitter Spine and Sports, which Dr. Trager related as follows: "Treatment was felt to be reasonable from April 20, 2021 through October 12, 2021, with treatment beyond that point not felt to be indicated, as it was "not supported by the documentation." "Due to the noncompliance by the claimant with the recommended treatment frequency by Dr. Piccollo, I feel that the claimant had reached maximum medical improvement by October 12, 2021."

94. Admit that Joseph Lubeck, D.O. performed an independent medical exam of Claimant EE on August 24, 2022, and issued a report concerning same with that same date.

95. Admit that Dr. Lubeck is a medical doctor whom Plaintiffs acknowledge is an expert for the purpose of opining on the reasonableness and necessity of the treatment provided to

Claimant EE for injuries she claims to have sustained in the motor vehicle accident which occurred on April 8, 2021.

96. Admit that Dr. Lubeck was specifically tasked with identifying whether any treatment, diagnoses, and causation opinion reflected by PSA's records were unreasonable and/or unnecessary.

97. Admit that the costs associated with Dr. Lubeck's work concerning Claimant EE is a damage you seek in this case.

98. Admit that Dr. Lubeck's opinions expressed in his report concerning the treatment provided to Claimant EE were accurate.

99. Admit that Plaintiffs had Dr. Lubeck's report in their possession and/or available to them before suing PSA in this action.

100. Admit that Dr. Lubeck reviewed the records of PSA concerning Claimant EE spanning from April 20, 2021 through December 20, 2021.

101. Admit that the records Dr. Lubeck reviewed included the Police Crash report included photographs of vehicular damage.

102. Admit that Dr. Lubeck reviewed the report of Leadbitter Spine and Sports concerning its review of the chiropractic treatment provided to Claimant EE by PSA.

103. Admit that Dr. Lubeck agreed with the opinion of Leadbitter Spine and Sports concerning PSA's diagnoses and treatment of Claimant EE.

104. Admit that Dr. Lubeck opined that Claimant EE sustained a right hand contusion and lumbar sprain and strain in the accident of April 8, 2021.

105. Admit that Plaintiffs had Dr. Lubeck's report in their possession and/or available to them before suing PSA in this action.

106. Admit that Gerald Leadbitter, D.C. performed a peer review of PSA's treatment of Claimant EE for injuries she claims to have suffered in the accident of April 8, 2021.

107. Admit that Dr. Leadbitter is an expert for the purpose of evaluating the reasonableness and necessity of the treatment provided by PSA to Claimant EE.

108. Admit that Dr. Leadbitter's opinions concerning PSA's treatment and diagnoses of Claimant EE are accurate.

109. Admit that Dr. Leadbitter opined that PSA's treatment of Claimant EE from April 20, 2021 through October 12, 2021, was reasonable and necessary.

110. Admit that Dr. Leadbitter opined that the diagnoses recorded in PSA's records were supported by Dr. Piccillo's treatment notes.

111. Admit that Dr. Leadbitter opined that the appropriate areas of Claimant EE's body were treated by PSA.

112. Admit that Dr. Leadbitter opined that the diagnoses reported by Dr. Piccillo concerning Claimant EE on April 20, 2021, were the direct result of the accident of April 8, 2021.

100. Admit that Plaintiffs had the report of Dr. Leadbitter concerning Claimant EE in their possession and/or available to them prior to filing suit against PSA.

115. Admit that Claimant FF in the Amended Complaint is [redacted].

116. Admit that an IME concerning Claimant FF was performed by Marc Manzione, M.D. on June 7, 2021, and that Dr. Manzione issued a report of his examination dated June 28, 2021.

117. Admit that Dr. Manzione is an expert for the purpose of opining on the reasonableness and necessity of treatment provided to Claimant FF for injuries alleged to have been sustained in an auto accident in March of 2020.

118. Admit that Dr. Manzione was specifically tasked with identifying whether any treatment, diagnoses, and causation opinion reflected by PSA's records were unreasonable and/or unnecessary.

119. Admit that the costs associated with Dr. Manzione's work concerning Claimant FF is a damage you seek in this case.

120. Admit that the opinions expressed by Dr. Manzione concerning Claimant FF are accurate.

121. Admit that Dr. Manzione identified PSA as having diagnosed Claimant FF with cervical, thoracic, and lumbar sprain, back muscle spasms, and an unspecified neuralgia/neuritis.

122. Admit that Dr. Manzione opined that Claimant FF's May 12, 2020 accident resulted in various sprains/strains/contusions and possibly one or more nerve root traction injuries.

123. Admit that Plaintiffs had Dr. Manzione's report concerning Claimant FF in their possession and/or available to them before suing PSA in this action.

129. Admit that Claimant GG in the Amended Complaint is [redacted].

130. Admit that Gregory Pharo, D.O. performed an independent medical exam of Claimant GG on November 22, 2022 and issued a report concerning same dated November 29, 2022.

131. Admit that Dr. Pharo is an expert for the purpose of opining on the reasonableness and necessity of Claimant GG's treatment as well as causation.

132. Admit that Dr. Pharo was specifically tasked with identifying whether any treatment, diagnoses, and causation opinion reflected by PSA's records were unreasonable and/or unnecessary.

133. Admit that the costs associated with Dr. Pharo's work concerning Claimant GG is a damage you seek in this case.

134. Admit that Dr. Pharo's opinions concerning Claimant GG are accurate.

135. Admit that Dr. Pharo opined that Claimant GG's injuries from the June 16, 2021 auto accident are consistent with cervical and lumbar sprain and strain.

136. Admit that Dr. Pharo opined that the chiropractic treatment provided by PSA was appropriate and indicated for the affected areas.

142. Admit that Plaintiffs had Dr. Pharo's report in their possession or available to them prior to filing suit in this case.

143. Admit that Leonard Brody, M.D. performed an independent medical exam of Claimant GG on March 27, 2024 and issued a report on that same date.

144. Admit that Dr. Brody is an expert for the purpose of opining on the reasonableness and necessity of Claimant GG's treatment as well as causation.

145. Admit that Dr. Brody was specifically tasked with identifying whether any treatment, diagnoses, and causation opinion reflected by PSA's records were unreasonable and/or unnecessary.

146. Admit that the costs associated with Dr. Brody's work concerning Claimant GG is a damage you seek in this case.

147. Admit that Dr. Brody's opinions concerning Claimant GG are accurate.

148. Admit that Dr. Brody opined that Claimant GG's injuries from the June 16, 2021 auto accident are consistent with cervical and lumbar sprain and strain.

149. Admit that Dr. Brody did not offer any opinion that the chiropractic treatment provided by PSA was inappropriate and not indicated for the affected areas.

150. Admit that Plaintiffs had Dr. Brody's report in their possession or available to them prior to filing suit in this case.

151. Admit that Philly Spine Center is not the same entity as Philadelphia Spine Associates.

152. Admit that Philly Spine Center is not owned by Daniel Piccillo.

153. Admit that Philly Spine Center is not owned by Ethel Harvey.

154. Admit that Claimant AA did not treat at Philadelphia Spine Associates.

155. Admit that Philadelphia Spine Associates created no treatment record for Claimant AA.

156. Admit that any allegation treating Claimant AA's care at Philly Spine Center as care rendered by Philadelphia Spine Associates was false.

157. Admit that Claimant B underwent cervical and lumbar MRI studies which revealed shallow disc bulging most notable at C3-4 and C4-5 and reversal of normal cervical lordosis.

158. Admit that the allegation that the cervical MRI of Claimant B showed “disc signal and disc height are preserved”; “no evidence of herniated nucleus pulposus or foraminal stenosis”; and “negative examination”; was false.

159. Admit that the allegation that Dr. Harvey and Dr. Piccillo controlled another clinic called Spinal Associates was false.

160. Admit that every settlement paid and/or every defense cost incurred in connection with the litigations filed by Claimants A, B, D, E, Q, U, CC, EE, FF, and GG were made with full knowledge of the factual allegations made by Plaintiffs in this case against PSA.

161. Admit that Plaintiffs have no evidence of communication between PSA and any other medical provider defendant.

162. Admit that Plaintiffs have no evidence that PSA was aware of any other medical provider defendant’s subsequent treatment of any Claimant.

163. Admit that Plaintiffs never relied on PSA’s records in determining whether or for how much to settle any lawsuit.

164. Admit that Plaintiffs never sought the deposition of Daniel Piccillo, Ethel Harvey, and/or Philadelphia Spine Associates in any case.

165. Admit that Plaintiffs never served any subpoena or other direct request for records from Daniel Piccillo, Ethel Harvey, and/or Philadelphia Spine Associates in any case.

166. Admit that Farmers Insurance Company maintained a claim file related to Claimant A.

167. Admit that Farmers Insurance Company maintained a claim file related to Claimant B.

168. Admit that Farmers Insurance Company maintained a claim file related to Claimant D.

169. Admit that Farmers Insurance Company maintained a claim file related to Claimant E.

170. Admit that Farmers Insurance Company maintained a claim file related to Claimant Q.

171. Admit that Farmers Insurance Company maintained a claim file related to Claimant U.

172. Admit that Farmers Insurance Company maintained a claim file related to Claimant CC.

173. Admit that Farmers Insurance Company maintained a claim file related to Claimant EE.

174. Admit that Farmers Insurance Company maintained a claim file related to Claimant FF.

175. Admit that Farmers Insurance Company maintained a claim file related to Claimant GG.

176. Admit that Farmers Insurance Company's Special Investigations Unit maintained an investigation file concerning Daniel Piccillo, Ethel Harvey, and/or Philadelphia Spine Associates.

177. Admit that Farmers Insurance Company's Special Investigations Unit maintained an investigation file concerning Marc Simon, Simon & Simon, P.C., Premier Pain & Rehab Center, P.C., Clifton Burt, and/or Lance Yarus.

178. Admit that counsel representing Uber and/or FedEx in the underlying lawsuits alleged to be at issue in this case consulted and/or coordinated with Farmers Insurance Company in the defense and/or settlement of the litigations.

179. Admit that counsel representing Uber and/or FedEx in this lawsuit consulted and/or coordinated with Farmers Insurance Company in connection with the underlying lawsuits and/or the filing of this lawsuit.

180. Admit that neither Uber nor FedEx has made any complaint concerning PSA to any criminal justice authority and/or oversight Board concerning any of the allegations made in this lawsuit.

181. Admit that you have received claims for personal injuries by Claimants treated by PSA who were not represented by the Simon firm.

182. Admit that Rasier-PA, Limited Liability Company is the Pennsylvania operating company or "license holder" on behalf of Uber which contracts with drivers, provides the technical platform in the state, and interacts with the Pennsylvania state regulator.

183. Admit that Rasier-PA, LLC is a wholly owned subsidiary of Uber Technologies, Inc. fully within the control of Uber Technologies, Inc. and conducts and/or has conducted operations for Uber in Pennsylvania.

184. Admit that Rasier, LLC is a wholly owned subsidiary of Uber Technologies, Inc. fully within the control of Uber Technologies, Inc. and conducts and/or has conducted operations for Uber in Pennsylvania.

185. Admit that Uber is regulated in Pennsylvania as a public utility.

186. Admit that Uber's operations in Philadelphia are regulated by the Philadelphia Parking Authority and outside Philadelphia by the Pennsylvania Utility Commission.

187. Admit that the lawyers representing Uber in any underlying lawsuit alleged to be at issue in this case were aware of the factual allegations Uber has made in this lawsuit prior to any settlement being paid.

188. Admit that the lawyers representing Plaintiffs in this lawsuit coordinated and/or communicated with the lawyers representing Uber and/or FedEx in the underlying lawsuits alleged to be at issue in this case.

189. Admit that lawyers representing Uber and/or FedEx in the underlying lawsuits alleged to be at issue in this case provided documents to counsel representing Plaintiffs in this case.

190. Admit that the auto accidents in which Claimants A, B, D, E, Q, U, CC, EE, FF, and GG claimed to have been injured all occurred.

BARATTA LAW, LLC

DATED: 5/20/26 BY: ______________________

ANDREW P. BARATTA, ESQUIRE
*Attorney for Defendants, Philadelphia Spine Associates, LLC, Daniel Piccillo, D.C., and Ethel Harvey, D.C.*
Attorney I.D. No. 82250
BARATTA LAW, LLC
3500 READING WAY
HUNTINGDON VALLEY, PA 19006
215-914-8132