# Exhibit "9"

# EXHIBIT C

WILSON ELSER
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

**Caroline S. Vahey**
215.606.3970(direct)
Caroline.Vahey@wilsonelser.com

**Andrew L. Smith**
973.735.1149 (direct)
Andrew.Smith@wilsonelser.com

January 9, 2025

**VIA EMAIL**

Kevin J. Doyle, Esq.
SouthEastern Pennsylvania Trans. Authority
1234 Market Street - 5th Fl
Philadelphia, PA 19107
kdoyle@septa.org
twilliams@septa.org

Joshua Baer, Esq.
Simon & Simon, P.C.
18 Campus Boulevard Suite 100 Newtown
Square, PA 19073
JoshuaBaer@gosimon.com
MeganCoghlan@gosimon.com

John P. Silli, Esq.
Law Offices of Carolyn M. Angelaccio
Claims Litigation
P.O. Box 258829
Oklahoma City, OK 73125
john.silli@farmersinsurance.com
elaine.junod@farmersinsurance.com

**Re:** [redacted]
**Philadelphia County CCP, December Term, 2023, No. 03191**
**File No.: 26422.00261**

Counsel:

This office represents defendants Rasier-PA, LLC (incorrectly identified as "Rasier, LLC; Rasier-PA, LLC; Rasier-CA, LLC and Rasier-DC, LLC") and Uber Technologies in the above matter. Defendant's hereby amends its discovery to include the enclosed reports of Dr. Andrew Shaer, M.D. and Scott K. Epstein, M.D.

Very truly yours,
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
/s/ *Andrew L. Smith*
Andrew L. Smith
Caroline S. Vahey

ALS/ag
Encl.

# Scott K. Epstein, MD
## Physical Medicine and Rehabilitation
Bala Cynwyd, PA

MAILING ADDRESS

1700 PAOLI PIKE
MALVERN, PA 19355
PHONE: 484-329-7000
FAX: 484-329-7095

PENNSYLVANIA

ALLENTOWN
BALA CYNWYD
HARRISBURG
MALVERN
PITTSBURGH
READING
STATE COLLEGE
WILKES-BARRE / SCRANTON


SEPTA / Legal

**RE:** [redacted]
**DATE OF BIRTH:** [redacted]
**CLAIM NUMBER: C23-909-001**
**DATE OF INJURY: 07/23/23**
**DATE OF EVALUATION: 10/31/24**

Dear Mr. Doyle:

**MECHANISM OF INJURY:**

The claimant was a passenger of an Uber vehicle. In the backseat of the vehicle was the claimant (sitting on the driver's rear side) and the claimant's toddler daughter who was sitting in a car seat to the claimant's right. The claimant reports that the vehicle she was in was hit by a SEPTA bus. The claimant reported she slightly fell forward and then jostled to the right, leaning toward the car seat to her right. The claimant reports having low back pain afterwards.

**CLAIMANT TREATMENT SUMMARY:**

She says she was seen in the emergency room (the records indicate she was actually seen on two separate emergency rooms shortly after the incident.) then had therapy for a few months (the records indicate that it was at a chiropractic office). She says that the treatment consisted of sitting in a chair and getting electrical stimulation. She says she had no adjustments or any massages. She was given a back brace which she says she only occasionally uses. She reports that her attorney then referred her to a spine doctor who has injected one or two spots in her back for what sounds like they may have trigger point injections. She reports the injections were without effect. The claimant reports that was the extent of the treatment that she has undertaken. She reports she stopped therapy a long time ago and that her last treatment with a medical or chiropractic provider was at least several months ago.

**SYMPTOMS:**

She reports that the slightest touch of her low back makes her back feel weird. She says that other than that she has no symptoms. She reports no back pain with doing any activity. No back

pain if she twists, turns, bends, reaches, lifts one of her kids, rolls in bed, has a bowel movement, coughs or sneezes, or has intercourse. No pain with any of those activities. No pain with walking or running or going up and down steps or getting in and out of a car. She says the only time she gets symptoms in her back is a sense of a weird sensation of the back if the back is touched. She reports she does not get this sensation if she is wearing her belt tight or if her garments feel tight on her. No symptoms in her buttocks or lower limbs, neither pain or numbness or tingling. No pain in her hips or her knees. No pain in her neck. No upper limb symptoms. She says she has not had any neck, shoulder girdle, or upper limp symptoms since the time of the incident in question. She reports having no pain presently.

**PAST MEDICAL HISTORY:**

She reports a history of scoliosis. She says she did not have any bracing or surgery as a child or teenager from the history of scoliosis. She reports that she has a history of migraines which long predates the date of loss in question. She says only once in a blue moon will she get a migraine. She says when she gets it, it lasts a few days. She says that any medication that have been tried for her migraines are without effect. So, when she has a migraine that lasts, she will go to the emergency room and get an IV medication. Past medical history is otherwise negative.

**PAST INJURY HISTORY:**

Negative.

**PAST SURGICAL HISTORY:**

Negative.

**ALLERGIES:**

No known drug allergies.

**MEDICATIONS:**

None.

**SOCIAL HISTORY:**

She reports that she was working as an assistant teacher at a daycare center at the time of the incident in question. She says she has returned to that type of work but in a different daycare center, just starting with the new center at the end of the September. She is working at a daycare center at 5717 Germantown Avenue in Philadelphia. She does not report the name of the facility. She was at the appointment today with two toddler children, a 3-year-old son and a 2-year-old daughter.

**PHYSICAL EXAMINATION:**

Normal sitting and standing posture. Normal cervical and lumbar curves. A minimal right low thoracic sclerotic curve. No pelvic obliquity. Normal gait pattern. She could stand on both limbs without knee buckling, foot drop, foot drag, nor gluteus medius gait noted. Heel walking and toe walking showed normal strength bilaterally.

Full neck and trunk range of motion in all directions without pain. No tightness, spasm, nor trigger points on palpating the suboccipital muscles, cervical paraspinals, shoulder girdle muscles, thoracic paraspinals, or lumbar paraspinals. No pain on palpating those areas. No tenderness or step-off on palpating the cervical, thoracic, or lumbar spinous processes or interspinous areas. The claimant reports that barely touching her sacrum yields a sense that her back feels weird. No tenderness on palpating the sacroiliac areas.

Bilateral hip FABER and FADIR were negative. Seated straight leg raise was negative bilaterally. Supine straight leg raise was up to 90 degrees bilaterally without pain. Spurling's was negative bilaterally.

Noting the claimant's report of right knee pain at the Deposition, I examined her right knee. It was normal. No swelling, dislocation, or temperate change. Full range of motion without pain. No tenderness to palpation or on range of motion. Provocative testing of the medial and lateral collateral ligaments, ACL, and medial and lateral menisci were all negative.

**DIAGNOSTIC REVIEW:**

The following films were available for review:

MRI of the lumbar spine, October 18, 2023, showing L5-S1 with no central protrusion with dark disc.

CT of abdomen and pelvis, January 24, 2024, which appeared negative.

Note that the CDs available also included a dash cam of the videos from the date of loss in question.

**RECORD REVIEW:**

The records add the following elucidating information:

1. Complete Physicians Services - Family Medicine - 7/27/20 - 7/5/24
2. Philadelphia Spine Associates - Chiropractic - 7/26/23 - 5/14/24
3. Chestnut Hill Hospital - Emergency Room - 1/5/23
4. Chestnut Hill Hospital - Emergency Room - 5/26/23

5. Philadelphia Fire Department EMS - Ambulance/Emergency Medical Service - 7/23/23
6. Temple University Hospital - Emergency Room - 7/23/23
7. Chestnut Hill Hospital - Emergency Room - 7/24/23
8. Temple University Hospital - Emergency Room - 9/13/23
9. Premier Pain & Rehab Center - Short Procedure - Clifton Burt, MD - 11/8/23
10. Temple University Hospital - Emergency Room - 1/8/24
11. Temple University Hospital - Emergency Room - 1/24/24
12. Temple University Hospital - Emergency Room - 2/20/24
13. Temple University Hospital - Emergency Room - 3/12/24
14. Temple University Hospital - Emergency Room - 4/17/24
15. Labs - 7/27/20 - 7/17/23
16. MRI - L Spine - 10/18/23
17. Gene Z. Salkind, MD - Independent Medical Exam - 12/19/23
18. Kathleen Hartmann, RN - Medical Cost Projection/Life Care Plan - 2/20/24
19. Andrew H. Shaer, MD - Diagnostic Review - 6/19/24
20. Answers to Interrogatories Only - Plaintiff
21. Deposition - [redacted] - 8/27/24
22. Automobile - Policy Declarations - 3/1/23

Records that predate the date of loss in question indicated that from a family medicine office, there were some office visits for just routine followup/yearly physicals. There is an office visit in August 2020 for a history of headaches for 10 days. The yearly physical from February 28, 2022 referenced past history of scoliosis, chronic constipation, and migraines. The yearly physical from February 22, 2023 indicated an additional past history of gastroesophageal reflux disease. The family medicine note prior to the date of loss in question was from March 20, 2023 indicating that the claimant was requesting disability for history of scoliosis. It is noted that the low back was not examined.

Emergency room visit on January 5, 2023 for headache times two days.

Emergency room visit on May 26, 2023 for two week history of right sided neck pain and stiffness without headache or upper limb symptoms. Examination showed spasm in the right trapezius and rotator scapula muscles.

There were multiple emergency room visits that postdated the date of loss in question that were for issues separate from the incident in question on September 19, 2023 for a three day history of headache and sore throat; January 8, 2024 after claimant scratched her right ear after she was combing her hair while running and ran into a door (sustaining a right eardrum perforation); January 24, 2024 for a two day history of abdominal pain and headaches; February 20, 2024 for a sore throat with positive strep test; March 12, 2024 for urinary frequency for one day for which urine analysis was positive and claimant was placed on antibiotics; April 17, 2024 for a migraine treated with Toradol and Reglan.

With regard to records that pertain to the incident in question:

EMS note from July 23, 2023 indicated that the claimant was found by EMS walking around at the time of the incident. The claimant had gone to Temple University Emergency Room on July 23, 2023. The note indicates complaints of low back pain. The claimant was not wearing a seatbelt. It was noted the claimant left before being evaluated by a medical provider.

The next day on July 24, 2023, the claimant was at Chestnut Hill Hospital Emergency Room for low back pain without buttock or lower limb symptoms. There was noted to be muscle spasms with tenderness there on palpation without step-off or bony tenderness. Pain noted on range of motion.

Treatment at Philadelphia Spine Center by Dr. Piccillo, chiropractic, on July 26, 2023 through May 14, 2024. There were 21 office visits from July 26, 2023 through October 30, 2023. Diagnoses referenced by Dr. Piccillo were cervical sprain, thoracic strain, and lumbar sprain. Treatment consisted of manipulation, electrical stimulation, infrared, trigger point, and massage.

MRI of the lumbar spine, October 18, 2023 ordered by Dr. Harvey from chiropractic which was read as showing L5-S1 degenerative disc disease, central and paracentral protrusion, and some central canal narrowing without lateral recess nor neural foraminal narrowing.

Office visit by Dr. Burt on November 8, 2023 with steroid injections. The progress note indicated 9/10 low back pain without lower limb pain nor numbness or tingling. The MRI report was reviewed. The note indicates that the mechanism of injury was claimant was in a vehicle that was struck by an Uber vehicle (note that history is incorrect). Examination indicated trunk flexion of 85 degrees with pain and extension 30 degrees with pain. Neurologic exam is normal. Bilateral L5 medial branch blocks were done, reported 40% decrease in pain for 20 minutes, and the same day bilateral L5 radiofrequency. The pictures attached to progress note and procedure note from November 8, 2023 note the needle was at the L4-5 facet joints bilaterally. There is no indication of dye. There is no indication that injections were done at the facet joint nerves that originate superior to the L4-5 facet joints, possibly an incomplete procedure.

That is the extent of the treatment records subsequent to the incident in question which would be solely the acute emergency room notes in July 2023, the chiropractic records, the records from Dr. Burt from November 8, 2023, and the MRI of the lumbar spine.

There are additional opinion records available for review as listed below.

The MRI of the lumbar spine was read by Dr. Shaer on June 19, 2024 showing similar findings. He read L5-S1 as a bulge as opposed to a protrusion but also noted degenerative disc disease and the mild thecal sac narrowing. The radiographic report by the radiologist who read the original study as well as the subsequent radiology report by Dr. Shaer are essentially similar.

The claimant seen for a Plaintiff Independent Medical Evaluation by Dr. Salkind on December 19, 2023 by claimant's attorney Mr. Simon. The note indicates that chief complaint is that of low back pain down the front and back of the left lower limb to the knee with pain 80% in the back and 20% in the leg. Claimant reported at that time pain was least 6 to 10/10, increased with bending, lifting, sitting, and doing any activity. He indicated tenderness to palpation of the left sacroiliac notch. Straight leg raise was positive at 60 degrees for low back into the thigh. Flexion going to only 60 degrees with pain. Neurologic exam was normal. Dr. Salkind opined aggravation of the left L5-S1 protrusion with left lumbar radiculopathy. He recommended physical therapy three times a week for 8 to 12 weeks every year for the next five years; yearly MRI of the lumbar spine; three lumbar epidural injections every year for the next 5 to 10 years; lumbar medial branch blocks with radiofrequency ablation every year for the next 5 to 10 years; L5-S1 microdiscectomy.

Nurse Hartmann did a Life Care Assessment based on the recommendations made by Dr. Salkind indicating that lifetime cost of care for the treatment recommendation opined by Dr. Salkind would be over $358,000.

Deposition by claimant from August 27, 2024 indicates that claimant was out of work for just two weeks after the incident. She stopped chiropractic because of her work schedule. The chiropractic treatment only lasted 15 minute a piece. The claimant received only one injection from Dr. Burt on November 8, 2023 and not the multiple injections that were documented. The claimant additionally reported right knee pain after the incident, clearly related to right leg hitting center console upon impact.

**DISCUSSION:**

The discussion today is based upon answering the issues posed in the cover letter which requested this Independent Medical Examination.

1. Causal relationship between injury and current complaints? Please explain how the accident would of have caused the claimant's complaints.

The Deposition indicated right knee pain and low back pain after the incident. None of the medical records indicate any right knee symptoms, solely low back symptoms. The records from chiropractic tear indicated a lumbar sprain. That lumbar sprain would be the diagnosis referable to the incident in question. There was no objective evidence of any lumbar abnormality when claimant was seen.

Note that the MRI was read showing L5-S1 degenerative disc disease. No associated disc protrusion (read by one radiologist as a protrusion and another radiologist as bulge). Regardless of that, disc abnormalities at L5-S1 would be preexistent. Degenerative disc changes noted and those disc findings were in my opinion not changed, aggravated, or exacerbated as a result of the

incident in question. Dr. Salkind opined lumbar radiculopathy. There is no evidence of this objectively on any physician's physical exam.

2. Did the claimant sustain any permanent injury as a result of this accident? If not, please indicate this in your report.

There is no right knee abnormality on physical examination. There is no lumbar abnormality on physical examination either. The claimant reports that there is no activity that brings on any low back symptoms. Her objective examination to the lumbar spine is normal. Claimant, therefore, has not sustained any permanent injury as a result of the incident. In fact she has had full and complete recovery from the incident.

3. Is current treatment reasonable and necessary?

The claimant is not receiving any treatment at this point. She says she has not received any treatment for several months. The chiropractor records indicate that she had received chiropractic are primarily from July through October 2023. That treatment was reasonable and appropriate. The two emergency room visits in July 2023 were reasonable and appropriate. The MRI of the lumbar spine done in October 2023 was reasonable to have been ordered.

With regard to treatment by Dr. Burt, the evaluation by him on November 8, 2023 was reasonable and appropriate. Consideration for facet joint medial branch blocks was also reasonable and appropriate. Noted that pictures associated with the report of the medial branch blocks indicate that the needle was placed at the facet joints from L4-5. There is no indication that there was injections of either of the medial branch nerves that supply the L4-5 facets bilateral (there is two nerves that innervate the left L4-5 facet joint and two others that innervate the right side). With regard to the subsequent radiofrequency ablation, it is my opinion that was not reasonable and appropriate for the following reasons: There is no indication that medial branch blocks without any radiographic pictures was actually done (though should additional pictures become available that would confirm they were done, I would be happy to review them and consider them). Protocol for advanced consideration to ablation is that two sets of injections are done with each injection yielding at least 50% decrease in pain. Only one set of injections was done (assuming that the injections were done were actually at the medial branches) and that the documentation was that there was less than 50% improvement without a second set done. Therefore, for those reasons the radiofrequency ablation allegedly performed was not reasonable nor appropriate. In addition the documentation for the radiofrequency ablation indicates that lidocaine was done to the area and then radiofrequency ablation and then Depo-Medrol with lidocaine, so it is difficult to elicit from the records what actually was done.

4. Is further treatment needed? If so, what kind, for what length, and at what frequency?

The claimant has subjective complaints without objective correlation on exam. So, the claimant does not require any further treatment at all in regard to the date of loss in question. With regard

to the treatment recommendations made by Dr. Salkind and the projected costs of those recommendations outlined by Nurse Hartmann, I totally disagree with all of them. The main reason why is that claimant has fully recovered. The claimant does not require any further diagnostic testing or treatment. There is no indication for physician follow-up, physical therapy, epidural injections, medial branch blocks, radiofrequency ablation, or surgery. If you take those individually, the claimant has subjective complaints of lower back pain without any objective correlate on physical exam. Trunk range of motion does not reproduce any symptoms. Neurologic exam is normal. Therefore, there is no indication for any repeat MRIs. The claimant has had chiropractic care without effect. She shows full range of motion in all directions without reproduction of her pain in any direction. No instability of her back noted. Therefore, there is no indication for physical therapy. The prior lumbar medial branch block yielded insufficient amount of effect. Therefore, repeating medial branch blocks and radiofrequency ablation would be futile. The claimant has no surgical lesion upon examination and has no instability of her back or any neurologic abnormalities on examination today. Therefore, there is no indication for surgery. The claimant shows no evidence of radiculopathy or discogenic pain on physical exam. As her neurologic exam is normal, there is no reproduction of any symptoms on those motions that would reproduce disc pain and straight leg raise was negative. Therefore, there is no indication for epidural injections.

5. Please address if the future treatment is reasonable, necessary, and related to the accident.

The claimant does not require any further treatment.

The above opinions have been made with a reasonable degree of medical certainty. If you have any further questions or concerns I would be happy to address them.

Sincerely,

Scott K. Epstein, M.D.
Fellow, American Academy of Physical Medicine and Rehabilitation
Fellow, American Academy of Disability Evaluating Physicians
Diplomate, American Board of Pain Medicine

SKE/as

(1110-011)

ANDREW H. SHAER, M.D.
American Board of Radiology
Senior Member American Society of Neuroradiology

1528 Walnut Street
Suite 1804
Philadelphia, PA 19102
215-735-5007
215-735-5138 Fax

June 19, 2024

Kevin J. Doyle, Esquire
SEPTA – Legal Division
1234 Market Street, Fifth Floor
Philadelphia, PA 19107

**PATIENT:** [redacted]
**FILE NO:** **23-909-001**
**D/LOSS:** **July 23, 2023**
**D/BIRTH:** [redacted]

Dear Mr. Kevin J. Doyle:

I reviewed the lumbar spine MRI and accompanying report of [redacted]. Please note, this review does not imply a patient/physician relationship. This report is not for the purpose of patient treatment or diagnosis.

**MRI OF THE LUMBAR SPINE, 10/18/2023, Open MRI of Bala Cynwyd:**
There is normal vertebral body alignment and signal intensity. Disc degeneration is present at L5-S1. The spinal canal is developmentally adequate. There is mild levoscoliosis.

The conus is normal. The paraspinal soft tissues are unremarkable.

L1-2: Unremarkable.

L2-3: Unremarkable.

L3-4: Unremarkable.

L4-5: Unremarkable.

L5-S1: Mild annular bulge resulting in mild thecal sac impingement.

Mr. Kevin J. Doyle
**RE:** [redacted]
June 19, 2024
Page 2

**IMPRESSION:**

**The lumbar spine MRI of October 18, 2023 demonstrates a mild annular bulge at L5-S1. Bulging discs are the result of disc degeneration and are unrelated to any single acute traumatic event, including this accident. Lumbar Disc Nomenclature: Version 2.0, The Spine Journal 14 (2014) p. 2534. There is no evidence of disc herniation or traumatic osseous pathology resulting from this accident.**

**It is therefore my opinion, within a reasonable degree of medical certainty, that there is no imaging evidence of injury as a result of the accident of July 23, 2023.**

If I can be of further assistance, please do not hesitate to contact me.

Sincerely yours,

ANDREW H. SHAER, M.D.
Clinical Assistant Professor, Sidney Kimmel Medical College
Division of Neuroradiology
Thomas Jefferson University Hospital
Senior Member of American Society of Neuroradiology
Board Certified, American Board of Radiology

AHS/mp