# Exhibit "17"

# EXHIBIT G

PPMA

Pharo Pain Management Associates, P.C.
Gregory H. Pharo, D.O.
Office: 215-925-0986 • Fax: 215-220-2676

November 29, 2022

Joseph Thomas, Esq.
Law Office of Sue Ann Eckell
1515 Market Street, Suite #1910
Philadelphia, PA 19102

RE: [redacted]
Date of Evaluation: 11/22/2022
Date Of Injury: 06/16/2021
Claim #: 22-0030572
Prizm #: 30402

Dear Mr. Thomas:

Thank you for allowing me to perform an independent medical examination concerning Ms. [redacted] I had the opportunity to take a history, perform physical examination, and review Ms. [redacted] medical records as provided.

The process of independent medical examination was explained to Ms. [redacted] No doctor-patient relationship was established as a result of this encounter. She answered the COVID-19 questionnaire, had her temperature checked and all precautions were followed according to the CDC guidelines.

Ms. [redacted] is a 28-year-old female who reports that she was involved in a motor vehicle accident that occurred on 06/16/2021. She was the restrained driver of a motor vehicle when her car was struck on the driver's side of the vehicle. There was no airbag deployment. She denies any head injuries or loss of consciousness. She was seen several days later at Chestnut Hill Hospital. While she was at Chestnut Hill Hospital, she was seen and evaluated, and prescribed Lidoderm patches, Ibuprofen and received an intramuscular shot of Toradol.

She rates her pain as 10/10. I explained to her that the pain score rating is such that childbirth would be rated as 8/10 and that a rating of 10/10 requires hospitalization. Ms. [redacted] then reports it was that severe currently. She reports taking Tylenol.

She reported her pain is in the mid cervical region radiating to bilateral shoulders, trapezius, and total numbness on the left side of her entire body going from her face, cervical region, thoracic,

chest, flank, abdominal leg, all the way down to her feet. She reported numbness and tingling of all digits. Pain is described as sharp, stabbing, and pulsating with weakness and numbness of the entire leg both anterior, posterior, medial and lateral. The pain and numbness are increased when she is sleeping.

Ms. [redacted] reports that her pain is better with medication, rest, and sleep. Pain is increased with forward bending, looking down, crouching or neck movements. She has numbness and tingling of both her trunk as well as her dorsal cervical and lumbar spine.

She reports the median branch blocks and radiofrequency ablation were performed on the same day. She stated she did not move off the table. According to the note by Dr. Burt, she had a 40% relief lasting 20 minutes. Local anesthetic used was Lidocaine.

She had a cervical epidural steroid injection performed at Dr. Grossinger's office by Dr. Michelle Francavilla.

She had an EMG nerve conduction study, which she reported did provide some temporary improvement of her pain and symptoms.

**ACTIVITIES:**

She can drive approximately 15 minutes, getting back and forth to work. She reports she can drive longer than an hour or 2, but her arm hurts and her body becomes sore. She reports she exercises approximately three times a week for 30 minutes, doing mostly stretching as well as passive range of motion.

**PAST MEDICAL HISTORY:**

Remarkable for seasonal allergies.

**PAST SURGICAL HISTORY:**

Negative.

**CURRENT MEDICATIONS:**

Tylenol approximately twice per week, Ibuprofen that she takes twice per week.

Non-related medications are for seasonal allergy include Flonase as well as Zyrtec and Xyzal.

**SOCIAL HISTORY:**

She is left-handed, completed college, works as an operational management for Sodexo in the kitchen. She has to lift at times up to 50 pounds. She reports she did not miss any time from work. She told Dr. Yarus she was not working at the time of the accident.

**PRIOR INJURIES:**

She denies any prior motor vehicle accident, Worker's Comp slip or falls, or any other previous injuries.

**PHYSICAL EXAMINATION:**

Ms. [redacted] is 5 feet 5 inches, weighs 177 pounds, has a blood pressure of 100/64, and a heart rate of 64 beats/minute. At the time of the examination, she was awake, alert, well developed, well nourished, displays pain behavior with the grimaces and grunting. I am accompanied by Michele Cheeseman, my administrative assistant. Prior to the evaluation, she was told range of motion was to be passive that if indeed she would have any difficulties or any symptoms, she was to notify us immediately.

Cranial nerves II through XII are grossly intact.

Heart is regular rate and rhythm without evidence of S3, S4, or murmur. Carotids are normal in upstroke. Lungs are clear to auscultation.

Cervical range of motion: forward bending 70 degrees, extension 60 degrees, rotation right was 45 degrees, left at 70 degrees, side bend right was 30 degrees and to the left was 45 degrees.

Examination of the upper extremities: Multiple and rapid testing of grip strength, biceps, triceps, and forearm strength was 5/5. Jamar testing Position II: she produced give-way as well as lack of effort, right: 30/5, left: 0/0/5; Position IV: right 20 and left 0. She would not provide an effort. Deep tendon reflexes are equal and symmetrical of +2. Range of motion: digits normal with flexion and extension, opposition 1 through 5; Wrists: normal with dorsal and volar flexion, radial and ulnar deviation; Elbow: normal pronation, supination and flexion and extension; Shoulders: normal internal and external rotation. Internal rotation to approximately T7. External rotation was normal. The patient had normal abduction as well as flexion. There was no hair or temperature changes between the right and left upper extremities.

She stated having diffuse decreased sensation of the entire face, trunk, dorsum of the spine, lumbar spine, the entire right upper extremity, the entire left lower extremity.

Examination of the lower extremities: she had give-way weakness on the entire left lower extremity, all muscle groups. Repetitive and rapid testing showed no weakness on repeat examination. Straight leg raising was negative in the seated position, in the supine position at 10 degrees, she complained of pain in her anterior thigh. Reflexes are equal and symmetrical.

She was able to ambulate with a normal gait, able to toe and heel walk, forward bend and touch her ankle with her left hand, the right hand was clutching her gown. She was able to extend 20 degrees, complained of motion with both.

She had diffuse sensory changes noted in the posterior, dorsal and cervical and thoracic spine. There was no rigidity or pain to palpation, was diffuse in her lumbar spine.

I spent 20 minutes performing a history and spent eleven (11) minutes conducting the physical examination of Ms. [redacted]

**RECORDS REVIEWED:**

1. Police report Commonwealth of Pennsylvania. This was filled at the station. No police were present at the scene.

2. Emergency note from Chestnut Hill Hospital on 06/18/2021.
3. Second emergency room note on 06/22/2021. The patient had urinary tract infection, diarrhea as well as candidiasis infection of the vulva and vagina, unspecific abdominal pain. She was treated with antibiotics Fluconazole.
4. Open MRI dated 07/29/2021, which shows some desiccations shallow disc at C4-C5, C5-C6, at C2-C3, C3-C4, C6-C7, C7-T1. Nothing abnormal is seen. Mild upper thoracic disc degeneration at the peripheral view. There is no fracture, dislocation, or intraspinous, paraspinous or intrinsic or cervical cord abnormality. Shallow disc bulge with straightening of normal cervical lordosis at C4-C5, C5-C6.
5. MRI of the lumbar spine, 07/29/2021, shows negative examination.
6. Chiropractic evaluation, Dr. Daniel Piccillo.
   a. First evaluation was 06/21/2021, approximately five days after the motor vehicle accident by Dr. Daniel Piccillo.
   b. Follow up on 06/23/2021 is identical, on the 6/5/2021, 06/28/2021, 06/30/2021, 07/02/2021. All chiropractic evaluations appear to be the same except for the visual analog scale, which varies anywhere from 4/10 to 8/10.
   c. Last chiropractic note on 11/03/2021 again is unremarkable. It states that the patient had an EMG nerve conduction study performed on 02/23/2021 by Dr. Gene Levinstein, Dr. Bruce Grossinger performed the procedure, *as this notation on the chart is approximately four months prior to the motor vehicle accident that occurred on 06/16/2021 stating that she had cervical and lumbar radiculopathy affecting the left and right bilateral C6 and L5 nerve roots.*
7. Operative report by Dr. Clifton Burt performed on 09/29/2021 medial branch blocks bilateral L5 with 1 cc injection of 1% Lidocaine on the same date of occurrence, she had radiofrequency ablation performed on 09/29/2021.
8. Notes from Dr. Clifton Burt, 09/29/2021, on the same day of the diagnostic medial branch block as well as the radiofrequency ablation on stating that the MRI of the lumbar spine was unremarkable. She had occasional numbness and tingling down the legs to the feet. Physical examination: Motor strength was 5/5 and normal sensation bilaterally. Dr. Burt stated that the patient had 40% improvement for 20 minutes and decision was made to perform radiofrequency ablation.
9. Notes from Dr. Bruce Grossinger, 10/06/2021. She had an EMG with moderate right C8 and moderate left C6 radiculopathy. We will perform cervical epidural steroid injections. We have no studies stating the results of lumbar EMG.
10. Procedure, cervical epidural steroid injections 10/18/2021 by Dr. Michelle Francavilla. It states that the Dexamethasone was used 80 mg/cc. This appears to be a typographical error and previously the medication was billed is Methylprednisolone and not Dexamethasone. Dexamethasone is not available in an 80 mg/cc concentration.
11. Report dated 01/17/2021 by Dr. Lance Yarus. Dr. Yarus states that the patient received left median facet branch blocks under fluoroscopy, which were successful. This seems to be an incorrect statement as the relief was 40% and only lasted 20 minutes. Medicare guidelines state relief must be 80% for the duration of local anesthetic. Local anesthetic duration of relief for lidocaine would be 45 -90 minutes. In his report, the patient was unemployed. *During my examination on 11/22/2022, she told me that she was employed at the time of the accident, appears to be that there was some confusion.* Physical examination: negative straight leg raising, was only able to bend 30 degrees, extend to 0 degrees. She had no dermatomal deficits. It appears his interpretation of the MRI is different from the radiologist, Dr. Joel Swartz. He stated future care that was necessary including the MRI imaging of the cervical and lumbar spine, radiofrequency

ablation to both the cervical and lumbar spine anywhere from six to eight months to one year. I disagree.

12. Answers to plaintiff's questions.

**CONCLUSIONS:**

Ms. [redacted] was involved in a motor vehicle accident on 06/16/2021. Her injuries are consistent with the cervical and lumbar strain and sprain. These injuries have reached maximum medical improvement.

In my medical opinion, there was no reason for medial branch blocks. If indeed, medial branch blocks were considered and indicated, radiofrequency ablation was not necessary or indicated and inconsistent with the guidelines established by the American Society of Interventional Pain Physicians or Medicare guidelines.

Guidelines state for positive diagnostic block that the relief must be 80% for the duration of local anesthesia. Dr. Burt explains that the relief was 40% lasted only 20 minutes. Medicare guidelines state that the procedure, diagnostic block, should be repeated in a period of two weeks prior to proceeding with radiofrequency ablation. A second diagnostic block was not performed.

I do not have any reports of the treatment provided to her cervical spine, so I am unable to comment on whether these blocks were performed in the same area.

In response to her complaint of total unilateral left body sensory loss, there is no physiological or anatomical basis for this degree sensory loss of the head related to an MVA. Involvement of cranial nerve, sensory loss in the cervical, thoracic, and lumbar spine including left upper as well as lower extremity has no physiologic basis. This is impossible anatomically without having catastrophic damage to myotomes.

Physical examination was inconsistent with radiographic evaluations as she had give-way weakness, but normal strength with rapid and repetitive testing as well as distant positional treatments as well as her ability to both toe and heel walk.

Chiropractic treatment was appropriate and indicated for the affected areas.

Ms. [redacted] has not had any additional treatments for greater than a year.

In my medical opinion, Ms. [redacted] has reached maximum medical improvement. She has no limitations on physical examination.

Any reason for a life care plan is not necessary and indicated. It is inaccurate as she does not require any additional treatment.

All the above medical opinions are within a reasonable degree of medical certainty.

Sincerely,

Gregory H. Pharo, D.O.
Board Certified in Anesthesiology
Board Certified in Pain Medicine

GHP:cbs/MMD

**REFERENCES:**

A. Diagnostic Facet Joint Procedures (IA or MBB):
The primary indication of a diagnostic facet joint procedure is to diagnose whether the patient has facet syndrome. Intraarticular (IA) facet block(s) are considered reasonable and necessary as a diagnostic test only if medial branch blocks (MMB) cannot be performed due to specific documented anatomic restrictions or there is an indication to proceed with therapeutic intraarticular injections. These restrictions must be clearly documented in the medical record and made available upon request.
Diagnostic procedures should be performed with the intent that if successful, radiofrequency ablation (RFA) procedure would be considered the primary treatment goal at the diagnosed level(s).
A second diagnostic facet procedure is considered medically necessary to confirm validity of the initial diagnostic facet procedure when administered at the same level. The second diagnostic procedure may only be performed a minimum of 2 weeks after the initial diagnostic procedure. Clinical circumstances that necessitate an exception to the two-week duration may be considered on an individual basis and must be clearly documented in the medical record.
For the first diagnostic facet joint procedure:

a. For the first diagnostic facet joint procedure to be considered medically reasonable and necessary, the patient must meet the criteria outlined under indications for facet joint interventions.
b. A second confirmatory diagnostic facet joint procedure is considered medically reasonable and necessary in patients who meet ALL the following criteria.
    i. The patient meets the criteria for the first diagnostic procedure; AND
    ii. After the first diagnostic facet joint procedure, there must be a consistent positive response of at least 80% relief of primary (index) pain (with the duration of relief being consistent with the agent used)

Frequency limitation: For each covered spinal region no more than four (4) diagnostic joint sessions will be reimbursed per rolling 12 months, in recognition that the pain generator cannot always be identified with the initial and confirmatory diagnostic procedure.

The thermal radiofrequency destruction of cervical, thoracic, or lumbar paravertebral facet joint (medial branch) nerves are considered medically reasonable and necessary for patients who meet ALL the following criteria:

1.
    a. Initial thermal RFA:
        i. After the patient has had at least two (2) medically reasonable and necessary diagnostic MBBs, with each one providing a consistent minimum of 80% sustained relief of primary (index) pain (with the duration of relief being consistent with the agent used) AND
        ii. Repeat thermal facet joint RFA at the same anatomic site is considered medically reasonable and necessary provided the patient had a minimum of consistent 50% improvement in pain for at least six (6) months or at least 50% consistent improvement in the ability to perform previously painful movements and ADLs as compared to baseline measurement using the same scale.

https://asipp.org/new-nationwide-policy-on-facet-joint-interventions/
https://www.cms.gov/medicare-coverage-database/view/lcd.aspx?LCDId=38803