# Exhibit "28"

**WILSON ELSER MOSKOWITZ**
**EDELMAN & DICKER LLP**
By: Caroline S. Vahey, Esquire
Qwalyne Elise Lawson, Esquire
Identification Nos.: 204844 / 316018
Two Commerce Square
2001 Market Street, Suite 3100
Philadelphia, PA 19103
Telephone: (215) 627-6900
Facsimile: (215) 627-2665
Email: caroline.vahey@wilsonelser.com
qwalyne.lawson@wilsonelser.com

*Attorneys for Defendants,*
*Raiser-PA, LLC and Uber Technologies, Inc.*

| | |
|---|---|
| **JONATHAN JEFFERSON,**<br>*Plaintiff,*<br><br>**v.**<br><br>**NASSIROU OUMAROU, UBER TECHNOLOGIES, INC. and RASIER-PA, LLC,**<br>*Defendants.* | **COURT OF COMMON PLEAS**<br><br>**PHILADELPHIA COUNTY**<br><br>**FEBRUARY TERM, 2024**<br><br>**DOCKET NUMBER: 01839** |

**DEFENDANTS UBER TECHNOLOGIES, INC., AND RASIER-PA, LLC'S PRETRIAL MEMORANDUM**

Defendants, Uber Technologies, Inc. and Rasier-PA, LLC (hereinafter collectively "Uber Defendants"), by and through their attorneys, Wilson Elser Moskowitz Edelman & Dicker, LLP, hereby submit the following Pretrial Memo in advance of the scheduled February 3, 2025, Pretrial Conference:

## I. FACTS AND PROCEDURAL HISTORY

### A. Factual Allegations

On February 22, 2023, Plaintiff Jonathan Jefferson was a passenger in a motor vehicle traveling at or near the intersection of 33rd Street and Girard Avenue, in Philadelphia, Pennsylvania. At the same time and location, Defendant Nassirou Oumarou, who was logged



Uber_00119773

into the driver version of the Uber Application ("Uber App") was operating a motor vehicle just behind the vehicle Plaintiff was in. It is alleged that Mr. Oumarou rear-ended Plaintiff's vehicle.

**B. Uber Defendants**

Uber Technologies, Inc. is a technology company that uses proprietary technology to develop and maintain digital multi-sided marketplace platforms. On one side of the marketplace, businesses and individuals use Uber's platforms in order to connect with customers and obtain payment processing services. On the other side of the marketplace, users connect and obtain various services from businesses and individuals including drivers, restaurants, healthcare providers, rental car companies, and retailers. Some examples of platforms that Uber has developed include Rides (connecting people with various transportation options — ranging from micro mobility to car rentals to trips with independent drivers) and Eats (connecting people with merchants and delivery people for the delivery of not only meals, but groceries, household items and other goods).

With respect to the Rides platform, Riders download the rider version of the Uber App ("Rider App"), and drivers download the Driver App. Together the Apps allow users to access the platform that facilitates the connection of individuals in need of a ride (riders) with individuals willing to provide transportation services (drivers). Using the Rider App, riders can request transportation services from their smartphones. These requests are then offered to nearby independent transportation providers such as Oumarou, who are free to either accept or decline the request at their own discretion.

**C. Plaintiff's Complaint**

Plaintiff's Complaint alleges that Uber Defendants are responsible for the conduct of Oumarou on a theory of *respondeat superior* asserting that Oumarou was Uber's employee rather than an independent contractor.

Plaintiff further alleges that Uber Defendants were negligent in the hiring, retention, training and supervision of Oumarou again asserting that Oumarou was Uber's employee rather than an independent contractor.

Finally, Plaintiff alleges that Uber Defendants were negligent in entrusting the vehicle to Oumarou that he was operating at the time of the crash.

Plaintiff simply cannot support any of the allegations against Uber Defendants contained in the Complaint.

## II. CONCISE STATEMENT OF THE DEFENSE

### A. Nassirou Oumarou Was Not an Employee of Uber Defendants and the Claim for *Respondeat Superior* Must Fail

Plaintiff claims that Uber Defendants are vicariously liable for the actions of Nassirou Oumarou on a theory of *respondeat superior* because Oumarou was an employee of Uber Defendants at the time of the accident. This claim is totally inconsistent with the written agreement as well as Pennsylvania law.

The Platform Access Agreement (hereinafter "Agreement") between Uber Defendants and Oumarou clearly states that Oumarou was not an employee and Uber was "not hiring or engaging [Oumarou] to provide any service." Instead, the Agreement clearly enunciates that Oumarou was an independent contractor. When the terms of the contract are not in dispute, as is the case here, the contract controls the relationship between the parties.

Moreover, Oumarou was clearly an independent contractor pursuant to common law. Even if the contract were not clear as to the relationship, the application of common law principles would also result in the finding that Oumarou was an independent contractor. There are several factors the Court may consider in determining if the actual practice of the parties gives rise to an agency or employment relationship. Even if a Court were to consider these elements in this case rather than relying on the undisputed terms of the contract supported by the testimony of the contracting parties, the Plaintiff cannot possibly meet the burden of establishing an agency or employment relationship between Uber and Oumarou. See, e.g., Maslo Manufacturing Corp. v. Proctor Electric Co., 376 Pa. 553, 103 A.2d 743 (1954), *cert. den*. 348 U.S. 822, 75 S.Ct. 36, 99 L.Ed. 648 (The party asserting the existence of a master-servant relationship carries the burden of proof).

"As a general rule, while an employer may be held responsible for negligent acts of its servants/employees, it will not be held liable for harm caused by acts of independent contractors." Lutz v. Cybularz, 607 A.2d 1089, 1091 (Pa. Super. 1992). Therefore, because Oumarou was clearly an independent contractor, the claims of *respondeat superior* must fail as a matter of law.

### B. Plaintiff's Negligent Hiring, Retention, Training, and Supervision Claims Must Fail as a Matter of Law

In addition to alleging that Uber Defendants are responsible for the negligence of Oumarou on the theory of *respondeat superior*, Plaintiff also alleges that Uber Defendants are independently negligent in their own actions. Plaintiff has alleged that Uber defendants were negligent in the hiring, retention, training, and supervision of Oumarou. ***Initially, this claim must fail because it is clearly established that Oumarou was an independent contractor, not an employee of Uber Defendants***. See, e.g., Brezenski v. World Truck Transfer, Inc., 755 A.2d

36, 39-40 (Pa. Super. 2000). However, if the claim hypothetically was viable, Plaintiff has failed to state a claim.

Pennsylvania law imposes on an employer a duty to exercise reasonable care in selecting, supervising, and controlling employees. Brezenski, 755 A.2d at 42. Brezenski cited to Restatement (Second) of Agency § 213 (1958) as the controlling law in Pennsylvania which states in part:

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
>
> …
>
> (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others; or
>
> (c) in the supervision of the activity; or
>
> (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.
>
> Id., *citing*, Restatement (Second) of Agency § 213 (1958).

"An employer **cannot be held liable unless the employer had knowledge of its employee's previous acts that are of the same nature or type that gave rise to the eventual injury**." Doe v. Eckerd Corp., 39 Pa. D. & C.5th 169, 184 (C.P. 2014) (emphasis added). The tenets of a claim for negligent hiring, supervision and retention are a showing of ***this particular employee's*** prior bad acts. "'Under any of these theories, the plaintiff must show that ***the employee's*** prior bad acts would have put a reasonable employer on notice of ***the employee's*** propensity to injure others.' Dempsey v. Walso Bureau, Inc., 431 Pa. 562, 246 A.2d 418, 422 (1968) (stating the inquiry to be, "what was [the employee's] conduct prior to [the incident] and was it of such nature as to indicate a propensity …?")".

There is no evidence that there was anything in Defendant, Nassirou Oumarou's background such that Uber should have denied him access to its platform. In fact, Nassirou Oumarou in his deposition testified that he had not been involved in any motor vehicle accidents that he recalls. Both background check reports for Oumarou prior to this incident were clear. There were no complaints or poor ratings from prior riders. As there were no prior motor vehicle accidents or other incidents of Nassirou Oumarou, the Uber Defendants had no information that Oumarou could potentially not have operated a motor vehicle in a safe manner.

### C. Plaintiff's Claims of Negligent Entrustment Must Fail as a Matter of Law

Plaintiff finally claims that Uber Defendants negligently entrusted the vehicle to Oumarou that he was operating at the time of the accident. To prove a valid claim for negligent entrustment, Plaintiff must show that Uber Defendants: (1) permitted a third person; (2) ***to use a thing under the control of the defendant***; and (3) that the defendant knew or should have known that the third person intended to or was likely to use the thing in such a way that would harm another. Ferry v. Fisher, 709 A.2d 399, 403 (Pa. Super. 1998).

Nassirou Oumarou admitted in his interrogatory answers that it was him—*and not Uber Defendants*—who owned and operated the vehicle. This fact is *undisputed*, and ***on its own is fatal to Plaintiff's negligent entrustment claim***. Oumarou testified in his deposition that he could drive at any time he chose, he is free to accept or reject ride offers, Uber did not provide for the care nor maintenance of his personal vehicle, and he did not report to any individual employed with the Uber Defendants.

Plaintiff's claims of negligent entrustment must also therefore fail as a matter of law.

## III. WITNESS LIST

1. Plaintiff, Jonathan Jefferson

c/o Andrew Baron, Esquire
18 Campus Blvd., Suite 100
Newtown Square, PA 19073

2. Defendant, Nassirou Oumarou
c/o Martin Beck, Esquire
2001 Market Street, Suite 3810
Philadelphia, PA 19103

3. Okwuchukwu O. Egbukwu
8433 Lyons Pl.
Philadelphia, PA 19153

4. Uber Corporate Representative
c/o Caroline S. Vahey
Wilson Elser Moskowitz Edelman & Dicker LLP
Two Commerce Square
2001 Market Street, Suite 3100
Philadelphia, PA 19103

5. Michael Richard Murray, M.D.
c/o Martin Beck, Esquire
2001 Market Street, Suite 3810
Philadelphia, PA 19103

6. Jennifer Villa Frabizzio, M.D.
c/o Martin Beck, Esquire
2001 Market Street, Suite 3810
Philadelphia, PA 19103

7. Kimberly D. Kushner, MSN, RN, CRNP, CNLCP, CPC, CC
c/o Martin Beck, Esquire
2001 Market Street, Suite 3810
Philadelphia, PA 19103

8. Dr. Clifton Burt
Premier Pain & Rehab Center
10184 Verree Road
Philadelphia, PA 19116

9. Uber Defendants reserve the right to call any custodian of records as necessary to establish the authenticity of the records.

10. Uber Defendants reserve the right to call any person identified in the Pre-Trial Memorandum of any other party.

11. Uber Defendants reserves the right to update this witness list upon appropriate notice to the Court and other parties.

## IV. EXHIBIT LIST

### A. Pleadings

1. Complaint
2. Defendant, Nassirou Oumarou's Answer to Plaintiff's Complaint with New Matter
3. Plaintiff's Reply to New Matter of Defendant, Nassirou Oumarou
4. Defendants, Uber and Rasier-PA's Answer to Plaintiff's Complaint with New Matter
5. Preliminary Objections to Defendants, Uber and Rasier-PA's Answer to Plaintiff's Complaint
6. Defendants, Uber and Rasier-PA's Amended Answer to Plaintiff's Complaint with New Matter
7. Plaintiff's Reply to New Matter of Defendants, Uber and Rasier-PA

### B. Discovery Responses on behalf of Plaintiff

8. Plaintiff's Answers to Defendant's Interrogatories and Requests for Production of Documents
9. Commonwealth of Pennsylvania Department of Human Services Statement of Claim
10. Commonwealth of Pennsylvania Police Crash Report
11. Expert Report of Lance O. Yarus, D.O.
12. CV of Lance O. Yarus, D.O.
13. CV of Maryanne S. Cline, BS, RN, CRRN, CCM, CLCP, CNLCP
14. Expert Report of Maryanne S. Cline, BS, RN, CRRN, CCM, CLCP, CNLCP
15. Records from Open MRI of Bala Cynwyd
16. Records from Premier Pain & Rehab Center
17. Records from Philadelphia Spine Associates
18. Records from Temple University Hospital
19. Records from Regen Doctors
20. Records from Philadelphia FIGHT Community Health Center
21. PIP Payment Ledger

### C. Discovery Responses on Behalf of Defendants, Uber and Rasier-PA

22. Defendants, Uber and Rasier-PA's Responses to Plaintiff's Interrogatories
23. Defendants, Uber and Rasier-PA's Responses to Plaintiff's Requests for Admission
24. Defendants, Uber and Rasier-PA's Responses to Plaintiff's Requests for Production of Documents
25. Defendants, Uber and Rasier-PA's Responses to Plaintiff's Supplemental Requests for Production of Documents
26. Defendant, Nassirou Oumarou's Driver's License
27. Defendant, Nassirou Oumarou's Vehicle Registration
28. Communications with Defendant, Nassirou Oumarou

29. Defendant, Nassirou Oumarou's Crash Report
30. Platform Access Agreement
31. Farmers Insurance Policy Declarations
32. Indemnity Agreement
33. Photos of vehicles
34. Defendant, Nassirou Oumarou's Ratings and Feedback
35. Background Check Report of Defendant, Nassirou Oumarou, 3/29/2016
36. Background Check Report of Defendant, Nassirou Oumarou, 4/28/2022
37. GPS + Speed Data

**D. Discovery Responses on Behalf of Defendant Nassirou Oumarou**

38. Defendant, Nassirou Oumarou's Answers to Plaintiff's Interrogatories
39. Defendant, Nassirou Oumarou's Answers to Plaintiff's Requests for Admission
40. Defendant, Nassirou Oumarou's Answers to Plaintiff's Requests for Production of Documents
41. Photos of vehicles
42. Google Maps Image of Scene of Incident
43. Market Valuation Report of Egbukwu Okwuchukwu's vehicle
44. Estimate of Record of Egbukwu Okwuchukwu's vehicle
45. CV of Michael R. Murray, M.D.
46. Report of Michael R. Murray, M.D.
47. CV of Jennifer Villa Frabizzio, M.D.
48. Report of Jennifer Villa Frabizzio, M.D.
49. CV of Kimberly D. Kushner, MSN, RN, CRNP, CNLCP, CPC, CCM
50. Report of Kimberly Kushner, MSN, RN, CRNP, CNLCP, CPC, CCM

**E. Deposition Transcripts**

51. Jonathan Jefferson
52. Nassirou Oumarou
53. Benjamin Carroll, Corporate Designee of Defendants, Uber and Rasier-PA

**F. Miscellaneous**

54. Any and all photographs produced by any party at any time.
55. Any and all documents considered by any expert; any and all reports of any expert; correspondence from or to any expert; any other materials contained in any expert file.
56. Any and all standards cited by any experts identified by any of the parties.
57. Any and all photographs exchanged by the parties during the course of pre-trial discovery.
58. Defendant reserves the right to use as an exhibit any document identified in the Pre-Trial Memorandum of any other party.
59. Defendant reserves the right to update this exhibit list upon appropriate notice to the Court and other parties.

## V. DAMAGES

As of the day of the accident Plaintiff's medical records documented a diagnosis of back pain with radiation made on February 24, 2022. Cervical and lumbar MRIs performed at Bala Open MRI in June 2023 demonstrate that he had pre-existing degenerative spinal discs. Radiologist, Jennifer Villa Frabizzio, M.D., reports that the June 2023 MRIs show mild disc degeneration and minimal central disc bulging at C5/C6 but no stenosis and mild disc bulging and degenerative changes of the facets at L5/S1 with mild bilateral foraminal stenosis, degenerative in nature. There is no herniation or findings to suggest a recent injury to the cervical or lumbar spine according to her. Board certified orthopedic surgeon Michael Richard Murray, M.D., who was retained to perform an IME, reviewed Jefferson's medical records including the MRI images.[1] He agrees with doctor Frabizzio that there is no imaging evidence of disc herniation. In fact, even the radiologist who performed the MRI at Bala Open MRI did not report herniations.

In additional to cervical and lumbar spine degeneration and back pain, Jefferson had a complicated past medical history. Pre-existing conditions included asymptomatic HIV Infection, type II diabetes, anemia, opioid dependence on agonist therapy, vitamin D Deficiency, bipolar disorder, anxiety, pulmonary embolism, and stroke.

The day after the accident Plaintiff went to Temple University Hospital Emergency Room complaining primarily of low back, and neck pain. He had no paraspinal tenderness and was neurologically intact L3-S1. There was no emergent imaging needed. It was noted that Plaintiff's gradual onset of worsening pain was consistent with sprain.

---

[1] Defendant Oumarou noticed an IME of Plaintiff with Dr. Murray for October 25, 2024. However, Plaintiff was incarcerated. Motions for Extraordinary Relief to extend the case management deadlines were denied. The Judge ordered that the parties work together to complete discovery and that trial readiness would be addressed at the pre-trial conference in February 2025. Uber Defendants are informed and believe that Plaintiff remains in custody.

Plaintiff's counsel referred plaintiff to Philadelphia Spine Associates for treatment. The diagnosis was sprain of ligaments of cervical, thoracic and lumbar spines. Plaintiff testified that the treatment there consisted of massages and that they were ineffective.

Plaintiff also received two epidural injections. Plaintiff has not treated in over a year.

## VI. IDENTITY OF DEFENDANT'S INSURER AND LIABILITY LIMITS

As required by Pennsylvania regulations, Uber Defendants and Defendant Nassirou Oumarou are both insured on a single limit $1 million policy through Farmers for the subject accident.

## VII. DEMAND AND OFFER

Plaintiff's demand is $1,865,000. Defendants offered $15,000. As identified above, Uber Defendants and Defendant Oumarou are covered under a single policy, therefore any settlement offers made will be global.

## VIII. ESTIMATED TRIAL TIME

It is estimated that trial will take approximately 2-4 days.

Uber Defendants reserve the right to amend and/or supplement this Pretrial Memorandum up to and including the time of trial.

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP**

By: */s/ Qwalyne Lawson*
Caroline S. Vahey, Esquire
Qwalyne E. Lawson, Esquire
*Attorneys for Defendants, Rasier-PA, LLC and Uber Technologies, Inc.*

Dated: {DATE}