# Exhibit "4"

**Anthony J. Baratta*†**
**Andrew P. Baratta**
**Kim Palavoy Kutler***
---
**Andrew E. DiPiero, Jr.*†**
**(Of Counsel)**

*Also Member of NJ Bar*
*† Board Certified Civil Trial Advocate by the National Board of Trial Advocacy*

Baratta Law
TRIAL LAWYERS

3500 Reading Way
Huntingdon Valley, PA 19006
Phone: (215) 914-8132
Fax: (215) 914-2118

**www.barattalawfirm.com**

June 26, 2026

**VIA EMAIL**
Michael Wadden, Esq.
Perkins Coie, LLP
700 13th St. NW, Suite 800
Washington, D.C. 20005

Dear Mike:

I write on behalf of Defendants Philadelphia Spine Associates, LLC ("PSA"), Daniel Piccillo, and Ethel Harvey (collectively, the "PSA Defendants") in advance of our meet and confer scheduled for July 2 to identify in detail the deficiencies in Plaintiff Uber Technologies, Inc.'s ("Uber") Responses and Objections to the PSA Defendants' First Set of Requests for Admission ("RFAs") and First Set of Requests for Production ("RFPs").

Generally, Uber's responses are legally inadequate, evasive, and non-compliant with the Federal Rules of Civil Procedure.[1] Its objections are boilerplate, unsupported, and contradict the factual and legal landscape established by Judge Kearney's Memorandum Opinion denying defendants' Motion to Dismiss.

Specifically, Uber's responses to both the RFAs and RFPs are characterized by the same four deficient practices, applied reflexively and without meaningful engagement with the substance of the requests:

1. A boilerplate "cannot admit or deny — lacks sufficient information" formula applied to dozens of requests concerning Uber's own commissioned reports, retained experts, and damages claims, without any statement that Uber conducted a reasonable inquiry or explanation for exactly why Uber "lacks sufficient information";

2. Wholesale refusals to produce entire categories of documents based on conclusory, unsubstantiated objections of "relevance," "overbreadth," and "disproportionality," without any privilege log and without any particularized explanation;

3. Blanket privilege assertions — attorney-client and work product — across sweeping categories of documents, with no privilege log, no document-by-document identification, and no factual basis permitting the PSA Defendants to assess the claims; and

[1] These same general deficiencies appear in the responses of FedEx as well. Also, by identifying certain matters for discussion in this letter, PSA does not waive or in any way limit their right to challenge additional deficiencies at a later date.

4. A recurring, self-serving assertion that Uber "does not yet know the full scope of the scheme" — used selectively to avoid admitting facts about its own expert reports, its own damages claims, and the contents of its own files, while simultaneously purporting to maintain a detailed racketeering case against the PSA Defendants allegedly based on the very same documents.

With respect specifically to Uber's Responses to RFAs, Federal Rule of Civil Procedure 36(a)(4) requires that, if a matter is not admitted, "the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Critically, "[t]he answering party may assert lack of knowledge or information as a reason for failing to admit or deny **<u>only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny</u>**." Fed. R. Civ. P. 36(a)(4).

This requirement is not merely procedural. The reasonable inquiry obligation requires investigation of officers, administrators, agents, employees, and others **within the responding party's control** who "conceivably, but in realistic terms, may have information" relevant to the request. A party may not merely rely on his lack of personal knowledge when responding to requests to admit.

The PSA Defendants served dozens of RFAs concerning the IME and medical record review reports commissioned to evaluate the medical treatment provided in the underlying claims — including reports by Dr. Douglas Sutton (Claimant A / Dajuan Speaks), Dr. Joseph Bernstein (Claimant B / Yasmeen Bailey), Dr. Scott Epstein (Claimant D / Bahijah Johnson), and Dr. Michael Murray (Claimant E / Jonathan Jefferson). These reports are, by Uber's own pleading, central to its case. Yet Uber provides the same boilerplate response that *"Uber cannot admit or deny this request because it lacks sufficient information to do so. Accordingly, the Request is denied."*

This response is facially defective for multiple independent reasons:

- **Uber commissioned these reports and/or relied on them for its allegations in this lawsuit.** The reports obviously exist in Uber's (or its insurers'/counsel's) files. Uber cannot credibly claim it "lacks sufficient information" to confirm whether these experts reviewed PSA's records, what date an examination occurred, what the expert's opinion was, or whether the report was in Uber's possession before it filed this lawsuit.

- **Uber nowhere states that it has made any reasonable inquiry.** The formulaic response omits entirely the predicate required by Rule 36(a)(4): "the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."

- **The scope of Uber's claimed ignorance is implausible and contradicted by its own pleadings.** Uber specifically alleged in its Amended Complaint the names of claimants, the identities of IME physicians retained, the dates of examinations, the

general conclusions of those examinations, and the resulting settlement history. For Uber to now claim it "lacks sufficient information" to confirm basic facts about its own litigation history — *e.g.*, whether Dr. Sutton performed an IME on September 25, 2025 (RFA 5), whether Dr. Sutton reviewed PSA records (RFA 9), or whether Dr. Bernstein reviewed PSA records from November 23, 2022 through July 20, 2023 (RFA 31) — is wholly implausible and inconsistent with Rule 26(g)'s certification requirements.

- **Uber's responses are internally contradictory.** Uber admitted that Dr. Epstein's IME report concerning Claimant D was in its possession before filing this lawsuit (RFA 46: Admit), but simultaneously claims it "cannot admit or deny" whether that same report reflects opinions about PSA's treatment being reasonable (RFA 49), whether PSA's records indicated Claimant D had suffered a lumbar sprain (RFA 47), and whether the October 2023 MRI was reasonable to order (RFA 50). These answers must be known to anyone who reviewed the report — and Uber admits it had the report. This internal contradiction reveals Uber's non-responses as strategic, not genuine.

- **The "Legal Conclusion" Objection (RFAs 6, 7, 28, 41, 55 and Similar)**. For RFAs asking Uber to admit that the IME physicians it retained are medical doctors whom Uber acknowledges as experts for the purpose of opining on the reasonableness and necessity of treatment, Uber objects that the requests "call for a legal conclusion." This objection is meritless. Rule 36(a)(1)(A) **expressly authorizes** requests for admission concerning "the application of law to fact." A request to admit that a physician retained and compensated for the specific purpose of evaluating the reasonableness of medical treatment is an "expert for that purpose" is a request to acknowledge an operational fact about Uber's own litigation conduct, not to offer a pure legal conclusion. Even if any legal element is implicated, Uber is obligated under Rule 36(a)(4) to qualify its response — to admit the factual component and explain the legal component — rather than assert a blanket objection that functions as a non-response.

- **The "Scope of the Scheme" General Objection (General Objection No. 9)**. Uber embedded in its General Objections the assertion that it "does not yet know the full scope of the scheme" and "reserves the right to supplement any response." This objection is then silently incorporated into every specific response. But Uber's uncertainty about the "full scope of the scheme" has nothing to do with its ability to confirm the contents of reports issued in the very litigations it claims to have been defrauded in, the names of those experts, the dates of examinations, and whether it claims their costs as damages. This objection also inverts the discovery process. Uber is the plaintiff. It filed this racketeering case. It cannot use the alleged complexity of its own claims to avoid answering targeted, specific factual questions about facts it has already pleaded with particularity.

- **Flat Denials Inconsistent with Uber's Own Allegations**. RFA No. 13 asked Uber to admit that "PSA's records reflect myofascial treatment to Claimant A for

sprain/strain injuries of the cervical, thoracic, and lumbar spine." Uber denied this categorically. RFA Nos. 34 and 35 asked Uber to admit that Claimant B suffered post-traumatic cervical and lumbar sprain and strain as a result of the auto accident. Uber denied both. These denials are inconsistent with Uber's Amended Complaint, which alleges that Drs. Harvey and Piccillo generated treatment records for sprain/strain diagnoses and describes their entire course of treatment as the foundation of the fraudulent scheme. If Uber's position is that PSA's records do not reflect myofascial treatment for sprain/strain, it must explain how it can allege that PSA generated fraudulent sprain/strain treatment records.

Uber's RFP responses are equally deficient. Under Fed. R. Civ. P. 34(b)(2)(C), when a party objects to a request, the objection "must state with specificity the grounds for objecting to the request, including the reasons." The Third Circuit and Judge Kearney have made clear that boilerplate, unsubstantiated objections — terms like "overly broad," "unduly burdensome," and "not proportionate" without particularized factual support — are per se inadequate. An objecting party bears the burden of demonstrating, with specificity, that the discovery is disproportionate. Moreover, where a party claims privilege, Rule 26(b)(5)(A) requires a description of withheld materials sufficient to enable the requesting party to assess whether the claim is enforceable by the Third Circuit's privilege law.

Despite these clear obligations, Uber has completely refused to produce any documents in response to numerous RFPs, asserting only that they are "overly broad, unduly burdensome, and not proportionate" and "not relevant to any claim or defense." For example:

- **Insurance and Coverage Documents (RFPs 3, 5–6, 14)**. Uber claims the collateral source rule renders insurance information irrelevant. This is backwards. In a RICO case, Uber bears the burden of proving that *it* — rather than its insurer — suffered the claimed injury to business or property. The identity of who actually paid defense fees and settlements (Uber directly or Farmers Insurance on its behalf) goes directly to Uber's RICO standing. Judge Kearney specifically identified as a discovery question "whether the lawyers' and doctors' conduct caused Uber and FedEx to pay legal fees and settlements." The structure of Uber's relationship with Farmers — which the pleadings establish handled and funded defense of the underlying claims — is directly relevant to whether Uber has standing to claim those defense costs as its own losses.

  Additionally, RFP No. 3 tracks nearly verbatim the language of Fed. R. Civ. P. 26(a)(1)(A)(iv), which requires automatic disclosure of insurance policies that could indemnify a judgment. The existence of such policies is presumptively discoverable without the need for any request at all. Uber's categorical refusal to produce these documents has no legitimate basis.

- **Claims-Handling Guidelines and SIU Documents (RFPs 7–11, 19)**. Uber's blanket relevance refusal for claims-handling and SIU documents is untenable.

---

Uber alleges the PSA Defendants participated in a scheme that caused Uber to pay inflated settlements. A central defense of the PSA Defendants is that Uber's own claims-handling processes — including its SIU operations, authority levels for settlement, and communications with Farmers — were the proximate cause of any settlement payments, not PSA's treatment records. Uber's internal guidelines for evaluating and settling claims are directly relevant to: (a) whether settlements reflected independent business judgment rather than reasonable reliance on allegedly fraudulent records; (b) whether the SIU had identified concerns about the Simon & Simon litigation before or during settlement of the claims now at issue; and (c) whether Uber's damages claims are overstated or unsupported by its own internal records.

- **Operating Expenses, Service Costs, and Earnings (RFPs 26–27)**. Uber's Amended Complaint alleges the scheme "increases its operating costs and affects pricing, service costs, and earnings." Having made this allegation to survive a motion to dismiss, Uber cannot now claim that documents necessary to quantify those alleged harms are "not relevant to any claim or defense." If Uber cannot or will not produce documents supporting these allegations, it should confirm that it is withdrawing these elements of its damages claim.

- **Privilege Assertions Without Any Privilege Log (RFPs 1, 2, 12, 14, 20–22, 33)**. For all RFPs where Uber asserts privilege objections, Uber has produced **no privilege log whatsoever.** This is a categorical violation of Rule 26(b)(5)(A). The PSA Defendants cannot assess any privilege claim without at minimum: (a) a document-by-document (or category-by-category) description of withheld materials; (b) the date of each document or category; (c) the author and recipient; (d) the claimed privilege or protection; and (e) a sufficient description of subject matter. This concern is most acute as to RFP No. 12, the comprehensive litigation file request. Uber asserts privilege for expert reports, settlement documents, medical record reviews, and demand package materials — all of which are central to this case — yet not a single document has been identified in any log. Moreover, many of the documents Uber seeks to shield are the very records Uber claims to have relied upon in evaluating and settling the underlying claims and placed at the center of its Amended Complaint. Attorney-client privilege simply does not apply in this circumstance and any work product protection over these reports is overcome by the PSA Defendants' substantial need under Fed. R. Civ. P. 26(b)(3)(A)(ii), as the records are not available through any other means.

- **The "Duplicative" Objections (RFPs 13, 15–32)**. Uber has objected to many RFPs as "duplicative of and subsumed by Request No. 12," incorporating by reference its objections to RFP No. 12. This creates a circular problem: RFP No. 12's privilege objections have generated no privilege log and no indication of what is being withheld. These downstream "duplicative" objections therefore provide zero information about what documents are being withheld and why. The PSA Defendants are entitled to know, for each withheld document: (1) whether it is withheld under privilege; (2) whether it is subject to production but not yet

---

produced; or (3) whether it does not exist. Redirecting multiple RFPs to a master "duplicative" non-answer deprives the PSA Defendants of this basic information.

- **The "Ongoing Investigation" Bootstrap Is Legally Improper**. Both the RFA and RFP responses repeatedly invoke General Objection No. 9 — that Uber "does not yet know the full scope of the scheme" — as a basis for declining to provide complete or accurate responses. This is circular and improper. Uber filed this lawsuit. Uber survived a motion to dismiss on the strength of highly particularized factual allegations, including: the names of every claimant, the identity of every treating physician, the approximate dates of treatment, the specific medical procedures performed, the mechanism by which records were transmitted, and the approximate amounts by which Uber claims it overpaid in settlements. Uber cannot invoke the complexity or ongoing nature of its own investigation to avoid answering basic questions about facts it has already pleaded. This tactic is particularly egregious as applied to the defense IME reports. Uber alleged, with precision, that the claimants were examined by defense experts and that those experts' reports were among the materials Uber relied on in evaluating claims. Having placed those reports at the center of its case — and claimed their cost as damages — Uber cannot credibly assert it "lacks sufficient information" to confirm their contents, their dates, or whether those experts were retained for the purpose Uber itself assigned them.

* * *

In denying the motion to dismiss, the Court expressed the view that the PSA Defendants may ultimately be correct that they did not cause the damages Uber alleges but concluded that discovery was necessary to resolve these questions. The discovery Judge Kearney specifically envisioned with respect to the underlying litigations is "what Uber knew, why it settled, who paid, and what effect the settlement terms have on causation." It is simply impossible to square any of Uber's boilerplate objections, or its claims of privilege/work product, with this directive.

I look forward to discussing all the above issues on July 2.

Very Truly Yours,

*Andrew P. Baratta*

Andrew P. Baratta