# Exhibit "5"

ASHURST PERKINS COIE

Ashurst Perkins Coie US LLP
1155 Avenue of the Americas
22nd Floor
New York, NY 10036-2711

T. +1.212.262.6900
F. +1.212.977.1649
ashurstperkinscoie.com

July 17, 2026

William Wilder
will.wilder@ashurstperkins.com
D. +1.332.238.2747
F. +1.212.977.1649

**VIA EMAIL**
Andrew P. Baratta
3500 Reading Way
Huntingdon Valley, PA 19006

**Re: Plaintiffs' Responses and Objections to the PSA Defendants' Discovery Requests**

Dear Andrew:

We write on behalf of Plaintiffs Uber Technologies, Inc. ("Uber") and Federal Express Corporation ("FedEx") in response to your June 26, 2026 letter concerning our discovery responses and our subsequent meet-and-confer on July 2, 2026. As we discussed at our meet-and-confer, Uber and FedEx continue to collect and review documents in response to your requests and anticipate producing a substantial volume of responsive documents. That being said, we disagree with the assertions in your letter that our responses are legally inadequate in any way. Your voluminous requests sought a substantial amount of information that is either protected by the attorney-client privilege or attorney work-product doctrine, irrelevant to any claim or defense in this action, or not in Uber and FedEx's possession, custody, or control.

## I. PSA's Requests for Admission

The PSA Defendants served 190 requests for admission at the opening of discovery. Almost all of these requests for admission concerned documents that were clearly already in your clients' possession, custody, or control. As we stated in our meet-and-confer, the majority of IME reports identified in these requests for admission were commissioned by counsel for the independent drivers in the discoverable pattern cases, not by Uber. Uber did not order these IME reports, and these drivers are not our clients. We share your belief that these IME reports have obvious relevance to this dispute. But at this point in time, this early into the discovery process, we cannot make admissions or denials about the intent of counsel for the independent drivers, who are not our clients.

## II. PSA's Requests for Production

As discussed in our meet-and-confer, Uber and FedEx are in the process of collecting and reviewing documents and intend to make rolling productions in response to the PSA Defendants' requests for production. Uber and FedEx intend to include, among other documents:

- All non-privileged materials from the claims files for each discoverable pattern case;

Ashurst Perkins Coie US LLP is a limited liability partnership established under the laws of Washington State and is part of the Ashurst Perkins Coie Group. Ashurst Perkins Coie is a global group of separate legal entities, some providing legal services and some non-legal services. Different legal entities in the group may operate in the same jurisdictions.

- All non-privileged and relevant SIU documents for each discoverable pattern case, to the extent such documents exist;

- All non-privileged and relevant claims handling guidelines; and

- Documents sufficient to show Uber and FedEx's damages incurred as a result of the scheme.

The claims files Uber intends to produce will include non-privileged communications with Farmers Insurance about the discoverable pattern cases.

Uber and FedEx believe these forthcoming productions will represent substantial compliance with PSA Defendants' requests for production to the extent those requests seek relevant, non-privileged information.

As discussed in our meet-and-confer, certain information sought in the PSA Defendants' requests for production is likely to be outside of Uber and FedEx's possession, custody, or control. Specifically, certain documents related to discoverable pattern cases involving Uber are likely to be in the possession, custody, or control of Farmers Insurance. Certain documents related to discoverable pattern cases involving FedEx are likely to be in the possession, custody, or control of Gallagher Bassett. Uber and FedEx will draft and circulate a joint subpoena to these third parties now that Judge Kearney's July 7, 2026 Order has established the universe of the 50 discoverable pattern cases.

We address a number of your specific deficiency allegations below.

**A. Scope of the Scheme**

First, we reject your contention that Uber and FedEx's General Objection #9 is improper. Our position on this is clear: all cases where Simon & Simon directed clients to Clifton Burt for unnecessary medical treatment are potentially part of this scheme. Uber and FedEx cannot ascertain the full scope of the scheme until the Simon Defendants or Premier Pain Defendants provide information sufficient to identify all such cases. We understand that Judge Kearney has at this time limited discovery to the 50 discoverable pattern cases. However, we maintain the position that all cases involving purported treatment by Clifton Burt are potentially suspect and reserve the right to seek damages for any and all such cases.

**B. Insurance and Coverage Documents**

Second, you raise a number of objections regarding your requests for insurance- and claims handling-related documents. As discussed in our meet-and-confer, we intend to search for and produce non-privileged documents responsive to these requests.

**C. Operating Expenses**

Third, the PSA Defendants' requests related to Uber's operating expenses and earnings are improper. This information has no relevance to any claim or defense in this case. Uber and FedEx have been clear that at this time, the damages they intend to seek are the litigation costs and settlement expenses incurred as a result of the scheme. Your requests for broad discovery into earnings and operating expenses is a fishing expedition that has no relevance to this case. To the extent you feel this information is critical to your clients' defenses in some way, much of it is already available in Uber and FedEx's public SEC filings.

**D. Privilege Issues**

Fourth, Uber and FedEx intend to produce a privilege log with their forthcoming productions. We understand that the parties in this case are likely to take different views of what can and cannot be withheld on the basis of the attorney-client privilege and the attorney work-product doctrine, and that judicial resolution by Judge Kearney may eventually be necessary. Uber and FedEx believe the most efficient way to tee up these questions for motion practice and resolution will be after privilege logs have been produced.

* * *

Counsel for Uber and FedEx remain available to further discuss any of these objections at any time.

Sincerely,

William Wilder