# Exhibit "10"

# EXHIBIT D

**MICHAEL R. MURRAY, M.D.**
**BOARD CERTIFIED ORTHOPAEDIC SURGEON**
**RECORD REVIEW**

November 22, 2024

Martin Beck, Esquire
McCormick & Priore, P.C.
2001 Market Street, Suite 3810
Philadelphia, Pennsylvania 19103

**PLAINTIFF:** [redacted] **DOB:** [redacted] **DOL:** 2/22/2023

**INTRODUCTION:** This is a medical record review for [redacted]

**RECORDS REVIEWED:**

Plaintiff's Complaint
[redacted] deposition transcript (11/14/2024)
Plaintiff's Answers and Objections to Defendant's Interrogatories and Responses to Defendant's Requests for Production of Documents
Police Crash Report
Photos of Mr. [redacted] vehicle after subject MVA
Medicare Severity Diagnosis Related Group documents
AHD.com documents
Medical fee directory
CPT code documents
Records from the Commonwealth of Pennsylvania Department of Human Services
Medical records from Jonathan Lax Treatment Center [including redacted records]
Medical records from Open MRI
Medical records from Philadelphia Fight Community Health Center [included redacted records]
Medical records from Philadelphia Fire Department
Medical records from Philadelphia Spine Associates
Medical records from Premier Pain and Rehab
Medical records from Regen Doctors
Medical records from Temple Health
Report from The Verity Group (5/2/2024)
Report from Dr. Lance Yarus (11/30/2023, Regional Orthopedic Associates, PC )
Letter from Simon & Simon (5/8/2024)

**HISTORY:**

Mr. [redacted] is a 28-year-old male who was involved in a motor vehicle collision on February 22, 2023. At that time, he was a backseat passenger (behind the driver) in a Lyft vehicle when it was impacted from behind. Mr. [redacted] was able to self-extricate and was ambulatory at the scene. He did not seek treatment immediately after the accident. The Police Crash Report documented that there were "No injuries to either parties. No tow needed".

On February 23, 2023, Mr. [redacted] presented to the Temple University Hospital Emergency Department (Ryan Gibbons, M.D.) as a walk-in. At that time, Mr. [redacted] reported a headache and pain in the lower back and neck (pain was rated as 10/10). On examination, it was documented that he had muscle spasms but was negative for lumbar midline and paraspinal tenderness. There were no neurologic deficits and there was no indication to perform imaging studies. Mr. [redacted] was discharged with instructions to take Tylenol follow up with Dr. Ellen Tedaldi (internal medicine) within one day or to return to the ED if his symptoms worsened.

On February 28, 2023, Mr. [redacted] sought care at Philadelphia Spine Associates (Ethel Harvey, DC). At that time, he reported neck, mid back, and lower back pain. He rated his pain level a 9/10 on the pain scale. Mr. [redacted] reported that he was pain-free prior to his subject MVA. On examination, Mr. [redacted] was found to have numbness and tingling in both the upper and lower extremities (a chronic, pre-existing condition for which Mr. [redacted] had been previously treated). Dr. Harvey diagnosed Mr. [redacted] with sprains of the cervical, thoracic, and lumbar spine. He was fitted for a back brace and was prescribed a home EMS unit. Mr. [redacted] initiated a course of chiropractic treatment. He continued treatment intermittently through at least October 2, 2023.

On June 26, 2023, Mr. [redacted] obtained MRI's of the cervical and lumbar spine at Open MRI of Bala Cynwyd.

On June 28, 2023, Mr. [redacted] sought care with Christy Menkhaus, PA-C (Regen Doctors). At that time, he reported pain in his neck and lower back that he attributed to his subject MVA. Ms. Menkhaus diagnosed Mr. [redacted] with cervical disc displacement at C5-C6 and disc displacement of the lumbosacral region. Ms. Menkhaus documented that Mr. [redacted] may need lumbar and cervical epidural steroid injections. He was advised to follow up with his PCP for further evaluation, to obtain an EMG, and to follow up after his EMG.

On July 12, 2023, Mr. [redacted] sought care at the Temple University Hospital Emergency Department (with Roseanne Ashley, RN) via walk-in (7:01 AM). At that time, he reported 10/10 pain in his right hip. 17 minutes later, Mr. [redacted] was escorted out of the ED by security after he reportedly became "aggressive during triage". Upon arriving home, Mr. [redacted] called 911 and the Philadelphia Fire Department EMS arrived at Mr. [redacted] house. At that time, Mr. [redacted] reported (10/10) right hip pain that he attributed to a fall in his kitchen that had occurred a few hours prior. EMS then returned Mr. [redacted] to the Temple University Hospital's Emergency Department. Once they arrived at the ED, the staff informed EMS that Mr. [redacted] had been "kicked out due to his behavior".

On July 27, 2023, Mr. [redacted] followed up with Gene Levinstein, M.D. (Regen Doctors). At that time, he reported neck pain and tingling in the left arm and hand. Dr. Levinstein performed an EMG/NCV of the upper extremities that was interpreted as indicating a left C5 radiculopathy.

On August 9, 2023, Mr. [redacted] sought care with Clifton Burt, MD (Premier Pain and Rehab Center). At that time, he reported 7/10 pain in his lower back. There was no mention of cervical pain and Mr. [redacted] denied numbness or tingling in the hands or feet. On examination, Dr.

**PLAINTIFF:** [redacted] **DOB:** [redacted] **DOL:** 2/22/2023

Burt documented that [redacted] had an intact neurologic examination and was able to flex his lumbar spine 85 degrees and extend 30 degrees. Dr. Burt diagnosed Mr. [redacted] with lumbar radiculopathy [there was no evidence to indicate a diagnosis of lumbar radiculopathy] and lumbar dorsopathy/facet syndrome. Dr. Burt performed a bilateral L5 medial branch nerve block that reportedly resulted in 40% improvement for 20 minutes. Dr. Burt then performed a bilateral L5 radiofrequency ablation.

On October 2, 2023, Dr. Levinstein performed a left C6-C7 interlaminar epidural injection for cervical radiculopathy and neck/arm pain. Dr. Levinstein documented that Mr. [redacted] lower back pain had improved after an injection that had been performed by "another pain doc".

On November 30, 2023, Mr. [redacted] sought an evaluation with Lance Owen Yarus, D.O. (Regional Orthopedic Associates, P.C.). Dr. Yarus documented that Mr. [redacted] had 7/10 neck and lower back pain. Dr. Yarus diagnosed Mr. [redacted] with: cervical strain and sprain, cervical myositis, somatic and segmental dysfunction of the cervical spine, enthesopathy of the cervical spine; C5-6-disc bulge/protrusion/extrusion-type herniation with eccentricity left; cervical dorsopathy/cervical facet syndrome; cervical discogenic and facetogenic pain mediated by C5-6; lumbar strain and sprain, lumbar myositis, somatic and segmental dysfunction of lumbar spine, and enthesopathy of the lumbar spine; L5-S1 disc bulge/extrusion type herniation with paraspinous muscular atrophy, left sided; lumbar dorsopathy/lumbar facet syndrome; lumbar discogenic and facetogenic pain mediated by L5-S1. Dr. Yarus opined that Mr. [redacted] injuries and conditions were directly caused by his February 22, 2023 subject incident. Dr. Yarus opined that Mr. [redacted] had a poor prognosis and that he would require additional medical care. [As an aside, Dr. Yarus documented that Mr. [redacted] had "no back pain" at the time of his 2/23/23 ED evaluation". He also noted that Mr. [redacted] had sought care for right hip pain at the Temple ED on "December 12, 2023". This date was incorrect (the correct date was July 12, 2023)].

Regarding his employment, Mr. [redacted] was reportedly working at the VA as an on-call primary companion and at Allied Universal as a security guard at the time of his subject accident.

Per his deposition, Mr. [redacted] reported that he continued to have pain in his back legs, and neck pain 2-3 times per week. He reported that his pain management physician increased his dose of suboxone due to the pain from his subject accident. Mr. [redacted] reported difficulty with exercising, caring for his dog, and lifting patients.

**PAST MEDICAL HISTORY (non-spinal/orthopedic):** asymptomatic HIV infection, type II diabetes, anemia, opioid dependence on agonist therapy, vitamin D deficiency, bipolar disorder, anxiety, pulmonary embolism, stroke.

**IMAGING (Images and reports were personally reviewed for the following studies):**

X-rays:

XR Bilateral Knees (Temple University, 10/9/2021): No sign of fracture or dislocation. Well-maintained joint spaces in the medial, lateral, and patellofemoral compartments.

CT Scans:

CT Cervical (Temple University, 10/9/2021): No signs of acute fracture or subluxation. There was a small anterosuperior osteophyte on the C5 vertebral body.

CT Head/Brain (Temple University, 8/10/2022): No signs of acute intracranial pathology.

CT Head/Brain (Temple University, 10/9/2021): No signs of acute intracranial pathology.

CT Head/Brain (Temple University, 5/7/2021): No signs of acute intracranial pathology.

MRIs:

MRI of Lumbar Spine (Open MRI of Bala Cynwyd, 6/26/2023): MRI of lumbar spine indicated a mild degenerative disc bulge at L5-S1. There was no compression of the neurologic elements within the lumbar spine.

MRI of Cervical Spine (Open MRI of Bala Cynwyd, 6/26/2023): MRI of cervical spine indicated a barely perceptible left sided degenerative disc bulge at C5-C6. There were no fractures, disc herniations or signs of facet pathology. There was no compression of the neurologic elements within the cervical spine.

MRI Head (Temple Univesity, 3/8/2021): No signs of acute intracranial pathology

Electrodiagnostics:

EMG/NCV of upper extremities (Regen Doctors, 7/27/2023): EMG and NCV was interpreted as indicating a sub-acute cervical radiculopathy affecting the left C5 nerve root.

**ASSESSMENT:**

Mr. [redacted] was involved in a motor vehicle accident on February 22, 2023,. He alleged that this accident resulted in injuries to his neck and lower back.

Mr. [redacted] had a relevant medical history that pre-dated his subject accident:

> A patient summary from Philadelphia Fight Community Health documented that Mr. [redacted] had a pre-existing history of back pain with radiation (2/24/2022), opioid dependence on agonist therapy (2/24/2022), opioid use disorder (2/24/2022) peripheral polyneuropathy (5/12/2022), and myalgia (9/7/2022) with elevated creatine kinase (diagnosed 2/7/2023)).

Mr. [redacted] did not seek or require medical treatment immediately after his subject accident. The police crash report for Mr. [redacted] subject accident documented that "No injuries to either parties. No tow needed". Had [redacted] sustained a structural injury to his cervical or lumbar spine, it would have been expected that he would have required immediate medical attention. The above clinical history is consistent with the conclusion that Mr. [redacted] subject accident resulted in, at most, sprains/strains of his cervical and lumbar spine.

Per his deposition, Mr. [redacted] reported that he had not had a CT scan of his cervical spine prior to his subject accident (p 22). However, the medical records indicated Mr. [redacted] obtained a cervical CT scan on October 9, 2021. Mr. [redacted] also reported that he did not have any back pain prior to his subject accident (p 25). This statement was inaccurate as Mr. [redacted] had been diagnosed with back pain with radiation on February 24, 2022. The above examples indicated that Mr. [redacted] had an imperfect recollection of his medical history. As a result, is it imperative to focus on the objective data within this case when providing an accurate assessment of Mr. [redacted]

On February 23, 2023, Mr. [redacted] sought care at the Temple University Hospital ED and reported a pain level of 10/10 in his neck and lower back. On July 12, 2023, Mr. [redacted] walked into the Temple ED reporting 10/10 pain in his right hip. At that time, Mr. [redacted] needed to be escorted out of the hospital due to aggressive behavior. It should be emphasized that a pain level of 10/10 represents the most extreme form of pain imaginable. This level of pain is inconsistent with the ability to converse with a health care provider, walk into an Emergency Department, or be escorted out of an ED for aggressive behavior. Given the above data, there is concern regarding the accuracy of Mr. [redacted] reported symptoms. As indicated above, it is critical to emphasize objective data when assessing Mr. [redacted]

Mr. [redacted] obtained imaging studies of his spine after his February 22, 2023 subject accident:

> These images included, but were not limited to cervical and lumbar MRIs that were performed on June 26, 2023. The cervical and lumbar MRIs indicated mild degenerative disc bulges at the C5-C6 and L5-S1 levels. These findings represented spinal pathology that predated and was unrelated to Mr. [redacted] February 22, 2023 motor vehicle accident. The MRIs did not indicate any compression of the neurologic elements in the cervical or lumbar spine. Furthermore, Mr. [redacted] June 26, 2023 post-accident MRIs did not provide any objective evidence to indicate that Mr. [redacted] motor vehicle accident resulted in either structural injury or a traumatic progression of pre-existing degeneration within his lumbar or cervical spine.

On July 27, 2023, Mr. [redacted] obtained an EMG/NCV of the bilateral upper extremities. It should be noted that EMG results can be problematic as the interpretation of EMG data is subjective and widely variable. As a result, EMGs can frequently provide false-positive results. Therefore, in order for an EMG result to be considered valid, it must correlate with other pieces of medical data such as a persistent neurologic deficit, or areas of neurologic compression on an MRI study. In this case, Mr. [redacted] EMG was interpreted as indicating a left C5 radiculopathy. However, the medical record did not provide consistent clinical evidence of a

neurologic deficit involving the left C5 nerve root and his June 26, 2023 cervical MRI did not indicate neurologic compression of the left C5 nerve root (the left C5 nerve arises from the left C4-C5 foramen). Given the discordant data, it is my opinion that the EMG results were invalid and should be disregarded when forming an accurate diagnosis for Mr. [redacted]

On August 9, 2023, Mr. [redacted] sought an evaluation with Dr. Clifton Burt for the complaint of lower back pain. At that time, there was no mention of upper extremity neurogenic symptoms or neck pain. Dr. Burt then performed a bilateral L5 facet joint block. A facet block is a test that provides evidence as to whether or not the facet joints are a source of pain. Dr. Burt documented that the facet blocks resulted in a 40% reduction of symptoms for 20 minutes. Of note, the peer-reviewed literature considers a 40% improvement, to be a negative diagnostic test for facet joint mediated pain[1]. The above results provided evidence that the facet joints were not a source of pain. In addition, there was no objective evidence on Mr. [redacted] June 26, 2023 lumbar MRI to indicate that his subject accident resulted in an injury to the lumbar facet joints. Despite the above evidence, Dr. Burt, nonetheless, elected to proceed with a radiofrequency ablation of the lumbar spine.

After a review of the above medical data, it is my opinion that Mr. [redacted] February 22, 2023 accident resulted in, at most, sprains/strains of his cervical and lumbar spine. If Mr. [redacted] in fact sustained the above injuries, they would be typically treated with 6-12 weeks of physical therapy, followed by a home exercise program, and a return to full and unrestricted activity. It is my opinion that any treatment in excess of this was unrelated to his February 22, 2023 accident.

It is also my opinion that Mr. [redacted] has fully recovered from any injuries that he may have sustained as a result of his accident, which did not result in a permanent and/or serious impairment of bodily function.

Mr. [redacted] potential February 22, 2023 injuries did not result in the need for current or future occupational or recreational activity restrictions. As a result, Mr. [redacted] did not sustain any injuries that would prevent him from returning to his pre-accident occupation as a primary companion at the VA or any other employment for which he is appropriately trained in a full-time, full-duty capacity for the remainder of his work-life expectancy. I do not recommend any additional treatment for the injuries that Mr. [redacted] may have sustained as a result of his February 22, 2023 accident. Therefore, any future treatment that he elects to pursue is unrelated to his accident. Any current symptomatology that Mr. [redacted] has continued to report is unrelated to his subject incident.

I have reviewed Dr. Yarus' November 30, 2023 report as well as the May 2, 2024 Medical Cost Projection report from The Verity Group. I disagree with the opinions and conclusions of Dr. Yarus' report insofar as they conflict with this document. As mentioned above Mr. [redacted] injuries were limited to, at most, sprains/strains of his lumbar and cervical spine. I do not appreciate any compelling objective data to support Dr. Yarus' opinion that Mr. [redacted] subject accident resulted in any unresolved injuries. Mr. [redacted] subject incident did not result in any injuries that require future diagnostic testing, medical surveillance, or treatment. Therefore, Mr. [redacted] February 22, 2023 accident did not result in the need for any future medical costs. As

a result, it is my opinion that the May 2, 2024 Medical Cost Projection Report (which was based upon the diagnoses provided by Dr. Yarus) should be disregarded.

The above statements were based upon all available information and were made with a reasonable degree of medical certainty. If additional clinical information becomes available, I reserve the right to addend the above report.

Michael R. Murray, M.D.
Board Certified Orthopaedic Surgeon

**REFERENCE:**

1) Cohen SP, Bhaskar A, Bhatia A, et.al. Consensus practice guidelines on interventions for lumbar facet joint pain from a multidisciplinary, international working group. Reg Anesth Pain Med. 2020 Jun; 45(6) 424-467.