# Exhibit "11"

**MICHAEL R. MURRAY, M.D.**
**BOARD CERTIFIED ORTHOPAEDIC SURGEON**
**INDEPENDENT MEDICAL EVALUATION**

June 7, 2024

Gregory Mallon, Jr., Esq.
Zarwin, Baum, DeVito, Kaplan, Schaer & Toddy
One Commerce Square 2005 Market Street, 16th Floor
Philadelphia, PA 19103

**CLAIMANT:** [redacted] **DOB:** [redacted] **DOL:** 11/13/2022

**INTRODUCTION:** This is an independent medical evaluation report for [redacted] [redacted] [redacted] was evaluated on May 24, 2024. At that time, she was informed that no treating relationship would exist, and this encounter would strictly consist of an independent evaluation.

**RECORDS REVIEWED:**

Plaintiff's Deposition Transcript (2/7/2024)
Records from the Centers for Medicare & Medicaid Services
Photographs of vehicle after MVA and Uber receipt
Medical records from Einstein Healthcare Network
Medical records from Open MRI
Medical records from Philadelphia Spine Associates
Medical records from Premier Pain & Rehab
Medical records from Regen Doctors
Expert report from Regional Orthopedic Associates, PC (Dr. Lance Yarus- 6/22/2023)
Records from CVS Pharmacy
Cost Analysis from The Verity Group
Demand from Simon & Simon, PC

The following information has been derived from a review of all available medical records.

**HISTORY:**

[redacted] is a 34-year-old female who was involved in a motor vehicle accident on November 13, 2022. At that time, she was a passenger in an Uber vehicle (Honda CR-V) when it was rear-ended. After the accident, [redacted] was driven home by a friend. She then took Lyft to the Emergency Department at Albert Einstein Medical Center (Dr. Donielle Sturgis/Dr. Scott Korvek) for further evaluation. At that time, she reported head and right-sided lateral neck pain. She denied numbness, tingling, or weakness. It was documented that [redacted] was able to self-extricate from the vehicle and ambulate immediately following the accident. On examination, she was "well-appearing in no acute distress". She had tenderness to palpation of the right sternocleidomastoid, right trapezius, and right scapula. She had a full range of motion in all extremities. No imaging was performed. It was documented that "I think this is most likely

**CLAIMANT:** [redacted] **DOB:** [redacted] **DOL:** 11/13/2022

musculoskeletal strain status post MVC.". [redacted] was prescribed ibuprofen, acetaminophen, and topical lidocaine.

On November 16, 2022, [redacted] sought care with Philadelphia Spine Associates. She reported pain in the neck, mid-back, and lower back. She initiated chiropractic care. She continued treatment through at least March 31, 2023.

On November 30, 2022, [redacted] sought care with Christy Menkhaus, PA-C at Regen Doctors. At that time, she reported headaches and pain in the neck, and back. Ms. Menkhaus diagnosed her with lower back pain, neck pain, and strains of the lumbar and cervical spine. She ordered cervical and lumbar MRIs and recommended continued therapy.

On March 20, 2023, [redacted] obtained MRIs of the cervical and lumbar spine at Open MRI of Bala Cynwyd.

On April 6, 2023, [redacted] sought care with Dr. Clifton Burt at Premier Pain & Rehab Center. At that time, she reported axial lower back pain without any radiating pain or symptoms of radiculopathy. On examination, Dr. Burt documented a normal neurologic examination. Despite the lack of radiculopathy symptoms, Dr. Burt diagnosed her with lumbar radiculopathy, lumbar facet syndrome, and a back strain. Dr. Burt performed a bilateral L5 lumbar medial branch nerve block (40% relief for 20 minutes), followed by a radiofrequency ablation.

On June 22, 2023, [redacted] sought an independent medical evaluation from Dr. Lance Yarus, DO at Regional Orthopedic Associates. The evaluation was performed via telemedicine. Dr. Yarus opined that [redacted] treatment was consistent with the accepted medical standard of care (including the lumbar facet joint ablations). He documented that her prognosis remained guarded and that she would need ongoing evaluations, medical treatments, and medical management.

As of the date of my examination, [redacted] reported pain in her lower back. Per her deposition, [redacted] reported that her accident resulted in neck pain that had resolved within a month of her accident. She reported lower back pain (6-7/10) that is intermittent and worse with bad weather, her menstrual cycle, and heavy lifting. Her pain occurs 3-4 times per week. The pain does not radiate. She reported difficulty with prolonged sitting and heavy lifting. She was not undergoing any formal treatment for her back pain and had not undergone treatment since her treatment with Dr. Burt. She was not taking any medications for her symptoms.

At the time of her motor vehicle accident, [redacted] was working at Whole Foods and at a work-from-home position with Federal Hearings and Appeals. She reported that she was let go from Federal Hearings and Appeals in Feb-March 2023 due to decreased productivity. Around that time, [redacted] also reportedly left Whole Foods on her own accord. In April 2023, Ms.

**CLAIMANT:** [redacted] **DOB:** [redacted] **DOL:** 11/13/2022

[redacted] moved to North Carolina which was a plan that was unrelated to her MVA. She is currently working full-time in revenue cycle representative for UNC-Nash in North Carolina.

**PHYSICAL EXAMINATION:**

General: [redacted] was alert and oriented x 3.

Gait: [redacted] ambulated with a reciprocal gait.

Cervical spine: [redacted] demonstrated approximately 40° of extension of the cervical spine. She was able to forward flex 40°. She was able to rotate her neck approximately 80° bilaterally. She could laterally bend approximately 45° bilaterally. She denied tenderness to her cervical paraspinal muscles. There was no erythema or irregularity of the skin over the cervical spine. She grossly demonstrated normal coronal and sagittal alignment of the spine. Negative Spurling test.

Thoracolumbar spine: [redacted] demonstrated 30° of extension of the lumbar spine and 90° of forward flexion. She demonstrated approximately 30° of lateral bending bilaterally and 35° of rotation bilaterally. She reported tenderness to deep palpation over the bilateral paraspinal muscles of the lumbar spine. She demonstrated normal sagittal and coronal balance when standing. Negative straight leg raise test.

Neurologic examination:
*Upper extremities:* [redacted] had full 5/5 strength of her bilateral deltoids, biceps, triceps, wrist extensors, wrist flexors, interossei and grip. Her sensation was intact from C5-T1 bilaterally.

*Lower extremities:* [redacted] had full 5/5 strength of her bilateral iliopsoas, quadriceps, tibialis anterior, extensor hallucis longus and gastrocsoleus complex. Her sensation was intact from L2-S1 bilaterally.

*Reflexes:* 1+ reflexes at the brachioradialis bilaterally. 1+ reflexes at the patellar tendons bilaterally as well as the Achilles tendons. No clonus. Negative Hoffmann sign.

**IMAGING (Images and reports were personally reviewed for the following studies):**

MRIs:

MRI Cervical Spine (3/20/2023, Open MRI of Bala Cynwyd) MRI was negative for acute and/or chronic spinal pathology. There was no compression of the spinal cord or cervical nerve roots.

**CLAIMANT:** [redacted] **DOB:** [redacted] **DOL:** 11/13/2022

MRI Lumbar Spine (3/20/2023, Open MRI of Bala Cynwyd) MRI indicated mild degenerative disc bulges at L4-L5 and L5-S1. There was disc desiccation at L5-S1. There was no neurologic compression in the lumbar spine.

**ASSESSMENT:**

[redacted] is a 34-year-old female who was involved in a motor vehicle accident on November 13, 2022. She alleged that this incident resulted in injuries to her cervical and lumbar spine.

[redacted] had a history of trauma that pre-dated her subject MVA. On May 1, 2013, [redacted] was a passenger on a SEPTA bus when she fell. She reported that she landed on her back and hit her head on the ground. Following the accident, [redacted] sought care at the Albert Einstein Hospital Emergency Department. At that time, She reported 8/10 pain in her upper back. On examination, she had diffuse tenderness to the thoracic spine. She was prescribed ibuprofen and was discharged.

Following her November 13, 2022 accident, [redacted] was evaluated at the Albert Einstein Medical Center Emergency Department. At that time, she reported muscular tenderness in her neck and a normal neurologic examination. There was no indication to perform imaging studies. The above clinical history is most consistent with the conclusion that [redacted] MVA resulted in, at most, sprains/strains of her cervical and lumbar spine.

[redacted] obtained imaging studies of her cervical and lumbar spine after her subject MVA. On March 20, 2023, she obtained MRIs of the cervical and lumbar spine. The cervical MRI was negative for signs of acute and/or chronic pathology. The lumbar MRI indicated mild degenerative disc bulges at the L4-S1 segments and disc desiccation at L5-S1. These findings pre-dated and were unrelated to her subject MVA. The March 20, 2023 MRIs did not provide any objective data to indicate that [redacted] subject MVA resulted in a structural injury to her cervical or lumbar spine. There was also no evidence that her subject MVA resulted in a traumatic progression of pre-existing degeneration in either the cervical or lumbar spine.

On April 6, 2023, [redacted] sought an evaluation with Dr. Clifton Burt. At that time, there was no mention of cervical pathology or symptoms. Dr. Burt then performed a lumbar facet joint block, a test that is performed in order to provide evidence that the facet joint is a source of pain. This resulted in a 40% improvement. Of note, the peer-reviewed literature considers 40% improvement, to be a negative diagnostic test for facet joint-mediated pain[1]. Given the above, the results from the facet joint block provided evidence that the facet joint was not a source of pain. Nonetheless, Dr. Burt elected to proceed with a radiofrequency ablation of the lumbar spine. It should be noted that per Ms. Adams' deposition, Dr. Burt did not physically touch Ms. [redacted] during his examination; he only asked her to try and touch her toes.

After my evaluation of [redacted] and review of the above data, it is my opinion that her November 13, 2022 accident resulted in, at most, sprains/strains of her cervical and lumbar spine. If Ms. Adams in fact sustained these injuries, they would be typically treated with 6-12 weeks of physical therapy, followed by a home exercise program, and a return to full and unrestricted activity. It is my opinion that any treatment in excess of this was unrelated to her November 13, 2022 accident. It is also my opinion that [redacted] has fully recovered from any injuries that were sustained as a result of her accident. [redacted] potential November 13, 2022 injuries did not result in the need for current or future occupational or recreational activity restrictions. As a result, [redacted] did not sustain any injuries that would prevent her from returning to her pre-accident occupation of working at Whole Foods, working for the Federal Hearings and Appeals, or any other employment for which she is appropriately trained in a full-time, full-duty capacity for the remainder of her work-life expectancy. I do not recommend any additional treatment for the injuries that [redacted] may have sustained as a result of her November 13, 2022 accident. Therefore, any future treatment that she elects to pursue is unrelated to her accident. Any current symptomatology that Ms. has reported is unrelated to her subject incident.

[redacted] November 13, 2022 MVA did not result in a serious and/or permanent impairment of bodily function.

I have reviewed Dr. Yarus' expert report (6/22/2023) as well as the Medical Cost Projection report from the Verity Group (10/5/2023). I disagree with the opinions and conclusions of Dr. Yarus' report insofar as they conflict with this document. One particular concern with Dr. Yarus' report was his claim that Dr. Burt's L5 radiofrequency ablation was "consistent with accepted medical standards". It is unclear how Dr. Yarus justified this statement as there is peer-reviewed literature that clearly disputes his opinion[1]. It is also concerning that Dr. Yarus suggested the option of a surgical laminectomy of the L3-S1 segments of the spine. A laminectomy is indicated for symptomatic compression of the neurologic elements. [redacted] March 20, 2023 lumbar MRI provided objective evidence that she does not have any compression of the neurologic elements within the lumbar spine. It should also be noted that Dr. Yarus made his surgical recommendations based on a telemedicine evaluation of [redacted] He did not examine Ms. [redacted] or meet her in person before recommending surgical intervention. As mentioned above, [redacted] injuries were limited to, at most, sprains/strains of the lumbar and cervical spine. I do not appreciate any compelling objective data to support the diagnoses and/or treatment recommendations that Dr. Yarus documented in his report. [redacted] has healed from any injuries that she may have sustained as a result of her November 13, 2022 accident. [redacted] did not sustain any injuries as a result of her subject incident that require any future diagnostic testing, medical surveillance, or treatment. Consequently, [redacted] November 13, 2022, incident did not result in the need for any future medical costs. Therefore, it is my opinion that the Medical Cost Projection Report for [redacted] should be disregarded.

**CLAIMANT:** [redacted] **DOB:** [redacted] **DOL:** 11/13/2022

Unless otherwise indicated, all opinions about medical conditions and issues are based upon a reasonable degree of medical certainty. I reserve the right to amend this report if additional information is made available to me.

M.D.

Michael R. Murray, M.D.
Board Certified Orthopaedic Surgeon

REFERENCE:

1 ) Cohen SP, Bhaskar A, Bhatia A, et.al. Consensus practice guidelines on interventions for lumbar facet joint pain from a multidisciplinary, international working group. Reg Anesth Pain Med. 2020 Jun; 45(6) 424-467.