# Exhibit "15"

# EXHIBIT E-3

Leadbitter SPINE & SPORTS

January 8, 2022

RE: [redacted]
Claim Number: 453996000001
DOB: [redacted]
DOL: 04/08/2021

## RECORDS REVIEWED

1. MRI Reports, Prescription and Bill, dated 7/13/21.
2. Treatment Note from Dr. Levinstein, dated 8/3/21.
3. EMG Report and Bill, dated 8/24/21.
4. Initial Report from Dr. Piccillo, dated 4/20/21.
5. Treatment Notes, dated 4/28/21 through 11/3/21.
6. DME Prescription, dated 4/20/21.
7. Health Insurance Claim Forms, dated 4/20/21 through 11/3/21.

## DIAGNOSTIC TESTS

MRI

- Cervical-7/13/21-Negative MRI of cervical spine.
- Lumbar-7/13/21-Shallow disc bulging to the left at L2-3 and L3-4. Otherwise, essentially negative MRI of lumbar spine.

## CONSULTS

Other than Dr. Piccillo, the records indicate that this claimant has been treated by another health care provider for the accident of 4/8/21. She was treated by Dr. Levinstein.

## MECHANISM OF INJURY

Ms. [redacted] was the restrained driver of a vehicle involved in a rear end impact MVA on 4/8/21. She was stopped in traffic when another vehicle hit her from behind. No other details of the accident were included in the documentation sent for my

162 W. Main St., Suite 1, Monongahela, PA 15063 • (724) 258-9565 • Fax (724-258-9036

review. Ms. [redacted] did seek emergency care following the accident at the ER of UPenn Hospital. She was examined, treated and released. Ms. [redacted] presented to Dr. Piccillo's office on 4/20/21 for chiropractic treatment.

## INITIAL COMPLAINTS

Ms. [redacted] reported her initial complaints to Dr. Piccillo as:

- Neck pain
- Mid back pain
- Low back pain
- Right wrist pain
- Right hand pain

## CLINICAL SUMMARY

The claimant presented herself to Dr. Piccillo's office on 4/20/21 for chiropractic treatment for injuries sustained in an MVA on 4/8/21. Following the claimant's initial evaluation, Dr. Piccillo diagnosed her with: sprain of ligaments cervical spine, strain of muscle and tendon of back wall of thorax, sprain of ligaments of lumbar spine, sprain of unspecified part of right wrist and hand and unspecified neuralgia and neuritis. Documented care for this accident has lasted from 4/20/21 through 11/3/21. Care has consisted of chiropractic adjustments, ultrasound, mechanical traction therapy, infrared therapy, electrical muscle stimulation and massage therapy.

## PRIOR INJURIES

According to the documentation provided for my review, Ms. [redacted] has had no prior accidents or injuries which would have complicated her treatment plan.

## SUBSEQUENT INJURIES

Dr. Piccillo did document flare-ups of the claimant's original symptomatology.

## TELECONFERENCE DISCUSSION

Dr. Piccillo, the treating chiropractic provider under review in this case, did not request a telephone consultation concerning his treatment of Ms. [redacted] for the accident of 4/8/21.

**ISSUES TO ADDRESS**

1. **Is the diagnosis correct and is it supported by objective findings?**
2. **Is the treatment reasonable, necessary and appropriate?**
3. **Is the location of treatment appropriate?**
4. **Is there evidence that the claimant is responding to the current treatment?**
5. **Are further treatments and/or diagnostic tests necessary?**
6. **Is the diagnosis causally related to the injury or accident?**
7. **Is the treatment related to the injury or accident?**
8. **Is there a history of comorbidities, prior injuries and/or pre-existing conditions that impact the current injury or accident?**
9. **Has the claimant reached MMI? If not, when do you anticipate MMI?**

Based upon the documentation provided at the time of my review, I am of the opinion that chiropractic treatment from 4/20/21 up to and including 10/12/21 provided by Dr. Piccillo was reasonable and necessary. The daily treatment notes were legible, very repetitious and offered adequate information into the claimant's response to care. There was no evidence of separate objective re-exams performed during the treatment. Periodic timely objective re-exams are warranted so that a practitioner can track a patient's progress throughout the patient's treatment regime and objectively document the patient's symptomatology and improvement. Care frequency should be based on the results of these examinations, as well as documented objective/subjective patient response to care. Given the claimant's erratic treatment frequency and lack of compliance with the recommended treatment frequency, I would have expected re-exams to have been performed after she missed scheduled appointments (weeks at a time). Dr. Piccillo's documentation did not justify the continued care after the claimant had been non-compliant with the recommended treatment frequency.

Progress in this case was documented. According to the Procedural/Utilization Facts, Fifth Edition for the diagnoses reported, a typical chiropractic treatment program is usually comprised of 18 to 26 weeks of care with 24 to 32 visits being the average norm. The treatment rendered over this period of time should be done in a manner that as the patient's condition improves, the visit frequency is decreased. Every case is unique. I feel that the claimant's noncompliance with the recommended treatment frequency caused the delayed or suppressed response to chiropractic care. I allowed for chiropractic care up to the 26th week which gave the claimant 26 treatments. This number of treatments is within the parameters for the diagnoses reported.

A doctor recommends a treatment plan that will meet the patient's goal of getting better in the least amount of time. This recommendation is based on examination findings and experience with past similar cases. For this treatment plan to be effective, the patient must be compliant with the doctor's recommendations. In this case, it appears that the claimant was never compliant with the doctor's recommendations of visit frequency. Referencing Fundamentals of Chiropractic Diagnoses And Management, it appears that Dr. Piccillo's initial treatment plan and management were within accepted parameters for the profession for the diagnoses reported. A trial of chiropractic care has been shown to be warranted in cases of this nature. The continued treatment plan was atypical and I felt that Dr. Piccillo did not justify it with the documentation submitted for my review.

Treatment frequency guidelines will vary for moderate to severe acute conditions, complicating factors, and exacerbations during treatment. I found no record of documented complications. Normally the exacerbations the claimant had would have complicated and extended the typical treatment plan parameters but I feel that these exacerbations were a direct cause from her lack of compliance with the recommended treatment frequency. Once a patient starts a particular treatment it is their responsibility to follow the treating doctor's recommendations to ensure the maximum benefits from that treatment in the least amount of time. This claimant did not do that in this case. Current guidelines for the profession do not allow the claimant/patient to set their own treatment requirements. Dr. Piccillo never gave an explanation on why the claimant could not keep her recommended treatment frequency. I found nothing in the documentation that would justify extending the normal treatment parameters for the diagnoses reported.

The nature of the patient's 4/8/21 accident, the reported diagnoses, the total amount of chiropractic care, the claimant's noncompliance with the recommended treatment frequency and the documentation provided were all taken into account when I determined that the last reasonable and necessary treatment date should be 10/12/21. Therefore, I am of the opinion that the chiropractic treatment from 4/20/21 up to and including 10/12/21 provided by Dr. Piccillo was reasonable and necessary. Chiropractic treatment after 10/12/21, in my opinion, is not supported by the documentation provided to me at the time of this review.

**1. Is the diagnosis correct and is it supported by objective findings?**

Yes. The diagnoses recorded in the documentation are supported by Dr. Piccillo's treatment notes.

**2. Is the treatment reasonable, necessary and appropriate?**

All chiropractic treatment from 4/20/21 up to and including 10/12/21 provided by Dr. Piccillo was reasonable, necessary and appropriate.

### 3. Is the location of treatment appropriate?

Yes. After careful review of the records, the areas that were treated appear to be appropriate.

### 4. Is there evidence that the claimant is responding to the current treatment?

Dr. Piccillo did document claimant improvement. However, current guidelines for the profession do not allow the claimant/patient to set their own treatment requirements.

### 5. Are further treatments and/or diagnostic tests necessary?

Chiropractic treatment after 10/12/21, in my opinion, is not supported by the documentation provided to me at the time of this review. No further diagnostic tests after 10/12/21 are needed.

### 6. Is the diagnosis causally related to the injury or accident?

The diagnoses reported by Dr. Piccillo on 4/20/21 appear to be a direct result of the accident of 4/8/21.

### 7. Is the treatment related to the injury or accident?

The treatment from 4/20/21 to 10/12/21 can be directly related to claimant's accident of 4/8/21.

### 8. Is there a history of comorbidities, prior injuries and/or pre-existing conditions that impact the current injury or accident?

According to the documentation provided for my review, Ms. [redacted] has had no prior accidents or injuries which would have complicated her treatment plan.

### 9. Has the claimant reached MMI? If not, when do you anticipate MMI?

Due to the noncompliance by the claimant with the recommended treatment frequency by Dr. Piccillo, I feel that the claimant had reached MMI by 10/12/21. No further chiropractic treatment past that date was justified with the submitted documentation.

Sincerely,

DC, CCSP

Gilbert E. Leadbitter, D.C., C.C.S.P.

# REFERENCE PAGE

Please note: The above report was completed using the following guideline references:

1. Procedural/Utilization Facts, Fifth Edition, Chiropractic Physical Therapy Treatment Standards
(Marketing Research, Ltd. 1991).

2. Chiropractic Standards Of Practice And Quality Of Care
(Aspen Publishers, 1992).

3. A Doctor's Guide to Record Keeping, Utilization Management And Review
(Progressive Seminars, 1997).

4. Fundamentals Of Chiropractic Diagnosis And Management
(Williams & Wilkins, 1991).

5. Guidelines For Chiropractic Quality Assurance And Practice Parameters: Proceedings Of The Mercy Center Consensus Conference
(Aspen Publishers, 1993).

6. Rehabilitation Guidelines For Chiropractic, First Edition
(The Chiropractic Rehabilitation Association, 1992).

7. Rehabilitation of the Spine
(Williams & Wilkins, 1996

8. Selected Ethics And Protocols In Chiropractic
(Aspen Publishers, 1991).

9. Procedural Utilization Facts, Chiropractic Care Standards, a Reference Guide, Data Management Ventures, 2004 Richard E. Olson, D.C.

According to Liebenson, Rehabilitation of the Spine; a Practitioner's Manual, 2nd edition, 2007.