# Exhibit "16"

# EXHIBIT F

# MARC MANZIONE, M.D., LLC

BOARD CERTIFIED ORTHOPEDIC SURGEON
2600 PHILMONT AVENUE
SUITE 119
HUNTINGDON VALLEY, PA 19006
TELEPHONE (215) 938-1212 • FAX (215) 938-1717


June 28, 2021

John A. Anastasia
THE MAYERS FIRM, LLC
3031 Walton Road
Suite 330
Plymouth Meeting, PA 19462

Re: [redacted]
U.S. District Court Eastern District of Pennsylvania, No. 2:21-cv-00581-PD

Dear Mr. Anastasia:

This report is based on the independent medical evaluation I performed at your request for the above patient on June 7, 2021.

The patient is a 60-year old right-hand dominant man who presents complaining of neck pain, lower back pain, and intermittent bilateral hand/finger stiffness. The patient denies having any other musculoskeletal symptoms.

The patient indicates that in March of 2020, he was involved in a motor vehicle accident. He was the driver of a car which was hit from the rear by a car. He was not evaluated in an emergency room. He saw a chiropractor one or two weeks following the accident. The patient subsequently received treatment with medication, chiropractic adjustments, physical therapy modalities, and one injection to his lower back. He indicates that the lower back injection resulted in only temporary improvement. No formal treatment is ongoing. The patient currently takes ibuprofen on an as needed basis for his musculoskeletal symptoms. He last took some ibuprofen three days ago. The only other medications which the patient currently takes are Metformin, two other medications for diabetes (the names of which he does not recall), and something for acid reflux (the name of which he does not recall). He has not, however, taken any medication today prior to my evaluation.

The patient denies sustaining any musculoskeletal injuries or having any musculoskeletal symptoms/problems which would predate the March 2020 accident. He denies sustaining any musculoskeletal injuries subsequent to this accident.

At the time of the March 2020 accident, the patient was employed full-time as a payroll clerk for the City of Philadelphia. He describes his job as consisting of office work, computer work, and frequent filing. Following the accident, he did not work for two days. He then returned to his normal job. In February of 2021, the patient was promoted to payroll supervisor. The patient currently works full-time in this capacity.

The patient's bowel and bladder function are normal. Coughing or sneezing do not result in any radicular symptoms. The cold weather will exacerbate the patient's musculoskeletal symptoms.

**PHYSICAL EXAMINATION** shows that the patient is in no acute distress. He is 5-feet 11¾-inches tall (per the patient) and he weighs 260-pounds. The patient's station and gait are normal. He is able to rise on his toes and go back on his heels fully and without symptoms. He gets on and off the examining table and up and down from a lying or sitting position normally and without assistance.

There is tenderness of all of the paracervical muscles on the left and tenderness throughout the superior aspect of the left trapezius muscle. No paracervical or trapezius spasm is palpable. The patient is able to flex his cervical spine to 45°. Extension is 60°. Bending to the right and left is 45° in each direction. Rotation to the right and left is 70° in each direction. At the extremes of each of these planes of motion, the patient complains of neck pain. Axial compression of the cervical spine does not result in any symptoms. The Spurling's test causes the patient to complain of neck pain. The Spurling's test is negative for cervical radiculopathy.

There is no tenderness or spasm of the parathoracic or parascapular muscles. The patient demonstrates full and asymptomatic scapular protraction and retraction. Adson's test and Wright's test are negative for thoracic outlet syndrome. There is no tenderness over either brachial plexus. Tinel's sign is negative over the brachial plexus and throughout both upper extremities. Phalen's test causes the patient to complain of ipsilateral wrist "stiffness." No distally radiating or neurogenic symptoms are elicited with this test. Elbow flexion test is negative bilaterally. No subluxation of either ulnar nerve is palpable with repetitive flexion/ extension of the elbows. Costoclavicular maneuver elicits no symptoms. The hyperabduction stress test causes the patient to complain of "stiffness" in all of the fingers of both of his hands. No symptoms indicative of thoracic outlet or brachial plexus pathology are elicited with this test.

There is tenderness of all of the lumbar paravertebral muscles bilaterally. Such diffuse tenderness is non-physiologic. No lumbar paravertebral muscle spasm is palpable. There is no tenderness of the sacroiliac joints or sciatic notches. The patient is able to flex his lumbar spine to 60°. Extension is 20°. Bending to the right and left is 45° in each direction. Rotation to the right and left is 45° in each direction. At the extremes of each of these planes of motion, the patient complains of lower back pain. The sitting root test causes the patient to complain of ipsilateral posterior knee "tightness" when either knee is fully extended. The straight leg raising test causes these same symptoms when either lower extremity is elevated above 45°. The posterior knee tightness elicited with the sitting root and straight leg raising tests is consistent with inflexibility/ tightness of the hamstrings. These tests are negative for lumbar radiculopathy. The Faber's test (when performed on either side) causes the patient to complain of mid-lumbar pain. This test does not result in any symptoms indicative of sacroiliac joint or hip joint pathology.

Deep tendon reflexes are 1+ and symmetric in the upper and lower extremities. Motor strength is 5/5 in all major muscle groups of the upper and lower extremities including all muscle groups about the forearms, wrists, and hands. No symptoms are elicited with resisted contraction of any of the major muscle groups in the upper or lower extremities. No muscular atrophy, asymmetry, or fasciculations are noted in the upper or lower extremities. Sensation is normal throughout all areas of both upper extremities and throughout all areas of both lower extremities.

There is no swelling or effusion of either wrist or of any of the joints of either hand. Both wrists and both hands have a full and asymptomatic range of motion. There is no tenderness anywhere about the forearms, wrists, or hands. All musculotendinous units about both wrists and hands are intact functioning normally. No instability of either distal ulna is clinically demonstrable. Grind test and Finkelstein's test are negative bilaterally.

All major joints in the upper and lower extremities have a full and asymptomatic range of motion. There is no swelling or erythema of any major joint in the upper or lower extremities. There is prominence of both tibial tubercles consistent with prior Osgood-Schlatter disease. Examination of both knees is otherwise normal. Peripheral pulses are normal. There are no clinical signs of sympathetic dysfunction or myelopathy.

**MEDICAL RECORDS:** I have reviewed the records and diagnostic studies which have been provided.

The records indicate that the motor vehicle accident in question actually took place on 5/12/20. The records document no medical attention until 5/19/20. On 5/19/20 a chiropractic evaluation was performed at the Philly Spine Center. This note indicates that from an orthopedic standpoint, the patient was currently complaining of neck pain/stiffness, upper back pain, mid-back pain, lower back pain, hip/buttock pain, and right knee pain. There was no mention of any upper extremity symptoms (something confirmed by an accompanying symptom diagram). The patient was diagnosed with a cervical, thoracic, lumbar and sacroiliac sprain/strain, cervical, thoracic, lumbar and sacroiliac subluxations, and a right knee sprain/strain. The patient was also diagnosed with post-traumatic headaches; but, as an orthopedic surgeon, I do not have the expertise to comment on this particular diagnosis. Treatment with chiropractic manipulations and physical therapy modalities was instituted. The records from the Philly Spine Center document evaluations and treatment continuing through 7/29/20. Each of the progress notes contain a symptom diagram. None of these document any upper extremity or lower extremity symptoms other than the previously noted right knee pain.

An MRI scan of the cervical spine was done on 6/3/20. The radiologist's report indicates that this study was done to evaluate neck and shoulder pain. At C2-C3 and C3-C4, the radiologist noted disc desiccation (i.e. degeneration) and shallow left-sided disc protrusions. A disc bulge (a sign of degenerative disc disease) was noted at C4-C5. At C5-C6, the radiologist noted disc degeneration and a disc protrusion which was more prominent on the right. At C6-C7 and C7-T1, the radiologist noted disc degeneration and left-sided disc protrusions. In the visualized

portions of the upper thoracic spine, the radiologist noted disc degeneration and disc protrusions which were most notable at T3-T4. I have had the opportunity to review this study. In my opinion, the study shows disc desiccation at all levels between C2 and C7, and at all levels throughout the visualized portion of the upper thoracic spine. At each of these levels, there is degenerative disc bulging commensurate with the degree of disc desiccation. At C6-C7, there is a superimposed left paracentral disc/osteophyte complex (i.e. a spondylotic/degenerative disc protrusion). This results in some narrowing of the left neural foramen. At no level is there any evidence of neural compression. There are no annular signal abnormalities at any level to suggest the presence of an acute or subacute disc injury. In summary, this study shows abnormalities consistent with multiple level degenerative disease. There are no abnormalities on this study attributable to the 5/12/20 accident. It is clear from this study that no injury to the cervical spine was sustained in this accident.

An MRI scan of the lumbar spine was done on 6/3/20. At L3-L4, the radiologist noted disc desiccation, a 2.5 mm. broad-based disc protrusion, and posterior column degenerative changes with left greater than right foraminal stenosis. At L4-L5, the radiologist noted disc desiccation and a 3.5 mm. broad-based disc protrusion which compromised the left neural foramen. Also noted at this level were posterior column degenerative changes. At L5-S1, the radiologist noted disc desiccation and a 2 mm. midline disc protrusion with right greater than left facet joint degenerative arthritis. The report makes no mention of any neural compression or annular signal abnormalities.. I have had the opportunity to review this study. In my opinion, the study shows disc desiccation and degenerative disc bulging at all levels between L3 and S1. At each of these levels there are posterior column degenerative changes which result in varying degrees of foraminal stenosis. The study shows no evidence of neural compression. There are no annular signal abnormalities to suggest the presence of an acute or subacute disc injury. All of the pathology on this study is longstanding and degenerative in origin. It is clear from this study that no permanent injury to the lumbar spine was sustained on 5/12/20.

On 6/17/20 the patient was evaluated by a primary care physician, Dr. Kosmorsky. Dr. Kosmorsky indicated that as the result of the motor vehicle accident, the patient was complaining of neck pain, lower back pain and bilateral upper and lower extremity radicular/ neurogenic symptoms. Dr. Kosmorsky performed electrodiagnostic studies of the cervical and lumbar paraspinal muscles and all four extremities. He indicated that these showed evidence of a left C6 radiculopathy, a left L5 and S1 radiculopathy, a right tibial motor axonopathy, and a mild left median motor axonopathy at the level of the wrist. It is clear from my clinical evaluation that the patient is not suffering from any ongoing left median nerve or right tibial nerve dysfunction. It is clear from the MRI scans that any cervical or lumbar radiculopathy which might have been caused by the 5/12/20 accident would be the result of a nerve root traction injury and not the result of a post-traumatic neurocompressive lesion (i.e. a clinically significant disc protrusion). Nerve root traction injuries are self-limiting conditions which will fully resolve. In fact, it is clear from my clinical evaluation that any radiculopathy which might have been present previously did indeed fully resolve.

On 8/6/20 the patient was evaluated in the office of Philadelphia Spine Associates by a chiropractor, Dr. Piccillo. Following his examination, Dr. Piccillo diagnosed a cervical, thoracic and lumbar sprain, back muscle spasms, and an unspecified neuralgia/neuritis. Dr. Piccillo initiated treatment with chiropractic manipulations and physical therapy modalities. The records document periodic evaluations and treatment by Dr. Piccillo continuing through 11/12/20.

On 10/22/20 the patient was evaluated by a pain management specialist, Dr. Burt. Following his examination, Dr. Burt diagnosed a lumbosacral radiculopathy. He felt, however, that the patient's back pain was primarily the result of facet joint pathology. He proceeded to perform bilateral medial branch blocks at all levels between L4 and S1. After noting that the blocks resulted in forty percent improvement for thirty minutes, he proceeded to perform radiofrequency ablations at each of these levels.

On 12/22/20 a telemedicine evaluation was performed by an orthopedist, Dr. Yarus. Dr. Yarus noted that the patient's primary ongoing symptom was intermittent lower back pain which radiated into both of his hips. The patient graded his current symptoms as a 4/10. After speaking with the patient and reviewing the medical records, Dr. Yarus concluded that the 5/12/20 accident had resulted in multiple injuries which included nine separate disc protrusions (five in the cervical spine, one in the thoracic spine, and three in the lumbar spine). I am unaware of any type of isolated trauma which will cause such numerous disc injuries. Dr. Yarus opined that as the result of these multiple accident-related disc protrusions, the patient would require follow-up physician evaluations, follow-up MRI studies every other year, additional treatment with epidural and/or facet injections, and additional radiofrequency neurotomies/ablations. He also indicated that at some point within the next five years, the patient would require cervical, thoracic, and lumbar discectomies. Given the fact that Dr. Yarus never examined the patient or personally reviewed the MRI films, the basis for this opinion is unclear.

On 2/2/21 nurses, Valerie Parisi and James Quin, authored a Medical Cost Projection Report. Based on the opinions rendered by Dr. Yarus, Ms. Parisi and Mr. Quin concluded that as the result of the 5/12/20 accident the patient would incur future medical costs totaling $391,353.56.

I have reviewed the transcript of the deposition given by the patient on 6/1/21. At this deposition, the patient testified about his employment history, his past medical history, the details of the 5/12/20 accident, his post-accident clinical course, and his current symptoms/functional limitations.

**REMARKS**: There are no objective abnormalities on my physical examination to indicate that this patient suffers from any ongoing post-traumatic musculoskeletal pathology. The patient has clinical findings which are wholly consistent with a diagnosis of cervical and lumbar degenerative disease. There is no objective support for the contention that the 5/12/20 accident resulted in any musculoskeletal injury which would have permanent symptoms or account for any of the current subjective complaints.

Re: [redacted]
June 28, 2021
Page 6

It appears from the clinical records provided that at least, by history, the 5/12/20 accident resulted in various soft tissue injuries (i.e. sprains/strains/contusions) and possibly one or more nerve root traction injuries. As I have already noted, these are self-limiting conditions which will fully resolve. The patient did not sustain any injury on 5/12/20 which would have any impact on the natural clinical course of his pre-existing spinal degenerative pathology. Any symptoms which the patient might experience as the result of this pathology would be unrelated to the 5/12/20 accident.

In summary, it is my opinion that there are no residuals of any musculoskeletal injury which might have been sustained on 5/12/20. Further treatment or diagnostic testing with respect to musculoskeletal injuries sustained in this accident is not necessary. There are no functional limitations or restrictions attributable to any musculoskeletal injury which might have been sustained on 5/12/20.

All of my opinions have been given with reasonable medical certainty.

Thank you for asking me to see this patient.

Sincerely,

Marc Manzione, M.D.
dm