**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UBER TECHNOLOGIES, INC. and FEDERAL EXPRESS CORPORATION,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**SIMON & SIMON P.C., MARC SIMON, CLIFTON BURT, PREMIER PAIN & REHAB CENTER, PC, ETHEL HARVEY, DANIEL PICCILLO, PHILADELPHIA SPINE ASSOCIATES, LLC, and LANCE YARUS,**<br>**Defendants.** | CIVIL ACTION<br><br>No: 2:25-cv-05365-MAK |

**PLAINTIFFS' OPPOSITION TO PSA DEFENDANTS' MOTION TO COMPEL AMENDED RESPONSES TO REQUESTS FOR ADMISSION**

The PSA Defendants' motion seeks to compel to admit matters regarding the opinions of third-party expert witnesses retained primarily by others in the underlying state court actions. This is palpably improper. Plaintiffs have no direct knowledge of those experts' analysis or opinions beyond what is stated in their IME reports. With only two exceptions, Plaintiffs did not hire these experts. They do not control any of them. To find out facts regarding those third-parties and their opinions, the PSA Defendants should direct their discovery at the third parties rather than at Plaintiffs. Plaintiffs have repeatedly offered to cooperate so that PSA may seek whatever discovery it thinks is appropriate from the authors of those documents. But PSA has refused. PSA cannot now use the RFAs directed at Plaintiffs to cure its own refusal to take discovery from the parties with the information that it seeks. That is not a proper use of the RFA discovery tool. The motion should be denied.

## I. Plaintiffs are not required to seek information from third party IMEs in responding to the RFAs.

An answering party may assert lack of knowledge or information as a reason for failing to admit or deny upon a reasonable inquiry where the information it knows or can readily obtain is insufficient to enable it to admit or deny. "Reasonable inquiry" is limited to persons and documents within the responding party's control, "and does not require the responding party to interview or subpoena records from independent third parties in order to admit or deny a request." *Heartland Surgical Specialty Hosp., LLC* 2007 WL 3171768, at *5 n.4 (D. Kan. Oc. 29, 2007) (*citing* 8A Wright & Miller, Federal Practice and Procedure, § 2261 (3d ed.); *see also Rhone-Poulenc Rorer, Inc. v. Home Indem. Co*, No. 88-cv-9752, 1992 WL 394425, at *2 (E.D. Pa. Dec. 28, 1992) ("This reasonable inquiry entails at least a limited obligation to inquire of co-defendants, but not non-parties.").

The experts who produced these IME reports are third parties and are not under Plaintiffs' control. Uber and FedEx were involved in hiring only the two experts discussed below. The remainder of these IME reports were instead commissioned by counsel for non-party driver defendants in cases filed against Uber. They were often hired by driver counsel *after* Uber had been dismissed from those cases. As an example, Exhibit 7 is an IME report performed by Dr. Douglas Sutton in the case of Claimant A. The report is addressed to John Silli at the Law Office of Jessica Adams, who was counsel to the independent driver in that case, not Uber. And the report states the examination occurred September 25, 2025, over four months after Uber was dismissed from Claimant A's case. *See* Am. Compl., ¶ 116 (ECF No. 71). Given these facts—which have been explained to PSA in the meet and confer process—Plaintiffs are, after reasonable inquiry, unable to either admit or deny most of what PSA seeks at this time.

PSA's purported evidence is not to the contrary. Exhibit 21 is not a "litigation action plan," as the PSA Defendants call it. It is a summary by Farmers Insurance of its review of a settlement demand in a case from which Uber was marked "dismissed," which does not even mention an IME. Exhibit 22 does not demonstrate any "litigation discussions between Uber and Farmers." It is another report by Farmers summarizing the facts and possibility of settlement, including expert reports, in a case from which Uber is marked "Dismissed." That Farmers told Uber an IME had occurred does not transform that expert into Uber's expert or the report into Uber's report, let alone show that Uber possessed a copy of the report itself (and not just the three-line summary prepared by Farmers). Exhibits 23, 24, and 25 similarly show only Farmers' knowledge and possible possession of the IME reports, not Uber's. And Exhibit 28, a pretrial memorandum of Uber's, says that the driver defendant (not Uber) "noticed an IME of Plaintiff with Dr. Murray" and lists his report under the heading "Discovery Responses on Behalf of Defendant Nassirou Oumarou."

Because these experts are third parties, Uber appropriately responded that it lacked sufficient information to either admit or deny the RFA requests. For example, RFA No. 4 asks Plaintiffs to "[a]dmit that Dr. Sutton [an IME not hired by Uber] was specifically tasked with identifying whether any treatment, diagnoses, and causation opinion reflected by PSA's records were unreasonable and/or unnecessary." Because Uber did not hire Dr. Sutton, it does not know what he was tasked with, or not. RFA No. 5 asks Plaintiffs to admit the specific date on which "Dr. Sutton performed the IME and record review." That information is known to Dr. Sutton, not to Plaintiffs because, again, they did not hire him. Many other RFAs merely ask Plaintiffs to admit to language in the reports themselves.[1] RFA Nos. 6 and 7 ask Plaintiffs to admit that "Dr. Sutton is a medical doctor whom Plaintiffs acknowledge is an expert." And many of the remaining RFAs seek an admission as to whether the IME report does or does not contain certain statements—RFA No. 12 asks Plaintiffs to "[a]dmit that Dr. Sutton opined in his report that several months of myofascial treatment were reasonable and appropriate for Claimant A's injuries."

"A request for admission as to whether or not a particular witness testified to certain information at a deposition is duplicative of the deposition itself." *Caruso v. Coleman Co.*, No. CIV. A. 93-CV-6733, 1995 WL 347003, at *2 (E.D. Pa. June 7, 1995). Here, the document itself is the best evidence of what it says, and there is "absolutely no proper purpose" to RFAs seeking admissions about such documents. *Id*.

Certain of the RFAs ask for admissions that are properly the subject of expert rather than fact discovery. For example, RFA No. 8 asks Plaintiffs to admit that "Dr. Sutton's opinions ex-

[1] This paragraph discusses the RFAs concerning Dr. Sutton's IME report in the case of Claimant A. As can be see in Exhibit 1 to the Baratta Decl., the RFAs are largely repetitive for each of the IME reports at issue.

pressed in his report concerning the treatment provided to Claimant A were accurate."[2] At the time these RFAs were served, fact discovery had just commenced. Expert disclosures are not due until November 4, 2026. ECF No. 125. Given that this RFA seeks expert opinion, Uber intends to supplement when initial expert disclosures are due.

**II. Plaintiffs' amended responses to the PSA Defendants' RFAs are not deficient.**

On August 18, 2026, Plaintiffs served on the PSA Defendants amended responses to RFAs No. 40, 41, 42, 43, 44, 45, 47, 48, 49, 50, 51, 76, 77, 78, 79, 80, 81, and 82. These RFAs relate to two IMEs that Plaintiffs did hire. Here, Plaintiffs provided answers reflecting the limited information they possess. For example, Request No. 40 asked Uber to "[a]dmit that Dr. Epstein evaluated Claimant D on October 31, 2024." Uber's amended response reads "Uber admits that Dr. Epstein's report with the Bates number Uber_00122041 lists '10/31/24' as the 'Date of Evaluation.' Uber otherwise cannot admit or deny this request because it lacks sufficient information to do so. Uber reserves its rights to supplement this response pursuant to Rule 26(e)." And Request No. 45 asked Uber to "[a]dmit that Dr. Epstein reviewed the PSA records related to Claimant D which span July 26, 2023, through May 14, 2024." Uber's amended response reads "Uber admits that Dr. Epstein's report with the Bates number Uber_00122041 lists 'Philadelphia Spine Associates - Chiropractic - 7/26/23 - 5/14/24' as part of a list of 'records' that 'add the following elucidating information.' Otherwise, Uber cannot admit or deny this request because it lacks sufficient information to do so. Uber reserves its rights to supplement this response pursuant to Rule 26(e)."

The PSA Defendants' Proposed Order seeks further amended responses to each of these RFAs. But they do not explain how the amended responses are in any way deficient and have not at any time met and conferred with counsel for Plaintiffs regarding the amended responses. The

[2] RFAs Nos. 29, 44, 58, 79, 89, 98, 108, 120, 134, and 147 impose similar requests concerning accuracy of opinions expressed in various IME reports.

sum total of the PSA Defendants' argument on this point is that the amended responses "offer ridiculous qualifications and outright refusals to respond."

There can be no question that Plaintiffs appropriately responded to each of these RFAs with an admission or denial, or objected that an RFA called for a legal conclusion (of an IME physician's alleged expertise). A party cannot object to a "party's compliant answer" to an RFA "simply because [it] does not like, or believe, the answer. That is what trials are for." *Williams v. Pirelli Tire LLC*, 2026 WL 1916264, at *1 (E.D. Pa. June 2, 2026). And RFAs may not be used to "unacceptably call for legal conclusions." *McCarthy v. Darman*, 2008 WL 2468694, at *3 (E.D. Pa. June 17, 2008). Plaintiffs' amended RFA responses are proper.

**III. Plaintiffs' privilege objections should be sustained.**

The PSA Defendants ask the Court to overrule Plaintiffs' privilege and/or work product objections to RFA Nos. 178, 179, 187, 188, and 189. These objections are proper because the RFAs seek information about the substance of the communications of Plaintiffs' attorneys.

RFA 178 asks whether Plaintiffs' counsel in the underlying actions "consulted and/or co-ordinated with Farmers Insurance Company" in defending or settling any case. It both seeks information protected by the attorney work product doctrine—namely, who Uber's or FedEx's defense counsel consulted with in settling and defending the underlying cases—and is too broad and non-specific to require a response. *McCarthy*, 2008 WL 2468694, at *3. RFA 179 is also improper. It asks whether Plaintiffs' counsel in this lawsuit "consulted and/or coordinated with Farmers" before filing this lawsuit—which again invades attorney work product. RFA Nos. 188 and 189 similarly demand information about the communications between Plaintiffs' counsel in this lawsuit and lawyers representing Uber in other lawsuits. Such communications between counsel for the same client are also privileged. Last, RFA No. 187 asks for Uber's counsel in underlying litigation to reveal communications with other Uber counsel regarding settlement. The PSA Defendants have

not shown any at-issue waiver as to this information, which does not concern Plaintiffs' RICO claims.

**IV. The motion is also premature.**

Plaintiffs' ability to answer some of these RFAs may change as discovery proceeds, including if PSA conducts third-party discovery from the IME physicians or as expert discovery in this case commences. If additional information from the IME physicians becomes available through such discovery, Plaintiffs intend to amend their responses to the relevant RFAs. Should the Court find that Plaintiffs are required to answer any of the RFAs to which they have stated an inability to answer at this time, Plaintiffs respectfully request that, pursuant to Federal Rule of Civil Procedure 36(a)(6), the Court "defer its final decision until a pretrial conference or a specified time before trial." The sufficiency of Plaintiffs' responses can better be assessed after the conclusion of third-party discovery, once Plaintiffs' knowledge regarding these third-party documents, and their authors, is as complete as it will be before trial.

Dated: August 21, 2026

**ROHN KURLAND, P.C.**

By: /s/ Amy Kurland
Amy Kurland, Bar No. 37419
AKurland@rohnkurland.com
1700 Market St, Suite 1005
Philadelphia, PA 19103
Telephone: +1.215.770.0320
Facsimile: +1.215.717.9697

**PERKINS COIE LLP**

David W.T. Daniels
david.daniels@ashurstperkins.com
Michael J. Wadden
michael.wadden@ashurstperkins.com
Sydney Veatch
sydney.veatch@ashurstperkins.com
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: +1.202.654.6200
Facsimile: +1.202.654.6211

David B. Massey
david.massey@ashurstperkins.com
Jacob Taber
jacob.taber@ashurstperkins.com
William Wilder
will.wilder@ashurstperkins.com
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
Telephone: +1.212.262.6900
Facsimile: +1.212.977.1649

Michael R. Huston
michael.huston@ashurstperkins.com
2525 E. Camelback Road, Suite 500
Phoenix, Arizona 85016-4227
Telephone: +1.602.351.8000
Facsimile: +1.602.648.7000

*Attorneys for Plaintiffs Uber Technologies, Inc. and Federal Express Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing to be electronically filed with the Clerk of the Court through the CM/ECF system. By electronically filing, the CM/ECF system shall send notification of such filing to counsel of record for each party and those registered to receive a Notice of Electronic Filing for this case.

Dated: August 21, 2026

**PERKINS COIE LLP**

By: *[/s/ David W. T. Daniels]*

David W. T. Daniels
david.daniels@ashurstperkins.com
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: +1.202.654.6200
Facsimile: +1.202.654.6211

*Counsel for Plaintiffs Uber Technologies, Inc. and Federal Express Corporation*