**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UBER TECHNOLOGIES, INC. and FEDERAL EXPRESS CORPORATION, | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | No. 2:25-cv-05365-MAK |
| SIMON & SIMON, P.C., MARC SIMON, CLIFTON BURT, PREMIER PAIN & REHAB CENTER, PC, ETHEL HARVEY, DANIEL PICCILLO, PHILADELPHIA SPINE ASSOCIATES, LLC, AND LANCE YARUS, | : | |
| Defendants. | : | |

**DEFENDANTS SIMON & SIMON, P.C. AND MARC SIMON'S**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION FOR PARTIAL SUMMARY JUDGMENT ON RICO STANDING**
**AGAINST UBER TECHNOLOGIES, INC.**

# TABLE OF CONTENTS

Page

I. INTRODUCTION/FACTUAL BACKGROUND ........................................ 1

II. FACTUAL HISTORY ........................................ 7

III. ARGUMENT ........................................ 7

A. Legal Standard. ........................................ 7

B. Uber Lacks RICO Standing Because It Admits It Has Not Suffered Injury. .......... 8

1. Uber Concedes That It Has Made No Payments and Thus Has Suffered No Injury to Business or Property. ........................................ 9

2. Even If Uber Could Characterize Aleka's Reinsurance Payments to Farmers as an "Injury," Those Payments Are Too Many Steps Removed from the Alleged Predicate Acts To Be Sufficient Under RICO's Strict Proximate Causation Standards. ........................................ 10

3. The "Collateral Source Rule" Does Not Create A RICO Injury for Uber. 14

IV. CONCLUSION ........................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Ayling*,
396 F.3d 265 (3d Cir. 2005)....7, 8

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006)....13

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
455 F.3d 195 (3d Cir. 2006)....7

*Berg v. First State Ins. Co.*,
915 F.2d 460 (9th Cir. 1990)....10, 15

*Bey v. Daimler Chrysler Services of North America, LLC*,
2006 WL 1344080 (D.N.J. May 15, 2006)....7

*Flynn v. Dep't of Corr.*,
739 F. App'x 132 (3d Cir. 2018)....1

*Franco v. Connecticut General Life Ins. Co.*,
647 F. App'x 76 (3d Cir. 2016)....8

*Hemi Group, LLC v. City of New York, N.Y.*,
559 U.S. 1 (2010)....5, 10, 11

*Johnson v. Beane*,
664 A.2d 96 (Pa. 1995)....14

*Knopick v. UBS Fin. Servs., Inc.*,
121 F. Supp. 3d 444 (E.D. Pa. 2015)....10, 13

*Kovalev v. Stephansky*,
2020 WL 553843 (E.D. Pa. Feb. 4, 2020)....15

*Leeper v. U.S.*,
756 F.2d 300 (3d Cir. 1985)....14

*Magnum v. Archdiocese of Philadelphia*,
253 F. App'x 224 (3d Cir. 2007)....16

*Maio v. Aetna, Inc.*,
221 F.3d 472 (3d Cir. 2000)....2, 7, 8, 15

*Nat'l Ass'n For Stock Car Auto Racing, Inc. v. Scharle*,
184 Fed. Appx. 270 (3d Cir. 2006)....................1, 7

*Roosevelt Road Re, Ltd. v. Subin*,
2026 WL 2108399 (2d Cir. July 22, 2026)....................5, 11, 12

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
171 F.3d 912 (3d Cir. 1999)....................15

*Steele v. Hospital Corp. of Am.*,
36 F.3d 69 (9th Cir. 1994)....................15

*Yucaipa American Alliance Fund I, LP v. Ehrlich*,
716 F. App'x 73 (3d Cir. 2017)....................16

**Statutes**

18 U.S.C. § 1962....................7

**Other Authorities**

Fed. R. Civ. P.
1....................1
12(d)....................7
56....................1, 7
56(a)....................6
56(b)....................7

# I. INTRODUCTION/FACTUAL BACKGROUND

The Simon Parties have carefully considered whether to file this motion for partial summary judgment at this juncture. We are certainly wary about overburdening the Court, and fully appreciate that this Court has set December 9, 2026 for the filing of summary judgment motions. However, "a party against whom a claim, counterclaim, or cross-claim is made may move for summary judgment 'at any time.'" *Nat'l Ass'n For Stock Car Auto Racing, Inc. v. Scharle,* 184 Fed. Appx. 270, 273 (3d Cir. 2006) (quoting Fed. R. Civ. P. 56(b)).[1] The Simon Parties are compelled to move for summary judgment now, based on recent discovery admissions by Uber that should put an immediate end to this lawsuit. As explained below, Uber's discovery answers have revealed that this RICO lawsuit is ***fatally flawed for lack of standing***.

It will be an enormous waste of resources for the Court and the parties to continue engaging in massive discovery, including dozens of intrusive depositions over the next two months, when there is no basis for Uber's claims to proceed due to lack of standing. Consistent with Fed. R. Civ. P. 1's mandate that the Rules of Civil Procedure be "construed, administered, and employed by the court and parties to secure the just, speedy, and inexpensive determination of every action and proceeding," the Simon Parties submit this initial Rule 56 motion.[2]

Uber has finally produced discovery answers that contradict its prior sworn pleadings and definitively confirm what the Simon Parties believed all along[3] – that Uber has sustained ***no injury***

---

[1] This initial motion is filed without waiver of the Simon Parties' right to raise these and all other issues in another Motion on December 9.

[2] *See Flynn v. Dep't of Corr.*, 739 F. App'x 132, 139 (3d Cir. 2018) (district courts have discretion to allow multiple summary judgment motions, including because "allowing a party to file a second motion for summary judgment is logical, and it fosters the 'just, speedy, and inexpensive' resolution of suits.") (quoting *Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010) (quoting Fed. R. Civ. P. 1)).

[3] All of the checks for the verdicts and settlements in the underlying state court cases have been paid by Farmers Insurance Exchange, not Uber. *See, e.g.*, Statement of Undisputed Material Facts ("SOF") ¶ 30; SIMONAPPX0000107, 108, 569, 112-116.

and thus has ***no standing*** on its RICO claims. *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000) (indispensable element of a RICO claim is "proof of actual monetary loss, i.e. an out of pocket loss"). A cursory review of what has transpired definitively establishes Uber's misrepresentations and changing theories.

Uber commenced this action nearly a year ago alleging that the Simon Parties' conduct directly caused it harm. *See* SOF ¶¶ 1-3; ECF 1, Comp. ¶ 146 (alleging that Uber "has been forced to incur legal costs in defending these lawsuits in excess of what would otherwise have been required" and that "[t]hese costs have included out-of-pocket costs, including attorney's fees, fees for independent medical examiners, and costs and expenses related to discovery to investigate the false statements and unnecessary treatments that resulted from the scheme.").

After the Simon Parties moved to dismiss the original Complaint, arguing that Uber lacked RICO standing (SOF ¶¶ 4-5; ECF 55 ¶ 2), Uber doubled down in an Amended Complaint, alleging specifically that it paid settlements and defense costs, as follows: "***Uber has incurred substantial expense, including defense costs, in litigating and settling false or artificially inflated claims***… These expenses include attorneys' fees, fees for independent medical examiners, costs and expenses related to discovery to investigate the false statements and unnecessary treatments, and costs from inflated settlements…" SOF ¶¶ 6-8; ECF 71 ¶ 440.

The Simon Parties again moved to dismiss the Amended Complaint based on lack of RICO standing because Uber's allegations of harm were not plausible. The Simon Parties stressed that the checks that were issued to resolve the underlying state court cases (which are the basis of Uber's RICO action) were issued not by Uber, but by a third party, Farmers Insurance Exchange ("Farmers"), who paid the losses that Uber was claiming as its damages. *See* SOF ¶¶ 9-10; ECF 82-1 at 20-21.

Uber responded with more misrepresentations, filing an opposition brief again falsely asserting that Uber, not Farmers, incurred settlement expenses and defense costs. Uber told this Court: "Uber has specifically alleged that it 'incurred . . . settlement expenses that would not have otherwise been incurred' and that it 'has been forced to incur legal expense' including 'costs from inflated settlements in reliance on the fraud that resulted from the scheme . . . .' At this stage, the Court must take these factual allegations as true." SOF ¶ 11-12; ECF 86 at 18.

The Court relied on Uber's allegations and allowed this case to proceed into discovery, noting that Uber had adequately pleaded that "the lawyers and doctors manufactured and transmitted false medical materials to inflate claims against Uber and thereby ***caused Uber to incur legal fees and inflated settlement costs***." SOF ¶¶ 13-15; ECF 99 at 35 (emphasis added). But in doing so, this Court stated that a direct causal connection to injury must be established. *Id.*

Discovery has forced Uber to reveal the truth. Uber has now completely reversed course in discovery, and finally acknowledged that ***Farmers—not Uber***—funds all of the alleged defense costs and settlement expenses that Uber claims as RICO damages. SOF ¶ 24; SIMONAPPX000031. This admission completely defeats Uber's RICO claims.

In Interrogatory No. 7, the Simon Parties plainly asked what, if any, money Uber had paid in the underlying state court matters and requested all supporting documents and information. Uber objected to this basic question, nonsensically citing the "collateral source rule," and then only listed a series of plaintiffs from the state court matters claiming it had paid "approximate costs for each." *See* SOF ¶¶ 17-20; SIMONAPPX000006 (Response to Interrogatory No. 7). Uber's non-response forced the Simon Parties to file a motion to compel answers to discovery to obtain this essential information. SOF ¶ 23; ECF 191.

In response to that motion to compel, and finally, almost one year after first initiating this

meritless lawsuit, Uber acknowledged what the Simon Parties have been telling this Court all along. Uber's answer as to who paid costs for the underlying state court cases was: "***With respect to costs such as settlements and attorney fees, payments were made by Farmers.*** The source documents that the Simon Defendants seek are not in Uber's possession." SOF ¶ 24; SIMONAPPX000031; ECF 193 at 2 (emphasis added).

In addition to that admission, and in response to the Court's Order granting in part the Simon Parties' motion to compel, Uber has now also produced documents making it even clearer that Farmers directly pays all of Uber's legal bills and settlement costs in the underlying state court matters. *See, e.g.*, SOF ¶ 26; SIMONAPPX000100-106. And to the extent Farmers is reimbursed, it is not by Uber Technologies, Inc., but rather by another insurance company, "Aleka Insurance, Inc.," through complex reinsurance agreements. SOF ¶¶ 31-35; SIMONAPPX117-149, 157-162, 163-184. This undisputed evidence produced by Uber establishes that Plaintiff Uber Technologies, Inc. makes none of the payments at issue.

In fact, Uber has produced insurance policies showing that Uber and its drivers are additional insureds on liability insurance policies issues by Farmers to a company called "Rasier," which appears to be a wholly-owned subsidiary of Uber. SOF ¶¶ 27-29; SIMONAPPX000039, 44, 74. After Uber's drivers cause accidents, Farmers pays legal costs to defend and settlements on behalf of Rasier and/or Uber and its drivers as additional insureds. *Id.* Then, [redacted]. SOF ¶¶ 32-33; SIMONAPPX117, 118, 148. We anticipate that Uber may argue that it funds Aleka in some way as a corporate parent. But such arguments and details are completely irrelevant because RICO standing does not permit parties more than one step removed from the RICO violation to claim harm.

This is a full stop. Discovery definitively shows that Uber has paid nothing and has no harm. Precedent is clear that a RICO lawsuit cannot be sustained where a secondary source, like Farmers, is paying the alleged damages. There is no caselaw in any jurisdiction that would support allowing Uber to continue with a RICO case in light of this admitted lack of standing. Only Farmers has standing to bring this RICO action.

Indeed, as detailed below, the U.S. Supreme Court has held "to state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'"[4] The Supreme Court has held that RICO proximate cause is *not* the same as the common law's "foreseeability" analysis—instead, the Court's "precedents make clear that in the RICO context, the focus is on the directness of the relationship between the conduct and the harm."[5] This RICO "direct relationship" requirement bars claims brought by a plaintiff for alleged harm caused by a RICO violation beyond the first step in the causal chain.[6] For example, reinsurers do not have RICO standing, even when they reimburse the insurance carrier who was harmed by a RICO violation, because their losses are too far removed from the alleged RICO violation to constitute a RICO injury.[7]

The concept of Uber hypothetically funding or investing in the third-party insurance company Aleka – in order for Aleka to make contractually guaranteed indemnity payments to Farmers, to reimburse Farmers for legal expenses and settlements that Farmers paid in connection with the underlying cases (under an insurance policy between Rasier and Farmers) as the result of a RICO violation – goes well beyond the first step in the causal chain. If a "theory of causation

---

[4] *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992)).
[5] *Id.* at 12.
[6] *Id.* at 10.
[7] *Roosevelt Road Re, Ltd. v. Subin*, 2026 WL 2108399 (2d Cir. July 22, 2026).

requires [the court] to move well beyond the first step, that theory cannot meet RICO's direct relationship requirement."[8] Indeed, [redacted]. SOF ¶¶ 31-35. And if Aleka does not have standing for its hypothetical reimbursement payments to Farmers—because Aleka is too many steps removed from the alleged RICO violation to satisfy the RICO "direct relationship" standard for proximate causation—then Uber, of course, would be even further removed if Uber is hypothetically funding Aleka to make those reimbursement payments. The bottom line is this Court does not need to engage in such a far-fetched and convoluted analysis. Under U.S. Supreme Court authority, any RICO injury to Uber cannot be "beyond the first step" in the causal analysis. But here, Uber acknowledges, as it must, that ***Farmers***—multiple steps removed from Uber—pays all defense costs.

Thus, because Uber has now admitted that it has no out-of-pocket losses as required for RICO standing, and because any injury Uber (or its affiliates) could even potentially claim to have hypothetically suffered would be insufficiently direct for proximate causation regardless, these undisputed facts warrant summary judgment now.

Daunting, harassing, intrusive and expansive discovery is set to occur over the next few months. Since Uber has now admitted that it lacks RICO standing, it would be patently unfair to allow this matter to continue and subject the Simon Parties to massive discovery costs. It will also be an incredible waste of judicial resources to allow this matter to proceed through discovery and for this court to have to sort through a myriad summary judgment issues when, by its own admission, Uber cannot even sustain its standing/injury burden. This Court clearly has the evidence, authority and discretion to dismiss Uber's claims now.

---

[8] *Hemi Group*, 559 U.S. at 10.

## II. FACTUAL HISTORY

The Simon Parties incorporate by reference the Statement of Undisputed Material Facts ("SOF") submitted with this Motion.

## III. ARGUMENT

### A. Legal Standard.

A party may move for summary judgment on any part of a claim or defense and "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (quoting *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109-10 (3d Cir. 1985))).

"A party against whom a claim, counterclaim, or cross-claim is made may move for summary judgment 'at any time.'" *Nat'l Ass'n For Stock Car Auto Racing, Inc. v. Scharle,* 184 Fed. Appx. 270, 273 (3d Cir. 2006) (quoting Fed. R. Civ. P. 56(b)). It is clear that nothing in Rule 56 precludes the filing of a motion for summary judgment before the conclusion of all discovery. To the contrary, Rule 56(b) specifically provides that "a party may file a motion for summary judgment at any time[.]" The plain language Rule 12(d) also leaves no doubt that a motion for summary judgment may be filed and considered by the court before all discovery has concluded. *See also*, *Bey v. Daimler Chrysler Services of North America, LLC*, 2006 WL 1344080, at *4 (D.N.J. May 15, 2006) (noting that "the law of this Court does not in any way prohibit the filing or determination of summary judgment motions prior to the close of discovery").

**B. Uber Lacks RICO Standing Because It Admits It Has Not Suffered Injury.**

"Apart from the Article III constitutional and prudential standing requirements.... plaintiffs seeking recovery under RICO must satisfy additional standing criterion set forth in section 1964(c) of the statute." *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000). Section 1964(c) requires "a RICO plaintiff to make two related but analytically distinct threshold showings… (1) that the plaintiff suffered an injury to business or property; and (2) that the plaintiff's injury was proximately caused by the defendant's violation of 18 U.S.C. § 1962." *Id.* at 483. "[A] showing of injury requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest." *Anderson v. Ayling*, 396 F.3d 265, 271 (3d Cir. 2005) (quoting *Maio*, 221 F.3d at 483). "[T]he injury to business or property element of section 1964(c) can be satisfied by allegations and proof of actual monetary loss, i.e., an out-of-pocket loss." *Maio*, 221 F.3d at 483.

As set forth below, there is no genuine issue of material fact that Uber lacks RICO standing and the Simon Parties are entitled to judgment as a matter of law on all of Uber's claims against them.

### 1. Uber Concedes That It Has Made No Payments and Thus Has Suffered No Injury to Business or Property.

In response to the Simon Parties' discovery requests—and in motion practice concerning the deficiencies in the responses to those requests—Uber has now finally admitted that it has not paid the attorneys' fees or settlements in the underlying cases that it seeks trebled damages for. SOF ¶¶ 17-24 (SIMONAPPX000006; SIMONAPPX000015-16) ("With respect to costs such as settlements and attorney fees, payments were made by Farmers."). Accordingly, Uber has not suffered any "actual monetary loss, i.e., an out-of-pocket loss." *Maio*, 221 F.3d at 483. Because Uber fails one of the "threshold" elements of a private plaintiff RICO claim, summary judgment against Uber is warranted. *See Franco v. Connecticut General Life Ins. Co.*, 647 F. App'x 76, 80-81 (3d Cir. 2016) (affirming grant of summary judgment on RICO claims where plaintiffs did not demonstrate they paid an "out-of-pocket loss").

Indeed, but for Uber's misrepresentations when opposing the Simon Parties' Motion to Dismiss the Amended Complaint – i.e., that the Court could not "infer that settlements by independent drivers were paid entirely by the drivers without any cost to Uber" (SOF ¶ 11) – Uber's claims would have been dismissed at the pleading stage. *See Maio*, 221 F.3d at 501; *Anderson*, 396 F.3d at 271.

Uber's admission that Farmers pays the fees and settlements (corroborated by the checks and invoices produced in discovery) ripens the Simon Parties' entitlement to summary judgment now. There is no further discovery needed, nor any reason for this Court to wait to enter judgment. By admitting Farmers pays the costs that Uber claims as its injury, Uber has surrendered its RICO claims.

### 2. Even If Uber Could Characterize Aleka's Reinsurance Payments to Farmers as an "Injury," Those Payments Are Too Many Steps Removed from the Alleged Predicate Acts To Be Sufficient Under RICO's Strict Proximate Causation Standards.

If Uber has paid anything out of pocket (and it has not), it could only be by way of funding indemnity payments made by another insurance company, Aleka, back to Farmers under separate contracts wholly disconnected to the allegations here. Yet, even if Uber had any such evidence, it would be irrelevant regardless because this at-least-four-degrees-of-separation "harm" does not satisfy RICO's proximate causation standards.

After the Court ordered Plaintiffs to produce its "unduly delayed core discovery for their damages" (ECF 194), Uber produced an "Indemnity Agreement" between Farmers and "Rasier, LLC, Portier, LLC, Schleuder, LLC, Uber USA, LLC" and "Aleka Insurance, Inc." SOF ¶ 31 (Uber_00145173) (SIMONAPPX000117-149). Under that agreement, [redacted] *Id.* ¶ 32 (SIMONAPPX0000118). In return, [redacted] *Id.* ¶ 33 (SIMONAPPX00000123-24, 148).

In other words, Uber has constructed a self-insurance scheme where: [redacted] This allows Uber to tell the world (namely legislators it lobbies for tort reform) that its "insurance costs" are too high when in reality *Uber's own affiliates* are the insurance company (or what the contract calls the "Indemnitors") reaping the premiums. The arrangement also gives the guise of a third party being responsible for Uber drivers' torts, which helps Uber in its driver classification efforts throughout the country.

Regardless of *why* Uber does this, it is clear that this arrangement does not result in a RICO injury to Uber, at least not one that passes RICO's strict proximate causation standards.

"[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'" *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992)). The Supreme Court has held that RICO proximate cause is *not* the same as the common law's "foreseeability" analysis—instead, the Court's "precedents make clear that in the RICO context, the focus is on the directness of the relationship between the conduct and the harm." *Id.* at 12.

"The Supreme Court requires the examination of three factors to determine whether an alleged RICO violation proximately caused a plaintiff's harm: (1) the directness of the injury, (2) the difficulty of apportioning damages, and (3) whether there are direct victims of the alleged violation that could better vindicate the policies underlying RICO." *Knopick v. UBS Fin. Servs., Inc.*, 121 F. Supp. 3d 444, 460 (E.D. Pa. 2015) (citing *Holmes*, 503 U.S. at 269-70). Here, Aleka's indemnity payments back to Farmers fail each prong of this analysis.

*First*, Uber has only produced the Indemnity Agreement showing *Aleka*'s obligation to make reimbursement payments to Farmers. Uber did not produce any documents evidencing actual payments by either Uber or Aleka. Regardless, such hypothetical documents would not help Uber's case. The concept of Uber funding Aleka – in order for Aleka to make contractually guaranteed indemnity payments to Farmers, on behalf of Rasier, to reimburse Farmers for payments that Farmers paid in connection with the underlying state court cases under an insurance policy between Rasier and Farmers – goes well beyond the first step in the causal chain. If a "theory of causation requires [the court] to move well beyond the first step, that theory cannot meet RICO's

direct relationship requirement." *Hemi Group*, 559 U.S. at 10.

Indeed, Aleka's payments to Farmers on behalf of Rasier are in essence "reinsurance" payments. Some of the contracts between Aleka and Farmers specifically refer to the relationship as [redacted]" SOF ¶ 35 (Uber_00145252) (SIMONAPPX000163-184).

Reinsurers who are end payors on allegedly fraudulent litigation claims do not have RICO standing because their losses are too far removed from the alleged RICO violation to constitute a RICO injury. *Roosevelt Road Re, Ltd. v. Subin*, 2026 WL 2108399 (2d Cir. July 22, 2026). In *Roosevelt Road*, the Second Circuit squarely addressed the very standing deficiencies present in this case. There, the plaintiffs alleged they had to "reimburse[] … primary insurers" in connection with claims resulting from "personal injury lawyers and their purported accomplices" seeking to "profit by filing bogus workers' compensation claims" arising out of allegedly fake construction accidents. *Id.* at *1-2. While the Second Circuit acknowledged that "the alleged RICO scheme might have 'ultimate[ly],' harmed Plaintiffs, '[m]ultiple steps ... separate the alleged fraud from the asserted injury.'" *Id.* at *2 (quoting *Hemi Group*, 559 U.S. at 15). Having to "pay and process claims for *another* insurance company" which in turn "had to cover for their insured" results in "daisy chains of causation" that are "'too remote' to establish RICO standing." *Id.* (quoting *Hemi Group*, 559 U.S. at 9). The rationale of the Second Circuit was clear: "[a]fter all, Plaintiffs were injured not only because of the fraud scheme, but also because they decided to enter a complex series of contracts that left them on the hook for harms to third (or even fourth) parties." *Id.* The Second Circuit's decision was grounded in well-settled Supreme Court precedent:

> [T]he statute does not empower just anyone who has suffered the consequences of a RICO scheme to sue. As the Supreme Court has

> recently reiterated, "[section] 1964(c)'s 'by reason of' language demands 'some *direct relation* between the injury asserted and the injurious conduct alleged.'" *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 612 (2025) (emphasis added) (quoting *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)). A RICO plaintiff thus must allege "proximate cause," *Holmes*, 503 U.S. at 268, and "whenever [a] plaintiff's theory of causation requires moving 'well beyond the first step'" in the causal analysis, "it 'cannot meet RICO's direct relationship requirement,'" *Med. Marijuana*, 604 U.S. at 612 (quoting *Hemi Grp.*, 559 U.S. at 10). In other words, if a plaintiff's RICO arguments rely on several "step[s] in the causal chain," *Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 142 (2d Cir. 2018) (internal quotation marks omitted) – *i.e.*, alleging that the defendant caused some harm to third parties, which in turn caused follow-on harm to the plaintiff – then its claims will fail.

*Id.* at *1.

The clear import of *Roosevelt Road* is that any injury to Uber cannot be "beyond the first step," in the causal analysis. But here, Uber acknowledges, as it must, that Farmers, multiple steps removed from Uber, pays all defense costs. Uber is several more steps removed than the reinsurer was in *Roosevelt Road*. "Uber Technologies, Inc." – the Plaintiff here – is not even a party to the Indemnity Agreement between Farmers and Rasier, Portier, Schleuder, Uber USA and Aleka. And, even if Uber somehow funds Aleka to make the payments contractually owed to Farmers on *Rasier's* behalf, the daisy chains of causation place Uber *at least* four steps away from the payments of settlements or attorney's fees in this case, which are 1) paid by Farmers at step one, 2) owed to be reimbursed by Rasier at step two, 3) guaranteed to be (and actually) reimbursed by Aleka at step three, and 4) then presumably, ultimately funded by Uber at step four. This is exactly the type of indirect connection to actual harm that the Second Circuit found insufficient, emphasizing that "[b]y design, "RICO's direct-relationship requirement" constrains civil RICO claims and may "present an insurmountable obstacle" even to parties that have suffered real harms.

*Second*, calculating and apportioning damages based on the complex "Indemnity

Agreement" would be untenable. That contract does not simply require Aleka's indemnity payments on the "pattern" cases at issue—or even just all Pennsylvania cases—but requires [redacted] *See* SOF ¶ 34 (S SIMONAPPX000143, 148; SIMONAPPX000157, 161). Attempting to calculate "injury" as a result of this derivative and broad-encompassing contract would require the Court "to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 465 (2006). This is not viable and is a good example of why direct injury is required for RICO proximate causation.

*Third*, Farmers is better situated to vindicate the alleged wrongs than Uber is, because Farmers is an allegedly direct victim who actually pays the attorneys' fees, settlements, and verdicts. *See Knopick v. UBS Fin. Servs., Inc.*, 121 F. Supp. 3d 444, 464 (E.D. Pa. 2015) ("The adjudication of the directly injured victim's claims would be "relatively straightforward" and thus "there is no need to broaden the universe of actionable harms to permit RICO suits by parties who have been injured only indirectly.").

Accordingly, even if Uber indirectly suffers some out-of-pocket expense by way of a separate and derivative contractual arrangement with Farmers, that payment is indisputably multiple steps down the causal chain and insufficient to establish the proximate causation requirement of RICO standing as a matter of law.

**3. The "Collateral Source Rule" Does Not Create A RICO Injury for Uber.**

As its final line of defense (and because the facts of Uber's non-payment are undisputed), Uber relies on an inapplicable legal argument to justify seeking tens of millions of dollars from

the Simon Parties without having paid anything to them in the first place: that the "collateral source rule" creates a RICO injury for Uber where no injury otherwise exists. This argument is nonsensical and should be rejected before any more money and time is wasted in this frivolous case.

The collateral source rule is a rule of state substantive law that "allows the victim of a tort to recover for damages caused by the tortfeasor regardless of compensation received from other independent or 'collateral' sources." *Leeper v. U.S.*, 756 F.2d 300, 303 (3d Cir. 1985). Critically, however, the rule only applies if the plaintiff has "suffered an actual loss." *Id.* at 304 ("[I]f Mr. Leeper received collateral compensation from the Postal Service *and* suffered an actual loss of income and/or benefits, state law would allow him to recover the lost earnings and/or benefits.") (emphasis in original).

Here, the collateral source rule does not apply to Uber because, as discussed, Uber has not suffered any actual loss. Farmers does not reimburse Uber; Farmers pays the attorneys' fees *directly* to Uber's lawyers and pays the settlements *directly* to the Simon Parties' clients. SOF ¶ 26 (SIMONAPPX000100-106); SOF ¶ 30 (SIMONAPPX0000107; SIMONAPPX000108; SIMONAPPX000109-111; SIMONAPPX000112-116). Further, the rule also does not apply here because Farmers' payments fully cover the losses, leaving nothing for Uber to owe. *Johnson v. Beane*, 664 A.2d 96, 98 (Pa. 1995) (holding collateral source rule inapplicable where insurance fully compensated plaintiff because "when an injured party is fully compensated for a particular loss by her underinsurance carrier, her right to sue the tortfeasor is extinguished. By operation of law, the underinsurance carrier acquires the right to sue the tortfeasor to recover the amount it paid its insured.").

Setting aside the clear non-application of this evidentiary rule of state tort law, the collateral

source rule does not apply here for a more fundamental reason: Uber does not bring an ordinary common law "tort" action; it brings a federal statutory civil RICO claim. In the RICO context, the collateral source rule does not wipe out the actual injury requirement or somehow "create" an injury for a RICO plaintiff. Because civil RICO requires "proof of concrete financial loss," it is "not enough that the [plaintiffs] show their insurance company had to pay out more than it otherwise would have without the alleged RICO violation" because "[t]his does not constitute financial loss to them." *Steele v. Hospital Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994). In *Steele*, the Ninth Circuit affirmed summary judgment on RICO claims brought by patients against a hospital for fraudulent health care bills that their insurers paid. *Id.* The court reasoned: "if the patients have paid none of the allegedly excessive charges out of their own pockets because those charges were covered by insurance, then they have suffered no financial loss." *Id.*[9] The Eastern District of Pennsylvania has accepted *Steele* (because it is entirely consistent with the Third Circuit's *Maio* decision) and has similarly found that "[i]t is not enough for [plaintiff] to allege that his insurance company paid out more than it had to pay without the alleged RICO violations; this does not constitute financial loss to him." *Kovalev v. Stephansky*, 2020 WL 553843, at *4 n.3 (E.D. Pa. Feb. 4, 2020) (citing *Steele*, 36 F.3d at 70).

Third Circuit law also forecloses application of the collateral source rule to the RICO claims here. Indeed, in *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, the

---

[9] The Ninth Circuit relied on its earlier precedent *Berg v. First State Ins. Co.*, 915 F.2d 460 (9th Cir. 1990). In *Berg*, the court ***rejected*** application of the collateral source rule on the independent ground that there was no evidence plaintiff paid for the insurance policy, which is similarly the case here since Uber has shielded and disclaimed any relevance to the premiums paid (if any) to Farmers. Uber refused to answer discovery requests about the amount of premiums it pays to Farmers (if any), claiming this information "is not relevant to any claim or defense in this case." SOF ¶ 21 (Interrogatory 8) (SIMONAPPX000007-8). Since Uber cannot demonstrate that it pays a premium to Farmers for the coverage, it cannot invoke the collateral source rule with respect to that coverage.

Third Circuit was uncertain about application of the rule to RICO claims but made clear the rule could only potentially apply "preventing a tortfeasor from benefitting from a **third party's payment to the injured party**." 171 F.3d 912, 928 n.9 (3d Cir. 1999) (emphasis added). Here, there is no "third party's payment to the injured party" because Farmers does not make payment to Uber; Farmers pays the fees and settlements directly. Regardless, more recent Third Circuit law shows the collateral source rule is entirely inconsistent with RICO standing because if there is even the *potential* for plaintiff to be reimbursed for a loss, plaintiff has no RICO standing. *See Yucaipa American Alliance Fund I, LP v. Ehrlich*, 716 F. App'x 73, 78 (3d Cir. 2017) (affirming dismissal of civil RICO claims for lack of RICO standing, where plaintiff claimed its attorneys' fees in underlying bankruptcy action were its injury, because the plaintiff had "sought reimbursement in the bankruptcy proceeding for attorneys' fees" meaning plaintiff "may suffer no injury at all depending on the outcome of" the underlying action).

Therefore, to whatever extent the collateral source rule applies to ordinary tort cases, it does not eliminate Congress' express intention to limit civil RICO claims to only those who have suffered an actual, concrete loss. This is for good reason. "Although RICO is to be read broadly ... Congress's limitation of recovery to business or property injury retains restrictive significance." *Magnum v. Archdiocese of Philadelphia*, 253 F. App'x 224, 226 (3d Cir. 2007) (internal quotations and citations omitted). That limitation is intended to assure "that RICO is not expanded to provide a federal cause of action and treble damages to each tort plaintiff." *Id.* (quoting *Maio*, 221 F.3d at 483). Uber's argument to the contrary – that it can seek and recover three times the amount of money it never paid based on evidentiary rules of state tort law – is incompatible with Congress' intent of limiting civil RICO standing to only those who have actually suffered a real, out-of-pocket injury.

Accordingly, the "collateral source rule" does not create a RICO injury for Uber, and summary judgment is warranted.

## IV. CONCLUSION

For these reasons, the Court should grant the Motion and enter judgment against Uber dismissing Uber's claims with prejudice.[10]

[10] Notably, Judge Merchant recently dismissed Uber's nearly identical claims in the Eastern District of New York at the pleading stage on separate alternative grounds, including lack of RICO standing for an unripe injury on account of "pending" cases being part of Uber's alleged "pattern." *Uber Technologies, Inc. v. Wingate, Russotti, Shapiro, Moses and Halperin, LLP, et al.*, 2026 WL 2364217 (E.D.N.Y. Aug. 14, 2026). In their second motion for summary judgment, the Simon Parties anticipate making an argument that FedEx's alleged injuries are similarly unripe given that FedEx has put at least one pending case at issue. *See Kirby et al v. FedEx Ground Package System, Inc. et al.*, No. 250303533 (Phila. C.C.P.).

Dated: September 2, 2026

Respectfully submitted,

**BLANK ROME LLP**

*/s/ Daniel E. Rhynhart*
James T. Smith (I.D. No. 39333)
Daniel E. Rhynhart (I.D. No. 78248)
Rebecca D. Ward (I.D. No. 79547)
Michael A. Stoolman (I.D. No. 326117)
Maegan S. Spitzer (I.D. No. 335905)
One Logan Square, 130 N. 18th Street
Philadelphia, PA 19103
Phone: (215) 569-5371
Email: Jim.Smith@BlankRome.com
Dan.Rhynhart@BlankRome.com
Rebecca.Ward@BlankRome.com
Michael.Stoolman@BlankRome.com
Maegan.Spitzer@BlankRome.com

*Attorneys for Defendants*
*Simon & Simon, P.C. and Marc Simon*

## CERTIFICATE OF SERVICE

I, Daniel E. Rhynhart, hereby certify that on September 2, 2026, a true and correct copy of the foregoing was served via ECF on all counsel of record.

*/s/ Daniel E. Rhynhart*
Daniel E. Rhynhart