**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UBER TECHNOLOGIES, INC. and FEDERAL EXPRESS CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>SIMON & SIMON, P.C., MARC SIMON, CLIFTON BURT, PREMIER PAIN & REHAB CENTER, PC, ETHEL HARVEY, DANIEL PICCILLO, PHILADELPHIA SPINE ASSOCIATES, LLC, AND LANCE YARUS,<br><br>Defendants. | CIVIL ACTION<br><br>No. 2:25-cv-05365-MAK |

**DEFENDANTS SIMON & SIMON, P.C. AND MARC SIMON'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON RICO STANDING AGAINST UBER TECHNOLOGIES, INC.**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Section VI(A) of the Court's Policies and Procedures, Defendants Simon & Simon, P.C. and Marc Simon (the "Simon Parties") submit this Statement of Undisputed Material Facts in Support of their Motion for Partial Summary Judgment against Plaintiffs Uber Technologies, Inc. ("Uber") on RICO Standing.

1. Uber filed this Action on September 18, 2025. ECF 1, Original Complaint.

2. In its original Complaint, Uber alleged that "it has incurred substantial expense in defending these false or inflated claims." *Id.* ¶ 146.

3. Specifically, Uber alleged it "has been forced to incur legal costs in defending these lawsuits in excess of what would otherwise have been required" and that "[t]hese costs have included out-of-pocket costs, including attorney's fees, fees for independent medical examiners, and costs and expenses related to discovery to investigate the false statements and unnecessary

treatments that resulted from the scheme." *Id.*

4. The Simon Parties moved to dismiss the original Complaint on December 19, 2025. ECF 55.

5. The very first argument raised by the Simon Parties was that Uber lacked RICO standing. *Id.* As part of that argument, the Simon Parties noted that "Uber does not plead that it paid any settlements (or verdicts) in the underlying cases." *Id.*, Motion to Dismiss ¶ 2.

6. Uber filed the Amended Complaint on January 26, 2026, adding FedEx as a Plaintiff and mooting the Simon Parties' motion to dismiss. ECF 71, Amended Complaint.

7. In the Amended Complaint, Uber now alleged that "Uber and FedEx have incurred defense costs ***and settlement expenses*** that would not have otherwise been incurred in reliance on the fraud." *Id.* ¶ 39 (emphasis added); *see also id.* ¶ 14 (Uber's reliance on defendants' misrepresentations "resulted in, among other things, settlement payments that would have not have been made…"); ¶ 98 ("Uber, FedEx, and others targeted by the scheme relied upon the misrepresentations made in the false medical records. Such reliance resulted in, among other things, ***settlement payments*** that would not have been made or that would have been made in a lesser amount but for the fraud.") (emphasis added).

8. For Uber specifically, Uber alleged that:

> Uber has incurred substantial expense, including defense costs, in litigating **and settling** false or artificially inflated claims. As such, Uber has been forced to incur legal expense in defending these lawsuits in excess of what would have otherwise been required. These expenses include attorneys' fees, fees for independent medical examiners, costs and expenses related to discovery to investigate the false statements and unnecessary treatments, and **costs from inflated settlements** in reliance on the fraud that resulted from the scheme, including but not limited to the pattern cases specifically identified in this Amended Complaint.

*Id.* ¶ 440 (emphasis added).

9. All Defendants moved to dismiss the Amended Complaint on February 23, 2026. ECF 82.

10. The Defendants argued that "it is not plausible that Uber actually paid any settlements" since Uber pled that it was voluntarily dismissed from all of the Simon & Simon cases. ECF 82-1, Memorandum in Support of Motion at 20-21 ("While Uber is begging the Court to draw the inference that *Uber* paid settlements, that inference is not plausible or logical because Uber simultaneously pleads that 'Simon & Simon dismissed Uber from each of the then-pending nearly thirty cases in which Burt was a treating physician.'").

11. In its Opposition, Uber wrote: "Defendants ask this Court to infer that settlements by independent drivers were paid entirely by the drivers without any cost to Uber," and then stated that this argument had "no place at the motion to dismiss stage." ECF 86 at 18.

12. Instead, Uber argued, "[a]t this stage, the Court must take these factual allegations as true and may not draw an inference against Uber." *Id.*

13. In denying the Defendants' motion to dismiss, this Court agreed with Uber, stating "The lawyers' and doctors' settlement-agreement, knowledge, apportionment, insurer, and third-party-reliance arguments do not defeat proximate cause at the pleading stage. Their settlement arguments ask us to resolve ***fact questions*** about what Uber knew, why it settled, ***who paid***, and what effect the settlement terms have on causation." ECF 99 at 35 (emphasis added).

14. The Court found that Uber had "plausibly allege[d] a direct relation between the predicate acts and its injury" by "alleging the lawyers and doctors manufactured and transmitted false medical materials to inflate claims against Uber and thereby cause Uber to incur legal fees and inflated settlement costs. We decline to dismiss for lack of standing based on fact issues on

proximate causation." *Id.*

15. The Court concluded that Uber "will now need to adduce evidence to support its liability and damages theories." ECF 99 at 38.

16. After filing their Answer, and in response to an order to show cause as to why the Simon Parties can raise a "standing" defense, the Simon Parties proffered to the Court that the facts outside of the pleadings will show that Uber lacks RICO standing because "Farmers Insurance Exchange indemnifies and defends Uber and the Uber driver in these cases" and that "discovery may very well show that Uber does not have (and did not ever have) any actual monetary, out-of-pocket loss as required for federal RICO standing." ECF 149 at 4-5.

17. In discovery, the Simon Parties propounded interrogatories on Uber asking it to "identify the amount of money, if any, that Uber (not Farmers or any other Person) paid in: i) attorney's fees; ii) costs; iii) settlements; and iv) verdicts for each of the Underlying Uber Actions, and the person(s) at Uber most knowledgeable about this subject matter." Declaration of Daniel E. Rhynhart ("Rhynhart Decl.") **Exhibit 1** (Interrogatory 7) (SIMONAPPX000006).

18. The interrogatory also stated "If Rasier, Aleka, or any affiliate paid any portion (or all) of the amounts of money responsive to this Interrogatory, indicate as such in the response." *Id.*

19. Uber responded to the Interrogatory by stating "Uber objects to this Interrogatory because Uber is entitled to recover its full damages incurred as a result of the scheme under the collateral source rule." *Id.*

20. But Uber also stated: "Uber has paid the following approximate costs in each of the Underlying Uber Actions as of July 1, 2026." *Id.*

21. Further, Uber refused to answer interrogatories about the amount of premiums it pays to Farmers (if any), claiming this information "is not relevant to any claim or defense in this

case." *Id.* (Interrogatory 8) (SIMONAPPX000007-8).

22. The Simon Parties also asked for the source documents reflecting payments of Uber's "costs" through document requests. Rhynhart Decl. **Exhibit 2** (Request No. 7) (SIMONAPPX000015-16).

23. After weeks of such documents not being produced, the Simon Parties filed a motion to compel on these documents and information. ECF 191.

24. In response to this Motion, Uber finally admitted to the Court and to the Simon Parties that: "With respect to costs such as settlements and attorney fees, payments were made by Farmers. The source documents that the Simon Defendants seek are not in Uber's possession." ECF 193 at 2. Because this Opposition contains an evidentiary admission, it is attached to the Rhynhart Decl. as **Exhibit 3** (SIMONAPPX000031).

25. The Court granted the Simon Parties' Motion in part, and ordered Plaintiffs to produce its "unduly delayed core discovery for their damages." ECF 194.

26. Under the Order, Uber produced documents showing Farmers is billed directly for the attorneys' fees incurred by Uber's lawyers. *See, e.g.*, Rhynhart Decl. **Exhibit 5** (Uber_00143878) (SIMONAPPX000100-106).

27. Uber also produced in discovery the insurance policy between Rasier, LLC ("Rasier") and Farmers. Rhynhart Decl. **Exhibit 4** (Uber_00028045) (SIMONAPPX000039-99).

28. Under the policy between Rasier and Farmers, Uber is an additional insured. *Id.* at Uber_00028080 (SIMONAPPX000074).

29. Farmers indemnifies and defends Rasier, Uber, and the Uber driver under the policy. *Id.* at Uber_00028050 (SIMONAPPX000044), Section II(A) "Coverage."

30. Even before discovery, it was clear that Farmers pays the settlements and verdicts *directly* to the Simon Parties' clients. *See, e.g.*, Rhynhart Decl. **Exhibit 6** (Simon000543) (SIMONAPPX0000107) (February 5, 2026 settlement payment for Claimant A); Rhynhart Decl. **Exhibit 7** (Simon000548) (SIMONAPPX000108) (October 21, 2025 settlement payment for Claimant H); Rhynhart Decl. **Exhibit 8** (Simon000569) (SIMONAPPX000109-111) (July 14, 2025 verdict payment for Claimant F); Rhynhart Decl. **Exhibit 9** (SIMONTM000169874) (SIMONAPPX000112-116) (December 5, 2025 verdict payment for Claimant AA).

31. Pursuant to the Court's Order, Uber also produced an "Indemnity Agreement" between Farmers and "Rasier, LLC, Portier, LLC, Schleuder, LLC, Uber USA, LLC" and "Aleka Insurance, Inc." Rhynhart Decl. **Exhibit 10** (Uber_00145173) (SIMONAPPX000117-149).

32. Under that agreement, those Uber-affiliated entities (notably *not* including the Plaintiff here, Uber Technologies, Inc.) [redacted] *Id.* Art. I(B) (SIMONAPPX000118).

33. In return, [redacted] *Id.* Art. III(E) (SIMONAPPX000123-124); Art. II(Y) (SIMONAPPX000122); Art. II(M) (SIMONAPPX000120); Art. II(Z) (SIMONAPPX000122); Appendix A (SIMONAPPX000138-149).

34. The "percentage" Aleka owes to Farmers is also different based on when losses accrued per amendments to the Indemnity Agreement. *Compare id.* at SIMONAPPX000143, 148 [redacted], with Rhynhart Decl. **Exhibit 11** (Uber_00145228) at SIMONAPPX000157, 161 [redacted].

35. An older contract between Aleka and Farmers is specifically called a [redacted] and refers to Aleka as [redacted] [redacted] Rhynhart Decl. **Exhibit 12** (Uber_00145252) (SIMONAPPX000163-184).

Dated: September 2, 2026

Respectfully submitted,

**BLANK ROME LLP**

*<u>/s/ Daniel E. Rhynhart</u>*
James T. Smith (I.D. No. 39333)
Daniel E. Rhynhart (I.D. No. 78248)
Rebecca D. Ward (I.D. No. 79547)
Michael A. Stoolman (I.D. No. 326117)
Maegan S. Spitzer (I.D. No. 335905)
One Logan Square, 130 N. 18th
Street
Philadelphia, PA 19103
Phone: (215) 569-5371
Email: Jim.Smith@BlankRome.com
Dan.Rhynhart@BlankRome.com
Rebecca.Ward@BlankRome.com
Michael.Stoolman@BlankRome.com
Maegan.Spitzer@BlankRome.com

*Attorneys for Defendants*
*Simon & Simon, P.C. and Marc Simon*

**CERTIFICATE OF SERVICE**

I, Daniel E. Rhynhart, hereby certify that on September 2, 2026, a true and correct copy of the foregoing was served via ECF on all counsel of record.

*/s/ Daniel E. Rhynhart*
Daniel E. Rhynhart