**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UBER TECHNOLOGIES, INC. and FEDERAL EXPRESS CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>SIMON & SIMON, P.C., MARC SIMON, CLIFTON BURT, PREMIER PAIN & REHAB CENTER, PC, ETHEL HARVEY, DANIEL PICCILLO, PHILADELPHIA SPINE ASSOCIATES, LLC, AND LANCE YARUS,<br><br>Defendants. | : | CIVIL ACTION<br><br>No. 2:25-cv-05365-MAK |

**DEFENDANTS SIMON & SIMON, P.C. AND**
**MARC SIMON'S MOTION TO COMPEL**

Pursuant to Section III(B)(1) of the Court's Policies and Procedures, Defendants Simon & Simon, P.C. and Marc Simon ("the Simon Parties"), by their undersigned counsel, move for an Order compelling Plaintiff Uber Technologies, Inc. ("Uber") to produce documents from the email files of two Uber claims personnel, Heather Hughes and Alyssa Waddell, and to produce the remaining claims notes documents for the relevant claimants stored in Uber's "Zendesk" system.

In denying the Defendants' motion to dismiss, the Court noted: "The lawyers' and doctors' settlement-agreement, knowledge, apportionment, insurer, and third-party-reliance arguments do not defeat proximate cause at the pleading stage. Their settlement arguments ask us to resolve fact questions about what Uber knew, why it settled, who paid, and what effect the settlement terms have on causation." ECF 99 at 35. Accordingly, in discovery, the Simon Parties sought to discover these facts and propounded document requests on Uber for, among other things:

- "the entire claims files for each of the Underlying Uber Actions"; (RFP 3)
- documents "reflecting Uber's authorization of the settlements in each of the Underlying Uber Actions that have settled"; (RFP 16)
- documents "relating to Uber's decision to join in the settlement[s]"; (RFP 19)
- documents "relating to settlements of Underlying Uber Actions after the filing of the Original Complaint and/or the Amended Complaint" (RFP 20)
- documents "demonstrating that any Defendant's alleged conduct caused Uber to pay legal fees and settlements"; (RFP 21) and
- documents "relating to Uber's or anyone's alleged reliance on any alleged misrepresentations" (RFP 22).

**Ex. A**, Request Nos. 3, 16, 19, 20, 21, 22.

Uber agreed to "search for and produce non-privileged documents responsive" to these requests. *See id.* In doing so, Uber produced documents from its "Zendesk" system, which Uber describes in its ESI disclosure as "an internal ticketing system used by Uber's Claims Team." The Zendesk reports capture external claims communications between Uber claims managers (including members of Uber's claims team, Heather Hughes and Alyssa Waddell) and Farmers Insurance Exchange ("Farmers") litigation managers regarding the underlying lawsuits. The reports discuss when the cases are filed, the status of discovery and defense expert reports, and when and *why* the cases are settled by Farmers (who pays the settlements). The Zendesk production is helpful (albeit incomplete and further production of Zendesk documents is needed), but contains only *external* communications and not internal Uber emails or messages showing the full extent of what Uber knows or believes about the underlying cases and the decision to settle them.

Indeed, the Zendesk reports that *have been produced* appear to be just the tip of the iceberg about Uber's and Farmer's knowledge and lack of reliance. They show that *both* Uber (through employees like Ms. Hughes and Ms. Waddell) and Farmers (through the litigation managers who make the decision to settle the cases) knew exactly about what Uber now claims is "fraud" and settle the cases anyway, including for reasons disproving that *anybody* relied on the alleged misrepresentations in this case:

- Uber _00142687 (**Ex. B**) shows Farmers informing Uber's Alyssa Waddell in April 2025 that the Jahleel Bennett case (one of the additional 25 claimants) settled for $260,000 despite a defense expert who "refutes" Dr. Yarus' life care plan because that defense expert had been previously found liable for medical malpractice and because "9/12 jurors were African American – thus likely to be favorable to plaintiff." *Id.* at page 142688.

- Uber_00142752 (**Ex. C**) shows Uber's Heather Hughes and Farmers discussing in August 2025 how Dajuan Samuel's case (Claimant M) "is a Simon/Simon case – known for pushing cases to eve of trial, trying to bolster value with strategic and unwarranted Life Care Plans"; but nonetheless, Farmers and Uber still valued the case between $75K to $100K on the low end. *Id.* at page 142753. *Only days later*, Claimant M's case settled for $50,000, which Ms. Hughes called "Great!" and a "good number." **Ex. D** at page 142760.

While revealing, the documents that Uber produced are not complete. None of the Zendesk files discuss the decision to settle the cases that settled *after* the RICO lawsuit was filed: Claimants A (2/4/26), H (10/20/25), L (12/4/25), P (12/22/25), S (6/24/26), and T (6/24/26). Those post-RICO-filing settlements are critical to the Simon Parties' defenses because they show the impossibility of any reliance by Uber, Farmers, or any other third party. If those claims notes are as candid as the ones above, they are likely to contain admissions about the reasons why cases are settling *after* Uber has already told this Court and the world that the cases are "fraud." The lack of Uber's or anyone else's reliance on misrepresentations is highly relevant.

> Although reliance on the defendant's alleged misrepresentation is not an element of a RICO mail-fraud claim, the plaintiffs' theory of injury in most RICO mail-fraud cases will nevertheless depend on establishing that someone—whether the plaintiffs themselves or third parties—relied on the defendant's misrepresentation. That is

> because reliance will typically be a necessary step in the causal chain linking the defendant's alleged misrepresentation to the plaintiff's injury: if the person who was allegedly deceived by the misrepresentation (plaintiff or not) would have acted in the same way regardless of the misrepresentation, then the misrepresentation cannot be a but-for, much less proximate, cause of the plaintiffs' injury.

*In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 183 F.4th 178, 194-95 (3d Cir. 2026).[1]

The Zendesk documents are also incomplete because they only reflect *external* communications between Uber and Farmers. For that reason, the Simon Parties requested that Uber collect and produce email custodial files of relevant Uber witnesses (especially Ms. Hughes and Ms. Waddell) so that *internal* communications are also captured. Email files will also contain the attachments and metadata that are currently missing from these "Zendesk" reports.

While Uber agreed to collect those documents, it has delayed and obfuscated the production to such an extent that the Simon Parties are forced to file this motion. *See* Rule 26.1(f) Certification. Indeed, as already raised with the Court, Uber is claiming "unforeseen circumstances" are preventing it from timely producing these documents – which are responsive to the *first* set of document requests served by the Simon Parties nearly three months ago. *Id.* Indeed, not a single email ESI custodial file has been produced by either Plaintiff in this case.

The Simon Parties are wary of burdening the Court with motion practice – especially since it is their contention that Uber's claims should be dismissed with prejudice requiring no more discovery at all by or to Uber. ECF 213. But the Simon Parties must protect their rights and attain critical documents in the short time left for fact discovery as both sides turn toward the deposition phase of the case.

**WHEREFORE,** the Simon Parties respectfully request that this Court grant the Motion.

[1] Of course, Uber's RICO claims already fail for the independent reasons set forth in ECF 213.

Dated: September 14, 2026

Respectfully submitted,

**BLANK ROME LLP**

*/s/ Daniel E. Rhynhart*

James T. Smith (I.D. No. 39333)
Daniel E. Rhynhart (I.D. No. 78248)
Rebecca D. Ward (I.D. No. 79547)
Michael A. Stoolman (I.D. No. 326117)
Maegan S. Spitzer (I.D. No. 335905)
One Logan Square, 130 N. 18th Street
Philadelphia, PA 19103
Phone: (215) 569-5371
Email: Jim.Smith@BlankRome.com
Dan.Rhynhart@BlankRome.com
Rebecca.Ward@BlankRome.com
Michael.Stoolman@BlankRome.com
Maegan.Spitzer@BlankRome.com

*Attorneys for Defendants*
*Simon & Simon, P.C. and Marc Simon*

**CERTIFICATE PURSUANT TO LOCAL RULE 26.1(f)**

I, Michael A. Stoolman, hereby certify that I attempted to resolve this discovery motion with counsel for Uber.

On August 7, 2026, and in response to the Simon Parties' June 23, 2026 first set of document requests, Uber produced documents from its "Zendesk" system reflecting communications between Uber and Farmers personnel about the underlying cases. The documents contained relevant communications involving Uber's Heather Hughes and Alyssa Waddel who had not been previously disclosed on either Uber's initial disclosures or ESI disclosures as relevant custodians.

I wrote to counsel for Uber on August 12, 2026 asking why those names had not been disclosed and if their email files had been collected, to which counsel for Uber said they had not. **Ex. E** at 12-14.

On August 17, I asked that their email files be collected and produced given gaps in the "Zendesk" documents. Uber's counsel responded on August 19 stating "non-privileged communications are happening within Zendesk, not within email threads." *Id.* at 10-12.

I responded on August 21 stating that email files need to be produced and that any missing Zendesk files also need to be produced. *Id.* at 9-10. Having heard no response, I emailed counsel again on August 25 asking for a meet and confer call. *Id.* at 8.

The call took place on August 27. On the call Uber agreed to collect the Hughes and Waddell email files and agreed to ensure no Zendesk files were omitted from their search, including Zendesk files discussing the settlements of the cases that settled after the RICO lawsuit was filed (A, H, L, P, S, and T). *Id.* at 6.

However, by September 2 no documents had been produced so I again emailed counsel for Uber who said they were in the process of collecting both the Hughes and Waddell email files and

remaining the Zendesk files and that both sets of documents would be produced "ideally by the end of [that] week." *Id.* at 4-5. However, again, no documents were produced that week.

The following week, on September 7, I again reached out asking when the documents will be produced. *Id.* at 3. Having received no response, I then again emailed counsel on the morning of September 9 noting that a scheduled deposition of Heather Hughes will have to be postponed since her email files had still not yet been produced. I also noted the Simon Parties would seek relief from the Court if the documents were not produced by end of that day. *Id.* at 2-3.

Counsel for Uber responded at 4:03 PM on September 9 claiming there was no dispute, that they would consent to rescheduling Ms. Hughes' deposition, but that "unforeseen circumstances outside of [their] control" meant the documents could not be produced by end of day, and that they were "making every effort to produce them to [the Simon Parties] next week." *Id.* at 2.

I responded the next morning on September 10 asking for the details about the "unforeseen circumstances" again noting the delay in production is causing delays in depositions. *Id.* at 1. At the time of filing this Motion, counsel for Uber has still not responded to my email.

Although counsel for Uber has represented (in both numerous emails and on the telephonic meet and confer call) that such documents will be produced and that there is "no dispute," the Simon Parties cannot simply keep waiting for documents that are responsive to their original documents requests served over three months ago, given the approaching end of fact discovery and need to conduct depositions in the time that is remaining. The Simon Parties thus feel compelled to raise the issue with the Court at this juncture. While the Simon Parties acknowledge that Uber represents there is no dispute, as a practical matter the continual lack of production and remaining time left for discovery make the Motion necessary under these circumstances.

Dated: September 14, 2026

*/s/ Michael A. Stoolman*
Michael A. Stoolman

**CERTIFICATE OF SERVICE**

I, Daniel E. Rhynhart, hereby certify that on September 14, 2026, a true and correct copy of the foregoing was served via email on all counsel of record.

*/s/ Daniel E. Rhynhart*
Daniel E. Rhynhart