**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UBER TECHNOLOGIES, INC. and FEDERAL EXPRESS CORPORATION,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**SIMON & SIMON P.C., MARC SIMON, CLIFTON BURT, PREMIER PAIN & REHAB CENTER, PC, ETHEL HARVEY, DANIEL PICCILLO, PHILADELPHIA SPINE ASSOCIATES, LLC, and LANCE YARUS,**<br>**Defendants.** | CIVIL ACTION<br><br>No: 2:25-cv-05365-MAK |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS SIMON & SIMON, P.C. AND MARC SIMON'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 2

I. Legal standard .......... 2

II. Uber was injured. .......... 2

III. Uber's injury was proximately caused by the racketeering activity. .......... 6

A. There is a direct relationship between the conduct and the harm. .......... 6

B. The three reasons for requiring directness of injury are met. .......... 11

1. There is no difficulty ascertaining the amount of damage attributable to the scheme. .......... 11

2. There is no risk of double recovery. .......... 12

3. Uber is best situated to vindicate the law. .......... 13

IV. The motion should be denied because it is directed at a part of the case intertwined with another that must be tried. .......... 14

CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abadi v. Crown Indus., LLC*,
2019 WL 3572874 (E.D. Pa. Aug. 5, 2019) ....................13

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006)....................9–10

*Austin v. Thyssenkrup Elevator Corp.*,
254 A.3d 760 (Pa. Super. Ct. 2021)....................4

*Berg v. First State Ins. Co.*,
915 F.2d 460 (9th Cir. 1990) ....................12

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008)....................11

*Diaz v. Gates*,
420 F.3d 897 (9th Cir. 2005) (en banc) (per curiam)....................13

*Franco v. Conn. Gen. Life Ins. Co.*,
647 F. App'x 76 (3d Cir. 2016) ....................6

*Frankford Tr. Co. v. Advest, Inc.*,
943 F. Supp. 531 (E.D. Pa. 1996) ....................3, 6

*Hausknecht v. John Hancock Life Ins. Co. of N.Y.*,
334 F. Supp. 3d 665 (E.D. Pa. 2018) ....................12

*Hemi Group, LLC v. City of New York*,
559 U.S. 1 (2010)....................10

*Holmes v. SIPC*,
503 U.S. 258 (1992)....................9–10

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*,
804 F.3d 633 (3d Cir. 2015)....................2, 7–9

*In re Insulin Pricing Litig.*,
2025 WL 3773210 (D.N.J. Dec. 30, 2025) ....................13

*Judon v. Travelers Prop. Cas. Co. of Am.*,
773 F.3d 495 (3d Cir. 2014)....................3

*Lerman v. Joyce Int'l Inc.*,
10 F.3d 106 (3d Cir. 1993)....................................................................................13

*Maio v. Aetna, Inc.*,
221 F.3d 472 (3d Cir. 2000)....................................................................................6

*Martin v. City of Reading*,
118 F. Supp. 3d 751 (E.D. Pa. 2015) ....................................................................14

*Medical Marijuana, Inc. v. Horn*,
604 U.S. 593 (2025)................................................................................................2

*Oscar v. University Students Co-Operative Ass'n*,
965 F.2d 783 (9th Cir. 1992) (en banc) ..................................................................13

*Pa. Prot. & Advocacy, Inc. v. Pa. Dep't of Pub. Welfare*,
402 F.3d 374 (3d Cir. 2005)....................................................................................2

*Pre-Settlement Fin., LLC v. Ellis*,
2019 WL 3543999 (D.N.J. Aug. 2, 2019) ...............................................................5

*Roche Diagnostics Corp. v. Smith*,
2022 WL 4596720 (D.N.J. Sept. 30, 2022) ..............................................................8

*Rodriguez v. McKinney*,
878 F. Supp. 744 (E.D. Pa. 1995) ..........................................................................12

*Roosevelt Road Re, Ltd. v. Subin*,
2026 WL 2108399 (2d Cir. July 22, 2026).....................................................8–9, 13–14

*St. Luke's Health Network Inc. v. Lancaster Gen. Hosp.*,
967 F.3d 295 (3d Cir. 2020)................................................................................2, 7–8

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
171 F.3d 912 (3d Cir. 1999)....................................................................................12

*Steele v. Hospital Corporation of America*,
36 F.3d 69 (9th Cir. 1994) ...................................................................................12–13

*Sunlight Elec. Contracting Co. v. Turchi*,
918 F. Supp. 2d 392 (E.D. Pa. 2013) ....................................................................3, 5

*Taylor v. Rederi A/S Volo*,
374 F.2d 545 (3d Cir. 1967)....................................................................................14

**STATUTES**

18 U.S.C. § 1964(c) ..................................................................................................2

## PRELIMINARY STATEMENT

The Simon Defendants say on this prematurely filed motion that Uber cannot show any injury to its business or property because the actual cash transfers to attorneys and litigants were made by Uber's insurer, Farmers, and not directly from an Uber bank account. The Simon Defendants have their facts wrong. Farmers operates here as a claims administrator—not a principal—that writes some but not all checks to pay for expenses incurred by Uber as a result of the scheme. In addition to payments effectuated through Farmers, Uber itself makes out-of-pocket payments to cover certain expenses, and that in and of itself is enough to deny the motion.

But even as to the checks that Farmers may issue, the substantial majority of such amounts is itself funded *by Uber*. That funding is made pursuant to a claims processing arrangement under which Farmers sweeps cash from a collateral account maintained by Uber's captive insurance subsidiary (Aleka) but that is ultimately funded by Uber. That financial burden on Uber constitutes injury to its business or property and is compensable under the RICO statute. Such injury is directly related to the racketeering activity in question. The Simon Defendants do not sue Farmers—they target Uber by filing lawsuits against it. When the Simon Defendants sue Uber, Uber retains defense counsel whom it is obligated to pay. Uber is also contractually obligated to pay settlements to personal injury claimants. That Uber pays such obligations through a third-party intermediary does not render them indirect. Those payments from Uber to Farmers, made mechanically whenever Farmers advances payment to attorneys or claimants, come out of Uber's pocket to satisfy Uber's contractual obligations and necessarily result from the fraud. Under controlling precedent, such payments are direct and establish proximate cause.

The causal chain here is short and straightforward. No intervening third party must act before Uber's injury is complete. No third party is the target. The Simon Defendants' motion should be denied.

## ARGUMENT

### I. Legal standard

The RICO statute provides that "any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore" for treble damages, costs, and attorneys fees. 18 U.S.C. § 1964(c). To establish statutory standing, a plaintiff must prove injury to business or property, "but for" cause, and proximate cause. *St. Luke's Health Network Inc. v. Lancaster Gen. Hosp.*, 967 F.3d 295, 300 (3d Cir. 2020). In the RICO context, "injured" means harmed or damaged. *Medical Marijuana, Inc. v. Horn*, 604 U.S. 593, 601, 609 (2025). Proximate cause focuses on the directness of the relationship between the conduct and the harm, *id.* and involves consideration of three "fundamental causation concerns": (i) difficulty in ascertaining the amount of damages attributable to the violation; (ii) whether there is a risk of double recovery; and (iii) whether there are directly injured victims who are better positioned to vindicate the law as private attorneys general. *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 804 F.3d 633, 646 (3d Cir. 2015); *see also St. Luke's*, 967 F.3d at 300.

In responding to this motion for partial summary judgment, Uber need only show a triable issue of material fact such that a reasonable jury could return a verdict for the plaintiffs. *Pa. Prot. & Advocacy, Inc. v. Pa. Dep't of Pub. Welfare*, 402 F.3d 374, 379 (3d Cir. 2005). The Court is required to draw all reasonable inferences in Uber's favor. *Id.* The Simon Defendants challenge only injury and proximate cause. The motion should be denied because abundant evidence supports each such requirement.

### II. Uber was injured.

Uber was undeniably injured by the racketeering activity set out in the Amended Complaint. As the Supreme Court held last term, a plaintiff has been "injured in his business or property" if his "business or property has been harmed or damaged." *Med. Marijuana, Inc.*, 604 U.S.

at 601, 609 (providing as examples being forced "to do business with the mob," having one's bank account "drain[ed] … using a computer password obtained by violence," and the extortion of a ransom payment). This occurs whenever a "commercial enterprise suffers a loss of money." *Frankford Tr. Co. v. Advest, Inc.*, 943 F. Supp. 531, 533 (E.D. Pa. 1996) (holding that investment mismanagement which diminished commercial plaintiff's returns constituted injury to business or property). There is no question that Uber has been injured under this standard.

First, the existence of injury is judicially admitted. In their Answer, the Simon Defendants admit that "Uber settled" personal injury actions "for significant sums," and that Uber filed the Amended Complaint "after paying Simon & Simon's clients." ECF No. 119 at 2. These admissions establish that Uber was injured when it made settlement payments. "It is well-settled that judicial admissions, or factual assertions in a party's pleadings, are binding on the party asserting them." *Sunlight Elec. Contracting Co. v. Turchi*, 918 F. Supp. 2d 392, 396 n.3 (E.D. Pa. 2013). The Simon Defendants are bound by these judicial admissions and that is the end of any inquiry on injury. *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 502 n.6 (3d Cir. 2014) ("A fact asserted in a pleading, which is both unequivocal and which would normally require evidentiary proof, constitutes a judicial admission.").

Second, the evidence shows that Uber's own employees incurred out-of-pocket costs, reimbursed by the company, as a result of the scheme. Declaration of Paul Nordeman, Uber Ex. H, SIMONAPPX000361–62 ("Nordeman Decl.") ¶¶ 2–6; Declaration of Paul Picinich, Uber Ex. J SIMONAPPX000364–65 ("Picinich Decl."), ¶¶ 2–5. These payments did not come from Farmers. They came from Uber. Uber was also harmed by the unnecessary time and effort expended by its claims management and in-house legal teams in managing the fraudulent meritless cases prose-

cuted by the Defendants. Parr Decl. ¶ 20. Such damage constitutes injury. Again, the Court need go no further.

Third, the evidence also shows that Uber was required to retain separate outside counsel to defend itself from the fraudulent Simon & Simon claims. Declaration of Andy Parr, Uber Ex. A, SIMONAPPX000185–191 ("Parr Decl.") ¶ 6. Uber therefore incurred the obligation to pay such counsel. *Austin v. Thyssenkrup Elevator Corp.*, 254 A.3d 760 (Pa. Super. Ct. 2021) (recognizing the common law right of Pennsylvania attorneys to seek recovery from their clients for the reasonable value of their services). Further, Uber undertook the obligation to pay settlements of fraudulent claims directed at it and its independent drivers. *See, e.g.,* Parr Decl. ¶¶ 7, 11; Uber Ex. B.1 at SIMONAPPX000192; Uber. Ex. B.2 at SIMONAPPX000198. Each time that Farmers wrote a check to effectuate payments for such obligations, Uber suffered injury because it pays the substantial majority of every such dollar that Farmers expends. Parr Decl. ¶¶ 8–16. As the Parr Declaration details, Uber is an insured under liability policies with Farmers that create a duty to defend Uber. Under a separate Indemnity Agreement, Uber's captive insurance company, Aleka, "accept[s] a percentage of the underwriting risk on the Policies" issued by Farmers, SIMONAPPX000118, § I.B, and is required to "indemnify and shall promptly reimburse" Farmers "for all Retained Liabilities." SIMONAPPX000122 § III.A. Retained Liabilities are the "sum of Indemnifiable Losses plus Indemnifiable Program Expenses plus Indemnifiable Loss Adjustment Expenses." SIMONAPPX000122 § II.Y. Losses include "all amounts payable by [Farmers] within the terms and limits of its Policies … in settlement of claims or losses." SIMONAPPX000121 § II.R. Loss Adjustment Expenses include "(v) attorney fees incurred owing to a duty to defend"

as well as "(vi) costs of engaging experts and consultants," among other "settlement, defense or appeal," and "litigation" expenses. SIMONAPPX000120 § II.P.[1]

Aleka is not, as the Simon Defendants now claim, a "third-party insurance company" which Uber "hypothetically fund[s] or invest[s]." Br. 5. Contrary to what they now say, the Simon Defendants judicially admitted in their Answer (and therefore can no longer dispute, *Sunlight Elec.*, 918 F. Supp. 2d at 396 n.3) that "Uber uses a captive insurance company, Aleka Insurance Inc.—a wholly-owned subsidiary of Uber, whose board and executive committee consists of Uber executives—to internalize 95% of Uber's insurance risk …." ECF No. 119 at 4. It is therefore admitted that Aleka is an integral and essential part of Uber's business. Further, Aleka does not have any separate source of revenue outside of Uber affiliated lines of business and is subject to regulatory capital requirements. Parr Decl. ¶ 17. Uber is accordingly required to make contributions to Aleka to maintain Aleka's capital reserves. *Id*. Hence, Uber is injured in the amounts set forth in the Indemnity Agreement because dollars spent on settlements or attorney's fees in connection with lawsuits involving drivers who use the Uber App came out of Uber's pocket. *Id.* ¶¶ 17–18. Uber in fact made such payments and hence was injured. *Id.*[2]

Indeed, in reporting its annual and quarterly financial results, Uber "consolidate[s] [its] wholly-owned subsidiaries and majority-owned subsidiaries over which [Uber] exercise[s] con-

[1] To calculate "Indemnifiable Losses," the parties multiply the "Retained Liability Percentage" by the amount of "Losses" and Loss Adjustment Expenses. SIMONAPPX000120 § II.M. The "Retained Liability Percentage" is an agreed-upon percentage for each category of loss. SIMONAPPX000122 § II.Z.

[2] The Simon Defendants suggest that summary judgment is warranted because Uber has not yet "produce[d] any documents evidencing actual payments by either Uber or Aleka" to Farmers. Br.11. But evidence of the payments themselves is not required to create a triable issue of fact here given the uncontested fact that such payments occurred. Parr Decl. ¶¶ 17–18. Further, discovery is ongoing and neither Uber nor any other party has yet to complete its rolling production of documents. An award of summary judgment on this basis would be improperly premature. *Pre-Settlement Fin., LLC v. Ellis*, 2019 WL 3543999, at *6 (D.N.J. Aug. 2, 2019).

trol." Parr Decl. ¶ 18; Uber Ex. C.1 at SIMONAPPX000287; Uber Ex. C.2 at SIMON-APPX000338. Accordingly, every dollar that Aleka pays out decreases Uber's balance sheet. Parr Decl. ¶ 18.

Again, injury requires only that a "commercial enterprise suffers a loss of money." *Frankford Tr. Co.*, 943 F. Supp. at 533. Uber has shown a loss of money with respect to its direct payment of expenses and the payments it must make under its sharing arrangement with Farmers. The Simon Defendants cite no case to the contrary. They rely on *Maio v. Aetna, Inc.*, 221 F.3d 472 (3d Cir. 2000), and *Franco v. Conn. Gen. Life Ins. Co.*, 647 F. App'x 76 (3d Cir. 2016), but neither case supports an inference that Uber lacks an injury. In *Maio*, the plaintiffs were purchasers of defendants' health insurance who alleged that they had received a substandard insurance product. 221 F.3d at 474. Although there was no question that plaintiffs had paid premiums to the defendant, these payments were not relevant to the Court of Appeals' RICO standing analysis, which turned on the speculative nature of their injury. *Id.* at 495–500; *see also id.* at 490 (noting that the "property at issue [was] not real or personal property"). And *Franco* only stands for the unremarkable proposition that a RICO plaintiff must show some out-of-pocket loss, not that such loss must take the form of a payment directly from the plaintiff to the defendant. 647 F. App'x at 81.

As such, there is a triable issue of fact as to injury.

## III. Uber's injury was proximately caused by the racketeering activity.

### A. There is a direct relationship between the conduct and the harm.

The evidence also shows a direct relationship between the racketeering conduct and Uber's injury. Uber pays expenses arising from lawsuits that, as the Amended Complaint alleges, would not have been brought absent the scheme. Nordeman Decl. ¶¶ 2–5. Farmers has no role in such payments. There is only one step in that causal chain. The connection between injury and fraud could not be more direct. Payment of such expenses is in and of itself sufficient to deny the motion.

The causal chain between Defendants' conduct and payments made by Farmers to Uber's defense counsel or on settlement agreements is also direct. In each instance, Uber is the target of defendants' fraud and incurs obligations as a result. Uber enters into fee agreements with its counsel for which it is responsible as a result of the scheme. Uber agrees to make settlement payments as a result of the scheme. Uber bears the substantial majority of all such payments. This causal chain is not rendered somehow indirect because payments are directed through Aleka and then Farmers. Intermediate payment mechanisms simply do not render an injury indirect. That would result in an absurdity akin to saying that a defrauded plaintiff has no direct injury because he chose to make his payment to the fraudster via a bank check rather than cash.

Third Circuit precedent holds that a loss is direct even where intermediated by a third-party payment mechanism. In *St. Luke's*, the plaintiffs and defendants were hospitals competing for a fixed pool of tobacco settlement money maintained by the Commonwealth. 967 F.3d at 297–298. Plaintiffs alleged that defendants' fraudulent submissions to the pool caused them to be overpaid, which reduced the pool available to be paid to the plaintiffs by the third-party payor. *Id.* at 298. The Third Circuit held that the plaintiffs could recover even though they did not directly rely on defendant's fraudulent submissions because the "alleged manipulation to increase their share of the limited funding necessarily resulted in Plaintiffs receiving a decreased proportion of those assets." *Id.* at 302. The presence of a third-party intermediary (the Commonwealth) did not interrupt the causal chain—the reduction in payments from the pool was the direct and inevitable result of the defendant's fraud.

As the Third Circuit further explained in *Avandia*, the "presence of intermediaries … in the causal chain" is no obstacle to direct causation where no "decision" by those intermediaries "caused [the plaintiff's] injuries." *Avandia*, 804 F.3d at 644 (holding that plaintiff union health and

welfare funds had standing to sue pharmaceutical manufacturer for inflating drug prescriptions and profits by concealing safety risks from third-party physicians who prescribed the drug and patients who took it, causing increased costs to plaintiffs). Hence in both *St. Luke's* and *Avandia* the Third Circuit found directness notwithstanding a third-party intermediary because there was no showing that the "conduct causing [the plaintiff's] injuries was different than the conduct allegedly constituting a RICO violation." *Avandia*, 804 F.3d at 643; *see also Roche Diagnostics Corp. v. Smith*, 2022 WL 4596720, at *9 (D.N.J. Sept. 30, 2022) (pharmaceutical manufacturer had standing to sue retailer to recover rebate payments made by manufacturer to third-party insurers as a result of the retailer's fraud because the retailer "used the insurance providers as mere conduits to collect payments from" the plaintiff manufacturer). The Simon Defendants do not identify any "decision" by Farmers, Aleka, or any other party that caused Uber's harm. Further, as in *Avandia*, the conduct that "caused [Uber's] injuries is the same conduct forming the basis of the RICO scheme alleged in the" Amended Complaint that Uber will prove at trial: the prosecution of fraudulent lawsuits against Uber necessarily resulted in injury to Uber's business and property by operation of its claims processing arrangement with Farmers. *Avandia*, 804 F.3d at 643.

By contrast, the Simon Defendants cite no authority that Farmers's status as claims handler renders indirect Uber's expenditures to fund obligations that it has incurred as a result of the fraud. The Simon Defendants' heavy reliance on the Second Circuit's recent summary order in *Roosevelt Road Re, Ltd. v. Subin*, 2026 WL 2108399 (2d Cir. July 22, 2026), is particularly misplaced. That case was brought by a reinsurer, which alleged that it was injured by fake construction accidents and "bogus workers' compensation claims" filed "against various parties involved with the construction projects, including owners, general contractors, and construction managers" who held insurance. *Id.* at *1 (cleaned up). The plaintiff in *Roosevelt Road* was not the defendant in any of

these allegedly bogus claims or even the insurer, but rather a reinsurer and "claims administrator" that had to "pay and process claims for *another* insurance company." *Id.* at *2. Those claims were therefore "purely contingent" on harms to the insureds. *Id.* at *3. Unlike the reinsurer in *Roosevelt Road*, Uber is the *defendant* in the underlying fraudulent personal injury litigations, and so its harm is not contingent on harms that Defendants caused to anyone other than Uber itself.

The Supreme Court precedents that the Second Circuit relied upon in *Roosevelt Road* similarly do not help the Simon Defendants because none of those cases involved intermediating payment mechanisms. Rather, they illustrate the sort of highly attenuated and speculative multi-step damages theory asserted by parties who—unlike Uber—were not targets. As the Third Circuit explained, the Supreme Court "has found proximate cause lacking in RICO cases when the conduct directly causing the harm was distinct from the actions that gave rise to the fraud." *Avandia*, 804 F.3d at 642. That is not the case here.

In *Holmes v. SIPC*, 503 U.S. 258 (1992), plaintiff Securities Investor Protection Corporation (SIPC) alleged that defendants had manipulated certain stocks, which caused losses to broker-dealers who had invested in those stocks, which harmed customers of those broker-dealers who had *not* invested in the manipulated stocks whose claims were subrogated to SIPC. *Id*. at 262. This causal chain was not direct because those subrogated customers were not the target of the stock manipulation; and their losses could also have been caused by other investment and business decisions of the broker-dealers that had nothing to do with the defendants. *Id*. at 272–273. Uber by contrast is the target of the scheme and its injury is only caused by the scheme.

In *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006), the plaintiff's theory was that defendants, owners of the plaintiff's "principal competitor" for the sale of steel mill products, caused it harm by "defrauding the New York tax authority and using the proceeds from the fraud

to offer lower prices designed to attract more customers," causing plaintiff's lost sales. *Id.* at 454, 457–458. "The cause of [the plaintiff's] asserted harms" was "a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)." *Id.* at 458. The direct target of the defendant's tax evasion was the State—an "immediate victim" of the alleged RICO violation that could "be expected to vindicate the laws by pursuing [its] own claims." *Id.* at 460. Again, Uber here is the target of the racketeering scheme.

Finally, in *Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010), the Supreme Court rejected a claim by New York City tax authorities that an out-of-state cigarette seller's failure to report customer information to the state had made it more difficult to collect cigarette tax revenue from those customers. *Id.* at 9. Because the "conduct directly responsible for the City's harm" was not defendants' failure to file reports but rather the customers' independent *decision* not to pay taxes, the City could not show proximate cause—the defendants' conduct only "made it easier for a *fourth* party (the taxpayer) to cause harm to the plaintiff (the City)." *Id.* at 11. Here, by contrast, Defendants' alleged racketeering activity directed at Uber is the very conduct that caused Uber to incur obligations to pay expenses that it paid through the claims processing mechanism.

The Simon Defendants do not and cannot identify any independent, third-party cause of Uber's losses analogous to the "broker-dealers' poor business practices" in *Holmes*, 503 U.S. at 272, the customers who chose (for whatever reason) not to patronize the plaintiff in *Anza*, 547 U.S. at 459–460, or the tax-evading cigarette purchasers in *Hemi Group*, 559 U.S. at 11. Rather, the entirety of their challenge is that the money Uber is contractually obligated to pay Farmers as reimbursement for payments advanced to law firms and personal injury claimants, in satisfaction of Uber's obligations, passes through several Uber subsidiaries as a matter of internal accounting.

Br.13. But those are not independent causal steps involving third-party decisionmakers—they are the automatic and ministerial flow of funds within Uber and to Uber's payment agent, Farmers.

Uber's injuries were caused by Defendants because it "was a foreseeable and natural consequence of [Defendants'] scheme" targeting Uber with fraudulent lawsuits that Uber would incur unwarranted attorneys' fees and pay unwarranted settlements. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008) (finding that plaintiff participants in county-run tax lien auction showed injury proximately caused by other auction participant notwithstanding fact that fraud was directed at county rather than the plaintiff and caused a reduction in liens available to plaintiff from that third party). That was the very purpose of the scheme. The injury to Uber's business or property was proximately caused by Defendants' racketeering conduct.

### B. The three reasons for requiring directness of injury are met.

Each of the three practicable reasons for requiring a direct injury—namely, (i) difficulty in ascertaining amount of damages attributable to a violation, (ii) risk of double recovery, and (iii) whether other directly injured victims are better positioned to vindicate the law—supports a finding that the injury is direct.

#### 1. There is no difficulty ascertaining the amount of damage attributable to the scheme.

The amount of damages suffered by Uber is readily calculable. The expenses it pays its employees are easy to measure. Uber's share of the amount paid as a result of the outside counsel it retains and the amount of any settlement it is obliged to pay is simple arithmetic: the amount of the payments attributable to Defendants' racketeering activity multiplied by the Retained Liability Percentage applicable under the Indemnity Agreement. Parr Decl. ¶¶ 15–16. Dollars swept from Aleka's collateral account had been contributed and must be replenished by Uber. *Id.* ¶¶ 17–18.

Uber's right to recover under RICO cannot possibly be barred by the fact that calculating damages requires some addition and multiplication. *See, e.g.*, *Hausknecht v. John Hancock Life Ins. Co. of N.Y.*, 334 F. Supp. 3d 665, 682 (E.D. Pa. 2018) (finding that RICO damages claim was "neither speculative nor difficult to calculate" where damages consist of "the amount by which the loan and accruing interest reduced, and continue to reduce," an insurance death benefit); *Rodriguez v. McKinney*, 878 F. Supp. 744, 749–750 (E.D. Pa. 1995) (finding "no difficulties" in calculating damages of "the outstanding student loan balances plus any credited loan payments").

**2. There is no risk of double recovery.**

Uber's agreements with Farmers also eliminate any risk of double recovery. An endorsement to the underlying insurance policy that Farmers issued in Uber's favor authorizes Uber to collect amounts paid out by Farmers, holding any amounts attributable to Farmers in trust. Parr Decl. ¶ 21; SIMONAPPX000088 § B.2. Under the Indemnity Agreement, Farmers in turn is required to share such amounts pursuant to the agreed sharing percentages. Parr Decl. ¶ 21; SIMON-APPX000125 Art. V. There is only a single loss here—namely, the expenses paid. If Uber sues and recovers, the trust arrangement satisfies any claim that Farmers may have to such funds.

Uber is entitled to recover every cent paid by Farmers to law firms and personal injury claimants in satisfaction of Uber's own contractual obligations that resulted from Defendants' racketeering conduct. The Third Circuit acknowledged in *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912 (3d Cir. 1999), that under the collateral source rule and in the context of a RICO action, damages are not reduced by payments by a third party—Farmers—to the injured party—Uber. *Id.* at 928 n.9.[3] But the Court need not decide that issue

[3] The Simon Defendants' reliance on the Ninth Circuit's decision in *Steele v. Hospital Corporation of America*, 36 F.3d 69 (9th Cir. 1994), is misplaced. That case did not concern the Pennsylvania collateral source rule. *See Berg v. First State Ins. Co.*, 915 F.2d 460, 467 (9th Cir. 1990) ("A federal court applies state law when it deals with the collateral source rule."). And it relied on another

now. If Uber can sue for the entire expense paid, it has to hold Farmers's share in trust. There is no double recovery. If Uber can only sue for its own share and Farmers's share remains outstanding, Farmers's injury would be reduced and again there would be no double recovery if Farmers were to successfully pursue its own claim.

Finally, there is no doubt as to whether a double recovery would be possible as between Uber and Aleka, because Aleka has assigned all its rights and interest in any claims in this litigation to Uber. Parr Decl. ¶ 22; Uber Ex. D at SIMONAPPX000339.[4] Thus, it makes no difference even if, as the Simon Defendants claim, Aleka is the proper plaintiff here. Br.10–14. Uber is pursuing both its own claims and Aleka's claims against Defendants and therefore has standing.

#### 3. Uber is best situated to vindicate the law.

Finally, Uber and not Farmers is the best situated plaintiff. The Simon Defendants' claim that only Farmers may bring suit is here contradicted by its own authority. In *Roosevelt Road*, the Second Circuit held that, in the usual case, "insurers who are obligated to pay the expenses of another may generally not recover under RICO against the party who caused the damages, because their injuries are indirect since they derive wholly from the injuries sustained by the third parties." 2026 WL 2108399, at *3 (cleaned up). While an insurer "might" have RICO standing if it "were the *direct* target of the fraud" because the defendant defrauded "the insurance company itself—

---

case, *Oscar v. University Students Co-Operative Ass'n*, 965 F.2d 783 (9th Cir. 1992) (en banc), which has since been abrogated as imposing an unduly narrow "concrete financial loss" requirement. *Diaz v. Gates*, 420 F.3d 897, 898 (9th Cir. 2005) (en banc) (per curiam) (abrogating *Oscar* and holding that lost employment opportunities constituted a cognizable injury to business or property). In any event, *Steele* concerned "speculative injuries"—the diminution of health insurance benefits that plaintiffs could possibly have used in the future—not the concrete out-of-pocket costs at issue here. 36 F.3d at 70–71.

[4] RICO claims are freely assignable and that an assignee has standing so long as the assignor was injured in its business or property. *In re Insulin Pricing Litig.*, 2025 WL 3773210, at *6–7 (D.N.J. Dec. 30, 2025) (citing *Lerman v. Joyce Int'l Inc.*, 10 F.3d 106 (3d Cir. 1993)); *see also Abadi v. Crown Indus., LLC*, 2019 WL 3572874, at *2–3 (E.D. Pa. Aug. 5, 2019).

not a third party who then recovers from the insurance company," *id.* at *3 n.1, the Simon Defendants adduce no evidence here that Farmers (and not Uber) was the target of the Simon Defendants' prosecution of lawsuits against Uber.

Further, under the Indemnity Agreement, Farmers bears only a small percentage of any expense here. Uber bears the vastly larger share. As such, Farmer is neither incentivized economically nor situated under the law to act as a private attorney general as the statute intends. Uber is both the target of the scheme and has borne the substantial majority of the resulting expense. It is by far the best situated party to vindicate the law here.

## IV. The motion should be denied because it is directed at a part of the case intertwined with another that must be tried.

Apart from the Simon Defendants' failures to accurately describe the factual record, the Court should also deny this premature motion—filed while document discovery is ongoing and prior to deposition or expert discovery—because the claims it targets (Uber's) are intertwined with other claims (FedEx's) that must be tried. The fraud scheme here forms a pattern that harms both Uber and FedEx. The same evidence showing fraud against Uber is admissible at trial to show a pattern of racketeering activity that injured FedEx. As such, the supposed efficiencies that the Simon Defendants tout as a justification for bringing this premature motion are non-existent. The scope of discovery and trial will remain the same. This Court has the discretion to deny such a summary judgment motion—even if ripe—where it is directed at a part of the action that "is intertwined with another claim that must be tried." *Taylor v. Rederi A/S Volo*, 374 F.2d 545, 549 (3d Cir. 1967); *Martin v. City of Reading*, 118 F. Supp. 3d 751, 783 (E.D. Pa. 2015). The Court should exercise its discretion and deny the motion for that further reason.

## CONCLUSION

For the foregoing reasons, the Simon Defendants' motion should be denied. In the alternative, Uber respectfully requests that the Court defer consideration of this motion until the close of discovery, which will permit consideration of any residual fact issues on a fuller record. Declaration of David Daniels, Uber Ex. E, SIMONAPPX000344-45, ¶ 5.

Dated: September 23, 2026

**ROHN KURLAND, P.C.**

Amy Kurland, Bar No. 37419
AKurland@rohnkurland.com
1700 Market St, Suite 1005
Philadelphia, PA 19103
Telephone: +1.215.770.0320
Facsimile: +1.215.717.9697

**ASHURST PERKINS COIE US LLP**

By: /s/ David W. T. Daniels
David W. T. Daniels
david.daniels@ashurstperkins.com
Michael J. Wadden
michael.wadden@ashurstperkins.com
Sydney Veatch
sydney.veatch@ashurstperkins.com
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: +1.202.654.6200
Facsimile: +1.202.654.6211

David B. Massey
david.massey@ashurstperkins.com
Jacob Taber
jacob.taber@ashurstperkins.com
William Wilder
will.wilder@ashurstperkins.com
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
Telephone: +1.212.262.6900
Facsimile: +1.212.977.1649

Michael R. Huston
michael.huston@ashurstperkins.com
2525 E. Camelback Road, Suite 500
Phoenix, Arizona 85016-4227
Telephone: +1.602.351.8000
Facsimile: +1.602.648.7000

*Attorneys for Plaintiffs Uber Technologies, Inc. and Federal Express Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing to be electronically filed with the Clerk of the Court through the CM/ECF system. By electronically filing, the CM/ECF system shall send notification of such filing to counsel of record for each party and those registered to receive a Notice of Electronic Filing for this case.

Dated: September 23, 2026

**ASHURST PERKINS COIE US LLP**

By: *\/s/ David W. T. Daniels*
David W. T. Daniels
david.daniels@ashurstperkins.com
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: +1.202.654.6200
Facsimile: +1.202.654.6211

*Counsel for Plaintiffs Uber Technologies, Inc. and Federal Express Corporation*