**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UBER TECHNOLOGIES, INC. and FEDERAL EXPRESS CORPORATION, | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | No. 2:25-cv-05365-MAK |
| SIMON & SIMON, P.C., MARC SIMON, CLIFTON BURT, PREMIER PAIN & REHAB CENTER, PC, ETHEL HARVEY, DANIEL PICCILLO, PHILADELPHIA SPINE ASSOCIATES, LLC, AND LANCE YARUS, | : | |
| Defendants. | : | |

**DEFENDANTS SIMON & SIMON, P.C. AND MARC SIMON'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON RICO STANDING AGAINST UBER TECHNOLOGIES, INC. (ECF 213)**

Pursuant to Section IV(C) of the Court's Policies and Procedures, Defendants Simon & Simon, P.C. and Marc Simon submit this Reply brief in support of their Motion for Partial Summary Judgment on RICO Standing Against Plaintiff Uber Technologies, Inc. (the "Motion," ECF 213).

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 4

1. Uber Admitted It Has Not Paid Settlements. ..... 4
2. "Sweeps" and "Mechanical Payments" Reimbursing Farmers Are Not A Direct Injury Under Supreme Court And Third Circuit Law. ..... 5
3. Uber's Trivial Costs Do Not Establish RICO Standing. ..... 9
4. There Is No Reason to Defer Ruling on this Motion. ..... 10

III. CONCLUSION ..... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006)....................2, 9

*Bridge v. Phoenix Bond & Indemnity Company*,
553 U.S. 639 (2008)....................7

*CSB-Sys. Int'l Inc. v. SAP Am., Inc.*,
2012 WL 1521321 (E.D. Pa. Apr. 30, 2012)....................2

*Gordon v. Pasquarello*,
2023 WL 2505538 (E.D. Pa. Mar. 14, 2023)....................4

*Hemi Group, LLC v. City of New York, N.Y.*,
559 U.S. 1 (2010)....................2, 8

*Holmes v. Secs. Investor Protection Corp.*,
503 U.S. 258 (1992)....................1, 7

*Humana, Inc. v. Indivior, Inc.*,
2022 WL 17718342 (3d Cir. Dec. 15, 2022)....................8

*In re Avandia Mktg. Sales Pracs. & Prod. Liab. Litig.*,
804 F.3d 633 (3d Cir. 2015)....................2, 3, 6, 7, 8

*K&G Contracting, Inc. v. Warfighter Focused Logistics, Inc*,
689 F. Supp. 3d 35 (E.D. Pa. 2023)....................4

*Med. Marijuana, Inc. v. Horn*,
604 U.S. 593 (2025)....................1, 2, 5

*Roosevelt Road Re, Ltd. v. Subin*,
2026 WL 2108399 (2d Cir. July 22, 2026)....................3, 7, 8

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
171 F.3d 912 (3d Cir. 1999)....................5

*St. Luke's Health Network Inc v. Lancaster Gen. Hosp.*
967 F.3d 295 (3d Cir. 2020)....................2, 3, 6

## I. INTRODUCTION

The United States Supreme Court has been crystal clear regarding the necessary proof in civil RICO cases stating, "Time and again, we have reiterated that § 1964(c)'s 'by reason of' language demands 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 612 (2025) (emphasis added) (quoting *Holmes v. Secs. Investor Protection Corp.*, 503 U.S. 258, 268 (1992)). RICO claims require more direct harm caused by the alleged racketeering than the proximate cause required in civil tort or fraud cases, so that RICO cases do not overwhelm the judiciary and supplant all common law tort and fraud cases. The plaintiff bringing the RICO claim must have suffered the harm *itself,* directly, and cannot assert a claim for harm suffered by someone else, or for its own supposed harm two or more steps removed from the alleged racketeering injury. Uber cannot establish this direct connection and has clearly and unmistakably admitted in both its answers to discovery and in response to this Motion that Farmers Insurance Exchange and some convoluted, layered reimbursement process pays for the losses allegedly occurring in the state court cases.

Despite pleading that Uber *itself* (not Farmers) suffered "substantial defense costs and settlement expenses" in order to survive Rule 12(b)(6) dismissal,[1] Uber has now admitted the truth and agrees that Farmers *did* actually make those payments—precisely as Simon had originally asserted in its motion to dismiss. But Uber now has a new argument that it insists must overcome summary judgment: "proof" of statutory RICO standing consisting of a single $238.56 hotel room bill for a trial witness and a $73.98 travel reimbursement from one of its in-house counsel going to watch a trial.[2] That evidence, which was produced twenty minutes before Uber filed its Opposition, is insufficient to establish RICO standing because it is trivial compared to what

[1] *See* ECF 71 ¶ 39; *see also id.* ¶ 440.
[2] SIMONAPPX000361-66.

Farmers pays.[3] Beyond scrounging for these receipts, Uber also engineered a retroactive "assignment" of Aleka's claims in this case to Uber.[4] This assignment, which Uber's Andy Parr agreed to with himself just days before the Opposition was filed, is meaningless because Aleka does not have a direct injury either.[5]

Critically, what Uber did *not* do in the last three weeks was create a dispute of material fact over what it had already admitted in discovery: "With respect to costs such as settlements and attorney fees, **payments were made by Farmers**."[6] This undisputed fact warrants summary judgment. Even if Uber funds Aleka to reimburse Farmers for some amount of the fees and settlements that Farmers pays, such reimbursement is "indirect" because it is more than one step down the causal chain. "Whenever the plaintiff's theory of causation requires moving 'well beyond the first step,' it 'cannot meet RICO's direct relationship requirement.'" *Med. Marijuana*, 604 U.S. at 612 (2025) (quoting *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 10 (2010)).

The Third Circuit cases that Uber cites follow that Supreme Court precedent (as they must). *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 804 F.3d 633, 645 (3d Cir. 2015) (there is no RICO standing where "plaintiffs only 'suffered a loss because of the harm that defendants brought upon [a] third party'"); *St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*, 967 F.3d 295, 300 (3d Cir. 2020) ("[P]roximate causation is employed in civil RICO as a limiting principle

[3] *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460 (2006) (finding lack of RICO standing where plaintiff alleged other third party was defrauded "out of a substantial amount of money" and therefore could be "expected to pursue the appropriate remedies" meaning "there is no need to broaden the universe of actionable harms to permit RICO suits by parties who have been injured only indirectly.").

[4] SIMONAPPX000339-42.

[5] The retroactive assignment was also ineffective. *See CSB-Sys. Int'l Inc. v. SAP Am., Inc.*, 2012 WL 1521321, at *4 n.7 (E.D. Pa. Apr. 30, 2012) ("As a general rule, a plaintiff must have standing to sue at the time the suit is brought and *'nunc pro tunc* assignments are not sufficient to confer retroactive standing.'").

[6] SOF ¶ 24; SIMONAPPX000031; ECF 193 (emphasis added).

intended to stymie a flood of litigation, reserving recovery for those who have been directly affected by a defendant's wrongdoing.").

Uber points to irrelevant portions of the *Avandia* and *St. Luke's* decisions discussing how the ***reliance*** of a third-party intermediary does not break the causal chain for a plaintiff directly injured as a result of fraud. But that conflates the issues, and neither case involves the plaintiff having to reimburse a third party who was itself directly injured. Direct injury is lacking and this Court's grant of summary judgment is firmly supported by Supreme Court precedent, Third Circuit caselaw, and the recent Second Circuit opinion in *Roosevelt Road* that is directly analogous.

Uber knows all of this, which is why it spent the last three weeks looking for *anything* that showed its own direct, out-of-pocket loss. What Uber came up with (a $238.56 hotel room bill and a $73.98 mileage reimbursement) is insufficient and pales in comparison to the settlements, verdicts, and fees that Farmers pays, only further demonstrating that Farmers is the only potential plaintiff to sue and that Uber lacks RICO standing.

In its final act of desperation, Uber asks for deferral of the Motion on the basis that its injuries are "intertwined" with FedEx's injuries (without explaining why or how). Uber also wants more discovery, but it is illogical that Uber would need the remainder of the discovery period to figure out how it was injured. The Court already gave the benefit of the doubt at the 12(b)(6) stage to Uber's (now clearly false) allegations that Uber itself paid settlements and legal fees, which extended this meritless case unnecessarily. But summary judgment is "put up or shut up time," and what Uber has put up comes nowhere close to establishing RICO standing.[7]

---

[7] The ultimate irony is that Uber has done exactly what it alleges is "fraud" – it has manufactured a lawsuit based on a claim of damages that does not exist.

Before even more of the Court's and parties' time and resources are wasted on Uber's claims, summary judgment against Uber is warranted now.

## II. ARGUMENT

In its Opposition, Uber makes a number of arguments: 1) that the Simon Parties "admitted" that Uber paid settlements; 2) that by way of "sweeps" and "mechanical payments," Aleka's obligation to reimburse Farmers for some portion of fees and costs is somehow Uber's direct injury; 3) that Uber has paid a few hundred dollars in out-of-pocket expenses; and that 4) Uber's injuries are intertwined with FedEx's injuries and/or that Uber needs more discovery about its own injuries. None of these arguments have merit and summary judgment against Uber is warranted.

### 1. Uber Admitted It Has Not Paid Settlements.

As an initial matter, the Simon Parties never "admitted" that Uber paid settlements, which is not even a fact that the Simon Parties are capable of admitting, especially before discovery. Regardless, after discovery began, *Uber* admitted it did *not* pay settlements. SOF ¶ 24; SIMONAPPX000031; ECF 193 at 2. That is the binding "judicial admission."[8]

Indeed, Uber has abandoned any position that it "pays" settlements or fees. Uber now speaks in terms of "obligations" it "incurred" or "undertook" (Opp. at 4) and has even now *changed the language of its interrogatory responses* from "Uber has *paid* the following approximate costs…" (SIMONAPPX000006, July 31, 2026 responses) to "Uber has *incurred the*

---

[8] What the Simon Parties did know before discovery was that Uber joins in the Farmers settlement agreements. Notably, these settlements, like the February 2026 settlement that Uber attaches to its Opposition, are fraud-insulating. *See* SIMONAPPX000192, 196 § 18 ("This Release sets forth the entire agreement and understanding between the Parties [defined to include Uber and Farmers]…This Release supersedes all prior agreements and understandings concerning the subject matter of this Release."); *see K&G Contracting, Inc. v. Warfighter Focused Logistics, Inc.*, 689 F. Supp. 3d 35, 43-48 (E.D. Pa. 2023) (Kearney, J.); *Gordon v. Pasquarello*, 2023 WL 2505538, at *28 (E.D. Pa. Mar. 14, 2023) (misrepresentations made prior to agreement with fraud-insulating provision are "not a recognizable fraud predicate offense under the RICO statute").

*obligation to pay* the following approximate costs…" (SIMONAPPX000355, September 9, 2026 responses). This is critical because the supposed impact to Uber's rights and obligations is not a tangible, concrete RICO injury. *Med. Marijuana*, 604 U.S. at 608-12 (rejecting that being "injured" under the RICO statute includes an "invasion of a legal right" because "defining 'injured' by reference to legal rights raises difficult questions about how to define the right at issue" and goes against "the most natural interpretation of the text [of § 1964(c)] – that 'injured' means 'harmed'").

Before the Motion was filed, counsel for Uber constantly touted the "collateral source rule" as the justification for why it did not need to show any evidence of actual injury; but Uber now appears to have abandoned that rule by referencing it only tangentially in the Opposition. Uber only half-heartedly points to *Steamfitters*, but that case did not even apply the collateral source rule to the RICO claim. It only noted the rule could conceivably apply *to a third party's claim* in a way that would result in a double recovery if the RICO claim proceeded. 171 F.3d 912, 928 n.9 (3d Cir. 1999). Regardless, as set forth in the Motion, even *Steamfitters* says the collateral source rule only applies when a third party makes a "payment to the injured party"; yet, here, Farmers pays the fees and settlements directly to the Simon clients, not to Uber. Mot. at 16-17.

**2. "Sweeps" and "Mechanical Payments" Reimbursing Farmers Are Not A Direct Injury Under Supreme Court And Third Circuit Law.**

Uber argues that its "claims processing arrangement under which Farmers sweeps cash from a collateral account maintained by Uber's captive insurance subsidiary (Aleka)" is the basis of Uber's injury and that payments made "mechanically whenever Farmers advances payment to attorneys or claimants, come out of Uber's pocket to satisfy Uber's contractual obligations and necessarily result from the fraud." Opp. at 1. Uber asks this Court to just accept these statements as truisms, along with others like:

- Aleka's reimbursement payments "pass[ing] through several Uber subsidiaries as a matter

of internal accounting" represent an "automatic and ministerial flow of funds within Uber and to Uber's payment agent, Farmers." (Opp. at 10-11); and that

- "[E]very dollar that Aleka pays out decreases Uber's balance sheet." Opp. at 6.[9]

Of course, the mere fact that Uber files consolidated financial reports that include its subsidiaries and affiliates does not somehow combine them all into one corporate entity. Further, Uber's vague references to "several Uber subsidiaries," without even identifying who they are (other than Aleka), and to the "flow of funds within Uber" as if various corporate entities are all the same as "Uber Technologies, Inc.," is simply wrong and unavailing. It is fascinating to see Uber, with its numerous subsidiaries and sophisticated layers of separation between it and its drivers and its captive and outside insurance companies—which it regularly leverages to avoid and limit liability—contort itself in a desperate effort to be a plaintiff on RICO claims, asking the Court to disregard corporate form and treat Uber, Aleka, and "several Uber subsidiaries" as one entity.

Regardless, the Court can accept *all of Uber's bald, unsupported assertions* and still dismiss Uber for lack of RICO standing. Uber argues that the Third Circuit's *St. Luke's* and *Avandia* decisions allow Uber to claim, as its own direct injury, payments that are "intermediated by a third-party payment mechanism." Opp. at 7. Neither of these motion-to-dismiss-stage cases say anything close to that, and both confirm why Uber has no RICO standing.

The plaintiffs in *St. Luke's* suffered direct injury. They were hospitals that submitted claims to the Commonwealth that were not fully paid for because of other fraudulent claims to the Commonwealth by defendants. *St. Lukes*, 967 F.3d at 299. The issue in *St. Luke's* was not whether the plaintiffs were injured – they clearly were injured by being unreimbursed for $9 million of out-

[9] Uber has produced *zero* documents showing these "sweeps" or "mechanical payments" – whatever that means – and certainly produced no such documents before the Court's August 24, 2026 "core damages" production deadline. ECF 194.

of-pocket expenses. The issue was whether the defendants' fraud on a third party – the Commonwealth – could satisfy RICO's proximate cause standard. The Third Circuit, in applying *Bridge v. Phoenix Bond & Indemnity Company*, 553 U.S. 639, 657-58 (2008), applied the rule that third-party reliance can be sufficient under RICO. While Uber argues "the presence of a third-party intermediary (the Commonwealth) did not interrupt the causal chain" – it was the third-party intermediary's *reliance* that did not interrupt the causal chain. The plaintiffs were *not* claiming the Commonwealth's payments were their own injury for purposes of RICO standing or arguing that plaintiffs had to eventually pay back the Commonwealth because of the fraud. Instead, and unlike here, the plaintiffs suffered an out-of-pocket loss as a direct result of the fraud.

*Avandia* is also of no help to Uber. There, third-party payors sued a pharmaceutical company because the company's misrepresentations about one of its drugs caused the payor to cover costs of the drug that it otherwise would not have covered. *Avandia*, 804 F.3d at 634-36. The plaintiffs suffered a direct, out-of-pocket loss: "overpayment" in covering the drug costs in the amount by which the drug's price was overinflated. *Id.* at 639-40. Again, the proximate causation issue was about third-party *reliance*. The Third Circuit simply applied *Bridge* and found that the third party's *reliance* on the fraud was a proximate cause of plaintiffs' injury. *Id.* at 643. Indeed, the "presence of intermediaries" that Uber points out had to do with *reliance*, not the method of plaintiff's out-of-pocket loss. *Id.* at 645 ("GSK argues that the presence of intermediaries, doctors and patients, destroys proximate causation because they were the ones who ultimately decided whether to *rely* on GSK's misrepresentations.") (emphasis added).

*Avandia* briefly addresses the material issue here. It (just like the Second Circuit's recent *Roosevelt Road* decision) relies on the Supreme Court's *Holmes* decision to state that proximate causation is *lacking* where there is a "third party linking the plaintiffs and defendants," and the

plaintiff only "suffered a loss because of the harm that the defendants brought upon th[at] third party." *Id.* at 645. In *Avandia*, plaintiffs' injury was direct because "[a]lthough GSK identifie[d] third parties, doctors and patients, within the causal chain, plaintiffs did not suffer economic harm because those third parties were injured." *Id.* at 645-46 (emphasis added). Uber, on the other hand, could only conceivably suffer harm if Farmers is first injured, because Uber's (and really Aleka's) obligation is to reimburse Farmers for *Farmers'* out-of-pocket losses. Further, as Uber acknowledges, *Avandia* holds that, where a third party's "decision" causes plaintiff's harm, the plaintiff has no direct injury. Opp. at 7-8. Per the undisputed summary judgment record, Farmers makes decisions that cause it to pay the settlements and fees that Aleka supposedly, eventually reimburses. SIMONAPPX000044, Farmers Policy § II(A) ("We [Farmers] may investigate and settle any claim or 'suit' as we consider appropriate."); SIMONAPPX000050, *id.* § IV(A)(2)(b) ("you and any other involved 'insured' must: (1) Assume no obligation, make no payment or incur no expense without our consent, except at the 'insured's' own cost" [and] (3) Cooperate with us in the investigation or settlement of the claim or defense against the 'suit.'").

Thus, the Third Circuit's caselaw is entirely consistent with the Second Circuit's *Roosevelt Road* decision finding RICO standing absent where plaintiffs' injuries were caused by the fact that "they decided to enter a complex series of contracts that left them on the hook for harms to third (or even fourth) parties." 2026 WL 2108399, at *2 (2d Cir. July 22, 2026). So too here, the contracts requiring Aleka to reimburse Farmers create "daisy chains of causation [that] are 'too remote' to establish RICO standing." *See id.* (quoting *Hemi Group*, 559 U.S. at 9). Indeed, the Third Circuit has acknowledged that the downstream reimbursement of another *cannot* be a direct RICO injury because it would violate the indirect-purchaser rule. *See Humana, Inc. v. Indivior, Inc.*, 2022 WL 17718342, at *1, 4 & n.32 (3d Cir. Dec. 15, 2022) ("agree[ing] with defendants

that *Avandia*" would not apply where the "theory of injury [is] caused by [] downstream reimbursements" because the "indirect-purchaser" rule in antitrust law has been adopted in RICO cases through *McCarthy v. Recordex Service, Inc.*, 80 F.3d 842 (3d Cir. 1996)).

Accordingly, even if the Court accepted Uber's unsubstantiated claims about "sweeps" and "mechanical payments" by Uber to fund Aleka to reimburse Farmers for Farmers' payments of settlements and attorneys' fees, such downstream payments would be an indirect injury to Uber and insufficient to establish RICO standing as a matter of law.

**3. Uber's Trivial Costs Do Not Establish RICO Standing.**

Uber knows it needs a direct injury, which is why it spent the last three weeks looking for *anything* that showed an out-of-pocket loss by Uber. What it came up with (a $238.56 hotel room bill and a $73.98 mileage reimbursement), however, is insufficient. Those "costs" were associated with an April 2026 trial where Portier LLC (not Uber) was a defendant and where the Simon client won a jury verdict for past lost earnings and past non-economic damages. *Ayala v. Guevara, et al.,* No. 250303955 (Phila. C.C.P.) (Apr. 30, 2026, Jury Verdict for Plaintiff).

Nothing about these trivial costs was caused by the Simon Parties—they were caused by the negligent Uber driver who (irrespective of the alleged "scheme" regarding future medical costs) was the direct and proximate cause of the claimant's lost wages and past non-economic damages. Thus, the negligent Uber driver was the but-for and proximate cause of the trial at which the Uber witness testified and which the Uber in-house counsel chose to attend. At minimum, this trivial amount, when compared to the actual fees and settlements that Farmers pays, only confirms that Farmers is better situated than Uber to bring the claims, which in turn confirms that Uber lacks RICO standing. Mot. at 14; *see also Anza*, 547 U.S. at 460 (plaintiff had no RICO standing where another third party was alleged to have been defrauded "out of a substantial amount of money" and was thus the better-situated plaintiff to vindicate RICO).

### 4. There Is No Reason to Defer Ruling on this Motion.

Uber concludes by asking the Court to defer ruling on the Motion because Uber's claims are "intertwined" with FedEx's claims. But Uber does not explain why or how evidence of Uber's injury is intertwined with the evidence of FedEx's injury. Uber offers no explanation because Uber's and FedEx's injuries are *not* intertwined.

Uber also improperly requests, in an attorney declaration (ECF 231-8), relief under Fed. R. Civ. P. 56(d) and (e) when that relief should have been raised by motion. Regardless, more discovery on this issue makes no sense because evidence of Uber's injury would be in Uber's possession, not the Simon Parties' possession. Uber has also had a year to produce evidence of injury, and over a month has passed since the Court-ordered deadline for Uber to produce that evidence. No further discovery is warranted under Rule 56(d), and no further opportunities should be given to Uber under Rule 56(e).

## III. CONCLUSION

For these reasons, the Court should grant the Motion and enter judgment against Uber dismissing Uber's claims with prejudice.

Dated: September 28, 2026

Respectfully submitted,

**BLANK ROME LLP**

*/s/ Daniel E. Rhynhart*

James T. Smith (I.D. No. 39333)
Daniel E. Rhynhart (I.D. No. 78248)
Rebecca D. Ward (I.D. No. 79547)
Michael A. Stoolman (I.D. No. 326117)
One Logan Square, 130 N. 18th Street
Philadelphia, PA 19103
Phone: (215) 569-5371
Email: Jim.Smith@BlankRome.com
Dan.Rhynhart@BlankRome.com
Rebecca.Ward@BlankRome.com
Michael.Stoolman@BlankRome.com

*Attorneys for Defendants*
*Simon & Simon, P.C. and Marc Simon*

**CERTIFICATE OF SERVICE**

I, Daniel E. Rhynhart, hereby certify that on September 28, 2026, a true and correct copy of the foregoing was served via ECF on all counsel of record.

*/s/ Daniel E. Rhynhart*
Daniel E. Rhynhart