**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UBER TECHNOLOGIES, INC., *et al.*** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 25-5365** |
| | : | |
| **SIMON & SIMON P.C., *et al.*** | : | |

# MEMORANDUM

**KEARNEY, J.** **October 13, 2026**

Congress defines the range of remedies available to persons who persuade a jury of being victims of a racketeering scheme. The victim must suffer a loss in business or property to bring suit or, as we broadly say in constitutional terms, enjoy "standing." Congress does not quantify how much business or property a victim must lose to enjoy standing to sue. Nor does Congress address if an alleged victim can sue if its insurer covers the loss even if the victim reimburses the insurer.

We today address a defense an alleged racketeering victim whose insurer initially paid for its alleged pattern of losses lacks standing to pursue a racketeering claim as a matter of law. The defense seemingly suggests only the insurer could have standing because it first paid the loss even though it today appears (from some facts) the victim's subsidiary reimbursed the insurer.

We decline to enter summary judgment on this standing given a genuine issue of material fact regarding out-of-pocket losses as to one claim. And putting aside more fact questions on whether the victim reimbursed the insurer through a subsidiary, we also deny summary judgment as a matter of law finding the defense offers no cognizable legal basis to conclude an insured company loses standing to challenge harm it incurred under the Racketeer Influenced and Corrupt

Organizations Act when its insurer first pays for its costs of defense and indemnifies it for damages allegedly caused by the racketeering conduct consistent with their contractual relationship.

## I. Background

Uber Technologies, Inc. and Federal Express Corporation sued attorneys Marc Simon and his law firm Simon & Simon, P.C., and medical professionals Clifton Burt, Premier Pain & Rehab Center, Ethel Harvey, Daniel Piccillo, Philadelphia Spine Associates, and Lance Yarus under the Racketeer Influenced and Corrupt Organizations Act alleging these professionals orchestrated a scheme to generate and litigate fraudulent personal injury claims arising from motor vehicle accidents involving Uber and FedEx drivers.[1] Uber and FedEx incurred costs of defense and paid settlements on some claims. The lawyers and medical professionals earlier moved to dismiss arguing in part Uber lacked standing to proceed on racketeering claims because it failed to plead proximate causation by not plausibly alleging it incurred settlement costs.[2] We found Uber and FedEx sufficiently pleaded the proximate causation necessary to establish standing for their racketeering claims.[3] We denied the lawyers' and medical professionals' motion to dismiss.[4] The parties currently proceed in fact discovery set to close December 21, 2026.[5]

Discovery led Simon & Simon and Marc Simon to believe Uber did not directly pay its attorney's fees or directly pay the settlements or judgments to Simon & Simon and Marc Simon and their clients in connection with the underlying personal injury lawsuits.[6] The Simon Defendants cite records confirming Uber's insurer, Farmers Insurance Exchange, paid the fees and costs of Uber's lawyers and initially paid settlements and judgments.[7] The discovery to date also shows us an Uber subsidiary Aleka Insurance, Inc. as a captive insurance company owned by Uber and reimbursing Farmers.[8] Uber also presents evidence it reimbursed its own employees for out-

of-pocket costs they incurred in connection with a personal injury trial allegedly part of the Simon Defendants' racketeering scheme.[9]

## II. Analysis

Simon & Simon and Marc Simon now move for partial summary judgment in mid-discovery asking us to dismiss Uber's claims for lack of standing as a matter of law.[10] They argue Uber suffered no injury to business or property under the Racketeer Influenced and Corrupt Organizations Act and thus lacks standing to proceed on its racketeering theories because Farmers, Uber's insurer, paid Uber's attorney's fees and settlement amounts in the cases underlying the Simon Defendants' alleged scheme.[11] They argue subsequent reimbursement to Farmers comes not from Uber but "another insurance company" named Aleka Insurance, Inc.[12] They argue hypothetical subsequent reimbursements from Uber to Aleka and then to Farmers go "well beyond the first step in the causal chain" and thus Uber is too many steps removed from alleged predicate acts (even though it is the named party in the underlying lawsuits) to meet the proximate causation standards for racketeering liability.[13] They also argue the collateral source rule does not apply in the racketeering context which would preclude introduction of collateral recovery before the jury.[14] The Simon Defendants' theory is essentially: Uber lacks standing because it did not pay for attorney's fees or judgments caused by the alleged racketeering activity and then relied on its insurer for defense and indemnity under its insurance contract. So, in the Simon Defendants' theory, only the insurer Farmers would enjoy standing even though Farmers is not sued or a target of the alleged racketeering.

Uber counters the Simon Defendants' racketeering activity directly caused it injury.[15] It also represents Aleka is not a third-party insurance company but Uber's own captive insurance company and an integral and essential part of Uber's business without separate sources of revenue

outside of Uber-affiliated lines of business.[16] Uber represents Aleka payments reimbursing Farmers "decrease[] Uber's balance sheet."[17] The Simon Defendants reply Uber admitted it did not pay settlements and cannot establish injury through payments reimbursing Farmers.[18] They also argue Uber's "trivial" out-of-pocket costs in one underlying claim do not suffice to establish racketeering standing.[19]

We disagree with the Simon Defendants and find Uber enjoys standing to proceed on its racketeering theories.

### A. At least one genuine issue of material fact precludes summary judgment.

We start with a facially apparent genuine issue of material fact which, even assuming we could find support for the Simon Defendants' theory as a matter of law, precludes the entry of summary judgment today.

We are mindful (as the Simon Defendants repeatedly argue) "actual monetary loss" qualifies as injury to business or property in the racketeering context.[20] Uber claims it suffered actual monetary loss when it reimbursed its own employees for out-of-pocket costs to attend a trial allegedly part of the Simon Defendants' racketeering scheme.[21] The Simon Defendants do not dispute Uber incurred these costs in a related underlying lawsuit.[22] But they argue the costs cannot support Uber's standing here because Simon & Simon did not name Uber as a defendant in the underlying case and because the costs are "trivial" in amount.[23] They argue the negligent Uber driver involved in the accident underlying the action caused Uber's alleged financial harm.[24] We have not reviewed, and the Simon Defendants have not shown us, authority suggesting some quantum of damages necessary to establish standing in a racketeering theory. We see no reason why a person seeking even one dollar in racketeering damages somehow loses standing.[25] This dispute of material fact as to who caused Uber's out-of-pocket costs creates a triable issue

notwithstanding the legal arguments. We resolve disputes of material fact at trial. And this loss could create standing for Uber even under the Simon Defendants' theory.

**B. We find no basis Uber lacks standing as a matter of law.**

But we also find the Simon Defendants have not shown a cognizable basis as a matter of law to deprive an insured of standing for harm it allegedly suffered under the Racketeer Influenced and Corrupt Organizations Act when its insurer pays the insured's costs of defense and indemnifies a settlement or judgment consistent with their contractual relationship.

We start, as always in a statutory case, with Congress's language. Congress provides civil remedies for racketeering violations.[26] It permits "any person injured in his business or property" from defined racketeering conduct to sue for relief in federal court and "recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee…."[27] Congress offers no language suggesting it intended to preclude recovery by insured parties or those otherwise receiving third-party reimbursement for their alleged harms.[28] We are guided by the principle of statutory construction remedial statutes are to be read liberally.[29] We apply this principle to the remedial racketeering statute.[30] We read section 1964 of the Racketeer Influenced and Corrupt Organization Act liberally to find Congress has not barred recovery for insured parties who rely on their insurer to pay their costs of defense and indemnification.

Mindful of this liberal statutory interpretation, we next turn to guidance from colleagues reviewing standing when an insurer allegedly first incurs the loss. We start with the principle a person advancing racketeering claims does not relinquish standing by conducting business through its representative.[31] We are guided in part by Judge Hogan's analysis in *Facaros v. Qwest Corp.* reviewing standing for an individual bringing racketeering claims alleging Qwest fraudulently overbilled him for services he purchased through his agent to move telephone lines from one house

to another.[32] Qwest argued the individual lacked standing to bring his racketeering claims because he purchased Qwest's services through an agent.[33] Judge Hogan rejected Qwest's standing argument because "[a]lthough RICO requires direct injury," the individual suffered direct injury as the principal "even though he utilized an agent."[34]

When a defendant's insurer in the underlying case is the mere conduit through which a plaintiff collects payment for a fraudulent underlying claim, the defendant insured has standing in an ensuing racketeering lawsuit.[35] We are also partially guided by Judge Cecchi's analysis in *Roche Diagnostics Corp. v. Smith* reviewing standing for manufacturers of diabetes test strips who alleged numerous instances of insurance fraud against a group of wholesalers and affiliated pharmacies.[36] The manufacturers alleged the wholesalers and affiliated pharmacies purchased the manufacturers' "wholesale" test strips on the secondary market and then fraudulently marketed and sold them to individuals as "retail" test strips to collect inflated reimbursements from the individuals' insurance providers.[37] The insurance providers then collected rebates from the manufacturers to offset the costs they incurred through the inflated reimbursements of the fraudulently marketed "retail" test strips.[38] Judge Cecchi found the manufacturers established standing to bring racketeering claims because they alleged the wholesalers and affiliated pharmacies used the insurance providers as "mere conduits to collect payments" from the manufacturers.[39]

We are also mindful our colleagues in both federal and state appellate courts find a party may recover costs incurred in defending itself against fraudulent litigation beyond the racketeering context regardless of whether its insurer paid those costs. In *Pelletier v. Zweifel*, the Court of Appeals for the Eleventh Circuit found an individual could recover costs he incurred defending a lawsuit against him and prosecuting a motion for sanctions under Rule 11 even though his

insurance company paid the litigation expenses.[40] The court of appeals found it "of no moment" the individual's insurer paid the expenses.[41] In *Fust v. Francois*, the Missouri Court of Appeals, Eastern District evaluated whether the trial court erred in excluding evidence showing an insurer hired and paid for a law firm to defend individual property owners against their neighbor's frivolous suit stemming from a property dispute.[42] The court of appeals affirmed finding it irrelevant whether the property owners directly paid the law firm for services.[43] The court of appeals noted a wrongdoer cannot reduce its damages by showing the plaintiff received or will receive compensation or indemnity for the loss from another source.[44] And in *Worsham v. Greenfield*, the Court of Appeals of Maryland confronted a malicious prosecution suit between neighbors where one neighbor sought to recover attorney's fees it incurred (and its insurer paid) in defending against the other's claims.[45] The court of appeals explained a party "incurs" attorney's fees when the party "becomes subject to, or liable for, the services or expenses," regardless of "who pays the attorney fees or of whether the fees are covered and paid pursuant to an insurance policy."[46] The court of appeals found the fact the neighbor's insurer paid the attorney's fees did not "undermine or diminish" the neighbor's responsibility for its own defense.[47] Having the insurer pay the fees merely discharged the responsibility, but the neighbor still "incurred" the fees and could thus seek their recovery.[48]

There is no dispute Farmers represents Uber as its insurer.[49] It acted as Uber's representative when it paid attorney's fees and settlement costs on Uber's behalf in connection with lawsuits Simon & Simon filed against Uber. Uber does not lose its ability to recover from the Simon Defendants simply because Farmers directly paid Simon & Simon or its clients rather than reimbursing Uber for such payments. Uber did not relinquish its standing to sue parties who bring fraudulent claims against it by purchasing liability insurance and permitting its conduit, Farmers,

to issue payments on its behalf. The Simon Defendants' theory would create the precedent only the insured could pay the damages and not its insurer. We cannot reach so far to hold only the insurer has standing because it, as the representative paying on the insured's behalf under a contract, pays the claimant. The insured is sued and relies upon its insurer to pay its lawyers' costs and indemnify for a settlement if warranted. The Simon Defendants' theory would require the insured pay its own fees and pay the judgment and then seek recovery for its carrier. We decline to do so.

We are not persuaded by the Simon Defendants' cited authority. They rely on the Court of Appeals for the Second Circuit's summary order earlier this year in *Roosevelt Rd. Re, Ltd. v. Subin* to argue Uber is too far removed from the alleged racketeering violation to have suffered injury.[50] In *Roosevelt Rd.*, a reinsurance company and a management agency sued personal-injury lawyers for recruiting construction workers to stage fake construction accidents and then filing fraudulent claims against employers and general contractors.[51] The reinsurance company and management agency argued they – along with insurers and claims administrators who paid and approved the claims – sustained the most direct injury from the scheme.[52] The Court of Appeals for the Second Circuit disagreed.[53] It held insurers "who are obligated to pay the . . . expenses of another may [generally] not recover [under RICO] against the [party] who caused the damage, because their injuries are indirect since they derive wholly from the injuries sustained by the third party."[54] It found the reinsurance company and management agency lacked standing and explained the employers and general contractor defendants in the underlying fraudulent claims sustained more direct injury than their insurers. [55]

The Court of Appeals for the Second Circuit's analysis from a few months ago relied upon by the Simon Defendants confirms Farmers would lack standing. But Farmers is not suing the

Simon Defendants. The Simon Defendants focus on the wrong party in *Roosevelt Rd*. The Court of Appeals held the *insurers*, not the insured, lacked standing.[56] Uber is analogous to the employers and contractors in *Roosevelt Rd.* who sustained more direct injury than their insurers. Like personal-injury lawyers who sued the employers and contractors in *Roosevelt Rd.*, the Simon Defendants sued Uber (not Farmers) in the underlying cases. Relying upon the Court of Appeals's analysis in *Roosevelt Rd.*, the Simon Defendants would need to concede an injury to Farmers as Uber's insurer in paying the attorney's fees may "derive wholly from the injuries sustained by [Uber]."[57]

Uber also has standing to sue under the collateral source rule. Tort victims can recover damages from a tortfeasor under the collateral source rule "regardless of compensation received from other independent or collateral sources."[58] Our colleagues have repeatedly found racketeering standing under the collateral source rule.[59] Failure to recognize such standing would allow civil racketeering defendants to avoid liability any time a third party relieved a victim's injury.[60] In our case, Uber has standing to pursue its claims against the Simon Defendants under the collateral source rule even though Farmers paid some or most of Uber's litigation expenses, attorney's fees, and settlement amounts in cases underlying this litigation. The Simon Defendants argue Uber cannot use the collateral source rule to bring racketeering claims because it suffered no "actual, concrete loss."[61] But we are not persuaded as Uber suffered injury sufficient to establish standing to bring its racketeering claims.

And thus, we are also not persuaded by the Simon Defendants' reliance on the Court of Appeals for the Ninth Circuit's analysis twenty-two years ago in *Steele* to argue Uber lacks standing under the collateral source rule. Four former patients and their parents in *Steele* brought racketeering claims against a hospital and doctors alleging the hospital and doctors fraudulently

billed their patients' insurance companies for services they did not provide.[62] The Court of Appeals for the Ninth Circuit affirmed the former patients and their parents lacked standing to bring the racketeering claims because they had not suffered a financial loss and thus could not establish injury.[63] But the facts in *Steele* are materially different from the facts before us. In *Steele*, the alleged scheme directly targeted the former patients and their parents' insurers.[64] In our case, the alleged scheme targeted the insured Uber. The Simon Defendants sued Uber in the underlying cases involving motor vehicle accidents, not its insurer Farmers as presented in *Steele*.

**III. Conclusion**

We deny the Simon Defendants' Motion for partial summary judgment against Uber. We find Uber enjoys standing to assert racketeering claims against the Simon Defendants based on a genuine issue of material fact as to at least one claim and notwithstanding its insurer Farmers compensated the Simon Defendants and their claimants on Uber's behalf in other underlying cases in the state court. We allow Uber to proceed on its racketeering theories against the Simon Defendants.

---

[1] ECF 71.

[2] ECF 82-1 at 31–32.

[3] ECF 99 at 34–35.

[4] ECF 100.

[5] ECF 240.

[6] ECF 213-1 at 13.

[7] *Id.*

[8] ECF 230 at 8–10.

[9] *Id.* at 7–8.

[10] ECF 213. Simon & Simon and Marc Simon do not move for summary judgment against FedEx. Clifton Burt, Premier Pain & Rehab Center, Ethel Harvey, Daniel Piccillo, Philadelphia Spine Associates, and Lance Yarus do not presently move for summary judgment based on Uber's standing.

[11] ECF 213-1 at 9, 12–13.

[12] *Id.* at 8.

[13] *Id.* at 14–18.

[14] *Id.* at 18–22.

[15] ECF 230 at 6–18.

[16] *Id.* at 9.

[17] *Id.* at 10.

[18] ECF 234 at 7–12.

[19] *Id.* at 12.

[20] *Maio v. Aetna Inc.*, 221 F.3d 472, 483 (3d Cir. 2000).

[21] ECF 230 at 7–8. We venture to presume, given no challenge from the Simon Defendants on this point, this expense apparently incurred earlier this year relates to one of the claims offered to show a racketeering pattern.

[22] ECF 234 at 12.

[23] *Id.*

[24] *Id.*

[25] There is no minimum dollar threshold a plaintiff must meet to establish injury in fact under Article III of the United States Constitution. "[A]ny monetary loss, however small, confers standing." *In re Lincoln Nat'l COI Litig.*, 620 F.Supp. 3d 230, 264 (E.D. Pa. 2022) (citing *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 163 (3d Cir. 2017)). We find nothing in the Racketeer Influenced and Corrupt Organizations Act conflicts with this general principle. Congress provides "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor." 18 U.S.C. § 1964(c). Congress does not impose a minimum dollar threshold to injury. We decline to do so here.

[26] 18 U.S.C. § 1964. Congress provides, in pertinent part (c):

> "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable

attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final."

[27] 18 U.S.C. § 1964(c).

[28] *See* 18 U.S.C. § 1964.

[29] *Peyton v. Rowe*, 391 U.S. 54, 65 (1968) (referencing "the canon of construction … remedial statutes should be liberally construed"); *In re Sugammadex*, No. 20-2576, 2023 WL 3966146, at *16 (D.N.J. June 13, 2023) ("Under traditional rules of statutory construction, a statute … 'remedial in nature … should be read broadly'") (quoting *Wells Fargo & Co. v. United States*, 827 F.3d 1026, 1036 (Fed. Cir. 2016)); *Huett v. Weinstein Company, LLC*, No. 18-6012, 2018 WL 6314159, at *1 (C.D. Cal. Nov. 5, 2018) (referencing the "canon of construction … remedial statutes should be liberally construed"); *U.S. v. Atlas Mins. & Chems., Inc.*, No. 91-5118, 1995 WL 510304, at *76 (E.D. Pa. Aug. 22, 1995) (referencing "the established rule … remedial statutes should be construed liberally").

[30] *See* Pub. L. No. 91-452, § 904(a), 84 Stat. 922, 947 (1970) ("The provisions of this title shall be liberally construed to effectuate its remedial purposes."); *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 497–98 (1985) ("RICO is to be read broadly. This is the lesson not only of Congress' self-consciously expansive language and overall approach … but also of its express admonition that RICO is to be liberally construed to effectuate its remedial purposes … The statute's remedial purposes are nowhere more evident than in the provision of a private action for those injured by racketeering activity.") (internal citations omitted); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 366 (3d Cir. 2010) ("[T]he RICO statute provides … its terms are to be liberally construed to effectuate its remedial purposes.") (internal citations omitted).

[31] *Facaros v. Qwest Corp.*, No. 10–6343**,** 2011 WL 2270588, at *7 (D. Or. June 7, 2011).

[32] *Id.* at *1.

[33] *Id.* at *7.

[34] *Id.*

[35] *Roche Diagnostics Corp. v. Smith*, Nos. 19-8761, 17-5552, 2022 WL 4596720 (D.N.J. Sept. 30, 2022).

[36] *Id.* at *9.

[37] *Id.* at *2.

[38] *Id.*

[39] *Id.* at *9.

---

[40] *Pelletier v. Zweifel*, 987 F.2d 716, 718–19 (11th Cir. 1993).

[41] *Id.* at 718.

[42] *Fust v. Francois*, 913 S.W.2d 38 (Mo. App. E.D. 1995).

[43] *Id.* at 47.

[44] *Id.* (quoting *Washington v. Barnes Hosp.*, 897 S.W.2d 611, 619 (Mo. banc 1995)).

[45] *Worsham v. Greenfield*, 78 A.3d 358 (Md. 2013).

[46] *Id.* at 360.

[47] *Id.* at 364.

[48] *Id.*

[49] "[A]n insurer assumes a fiduciary responsibility towards its insured and therefore is obligated to act in good faith and with due care when it represents the interests of the insured when dealing with third-party claims brought against the insured." *CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co.*, 645 F. Supp. 2d 354, 369 (E.D. Pa. 2009) (quoting *Haugh v. Allstate Ins. Co.*, 322 F.3d 227, 237 (3d Cir. 2003)).

[50] ECF 213-1 at 16–17 (discussing *Roosevelt Rd. Re, Ltd. v. Subin*, No. 25-2560, 2026 WL 2108399 (2d Cir. July 22, 2026) (summary order)).

[51] *Roosevelt Rd. Re, Ltd.*, 2026 WL 2108399, at *1.

[52] *Id.* at *2.

[53] *Id.*

[54] *Id.* at *3 (quoting *Laborers Loc. 17 Health and Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 237 (2d Cir. 1999)).

[55] *Id.* at *2.

[56] *Id.* at *3.

[57] *Id.*

[58] *Leeper v. United States*, 756 F.2d 300, 303 (3d Cir. 1985).

[59] *New York Mercantile Exch. v. Verrone*, No. 96-8988, 1998 WL 811791, at *1 (S.D.N.Y. Nov. 19, 1998); *City of Chicago Heights v. Lobue*, 914 F. Supp. 279, 284 n.6 (N.D. Ill. 1996).

[60] *Hemmerdinger Corp. v. Ruocco*, No. 12-2650, 2016 WL 1588500, at *9 (E.D.N.Y. 2016) ("In such a world, the insurance industry would effectively repeal civil RICO.").

---

[61] ECF 213-1 at 21.

[62] *Steele v. Hosp. Corp. of America*, 36 F.3d 69, 70 (9th Cir. 1994).

[63] *Id.*

[64] *Id.*