**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UBER TECHNOLOGIES, INC. and FEDERAL EXPRESS CORPORATION,<br>*Plaintiffs,*<br>v.<br>SIMON & SIMON, P.C., MARC SIMON, CLIFTON BURT, PREMIER PAIN & REHAB CENTER, PC, ETHEL HARVEY, DANIEL PICCILLO, PHILADELPHIA SPINE ASSOCIATES, LLC, and LANCE YARUS,<br>*Defendants.* | CIVIL ACTION<br><br>Case No. 2:25-cv-05365-MAK |

**MEMORANDUM OF DEFENDANTS CLIFTON BURT, M.D., AND PREMIER PAIN & REHAB CENTER, P.C. IN RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE (DKT. NO. 252)**

Defendants Clifton Burt, M.D., and Premier Pain & Rehab Center, P.C. (together, "Premier Pain") respond to the Court's November 9, 2026, Order, Dkt. No. 252, as to the five (5) exhibits to Plaintiffs' Motion to Compel, Dkt. No. 247, that Premier Pain produced in discovery: Exhibits 26 and 29–32 (the "Premier Exhibits").

## I. INTRODUCTION

The Premier Exhibits identify, by full name, thousands of non-party patients alongside the dates, procedures, and payment sources of their medical treatment. Because this information constitutes protected health information ("PHI"), the Court should file it under seal. If the Court is unwilling to seal the Premier Exhibits, then the Court should enforce the prior agreement of the parties, reached months ago, that Plaintiffs would file patient-related documents on the public docket with patient identifiers redacted. *See* Emails between counsel confirming the agreement, attached hereto and incorporated herein as Exhibit A. Despite this prior agreement, Plaintiffs now

refuse to comply. *See* emails between counsel confirming the refusal to redact, attached hereto and incorporated herein as Exhibit B.

## II. ARGUMENT

### A. The Court Should Seal The Premier Exhibits Because They Contain The Protected Health Information Of Non-Party Patients.[1]

The Court should seal the Premier Exhibits because they contain the protected health information of non-party patients. Exhibit 26 (PREMIER_006627) is a spreadsheet that Plaintiffs filed in three parts, one for each tab. Decl. of Sydney Veatch at 6-7, Dkt. No. 247-1. Each row identifies a patient by account number and full name and lists the date of service, the CPT code for the procedure performed, the amount paid, and the payment date. Many of the patients listed are not even claimants in this litigation.

Exhibits 29 through 32 (PREMIER_002224–25, PREMIER_006530, PREMIER_006482, and PREMIER_031475) are four (4) emails that Simon & Simon scheduling staff sent to Premier Pain between 2020 and 2023. The emails list patients by their full name, together with the scheduled treatment date, and the reason for the consultation. Each email attaches the patients' medical records in files titled with their names, and each page bears the label "Confidential - PHI." Plaintiffs cite the four (4) emails for one proposition, which is irrelevant to their motion to compel: that Simon & Simon tells Premier Pain, before each treating day, which claimants will attend and which area is to be treated.[2] Pls.' Mot. to Compel at 3, Dkt. No. 247. None of the Premier Exhibits mentions Dr. Yarus or the instruction letters that the Motion to Compel seeks.

---

[1] To the extent applicable, Premier Pain incorporates the arguments of its co-defendants regarding sealing.

[2] Not only did Uber's 30(b)(6) representative testify that these emails are the sole basis for their allegations that Simon & Simon **directs** patient care, but she also testified that she had no facts to prove that Dr. Burt ever saw the emails prior to providing patient care.

HIPAA defines "protected health information" as "individually identifiable health information" that is transmitted or maintained in any form or medium. 45 C.F.R. § 160.103. Health information is individually identifiable when it identifies the individual and relates to "the provision of health care to an individual" or "the past, present, or future payment for the provision of health care to an individual." *Id.* Names, dates directly related to an individual, medical record numbers, and account numbers are among the identifiers that HIPAA treats as making health information identifiable. *See id.* § 164.514(b)(2)(i)(A), (C), (H), (J), (R).

Here, every Premier Exhibit meets that definition. Each links a named patient to the dates and nature of medical treatment, and to how such treatments were paid for. Public disclosure of the Premier Exhibits therefore would unnecessarily reveal large volumes of protected health information, all relating to individuals not parties to this litigation.

The Third Circuit has "long recognized the right to privacy in one's medical information." *Doe v. Delie*, 257 F.3d 309, 315 (3d Cir. 2001). Indeed, "[n]onparties' medical information is precisely the kind of information that courts will protect." *Davis v. Elwyn, Inc.*, 2021 WL 4902333, at *4 (E.D. Pa. Oct. 20, 2021) (citation modified); *see also United States v. McGill*, 2016 WL 8716240, at *5 n.3 (E.D. Pa. May 13, 2016) (sealing patients' names and medical information). Plaintiffs invoked these same authorities to seal Exhibit 47, Pls.' Mot. to Seal at 3–4, Dkt. No. 248, and this Court, in turn, required redaction of patients' first names, middle initials, and dates of

birth from that exhibit, Order ¶ 2, Dkt. No. 252. The non-party patients identified in the Premier Exhibits deserve no less.[3] As such, the Court should seal the Premier Exhibits.

### B. The Court Should Seal The Premier Exhibits Because Plaintiffs Previously Agreed To Redact Patient Names, Yet Now Refuse To Honor That Agreement.

The Court should seal the Premier Exhibits because Plaintiffs previously agreed to redact patient names yet now refuse to honor that agreement. Plaintiffs could have avoided filing this Motion to Seal if they had followed the protocol that counsel had already agreed upon. That is, on August 6, 2026, Plaintiffs' counsel wrote:

> The documents are marked confidential, and ***consistent with our agreed approach last time***, we propose to file them on the public docket, but with patient names redacted and replaced with initials.

*See* Exhibit A (emphasis added). Premier Pain's counsel replied: "The redacted/replaced with initials approach is acceptable." *Id.*

Plaintiffs abandoned that protocol here without justification, other than to say their client no longer will agree to it. *See* Exhibit B. On November 5, 2026, Plaintiffs' counsel identified four (4) of the documents now at issue and offered only two options: unredacted public filing or a motion to seal. *See id*. When asked whether Plaintiffs would "redact patient names like you have done with other filings," Plaintiffs' counsel answered, "we weren't planning on it." *Id.* The exchange continued:

> **Premier Pain's counsel:** In the past, your firm had simply redacted the names of the patients. That way you could simply file them on the public docket. Is there any reason you can't do that again?

---

[3] Plaintiffs' counsel suggested, without support, that "all of these litigants signed HIPAA waivers in the underling [*sic*] litigation." Ex. B. Plaintiffs have not shown that each of the thousands of patients in Exhibit 26 executed any such authorization. In any event, a valid HIPAA authorization must identify the persons to whom disclosure may be made and the purpose of the disclosure. 45 C.F.R. § 164.508(c)(1)(iii)–(iv). An authorization permitting a defendant to obtain records in a patient's own personal injury action is not consent to publication of that patient's identity and treatment on the public docket of a different case to which the patient is not a party.

> **Plaintiffs' counsel:** Our understanding is that all of these litigants signed HIPAA waivers in the underling [*sic*] litigation. We will request the Court's leave to file the documents under seal advising the Court that support for sealing will be provided by Premier Pain.

*Id.* During a meet-and-confer call on another issue, Plaintiffs' counsel confirmed that while their client was previously willing to redact patient names, it no longer wanted to do so. *Id.* This is not a sufficient basis to expose the PHI of non-parties to the public. Furthermore, Plaintiffs' change of heart is all the more untenable because the parties' Confidentiality Agreement reserves the right to waive confidentiality solely to the party that designated the material. Confidentiality Agreement ¶ 21. Premier Pain produced and designated the Premier Exhibits, and it has never waived their confidentiality. As such, the Court should seal the Premier Exhibits.

### C. The Court Should Seal The Premier Exhibits Because The *Avandia* Considerations, Applied Line By Line, Require Continued Protection Of The Non-Party Patients' Identities.

The Court should seal the Premier Exhibits because the *Avandia* considerations, applied line by line, require continued protection of the non-party patients' identities. As directed, Premier Pain identifies on a "line-by-line basis" the information that warrants protection and the information that does not, including the "author, recipient, date, and publicly available information." Order ¶ 3, Dkt. No. 252.

| Exhibit | Information Warranting Protection | Information Premier Pain Does Not Seek to Protect |
|---|---|---|
| 26-1, 26-2, and 26-3 (PREMIER_006627) | Each entry in the "Patient Name" and "Account#" columns. | Column headings, dates of service, CPT codes, payment amounts and dates, insurer names (Exhibit 26-1), page legends, and totals. |
| 29 (PREMIER_002224–25) | Patient names in the scheduling table and in the titles of the attached files. | Sender, recipients, copy line, date, subject line, body text, appointment times, procedure designations, and transportation column. |

| Exhibit | Information Warranting Protection | Information Premier Pain Does Not Seek to Protect |
|---|---|---|
| 30 (PREMIER_006530) and 31 (PREMIER_006482) | Patient names in the PIP billing instruction, the scheduling table, and the titles of the attached files. | Sender, recipients, copy line, date, subject line, body text, appointment times, procedure designations, and transportation column. |
| 32 (PREMIER_031475) | The patient's name in the subject line, the "Name" field, and the title of the attached file. | Sender, recipients, date, appointment date and time, study designation, and body text. |

Each protected category passes muster under *Avandia*. The first consideration *Avandia* identifies, "compelling, countervailing interests to be protected," is plainly present. *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (citation modified). Each patient name, paired with the PHI that would remain public, reveals that an identified non-party underwent invasive medical procedures on specific dates and how those procedures were paid for. Those patients are not parties, received no notice, and had no opportunity to be heard. Moreover, once the information is published on PACER, it cannot be recalled. The account numbers in Exhibit 26 warrant the same protection because they are unique identifiers that link each row to a patient's file. *See* 45 C.F.R. § 164.514(b)(2)(i)(J).

Against that imminent harm, the public's interest in the patients' PHI is *de minimis*. Every proposition for which Plaintiffs cite to the Premier Exhibits, namely, aggregate payment totals and Simon & Simon's scheduling practice, remains fully visible in redacted form. The request is therefore narrowly tailored, *see Avandia*, 924 F.3d at 673, and in keeping with Local Civil Rule 5.1.3. Because Plaintiffs filed the exhibits (presumably to support a motion to compel that has nothing to do with Premier Pain) and hold the native files, they are best positioned to redact them. As such, the Court should seal the Premier Exhibits.

**D. The Court Should Seal The Premier Exhibits Because Plaintiffs Filed The Premier Exhibits For An Improper Purpose.**

The Court should seal the Premier Exhibits because Plaintiffs filed the Premier Exhibits for an improper purpose. *Avandia* weighs, in the context of protective orders, "whether the information is being sought for a legitimate purpose or for an improper purpose." *Avandia*, 924 F.3d at 671 (citation omitted). Here, the patient identities in the Premier Exhibits serve no purpose in the Motion to Compel. So why do Plaintiffs refuse to redact them?

The reason is clear. Uber continues to defend personal-injury actions throughout the nation, including in the Court of Common Pleas, Philadelphia County. Uber seeks to aid its defense counsel in those actions by disclosing information learned in this litigation. For instance, Uber previously attached the confidential agreement Premier Pain has with Thrivest Legal Funding, LLC ("Thrivest") to a Motion to Compel. Premier Pain's counsel opposed unsealing the document fearing it was being included for an improper purpose:

> On the contrary, not sealing the Exhibits will allow anyone with access to the PACER system to obtain the confidential documents. This litigation is not in a vacuum. Rather, there are numerous state court matters where defendants seek (but are unsuccessful) at obtaining non-party Premier Pain's private business records, such as the Agreement. ***Premier Pain suspects that if the Court does not seal the Exhibits, Plaintiffs will direct every defense counsel in state court actions to the docket in this case to obtain the information.*** This is neither fair, nor efficient particularly when the Exhibits are not relevant to the Motion to Enforce.

*See* Premier Pain's Memorandum in Support of Sealing, Dkt. No. 179, attached hereto and incorporated herein as Exhibit C (emphasis added).

This is exactly what happened. In a recent deposition of Dr. Burt in a state court action, Uber's defense counsel asked him about Premier Pain's confidential agreement with Thrivest, a document that had not been produced in that action. *See* Excerpt from Transcript, attached hereto and incorporated herein as Exhibit D at 68:1–15. When asked how he obtained the agreement, Uber's counsel answered that "[m]y understanding is that there is a disclosed, public, unsealed

version of that record" and that "it's a public filing. That's how I became aware of it." *Id.* at 68:16–22. When asked if Uber's counsel made him aware of the public filing he then declined to disclose "conversations with [his] client." *Id.* at 68:23 - 69:3.

The Premier Exhibits here provide far more fodder for Uber's anti-personal-injury litigation strategy. Unredacted, Exhibit 26 alone is a roster of thousands of Simon & Simon clients that shows who received which procedures and whether each account was paid by an insurer, from a lien recovery, or by a litigation funder. Once published, the Premier Exhibits would become a ready-made index for any defendant to use to impeach Premier Pain's provision of medical care. As such, the Court should seal the Premier Exhibits.

## III. <u>CONCLUSION</u>

The Court should file the Premier Exhibits under seal because they are protected PHI. Moreover, Plaintiffs' purpose for including the Premier Exhibits in a Motion to Compel related to Dr. Yarus is spurious. If the Court is unwilling to keep the Premier Exhibits sealed, then it should require Plaintiffs to redact the Premier Exhibits as set forth herein. This is precisely what Plaintiffs had previously agreed to do given their recognition of the importance of protecting the PHI of non-parties.

Dated: November 13, 2026

**FOX ROTHSCHILD LLP**

*/s/ Stephanie Nolan Deviney*
Stephanie Nolan Deviney, Esquire
Attorney ID 80770
Eagleview Corporate Center
747 Constitution Drive, Suite 100
Exton, PA 19341-0673
Phone: (610) 458-7500
Email: SDeviney@FoxRothschild.com
*Attorneys for Defendants, Clifton Burt and Premier Pain & Rehab Center, PC*