**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UBER TECHNOLOGIES, INC. and FEDERAL EXPRESS CORPORATION,**<br><br>**Plaintiffs,**<br>**v.**<br><br>**SIMON & SIMON P.C., MARC SIMON, CLIFTON BURT, PREMIER PAIN & REHAB CENTER, PC, ETHEL HARVEY, DANIEL PICCILLO, PHILADELPHIA SPINE ASSOCIATES, LLC, and LANCE YARUS,**<br><br>**Defendants.** | CIVIL ACTION<br><br>No: 2:25-cv-05365-MAK |

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY REGARDING PSA SPOLIATION**

Plaintiffs bring this motion to compel targeted discovery to address the apparent spoliation of evidence by the PSA defendants, Daniel Piccillo, Ethel Harvey, and Philadelphia Spine Associates, LLC. Plaintiffs have sued the chiropractors for RICO conspiracy for their knowing participation in a racketeering scheme orchestrated by Simon & Simon to manufacture false medical records to monetize otherwise worthless personal injury claims. ECF No. 71. PSA's business almost exclusively involves treatment of lawyer-referred patients. Ex. 1 at 31:10–12. Both Piccillo (PSA's co-owner) and Harvey created medical reports that recite purported treatments and represent that such treatment were medically necessary and causally connected to the underlying accident. These cookie-cutter reports are obviously false given that, among other things, many were created weeks after the supposed visit in question.

For example, claimant Dajuan Speaks purportedly visited PSA and received treatment by Harvey on May 13, 2024. PSA prepared a report generated by a software package known as Dr. Chrono which was then used by Simon & Simon to support a false and inflated claim. Ex. 2 at PSA-010209-010210. This report is essentially a cookie-cutter copy of other reports created for this same claimant. *See, e.g.,* Ex. 2. Each report notes the time the record was generated and e-signed, and Dr. Chrono records show when the reports were actually created. Ex 3. That record shows Piccillo created this report six weeks after the supposed date of the visit by copying a clinical note from a prior appointment:

| | | | | | | |
|---|---|---|---|---|---|---|
| 154 | 6/24/2024 12:11 | 120462993 (Dajuan Speaks) | Daniel Piccillo, D.C. (danielpiccillo) | Clinical Note | Copy | Copy Clinical Note: copied from [305629168] 05/09/24 10:00 D to [305641038] 05/13/24 09:00 Dajuan Speaks: Auto Accident; data to 6 forms:; - *Adjustment Method and Active Care Proto *Assessment (Daniel Piccillo, D.C.); - *Objective (Daniel Pic Piccillo, D.C.); - *Prognosis (Daniel Piccillo, D.C.); - *Subject D.O.); ; â˜‘ Billing; â˜‘ Reason for visit; â˜‘ Vitals; â˜‘ Amendr |
| 155 | 6/24/2024 12:11 | 120462993 (Dajuan Speaks) | Daniel Piccillo, D.C. (danielpiccillo) | Navigation View | Read | accessed Clinical Note Section ( from "Clinical" tab > "Clinica |
| 156 | 6/24/2024 12:11 | 120462993 (Dajuan Speaks) | Daniel Piccillo, D.C. (danielpiccillo) | Clinical Note | Update | Changed clinical note for appointment [305641038] 05/13/24 Accident |
| 157 | 6/24/2024 12:12 | 120462993 (Dajuan Speaks) | Ethel Harvey, DC (EHarvey) | Clinical Note | Update | Update Clinical Note: Clinical note set html template; note ht to [clinical/2024/06/note_246415_305641038_979342e4-c9bc- 10fcd05a4c7e.html] |

This note was created and signed within 90 seconds. *Id*. When asked about the long timing lag for similar records in his deposition, Piccillo claimed that he made contemporaneous handwritten notes and then later transcribed those notes into an electronic database. When asked what happened to those notes, he claimed, "they were shredded." Ex. 1 at 52:1.

Any such notes should have been preserved because they were manifestly relevant. Uber personally served Piccillo and Harvey with document preservation notices together with the Complaint and summons at the outset of the case. Ex. 4. Those notices encompassed "[a]ll medical and treatment records" concerning any Simon & Simon referral and specifically included "hand-written documents, such as notes." *Id.*[1] Given these repeated instructions to preserve, Piccillo's admission that he shredded his notes indicates deliberate spoliation. Given the apparent spoliation, Plaintiffs are entitled to targeted discovery to determine what was destroyed and whether such destruction was deliberate:

First, PSA should produce its records with its shredding vendor for 2025-26, including those records immediately prior to and following the filing of the Complaint. PSA has only produced one such shredding record to date, concerning what counsel for the PSA Defendants represented was the last shredding invoice for which sign-in sheets were shredded.[2] Exs. 6-7. Second, PSA should produce its list of patients referred by the Simon & Simon law firm so that Plaintiffs can ascertain which patients visited PSA and whose records—if they existed—would have been destroyed. Among other things, the shared PSA/Simon & Simon scheduling spreadsheet contains such information, including through edit logs and metadata, and can be readily produced by either

[1] Piccillo admitted he received this notice. Ex. 1 at 307:20–308:10. The duty to preserve was thereafter repeatedly confirmed. Their counsel told PSA, Piccillo, and Harvey to preserve all materials relating to the dispute on October 1, 2025. Ex. 5. Counsel sent them a formal litigation hold memo on January 14, 2026. Id. The Court also ordered all parties to preserve evidence on August 17, 2026. ECF 200.

[2] PSA suspended shredding of sign-in sheets—confirming that shredding of notes was deliberate.

PSA or Simon & Simon. Ex. 1 at 60:11–61:20. Third, for any such patients where the shredding and scheduling records indicate notes would have existed, PSA should produce the Dr. Chrono records for such visits.

This targeted discovery has been previously requested (Ex. 8) and is vital to test Piccillo's story that the discrepancies in the electronic records can be explained by subsequently shredded paper notes. Obviously, given that Piccillo says that such notes would explain the discrepancies in the surviving electronic record, he would have had every incentive to preserve them given that the discrepancy was specifically discussed in the Complaint. *See, e.g.,* ECF No. 1 at ¶¶ 73, 161(c). PSA has no basis to refuse this targeted discovery. It claims that none of the 55 claimants that are the present subject of discovery would have been treated at or around the time the Complaint was filed. However, the Court has always made clear that the 55 claimants was a provisional limitation only. ECF No. 125 ¶4(d) ("presented limited"); *id.* ¶4(f) ("focusing , until further Order"); ECF No. 148 ("at this stage"); ECF No. 184 (same). There is an urgent need for a targeted expansion of discovery as the only way to remediate PSA's spoliation. Such targeted discovery neither materially expands nor imposes any burden on PSA or the other defendants.

Finally, the Court should reject PSA's claim that the provisional limitation on discovery excuses spoliation. Plaintiffs' Complaint alleges a broad pattern making relevant all PSA treatment records for Simon & Simon claimants—not merely those included among the 55. The Court has ordered the parties, including PSA, Piccillo, and Harvey, "alter, delete, or destroy evidence," without limitation. ECF No. 200 at ¶1(a). Documents relating to spoliation should be produced.

Dated: November 13, 2026

**ROHN KURLAND ROSSMAN, P.C.**

Amy Kurland, Bar No. 37419
AKurland@rkrlawfirm.com
1700 Market St, Suite 1005
Philadelphia, PA 19103
Telephone: +1.215.770.0320
Facsimile: +1.215.717.9697

**ASHURST PERKINS COIE US LLP**

By: */s/ David Daniels*

David W.T. Daniels
david.daniels@ashurstperkins.com
Michael J. Wadden
michael.wadden@ashurstperkins.com
Sydney Veatch
sydney.veatch@ashurstperkins.com
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: +1.202.654.6200
Facsimile: +1.202.654.6211

David B. Massey
david.massey@ashurstperkins.com
Jacob Taber
jacob.taber@ashurstperkins.com
William Wilder
will.wilder@ashurstperkins.com
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
Telephone: +1.212.262.6900
Facsimile: +1.212.977.1649

*Attorneys for Plaintiffs Uber Technologies, Inc. and Federal Express Corporation*

**CERTIFICATE OF RULE 26.1(f) CONFERRAL**

I, Sydney Veatch, certify that the parties, after reasonable effort, have been unable to resolve the dispute.

Meet and confer efforts: Plaintiffs met and conferred with the PSA Defendants' counsel by sending a letter on October 14, 2026 detailing Plaintiffs' concerns regarding the newly revealed existence of the contemporaneous notes and their destruction, and requesting (1) confirmation that Germantown Injury Care Center (a successor entity to PSA, operating at the same address, with the same equipment, and under Piccillo's co-ownership) and Piccillo had been instructed to stop shredding notes relating to any clients referred by Simon & Simon and (2) additional records of patients referred by Simon & Simon to allow Plaintiffs to test whether the obligation to preserve had been violated or whether Piccillo's testimony was false. Counsel for the PSA Defendants responded on October 15 that the letter was "not well taken" and stated that the only materials related to the dispute were the records of the 12 PSA patients currently at issue.

Separately, Plaintiffs' counsel met and conferred with counsel for the PSA Defendants over email regarding the shared google spreadsheets. On September 16, 2026, counsel for Plaintiffs wrote to counsel for the PSA Defendants that Ronnie Perfidio (Simon & Simon's 30(b)(6) corporate designee) had testified the chiropractic offices update spreadsheets and send them to Simon & Simon, and that these communications should have been in PSA's productions but were not. Counsel for the PSA Defendants was asked to confirm whether PSA sent such communications and, if so, to produce them and the related spreadsheets for claimants within the scope of discovery. Counsel for the PSA Defendants replied on September 18 that the spreadsheet is a live document that the Simon firm keeps on Google Drive, into which PSA can enter information and could see current patients and that counsel for the PSA Defendants assumed Simon & Simon removes patients when

treatment ends or a case closes. He said PSA has no access to past versions that might show the patients at issue.

The issue came up again in Plaintiffs' Second RFPs to the PSA Defendants, which sought spreadsheets shared with Simon & Simon about treatment or visit counts, plus their metadata, comments, edit logs and access logs. PSA's October 26 response objected that the request was outside the Court's scheduling order and added that, for in-scope patients, PSA had no responsive documents beyond those already produced.

Dated: November 13, 2026

**ASHURST PERKINS COIE US LLP**

By: /s/ Sydney Veatch
Sydney Veatch
sydney.veatch@ashurstperkins.com
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: +1.202.654.6200
Facsimile: +1.202.654.6211

*Counsel for Plaintiffs Uber Technologies, Inc. and Federal Express Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing to be electronically filed with the Clerk of the Court through the CM/ECF system. By electronically filing, the CM/ECF system shall send notification of such filing to counsel of record for each party and those registered to receive a Notice of Electronic Filing for this case.

Dated: November 13, 2026

**ASHURST PERKINS COIE US LLP**

By: /s/ David Daniels
David W.T. Daniels
david.daniels@ashurstperkins.com
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: +1.202.654.6200
Facsimile: +1.202.654.6211

*Counsel for Plaintiffs Uber Technologies, Inc. and Federal Express Corporation*