**U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UBER TECHNOLOGIES, INC., et. al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 2:25-cv-05365-MAK |
| SIMON & SIMON P.C., et. al. | : | |

**PSA DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL**

Plaintiffs' motion is so patently frivolous and made in bad faith as to require §1927 sanctions.

Attached as Exhibit A are the Shred-It invoices reflecting PSA's long-standing practice of shredding redundant paper records roughly every 4-8 weeks depending upon accumulation in a shredding bin. The attached invoices date back to August 22, 2022, and run through November 3, 2026. Plaintiffs try to deceive the Court into believing there is basis to suspect "deliberate spoliation" because "PSA has only produced one such shredding record to date." But the one invoice produced was the only one which was ever even conceivably relevant to any issue ever raised by Plaintiffs' counsel and prior to submitting its motion Plaintiffs' counsel never even asked for any other invoices.

The specific patient record Plaintiffs' Motion points to for its "spoliation" argument was created on May 13, 2024, and would have been shredded in the normal course on June 28, 2024, fully *15 months prior* to PSA receiving any notice of Plaintiffs' claims. This piece of paper would have consisted of circled modality codes and (possibly) shorthand notes, *all of which* data was indisputably entered into the electronic medical record. The face of the electronic record itself identifies that the date and time of its finalization and signature by the doctor was June 24, 2024, and the metadata produced by PSA confirms this date and time exactly.

Regarding the metadata, Plaintiffs' comically curtailed snippet inserted into their Motion and the arguments they spin from it are so facially fanciful as to demand sanction. The *entire* metadata record for Mr. Speaks is attached as Exhibit B. It reflects that the record of Mr. Speaks' visit of May 13, 2024, was *begun* on May 13, 2024. It next reflects that it was later "locked" on June 24 at 12:10 p.m. after being

accessed, reviewed, and finalized by Dr. Piccillo beginning at 11:57 a.m. Plaintiffs' argument that Mr. Speaks May 13, 2024, visit note was "created and signed" within 90 seconds is, like their entire conspiracy theory against PSA, just made up in counsel's head.

Also made up in counsel's head is the suggestion that Dr. Piccillo's testimony described "discrepancies in the electronic records." There are no discrepancies. The face of the records and the metadata are exactly consistent, as was Dr. Piccillo's testimony. Dr. Piccillo testified that the normal practice was to enter the data from the daily pain sheets into Dr. Chrono while the patient was directly in front of him but "sometimes we have five patients waiting and they're looking at me talking to them writing things down and they're getting frustrated. So I try to get patients in and moving quicker, not leaving without seeing us." See pg. 102 of Dr. Piccillo's deposition, attached as Exhibit C.[1]

Incredibly, Plaintiffs seek a "spoliation" indictment concerning the May 13, 2024 visit note for Mr. Speaks, but over the course of 9+ hours deposing Dr. Piccillo, Plaintiffs' counsel *never once asked* a single question about this note. In considering the sanction to be imposed against Plaintiffs and their counsel for this frivolous filing, the Court should note the portion of Mr. Speaks' chart Dr. Piccillo *did* testify about: a June 17, 2024 email exchange between the Simon firm and PSA, attached hereto as Exhibit D. The Simon firm asked whether an MRI had been recommended for Mr. Speaks. PSA responded that at his next appointment Mr. Speaks "will see the doctor to be evaluated to see if one is medically necessary."

This exchange explicitly destroys the entire foundation of Plaintiffs' invented conspiracy theory against PSA. But rather than apologize to PSA for having dragged them frivolously into this lawsuit, destroyed their practice and ruined the doctors' reputations, Plaintiffs' and its counsel blithely ignore it because, once a conspiracy is *imagined* as real, to maintain the illusion in one's head, directly contradictory evidence has to be dismissed as mere coverup (or a "fig leaf").

---

[1] Plaintiffs apparently ask the Court to pretend that it is not the regular practice of busy doctors everywhere to sometimes have to finalize chart notes at a later time than when the patient is directly in front of them.

This is why Plaintiffs' "spoliation" Motion is the perfect encapsulation of just how ill-conceived its allegations against PSA have always been. PSA is alleged to have treated a total of 12 patients in this case. In *every single claim* made by these patients, Uber and/or its insurance company defending the underlying claim obtained a defense medical exam or record review and, *in each instance*, the defense doctor either explicitly agreed PSA's treatment and diagnoses were entirely reasonable and necessary, or admitted there was no basis to disagree with them. Shockingly, Plaintiffs stated in their discovery responses that they sued PSA *without even having access to a single one of these reports*.

Of course, the fact that only 12 PSA patients are even at issue further demonstrates the frivolity of Plaintiffs' Motion. Judge Kearney has repeatedly and explicitly refused Plaintiffs efforts to expand the scope of discovery in this beyond the 52 patients Plaintiffs identified in their pleading and in a subsequent list. The 12 who were seen at PSA had all completed their treatment, and the redundant pain sheet records were shredded in the normal course, *long before* PSA had any notice their treatment might ever be called into question by anyone. Incredibly, to this date and even in their spoliation Motion, Plaintiffs have yet to identify a single patient besides these 12 whose treatment *might even conceivably* be relevant. Plaintiffs effectively accuse PSA of "spoliation" because PSA has not preserved every scrap of paper created in its office since September of 2025, apparently on the belief PSA should *imagine* what other patients Uber and Fed Ex might someday identify in the future as potentially relevant.

"Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." Bull v. United Parcel Serv., Inc., 665 F.3d 68, 73 (3d Cir. 2012). Plaintiffs *never* had any reasonable pretense to argue spoliation by PSA under this standard. Their Motion is a transparently desperate, last-ditch effort to expand the scope of discovery because they have failed to adduce a single shred of evidence to support their case. The Motion should be denied and Plaintiffs ordered to pay all costs incurred in connection with responding to it.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UBER TECHNOLOGIES, INC.,

PLAINTIFF, CASE NO. 2:25-CV-05365

v.

MARC SIMON, et. al.

DEFENDANTS.

---

**LOCAL RULE 26.1(f) CERTIFICATION**

Further justifying sanction against Plaintiffs for this frivolous Motion is the failure by Plaintiffs' counsel to adhere to Judge Kearney's explicit requirement that parties meaningfully meet and confer concerning discovery disputes. Plaintiffs did not even attempt any such conferral. Rather, on October 14, 2026, Plaintiffs counsel wrote a letter accusing PSA of having somehow "violated its obligation to preserve evidence directly relevant to Plaintiffs' claims in this case." As support for this accusation, Plaintiffs' letter falsely characterized comments made by undersigned counsel at a September 8, 2026 inspection of PSA's premises by two lawyers and two experts.

On October 15, 2026, undersigned responded to Plaintiffs' letter as follows: "Your letter is not well taken. Putting aside its mischaracterization of speculation amongst counsel which might have occurred during your unfettered three-hour inspection of PSA by two experts and two lawyers, its premise is a desperate reach both factually and legally. The PSA "materials related to this dispute" are the records related to the 12 PSA patients Plaintiffs have identified as at issue. Since the filing of the lawsuit Plaintiffs have not identified any PSA patient other than these 12 as even potentially related to the dispute (and it is impossible to conceive how any others might even be related). The last date of treatment for any of the 12 patients was June 26, 2025, which was months before PSA had any inkling of your ill-conceived lawsuit. As Dr. Piccillo confirmed, no one on behalf of Uber or Fed Ex at any point ever contacted PSA

to even suggest there was an issue with any of PSA's patients or to perform any pre-suit investigation of any kind so PSA never had any inkling that preserving the pain sheets related to the 12 patients might ever be an issue."

There was no further response from Plaintiffs' counsel on this issue until an email from Plaintiffs' counsel received the morning of Friday, November 13 (apparently sent sometime late the previous evening during a Microsoft outage), in which Plaintiffs referred to a motion "we may file" without elaboration as to what the Motion was about and demanding a response by 12 noon. After undersigned asked what Motion they were considering, Plaintiffs' counsel stated "A motion regarding the same subject matter as out letter dated October 14." These email exchanges are the sum total of Plaintiffs' counsel's effort to meet and confer regarding this Motion, and at no time did Plaintiffs' counsel request the additional shredding invoices which alone destroy the pretense of their Motion.

BARATTA LAW, LLC

DATED: November 16, 2026

BY: ______________________________

ANDREW P. BARATTA, ESQUIRE
*Attorney for Defendants, Philadelphia Spine Associates, LLC, Daniel Piccillo, D.C., and Ethel Harvey, D.C.*
Attorney I.D. No. 82250
BARATTA LAW, LLC
3500 READING WAY
HUNTINGDON VALLEY, PA 19006
215-914-8132