**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UBER TECHNOLOGIES, INC. and FEDERAL EXPRESS CORPORATION,**<br><br>**Plaintiffs,**<br>**v.**<br><br>**SIMON & SIMON P.C., MARC SIMON, CLIFTON BURT, PREMIER PAIN & REHAB CENTER, PC, ETHEL HARVEY, DANIEL PICCILLO, PHILADELPHIA SPINE ASSOCIATES, LLC, and LANCE YARUS,**<br><br>**Defendants.** | CIVIL ACTION<br><br>No: 2:25-cv-05365-MAK |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF RETAINING SEAL ON EX. D TO REBECCA WARD'S NOVEMBER 11, 2026 DECLARATION**

Pursuant to Rule I.G of this Court's Policies and Procedures, Plaintiff Federal Express Corporation respectfully submits this Memorandum in Support of Retaining the Seal on Exhibit D to the Declaration of Rebecca Ward (ECF No. 257-05). Exhibit D to the Ward Declaration is a document produced by FedEx in discovery with the Bates number of FedEx_00029516. This document is an internal claims-handling record maintained by FedEx and its third-party claims administrator, Gallagher Basset Services, Inc. ("Gallagher Bassett") related to the case of Claimant W as referenced in the Amended Complaint. FedEx_00029516 contains confidential business information and has no relevance to the discovery motion at issue here. FedEx respectfully requests that this document be permitted to remain under seal. In the alternative, FedEx requests leave to submit a version with further redactions as to confidential information discussed herein.[1]

FedEx_00029516 is a lengthy document that reveals how FedEx and Gallagher Bassett value and reserve claims, what FedEx pays its vendors, how FedEx's risk-transfer program is applied, and how FedEx's special investigations and legal personnel work up a claim. Large portions of the document relate to a separate, related claim for automobile damage, which is entirely irrelevant to this case. FedEx recognizes the strong presumption of public access that attaches to judicial records under the standard of *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672–73 (3d Cir. 2019). However, this document reflects proprietary claim-valuation methods, internal authority structures, negotiated vendor pricing, risk-financing terms, and investigative protocols—precisely the "proprietary business practices" and "sources of business information that might harm a litigant's competitive standing" that the Third Circuit and courts applying *Avandia* recognize as protectable. *Id.* at 679; *In re Application of Storag Etzel GmbH*, 2020 WL

[1] FedEx produced this document with a number of redactions of material protected by the attorney-client privilege or the attorney work-product doctrine. The Simon Defendants appear to have added additional redactions of personal identifiers in compliance with Local Rule 5.1.3. The version previously submitted to the Court under seal includes these redactions.

2949742, at *11 (D. Del. Mar. 25, 2020). Disclosure of certain aspects of the document would "work a clearly defined and serious injury" to FedEx. *In re Avandia*, 924 F.3d at 671.

***Disclosure of information regarding reserve-setting and FedEx's insurance structure would work a clearly defined injury.*** The document shows how FedEx's claims administrator sets and revises reserves in response to specific events. For example, it shows the initial property-damage reserve and its rationale (FedEx_00029522–23), and the internal reserve-approval dollar thresholds (FedEx_00029601–12). It also contains coverage outlines identifying the structure of FedEx's risk-financing program, including surety-bond and policy identifiers, limits, self-insured retentions, and excess-carrier layers, together with Gallagher Bassett's analysis of how that program responds to a given loss. *See, e.g.,* FedEx_00029523–24, 29528, 29537, 29549–50, 29579–80. Disclosure of this material would inflict a concrete and present injury. FedEx resolves a high volume of auto-liability claims. A public roadmap of the events that trigger reserve increases and the program's structure would allow claimants and their counsel to reverse-engineer FedEx's valuation of pending and future claims and to time and calibrate demands accordingly. That would result in a direct loss of negotiating position in ongoing and future claims.

***Disclosure of Gallagher Bassett's claims management workflows would work a clearly defined injury.*** The document reveals the structure of FedEx's claims program: the supervisory checklist and mandatory note types for every file (FedEx_00029522); the stepwise grant of settlement authority and the process for seeking more (FedEx_00029549, 29593); client reporting triggers keyed to percentages of program limits (FedEx_00029524); and the payment-approval checklist (FedEx_00029609–10). This is a carefully-developed, proprietary workflow that FedEx and Gallagher Bassett have built over time. Its disclosure would give FedEx's competitors the benefit

of that investment, and would tell adverse claimants which files receive heightened scrutiny—information that would be exploited against FedEx in negotiations.

***Disclosure of financial information related to invoicing would work a clearly defined injury.*** Finally, the document itemizes payments to vendors. *See, e.g.*, FedEx_00029572, 29601–02, 29610–14. These figures reflect negotiated commercial rates between FedEx and its vendors. Disclosure would undermine FedEx's ability to negotiate rates with current and prospective vendors and signal to adverse parties FedEx's litigation spend on a claim of a given profile.

* * *

The public has no meaningful need for the categories of commercially sensitive information discussed above to understand the rationale for the Court's ruling on the discovery motion at issue here—a motion seeking to compel the production of communications between Simon & Simon and Dr. Lance Yarus, who had no involvement in Claimant W's case and is not referenced in this document. The Court should permit this document to remain sealed or, in the alternative, permit FedEx to submit a version with further redactions.

Dated: November 18, 2026

**ROHN KURLAND ROSSMAN, P.C.**

Amy Kurland, Bar No. 37419
AKurland@rkrlawfirm.com
1700 Market St, Suite 1005
Philadelphia, PA 19103
Telephone: +1.215.770.0320
Facsimile: +1.215.717.9697

**ASHURST PERKINS COIE US LLP**

By: */s/ David W. T. Daniels*

David W.T. Daniels
david.daniels@ashurstperkins.com
Michael J. Wadden
michael.wadden@ashurstperkins.com
Sydney Veatch
sydney.veatch@ashurstperkins.com
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: +1.202.654.6200
Facsimile: +1.202.654.6211

David B. Massey
david.massey@ashurstperkins.com
Jacob Taber
jacob.taber@ashurstperkins.com
William Wilder
will.wilder@ashurstperkins.com
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
Telephone: +1.212.262.6900
Facsimile: +1.212.977.1649

*Attorneys for Plaintiffs Uber Technologies, Inc. and Federal Express Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing to be electronically filed with the Clerk of the Court through the CM/ECF system. By electronically filing, the CM/ECF system shall send notification of such filing to counsel of record for each party and those registered to receive a Notice of Electronic Filing for this case.

Dated: November 18, 2026

**ASHURST PERKINS COIE US LLP**

By: *<u>/s/ David W. T. Daniels</u>*
David W.T. Daniels
david.daniels@ashurstperkins.com
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: +1.202.654.6200
Facsimile: +1.202.654.6211

*Counsel for Plaintiffs Uber Technologies, Inc. and Federal Express Corporation*